1   JAMES M. WAGSTAFFE (95535)
    IVO LABAR (203492)
2   HOLLY HOGAN (238714)
    **KERR & WAGSTAFFE LLP**
3   100 Spear Street, Suite 1800
    San Francisco, CA 94105–1528
4   Telephone: (415) 371-8500
    Fax: (415) 371-0500
5

6   Attorneys for Defendant
    Victor Conte
7

8                  **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10  SHANE D. MOSLEY, SR.,              Case No. C 08-01777 JSW

11            Plaintiff,               **DECLARATION OF IVO LABAR IN
                                       SUPPORT OF OPPOSITION TO
12       vs.                           MOTION FOR EXPEDITED
                                       DISCOVERY AND TRIAL**
13
    VICTOR CONTE,
14
              Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Ivo Labar, hereby declare:

1.    I am a partner at the law firm of Kerr & Wagstaffe LLP, attorneys for defendant Victor Conte in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to them.

2.    Attached hereto as **Exhibit A** is a true and correct copy of the complaint in the instant action.

3.    Attached hereto as **Exhibit B** is a true and correct copy of an article entitled "Shane Mosley admits to using BALCO steroids" published on September 29, 2007 on the New York Daily News website, http://www.nydailynews.com.

4.    Attached hereto as **Exhibit C** is a true and correct copy of an article entitled "BALCO-related claim casts doubt on De La Hoya bout" published on September 28, 2007 on Sports Illustrated's website http://www.si.com

5.    Attached hereto as **Exhibit D** is a true and correct copy of an article entitled "Sports and Drugs" published on December 12, 2003 on the San Francisco Chronicle's Website http://www.sfgate.com.

6.    Attached hereto as **Exhibit E** is a true and correct copy of the Notice of Removal filed by defendant Shane Mosley in the matter of <u>Derryl Hudson vs. Shane Mosley</u>, Case No. CV08-01108 ABC(Ex) filed in the United States District Court, Central District of California.

7.    Attached hereto as **Exhibit F** is a true and correct copy of the first page of search results on www.google.com for "Shane Mosley Drug Use."

8.    Kerr & Wagstaffe was only recently retained to defend Mr. Conte in this action. My understanding is that this case will involve numerous out-of-state witnesses who have relevant information about Mosley's drug use, including former Mosley confidantes and coaches, as well as substantial expert testimony regarding the banned performance-enhancing drugs that are the subject of the alleged defamation.  It would not be possible to properly prepare this case for trial in four months.

KERR
&
WAGSTAFFE
LLP

Case No. C 08-01777 JSW

1

LABAR DECL. I/S/O OPPO. TO MOTION FOR
EXPEDITED TRIAL AND DISCOVERY

1       I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct.  Executed on May 2, 2008 at San Francisco, California.

3

4                                               _____s/_____
                                             Ivo Labar

5                                               Attorneys for Defendant
                                             Victor Conte

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

1  Kim O. Dincel, Esq. (SBN 131563)
   Long & Levit LLP
2  465 California Street 5th Floor
   San Francisco, California 94104
3  Tel (415) 397-2222 Fax (415) 397-6392
   E-mail kdincel@longlevit.com
4
                              *E-filing*
5
   JUDD BURSTEIN, P.C.
6  Judd Burstein (pending admission *pro hac vice*)
   Jeremy Attie (pending admission *pro hac vice*)
7  1790 Broadway, Suite 1501
   New York, New York 10019
8  Tel (212) 974-2400 Fax (212) 974-2944
   E-mail jburstein@burlaw.com
9

10 *Attorneys for Plaintiff,*
   SHANE D. MOSLEY, SR.
11

12
              UNITED STATES DISTRICT COURT                    **BZ**
13
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
14
                 SAN FRANCISCO DIVISION
15
   SHANE D. MOSLEY, SR.,      CV 08              1777
16                            ) Case No:
17         *Plaintiff,*        )
                              ) **COMPLAINT FOR DAMAGES AND**
18         vs.                 ) **INJUNCTIVE RELIEF**
                              )
19 VICTOR CONTE,              )  1) DEFAMATION, SLANDER
                              )  2) DEFAMATION, SLANDER
20         *Defendant.*        )  3) DEFAMATION, LIBEL
                              )  4) PERMANENT INJUNCTION
21                            )
                              )
22                            ) **DEMAND FOR JURY TRIAL**
23
24     Plaintiff SHANE D. MOSLEY SR. ("Plaintiff" or "Mosley"), by his attorneys, Judd
25 Burstein, P.C. ("JBPC") and Long & Levit LLP, as and for his complaint against Defendant
26 VICTOR CONTE ("Defendant" or "Conte"), alleges as follows:
27
28

## I.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §

1332, in that it is a civil action between citizens of different States, and involves an amount in

controversy in excess of $75,000.

2.     Venue is proper in this District pursuant 28 U.S.C. § 1391(a)(1).

## II.

## INTRADISTRICT ASSIGNMENT

3.     Pursuant to Civil L.R. 3-2(c) and (d), this action arose due to actions and

omissions of Defendant that took place, in substantial part, in San Francisco and/or San Mateo

Counties.  Therefore, this case should be assigned to either the San Francisco Division or the

Oakland Division.

## III.

## THE PARTIES

4.     Plaintiff Mosley, a legendary professional boxer, is a citizen of the State of

Nevada.

5.     Defendant, a convicted felon and purveyor of illegal performance enhancing

drugs and procedures, is a citizen of the State of California.

## IV.

## GENERAL ALLEGATIONS

6.     In or about July of 2003, Mosley's conditioning coach, Darryl Hudson

("Hudson"), brought Mosley to meet with Conte at Conte's business, Bay Area Laboratory Co-

operative ("Balco"). Mosley was informed by Hudson that Conte's company sold entirely legal supplements, including some that were sold on the Internet, which would aid his training.

7.    At the meeting with Conte, samples of Mosley's blood were taken and analyzed. Conte then recommended to Mosley a regimen of products that Mosley was told would help him with his endurance.  At no time during this meeting did Mosley use any of the products recommended to him.  Always extremely concerned about his health and with playing by the rules, Mosley specifically asked Conte whether the items recommended by Conte were healthy, legal and permitted for athletes.  Mosley was specifically told by Conte that there was nothing wrong with following Conte's recommendations, and that all of the products recommended by Conte were entirely legal and appropriate.

8.    In July 2005, Conte pleaded guilty to a conspiracy to distribute steroids.

9.    In October 2005, Conte was sentenced to four months imprisonment and four months house arrest.

10.    On or about March 30, 2008, Conte began publicizing the fact that he was going to publish a book about his life as a peddler of steroids.  As part of this publicity campaign to maximize sales of his future book, Conte made knowingly false claims about Mosley's use of Balco products.

## V.

## FIRST CLAIM FOR RELIEF

## SLANDER

11.    Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

12.    On or about March 29, 2008, Conte gave an interview to New York Daily News Reporters Nathanial Vinton and/or Teri Thompson, in which Defendant falsely stated that he "watched [Mosley] inject [himself] in front of me," that Mosley "knew precisely what [he was] using," and that, notwithstanding Mosley's prior public claim that Conte had misled Mosley about the legality of the products provided by Conte, "[i]t was all explained up front and there was no deception."

13.    On March 30, 2008, an article containing Conte's false statements was published in the New York Daily News (the "March 30 Article"). A true and complete copy of the March 30 Article is annexed hereto as Exhibit A and incorporated by reference herein.

14.    The statements made by Conte set forth above in Paragraphs 12 and 13 were false.

15.    The statements set forth above in Paragraphs 12 and 13 were made by Conte with knowledge of their falsity.

16.    Conte's statements set forth above in Paragraphs 12 and 13 were unprivileged.

17.    Conte intended the statements set forth above in Paragraphs 12 and 13 to appear in the March 30 Article, and with the purpose of increasing sales of Defendant's intended book by besmirching Mosley's good name and trading on Plaintiff's fame and reputation.

18.    Conte's statements set forth above in Paragraphs 12 and 13 accuse Plaintiff of criminal conduct.

19.    Conte's statements set forth above in Paragraphs 12 and 13 tend to injure Mosley in his profession as a prize fighter, both in that they impute to Mosley a general disqualification in the respect which a professional boxer peculiarly requires, and impute traits concerning professional prize fighting that lessen Mosley's ability to earn money in that profession.

20.    The natural consequence of Conte's statements set forth above in Paragraphs 12 and 13 is to cause actual damage to Mosley.

21.    Based upon the foregoing slander, Defendant is liable to Plaintiff in an amount to be determined at trial.

22.    Conte's knowingly false statements about Mosley set forth above in Paragraphs 12 and 13 were intended as advance publicity designed to increase sales for Conte's planned book. Conte's slander was intended to cause injury to Mosley and was carried out by Defendant with a willful and conscious disregard for Mosley's rights. In publishing knowingly false statements about Mosley in order to increase sales of his intended book, Conte engaged in despicable conduct subjecting Mosley to cruel and unjust hardship, which was done in conscious disregard of Mosley's rights. Accordingly, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

## VI.

### SECOND CLAIM FOR RELIEF

### SLANDER

23.    Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

24.    On or about March 29, 2008, Conte gave a telephone interview (from, on information and belief, San Francisco) to USA Today reporter A. J. Perez ("Perez"). On information and belief, Defendant made false statements to Perez which were substantially identical to the false statements detailed above in Paragraphs 12 and 13.

25.    The statements described above in Paragraph 24 were made by Conte with knowledge of their falsity.

26.     Conte's statements described above in Paragraph 24 were unprivileged.

27.     Conte intended the statements described above in Paragraph 24 to appear in USA Today with the purpose of increasing sales of Defendant's intended book by besmirching Mosley's good name and trading on Plaintiff's fame and reputation.

28.     Conte's statements described above in Paragraph 24 accuse Plaintiff of criminal conduct.

29.     Conte's statements described above in Paragraph 24 tend to injure Mosley in his profession as a prize fighter, both in that they impute to Mosley a general disqualification in the respect which a professional boxer peculiarly requires, and impute traits concerning professional prize fighting that lessen Mosley's ability to earn money in that profession.

30.     The natural consequence of Conte's statements described above in Paragraph 24 is to cause actual damage to Mosley.

31.     Based upon the foregoing slander, Defendant is liable to Plaintiff in an amount to be determined at trial.

32.     Conte's knowingly false statements about Mosley as described above in Paragraph 24 were intended as advance publicity designed to increase sales for Conte's planned book. Conte's slander was intended to cause injury to Mosley and was carried out by Defendant with a willful and conscious disregard for Mosley's rights. In publishing knowingly false statements about Mosley in order to increase sales of his intended book, Conte engaged in despicable conduct subjecting Mosley to cruel and unjust hardship, which was done in conscious disregard of Mosley's rights. Accordingly, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

## VII.

## THIRD CLAIM FOR RELIEF

## LIBEL

33.    Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

34.    On information and belief, in September of 2007, Conte sent an e-mail to a reporter affiliated with SI.com in which Defendant falsely stated, in words and substance, that he had explained to Mosley that he (Conte) was providing him with illegal steroids and performance enhancing substances.

35.    The statement set forth above in Paragraph 34 was made by Conte with knowledge of its falsity.

36.    Conte's statement set forth above in Paragraph 34 was unprivileged.

37.    On information and belief, Conte intended the statement set forth above in Paragraph 34 to appear on the SI.com website for the purpose of increasing sales of Defendant's intended book by besmirching Mosley's good name and trading on Plaintiff's fame and reputation.

38.    Conte's statement set forth above in Paragraph 34 exposed Mosley to hatred, contempt, ridicule, or obloquy, and had a tendency to injure him in his occupation.

39.    Conte's statement set forth above in Paragraph 34 is defamatory without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact.

40.    The natural consequence of Conte's statement set forth above in Paragraph 34 is to cause actual damage to Mosley.

41.    Based upon the foregoing libel, Defendant is liable to Plaintiff in an amount to be determined at trial.

42.    On information and belief, Conte's knowingly false statements about Mosley set forth above in Paragraph 34 were intended as advance publicity designed to increase sales for Conte's planned book.  Conte's libel was intended to cause injury to Mosley and was carried out by Defendant with a willful and conscious disregard for Mosley's rights.   In publishing knowingly false statements about Mosley in order to increase sales of his intended book, Conte engaged in despicable conduct subjecting Mosley to cruel and unjust hardship, which was done in conscious disregard of Mosley's rights.   Accordingly, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

## VIII.

## FOURTH CLAIM FOR RELIEF

## PERMANENT INJUNCTION

43.    Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

44.    As explained in Exhibit A hereto, Plaintiff intends upon publishing a book in September of 2008, in which he intends to repeat the defamatory statements complained of in Paragraphs 12, 13, 24 and 34.

45.    Were Conte to publish those false statements both in the book and undoubtedly during the publicity tour that would accompany the book, Mosley would be irreparably harmed.

46.    A balancing of the equities favors Mosley.

47.    Mosley is entitled to a permanent injunction barring Conte from defaming Mosley by making, orally or in written form, any of the statements complained of in Paragraphs 12, 13, 24 and 34 above.

### IX.

### DEMAND FOR JURY TRIAL

48.    Plaintiff hereby demands a jury trial for all claims other that his claim for a permanent injunction.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.    On his First, Second, and Third Claims for Relief:

1.    Compensatory damages according to proof at trial, but in excess of $75,000.

2.    Punitive damages in an amount to be determined at trial.

B.    On his Fourth Claim for Relief:

1.    A permanent injunction barring Conte from defaming Mosley by making, orally or in written form, any of the statements complained of in Paragraphs 12, 13, 24 and 34 above.

C.      Costs of suit and for such other and further relief as the court deems just and proper.

Dated: San Francisco, California.

April 2, 2008

LONG & LEVIT LLP

By _____
Kim O. Dincel, Esq. (SBN 131563)
465 California Street 5th Floor
San Francisco, California 94104
Tel (415) 397-2222
Fax (415) 397-6392
E-mail kdincel@longlevit.com

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
Tel (212) 974-2400
Fax (212) 974-2944
E-mail jburstein@burlaw.com

DOCS\S0117-001\547292.V1

Complaint for Damages and Injunctive Relief

- 10 -

EXHIBIT B

NYDAILYNEWS.COM
DAILY NEWS



post your
resume today!

# Shane Mosley admits to using BALCO steroids

**BY TIM SMITH**

**DAILY NEWS SPORTS WRITER**

Saturday, September 29th 2007, 2:14 AM

Shane Mosley said last night that he inadvertently took two designer steroids — "the cream" and "the clear" — before his championship fight against Oscar De La Hoya in 2003 after he was misled by BALCO founder Victor Conte about what he was actually taking.

"We were misled (by Conte)," Mosley told the Daily News. "I guess I got the clear and the cream."

Conte disputed that in an e-mail response to The News. "I've never misled or deceived any athlete," Conte wrote in the e-mail. "I've always been a man of full disclosure."

According to a report on SI.com yesterday, Mosley used the two types of designer steroids and EPO two months before his junior middleweight championship fight against De La Hoya in 2003.

Mosley said that his strength and conditioning coach at the time, Darryl Hudson, took a list of the substances Mosley believed he was using to the Nevada State Athletic Commission before his fight with De La Hoya and was told none of them were on the banned list.

Mosley said he didn't want to take any kind of drug or workout aids.

"To be honest with you, I told them I was already in great shape," he said, adding that he met Conte one time and gave him a check for $1500. "I didn't want to take anything. I didn't need anything. He (Conte) assured me it should be on the up and up. He assured me I'd never have a dirty test."

The SI.com report cited several unidentified sources who attended an international anti-doping conference in Colorado Springs last November where the government investigator in the BALCO case, Jeff Novitzky, said that Mosley began using the substances.

Mosley said he became aware that he might have used steroids after Conte was indicted "and I saw this guy on television."

Mosley said Hudson tried to reach Conte but that he would not return calls. "I saw this guy one time," said Mosley.

Mosley was subpoenaed in the BALCO investigation and testified before a federal grand jury in 2003. He has always denied using steroids and has never tested positive.

Mosley won a 12-round unanimous decision against De La Hoya in Las Vegas on Sept. 13, 2003. Oddly, Mosley is now working as head of boxer development at Golden Boy Promotions, De La Hoya's company. Mosley said then that he contacted the Nevada Boxing Commission about what he had been taking and they told him that nothing he was using was on its list of banned substances.

Mosley, 35, is currently training in Big Bear, Calif., getting ready to fight Miguel Cotto for the WBA welterweight championship at Madison Square Garden on Nov. 10. Ron Scott Stevens, the chairman of the New York State Athletic Commission, could not be reached for comment on whether the allegation that Mosley used designer steroids and EPO — a substance that increases the volume of red blood cells and the oxygen carrying capacity in the blood — would have an impact on his being licensed in New York for the fight against Cotto.

According to the SI.com report, evidence seized during a raid of BALCO showed that Mosley had blood work done measuring his hematocrit levels — the volume of red blood cells. There was also a calendar in Mosley's file with July 26 circled accompanied by the word "start" and the letter "e" by Aug. 8 and it noted that his levels had increased from 44 at the start to 52.2 (an abnormally high level) on Aug. 8, according to the report. In his statement Mosley does not address the issue of whether he took EPO.

Mosley said he recalled taking two blood tests "to see if I was low on iron or calcium."

"I know in my heart that I'm a clean guy and a good guy," he said, "and I think all the fighters, promoters and even the boxing writers know what type of person I am, what type of fighter I am, and I don't need that type of edge. My record speaks for itself in this matter, I've always been a clean fighter, and I have nothing to hide. That one little hiccup should never have happened, and it won't happen again."

EXHIBIT C



🖶 PRINT THIS

Powered by ⓒ Clickability

🖶 Click to Print

SAVE THIS | EMAIL THIS | Close

Mosley accused of doping

# BALCO-related claim casts doubt on De La Hoya bout

Posted: Friday September 28, 2007 11:32AM; Updated: Friday September 28, 2007 8:46PM

By Luis Fernando Llosa and L. Jon Wertheim/SI.com

According to multiple sources who attended an international anti-doping conference in Colorado Springs last November, **Jeff Novitzky**, a lead investigator in the BALCO case, alleged that boxer **Shane Mosley** started an elaborate doping regimen in the months prior to a Sept. 13, 2003, fight against **Oscar de la Hoya**.

As Novitzky explained in painstaking detail, two months before the light middleweight championship fight, Mosley, a client of the BALCO lab, began using "the clear" [THG] and "the cream" [testosterone], the designer substances that **Barry Bonds**, among other athletes, stands accused of using. Novitzky said that Mosley supplemented this with doses of the blood-doping drug Erythropoietin (EPO), a hormone that artificially increases red blood cell production.

"I'm disappointed that this is coming out again, four years after I've been to the Grand Jury and gave my truthful testimony," Mosley said in a release issued by his publicist. "I even took a lie detector test back then to let everyone know that I wasn't trying to be an unfair fighter."

Mosley's alleged prescribed regimen bore striking similarities to that of former world champion sprinter **Michelle Collins**, who was implicated in the BALCO investigation and was served with a four-year suspension, despite never having tested positive for a performance-enhancing drug.



Jeff Novitzky (of BALCO investigation fame) alleged that boxer Shane Mosley started an elaborate doping regimen prior to a Sept. 2003 fight.
Ethan Miller/ Getty Images

↓ ADVERTISEMENT ↓

Evidence seized during the BALCO raids, which was presented at the November conference, indicates that on July 26, 2003, results of blood work Mosley had done established that his hematocrit level -- a test measuring the volume of red blood cells -- was 44. On a calendar that accompanied Mosley's file, the date 7/26 was circled and accompanied by the word "start" and the letter "e," which investigators believe represents EPO. By Aug. 8, Mosley's hematocrit level had soared to 52.2. "Most men are in the low 40s," says anti-doping expert **Dr. Gary Wadler**. "Anything over 50 is considered off the charts." That level, Wadler says, is dangerously high but could benefit an athlete's stamina. According to the calendar, Mosley's last dose of EPO was administered on Sept. 8, five days before the fight.

Blood doping -- i.e. the attempt to boost red blood cells, thereby increasing the capacity to carry oxygen to muscles -- has run rampant in cycling and distance running for years, and it's not surprising that it may be spreading to other sports that rely upon lung capacity as well as muscle strength.

Indeed, against De La Hoya, Mosley won a unanimous decision, largely because of his strong finish to the 12-round fight at the

MGM Grand in Las Vegas. As SI boxing writer **Richard Hoffer** wrote at the time, "[Mosley] did curry favor with the judges by landing the harder punches, beginning in the ninth round and culminating in a vicious 12th that had De La Hoya nearly dead on his feet, his mouth gaping horribly."

Mosley was subpoenaed in the BALCO investigation and testified to law enforcement officials in the fall of 2003, though he has denied ever taking banned substances and has never tested positive for performance-enhancing drugs, including EPO. Wadler asserts that there is an accurate urine test for EPO, but the Nevada State Athletic Commission does not administer it.

**Keith Kizer**, executive director of the commission, claims that "about five years ago there were discussions about EPO... but it seemed like something that probably wasn't going to be used by boxers." Kizer says that, faced with so-called "non-analytical" evidence of a boxer taking an EPO regimen leading up to a fight, the commission would consider disciplinary action and possibly deny the athlete a request for a future license.

Adding an ironic twist to this saga, barely a year after Mosley defeated De La Hoya, the two became business partners. In Mosley's upcoming WBC welterweight title fight on Nov. 10 against **Miguel Cotto**, he will be represented by De La Hoya's company, Golden Boy Promotions.

**Find this article at:**
http://sportsillustrated.cnn.com/2007/more/09/28/mosley/index.html

Click to Print

☐ Check the box to include the list of links referenced in the article.

SAVE THIS | EMAIL THIS | Close

Copyright © 2007 CNN/Sports Illustrated.

EXHIBIT D

**SFGate**.com    Print This Article    Back to Article

**SFGate**.com

## SPORTS AND DRUGS
### Star-studded day for the grand jury
**Giambi brothers, 2 Raiders appear before court**

John Crumpacker, Mark Fainaru-Wada, Chronicle Staff Writers
Friday, December 12, 2003


More...


FLY FROM
SF ✈ LA
FROM ONLY $49.*
THIS IS HOW TO FLY.
✈ Grab a seat    Virgin america

Raiders linebacker Bill Romanowski, considered one of the most important witnesses in the ongoing federal probe of nutritional supplement guru Victor Conte, testified Thursday in what may have been the last session of witness testimony.

The marathon day of testimony began when another Raider, Pro Bowl center Barret Robbins, entered the grand jury room at 8:58 a.m. and ended at 6:40 p.m. when boxing champion Shane Mosley walked out of the room smiling but without comment.

In between, the grand jury heard testimony from baseball's Giambi brothers, Jason and Jeremy, free-agent outfielder Gary Sheffield and two other athletes, a man and a woman, whose identities could not be immediately confirmed.

The length of the session, nearly 10 hours, seemed to indicate that the grand jury is finished hearing testimony, at least for the year and perhaps for good.

More than 25 athletes from track and field, pro football, major-league baseball, boxing, swimming and cycling appeared before the grand jury over the course of seven weeks as federal agents mounted an investigation into the business practices of Conte, whose lab was raided on Sept. 3. Investigators reportedly discovered vials indicating they contained steroids and human growth hormone.

Romanowski, 37, is considered important to the investigation being headed by the Internal Revenue Service because of his association with Conte -- including introducing other athletes and coaches to the services provided by Conte's Bay Area Laboratory Co-Operative in Burlingame -- and the fact he tested positive last month for the designer steroid THG.

The U.S. Anti-Doping Agency said Conte's lab is the source of THG, previously unknown to testing officials.

"I don't have any comments, but it went fine," a relaxed-looking Romanowski said after spending 2 hours, 20 minutes in the grand jury room.

Asked directly if he had used THG or any other steroid, he fell silent.

Romanowski is one of a number of athletes in pro football and track and field to test positive for THG. Others include Raiders teammates Robbins and defensive tackles Dana Stubblefield and Chris Cooper.

U.S. track and field athletes who have reportedly tested positive for THG include middle distance runner Regina Jacobs of Oakland, shot putter Kevin Toth and hammer thrower John McEwen. In additional, British sprinter Dwain Chambers, a Conte client, came up positive for THG.

While Mosley, the WBC and WBA super welterweight champion, said nothing after he left the courtroom, his lawyer indicated the boxer was not involved in the BALCO scandal.

"Who says he's caught up in anything?" Judd Burstein said. "He's a witness because the government wanted some information from him and he was happy to provide it."

Mosley is known to have visited BALCO at least once and purchased legitimate nutritional supplements.

Yankees first baseman Jason Giambi, the former Oakland Athletic, smiled as he left the courtroom but said little other than to talk about the free-agent loss of pitcher Andy Pettitte to the Houston Astros. His connection to BALCO apparently stems from his participation, along with Giants star Barry Bonds, on a Major League Baseball tour of Japan in the winter of 2002.

"It went good," Giambi said of his testimony. "I really can't talk about it."

His younger brother, Jeremy, also a former Athletic, had nothing to say as he left with Jason and their attorneys.

The Giambi brothers are the second set of siblings to appear before the grand jury. Identical twins Alvin and Calvin Harrison, 400-meter runners from Salinas, testified earlier.

Sheffield, a free agent considering an offer from the Yankees, is connected to the BALCO scandal though his friendship with Bonds, who testified last week. Sheffield spent time training with Bonds in the winter of 2002.

The past few months have been a difficult time for Romanowski. The linebacker is dealing with concussions that recently ended his streak of consecutive games played at 243 and might lead to his retirement. He also faces a lawsuit filed by former teammate Marcus Williams, who Romanowski punched in the face during a preseason fight.

Romanowski was Conte's first significant inroad into working with elite professional athletes. The football player was steered toward Conte and BALCO by personal trainer Randy Huntington in the summer of 1996.

Romanowski's ties to Conte also apparently demonstrate a link between BALCO and illegal performance-enhancing drugs that dates back to 1999. During a 1999 interview with Colorado authorities investigating the Romanowskis in a prescription drug fraud case, Bill's wife, Julie, said her husband received human growth hormone from Conte and BALCO and injected it into his knee.

One of Conte's lawyers, Troy Ellerman, has said BALCO never supplied HGH to Romanowski. Ellerman said Julie Romanowski misspoke and meant to say ZMA.

http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2003/12/12/SPGE33LS511.DTL

This article appeared on page **C - 1** of the San Francisco Chronicle

San Francisco Chronicle Sections  ▼  Go

© 2003 Hearst Communications Inc. | Privacy Policy | Feedback | RSS Feeds | FAQ | Site Index | Contact

EXHIBIT E

COPY

JEFFREY SPITZ (SBN #119343)
GREENBERG GLUSKER FIELDS
  CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687
jspitz@ggfirm.com

Attorneys for Defendant Shane Mosley

FILED
2008 FEB 19 PM 3:54
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DERRYL HUDSON, an individual and
dba POWER N SPEED;

　　　　　　　Plaintiff,

　　　vs.

SHANE MOSLEY, an individual; DOES
1 through 100, inclusive,

　　　　　　　Defendants.

Case No. CV08-01108 ABC
(Ex)

NOTICE OF REMOVAL OF
ACTION

TO THE CLERK OF THE ABOVE ENTITLED COURT:

　　　PLEASE TAKE NOTICE that Defendant Shane Mosley ("Mosley") hereby removes to this Court the state action described below pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

　　　1.　　On February 5, 2008, Plaintiff Derryl Hudson (d/b/a Power N Speed; "Hudson") commenced an action in the Superior Court of the State of California for the County of Los Angeles, styled *Derryl Hudson dba Power N Speed v. Shane Mosley and Does 1 through 100*, Case No. BC384963.

　　　2.　　While Mosley has not yet been served with the Complaint that was filed in State Court, his attorneys have received a copy of the Complaint by virtue

NOTICE OF REMOVAL

99910-00000/1623805.1

1  of the State Court's notice procedure.  A true and correct copy of the Complaint is

2  attached hereto as Exhibit A.

3      3.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because

4  it is filed before thirty (30) days elapses after Mosley receives the Complaint.

5      4.    Venue lies in this Court pursuant to 28 U.S.C. § 1441(a) because the

6  Central District of California embraces the place where the state court action is

7  pending, *i.e.*, the Superior Court of the State of California for the County of Los

8  Angeles, Central District.

9      5.    Removal of this action from the Superior Court of the State of

10 California to this Court is proper under 28 U.S.C. § 1441(a) because this Court

11 would have had original jurisdiction of the action on the basis of diversity of

12 citizenship, 28 U.S.C. § 1332(a)(1), had the action originally been brought in this

13 Court.

14     6.    Original jurisdiction on the basis of diversity of citizenship exists

15 because:

16     a.    Hudson alleges that he resides in the county of Los Angeles,

17 State of California.  Complaint at ¶ 1.  Mosley is informed and believes and based

18 thereupon alleges that Hudson is a citizen of the State of California.

19     b.    Mosley resides in Las Vegas, Nevada.

20     c.    Mosley believes that the claims alleged by Hudson exceed the

21 sum of $75,000, as required by 28 U.S.C. § 1332(a).  The Complaint also includes

22 a prayer for injunctive relief, special damages, punitive damages, costs, and

23 attorneys' fees.

24     7.    Written notice of the filing of this Notice of Removal will be given to

25 Hudson concurrently with the filing of this Notice of Removal.

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2

8.      A true and correct copy of this Notice of Removal will be filed with the Clerk of the Superior Court of California for the County of Los Angeles concurrently with the filing of this Notice.

DATED: February 19, 2008      GREENBERG GLUSKER FIELDS
                                       CLAMAN & MACHTINGER LLP


By: _____
     JEFFREY SPITZ
     Attorneys for Defendant
     SHANE MOSLEY

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

3

NOTICE OF REMOVAL

1  JAENAM J. COE  (SBN #175920)
2  LAW OFFICES OF JAENAM COE PC
   3660 Wilshire Blvd. Suite 524
3  Los Angeles, CA  90010

4  Telephone: 213-389-1400
   Telefax:    213-387-8778
5  Attorney for DERRYL HUDSON

6

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 05 2008

JOHN A. CLARKE, CLERK

BY D.M. SWAIN, DEPUTY

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA

8      FOR THE COUNTY OF LOS ANGELES:   (UNLIMITED JURISDICTION)

9

10  DERRYL HUDSON, an individual and dba        Case No.
    POWER N SPEED;
11                                                 BC384963
                                   Plaintiff,
12                                              COMPLAINT
               vs.                              Defamation
13
    SHANE MOSLEY, an individual; DOES 1
14  through 100, inclusive,
15
                                   Defendants.
16

17

18  Plaintiff complains and alleges against the defendants as follows:

19                          **FIRST CAUSE OF ACTION**

20                  (DEFAMATION: AGAINST ALL DEFENDANTS)

21      1.      At all times herein mentioned Plaintiff, DERRYL HUDSON ("PLAINTIFF"), was

22  and is an individual residing in the county of Los Angeles, State of California, and is a professional

23  boxing trainer doing business under the assumed name of 'POWER N SPEED'.

24      2.      Upon information and belief, Defendant, SHANE MOSLEY ("MOSLEY"), is an

25  individual residing in the county of Los Angeles, State of California.

26

27

28

                                  -1-
                              COMPLAINT

3.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 - 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

4.     On or about September 27, 2007 and on several occasions prior thereto, defendants spoke the following words in front of the reporters and gathering of 10 to 20 people at each time, of and concerning the plaintiff, HUDSON: Plaintiff gave performance-enhancing substance(s) that were banned by the Athletic Commissions to Defendant; that Plaintiff gave the substances as part of the workouts, and Defendant did not know "what the hell it was"; that Defendant was told by Plaintiff that nothing given to him was on the list of the banned substances. Defendant further stated that Plaintiff convinced him to visit Victor Conte's BALCO Laboratory despite the fact the Defendant didn't want to go; that Plaintiff pressured him to take illegal designer steroids "the clear and "the cream" as well as the blood doping substance EPO and that Defendant was totally unaware that he was taking performance enhancing substances and felt the banned substances were pushed on him by the Plaintiff

5.     The words were heard by plaintiff and the people who then reported the statement in mass media.

6.     These words were slanderous per se because they accused plaintiff of committing the crime of dealing with banned substances. They were slanderous per se further because they make false allegations injurious to Plaintiff in his trade, business, or profession.

7.     The words uttered were a false statement because Plaintiff never gave, 'pushed,' recommended or in any way made the Defendant take the banned substances.

-2-
**COMPLAINT**

EXHIBIT A
PAGE 5

8.   The words of the Defendants carried a defamatory meaning because they impede upon the professional quality of Plaintiff's business practice.

9.   The words of the Defendants were understood by those who saw, read and/or heard them in a way that defamed plaintiff.

10.   As a result of the above-described words, plaintiff has suffered general damages to his reputations.

11.   As a further proximate result of the above-described words, plaintiff has suffered the following special damages: injury to plaintiff's professional and occupational capacity and loss of business resulting from the tarnished reputation and professional capacity, all to their injury in the sum according to proof.

12.   The above-described words were spoken by the defendant with malice and/or oppression and/or fraud in that at the time the words were spoken, and the words were spoken in total and wanton disregard of the harm inflicted to Plaintiff, and thus an award of exemplary and punitive damages is justified.

## SECOND CAUSE OF ACTION

### (Preliminary and Permanent Injunction: Against All Defendants)

13.   Plaintiff refers to and incorporates by reference as though fully stated herein Paragraphs 1 through 12 above.

14.   Unless the Defendants are enjoined from further stating or otherwise making statements defaming the Plaintiff, the damage to Plaintiff will compound.

15.   Unless so enjoined by order of this Court, Plaintiffs will suffer and continue to irreparable harm and the exact nature and magnitude of damages resulting form the Defendants' conduct may not be ascertained.

-3-
**COMPLAINT**

EXHIBIT A
PAGE 6

16. A preliminary injunction as set forth in the preceding paragraph is necessary and essential for the maintenance of the status quo and to minimize damages to Plaintiffs.

WHEREFORE, plaintiff prays judgment against defendant as follows:

1. General damages according to proof;

2. Items of special damage for interference with earning capacity and loss of business, as above mentioned in conformity to proof;

3. A preliminary injunction and permanent injunction enjoining Defendants and their agents and all persons acting under Defendants' auspices from making any further statement regarding the Plaintiff.

4. For Punitive damages

5. For attorney's fees;

6. All costs of suit; and

7. For such other and further relief as the Court deems just and proper.


Dated: February 1, 2008                    LAW OFFICES OF JAENAM J. COE


                                           BY: _____
                                                Jaenam J. Coe
                                                Attorney for Plaintiff

-4-
**COMPLAINT**

EXHIBIT A
PAGE 7

EXHIBIT F

**Web**    Images    Maps    News    Shopping    Gmail    more ▼

ivothepirate@gmail.com | Web History | My Account | Sign out

Google

Shane Mosley Drug USe                    Search    Advanced Search
                                                   Preferences

**Web**          Personalized Results **1 - 10** of about **80,000** for **Shane Mosley Drug USe**. (0.30 seconds)

Victor Conte: **Shane Mosley** Knew He Was Using Steroids - FanHouse ...
Apr 9, 2008 ... When the news broke that **Shane Mosley** was using steroids during ... her
**drug use** and it's no easier to believe out of **Mosley's** mouth. ...
sports.aol.com/fanhouse/2008/04/09/victor-conte-**shane**-**mosley**-knew-he-was-using-
steroids/ - 53k - Cached - Similar pages - Note this

SignOnSanDiego.com > Sports -- Zab Judah asks **Shane Mosley** to ...
Now, in a sign of the times, the pre-fight buzz includes an additional element: A call for **drug**
testing. Zab Judah wants Sugar **Shane Mosley** to agree to ...
www.signonsandiego.com/sports/20080325-1254-box-**mosley**-judah.html - 33k -
Cached - Similar pages - Note this

**Shane Mosley** - RSSMicro Search
**Shane Mosley** sues BALCO founder over comments about steroid **use** ... finally admitting
her **drug use** and it's no easier to believe out of **Mosley's** mouth. ...
www.rssmicro.com/search/**Shane-Mosley** - 24k - Cached - Similar pages - Note this

**Shane Mosley** admits to using BALCO steroids
**Shane Mosley** told the Daily News tonight he inadvertently took two designer ... **Mosley** said
he didn't want to take any kind of **drug** or workout aids. ...
www.nydailynews.com/sports/more_sports/2007/09/28/2007-09-
28_**shane**_**mosley**_admits_to_using_balco_stero.html - 82k -
Cached - Similar pages - Note this

Ring TALK
Los Angeles, CA- Ex-BALCO Labs client **Shane Mosley** reportedly admitted he took ... It is a
**drug** class. And even if it were a true name, would you expect a ...
www.ringtalk.com/index.php?action=fullnews&showcomments=1&id=1856 - 31k -
Cached - Similar pages - Note this

sugar **shane mosley** news
It would be easy for "Sugar" **Shane Mosley** to be a content man. But **Mosley** will not be
content until he climbs back to ... long term effects of **drug** abuse ...
vru.soapasagift.michaelgavriel.com/sugar_**shane**_**mosley**_news.html -
Similar pages - Note this

Welterweight rematch - Newsmakers - Sugar **Shane Mosley** and Vernon ...
Caption: Famed boxers Sugar **Shane Mosley** (3rd, l) and Vernon Forrest (2nd, r) announce
their upcoming WBC Welterweight Championship Rematch at a recent ...
findarticles.com/p/articles/mi_m1355/is_2_102/ai_88582485 - 31k -
Cached - Similar pages - Note this

Sugar **Shane Mosley** And Steroids
27.09.07 - By Matthew Hurley: Long held suspicions as to Sugar **Shane Mosley**'s **use** of
steroids has once again arisen. In an article published by Sports ...
www.eastsideboxing.com/news.php?p=12605&more=1 - 18k -
Cached - Similar pages - Note this