1  JAMES M. WAGSTAFFE (95535)
   IVO LABAR (203492)
2  **KERR & WAGSTAFFE LLP**
   100 Spear Street, Suite 1800
3  San Francisco, CA 94105–1528
   Telephone: (415) 371-8500
4  Fax: (415) 371-0500

5  Attorneys for Defendant
   VICTOR CONTE

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10  SHANE D. MOSLEY, SR.,                    Case No. C 08-01777 JSW

11                 Plaintiff,                **OPPOSITION TO MOTION FOR EXPEDITED TRIAL**

12          vs.

13  VICTOR CONTE,                            Hearing Date: May 30, 2008
                                             Time:  9:00 am
14                 Defendant.                Courtroom: 2

15                                           HON. JEFFREY S. WHITE

## I. INTRODUCTION

Defendant opposes Plaintiff's proposed trial date of August 2008. Plaintiff not only seeks a permanent injunction banning the re-publication of statements of a matter of public concern regarding a public figure, but also "immense" compensatory and punitive damages. While the Court has permitted expedited discovery in this matter, advancing the trial date in this case to just a few months after the complaint was served requires a different analysis. This is a complicated case involving numerous witnesses (many of whom reside out-of-state), extensive third-party document demands, complex issues related to grand jury and other criminal proceedings, as well as expert testimony related to wide-ranging medical issues. It would be unfair to rush defendant to trial under these circumstances.[1]

If Defendant is compelled to proceed to trial by August 2008, he will be greatly prejudiced. Defendant needs time to obtain testimony from witnesses, obtain extensive documentation from Plaintiff and numerous third-party sources, as well as retain experts to address the substantial expert medical issues in this case. Defendant does not seek to delay this action. Indeed, a trial date within a year is reasonable. However, it is not possible to defend this case fairly if Defendant is forced to trial by August.

Even if the case proceeded to trial on an expedited basis, Plaintiff's proposed schedule is wholly unrealistic and would not result in the prevention of the alleged "wrong;" namely an injunction preventing the publication of statements in Mr. Conte's planned book. Even if trial commenced by August 18th, as Plaintiff has requested, a judgment and injunction would not issue until well after the book is released by third parties on September 2, 2008. Accordingly, the premise for the proposed expedited trial is flawed.

In any event, Plaintiff is not entitled to a permanent injunction here, even if he did prevail. A permanent injunction in this case would be an unconstitutional prior restraint on the

---

[1] It should be noted that *all* discovery may be unnecessary, if: (1) this Court grants the anticipated Special Motion to Strike this lawsuit under California's Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16) or (2) if it turns out, as it may be the case, there is no diversity jurisdiction here as Plaintiff claims.

– 1 –

CASE NO. C 08-01777 JSW                                              OPPOSITION TO MOTION FOR EXPEDITED TRIAL

1  publication of a book about a matter of public concern and a public figure.  There is no federal

2  precedent for the issuance of such an order, let alone one that would enjoin the actions of a third-

3  party book publisher that has not been joined in this action.

## II.     BACKGROUND

This case arises from the well-publicized sports drug scandal involving professional athletes use of performance enhancing drugs provided by Bay Area Laboratory Cooperative ("BALCO").  Defendant Victor Conte was the owner of the business.

This is not the first time a professional athlete has filed a defamation action against Mr. Conte based on the premise that the athlete "didn't know" they were taking illegal drugs provided by BALCO.  Sprinter Marion Jones filed a similar action, captioned as *Jones v. Conte, Case No. 04-05312 SI*, in 2004.  (*Declaration of Ivo Labar (hereinafter "Labar Decl.") in Opposition to Motion for Expedited Trial ¶ 2, Exh. A, Jones Complaint*).  Jones, like Mosley, denied taking banned performance enhancing drugs.  The *Jones* action never made it past the pleading stage.  That case was stayed pending the BALCO criminal proceedings and was eventually dismissed.  (*Labar Decl ¶3, Exh. B, Jones Docket*).  Jones was later prosecuted and sentenced to six month months in prison for lying about her use of banned performance enhancing drugs.  (*Labar Decl. ¶4, Exh. C, Jones News Article*).  Other professional athletes, such as Trevor Graham and Barry Bonds, are also facing criminal prosecution arising from their denying use of performance enhancing drugs provided by BALCO.  (*Labar Decl. ¶5, Exh. D, BALCO News Article*).

Mosley's allegations in this action are similar to those made by Marion Jones.  Mosley's complaint alleges that, in July 2003, Mosley and his trainer, Daryl Hudson, met with Conte.  (*Complaint ¶ 7*).  Conte allegedly recommended certain health supplements to Mosley. (*Id.*)  The complaint further alleges that Conte misled Mosley because Conte allegedly told Mosley that the items were "healthy, legal and permitted for athletes."  (*Id.*)  Mosley further alleges that he was "[a]lways extremely concerned about his health and playing by the rules . . ."  (*Id.*)  Mosley's complaint seeks compensatory and punitive damages, along with a permanent injunction preventing Conte from publishing a book detailing Mosley's drug use.  (*Id.* at p. 9)  The

– 2 –

CASE NO. C 08-01777 JSW                                                    OPPOSITION TO MOTION FOR EXPEDITED TRIAL

1  complaint further alleges that on March 29th and 30th 2008, Conte gave a series of interviews in
2  which he falsely accused Mosley of "knowingly" taking illegal performance-enhancing drugs.
3  (*Id. ¶¶ 12, 13, 24, and 34*).

4  Despite the fact that there has already been widespread international news coverage of his
5  involvement with BALCO, Mosley contends that repeating the allegation that he knowingly used
6  drugs will now cause "irreversible damage" to his reputation on a "national" scale. (*Plf's Motion*
7  *for Expedited Discovery and Trial at p. 3*). In the face of Mosley's claim of irreparable injury,
8  his counsel has also stated that he will be seeking "immense" compensatory and punitive
9  damages. (*Labar Decl. ¶ 6, Exh. E, E-mail*).

10  In the hopes of quickly obtaining a permanent injunction that will effectively serve as a
11  prior restraint of Mr. Conte's planned book on steroid use by athletes, Plaintiff has proposed a
12  schedule that will bring this matter to trial by August 15, 2008. Plaintiff also seeks a deposition
13  cut-off of June 20, 2008, and expert witness cut-off of June 30, 2008, and a dispositive motion
14  cut-off of July 15, 2008. (*Labar Decl. ¶ 7, Exh. F, Burstein May 8, 2008 Letter*).

15  **III.  ANALYSIS**

16  **A.  AN AUGUST TRIAL DATE WILL SUBSTANTIALLY PREJUDICE DEFENDANT**

17  Plaintiff's proposed August 2008 trial date will greatly prejudice Defendant. Plaintiff's
18  proposed schedule allows for fewer than two months of discovery. That is not a sufficient
19  amount of time to conduct discovery and defend a public figure defamation case in which
20  Plaintiff is seeking sizeable compensatory and punitive damages as well as a permanent
21  injunction that will effectively serve as a prior restraint of the publication of a book on a matter
22  of public concern. Given the parties are at the very outset of this action, the Defendant has only
23  made a preliminary analysis of the discovery needed to defend this case. Even at this stage,
24  however, it is clear that this lawsuit involves complicated and daunting discovery issues that will
25  take more than two months to resolve.

26  Defendant's initial analysis of the possible witnesses in this case reveals that that there
27  are more than two dozen perspective witnesses who may be called to testify. (*Labar Decl. ¶ 8*).
28  These witnesses include the half-dozen eyewitnesses to Mosley's drug use at BALCO, Mosley's

– 3 –

health care providers, former boxing trainers, journalists and medical experts. Given that many of these witnesses reside out-of-state, it will be necessary to depose them to secure their testimony for trial.[2] (*Id.*)

A substantial complicating factor to any expedited trial is that several of the witnesses in this case are journalists.[3] Both parties are seeking testimony, including confidential notes and other communications, from these reporters. This will likely lead to substantial discovery disputes involving third-party news organizations. The related BALCO criminal proceedings are also a further complicating factor that will impede discovery in this action. Mosley, like many other professional athletes that were BALCO customers, testified to the grand jury in that action. Conte will likely make a motion to the court seeking the release of Mosley's testimony in that grand jury proceeding. The presence of on-going criminal prosecutions in the BALCO matter is also another complicating factor. Many witnesses that can corroborate Conte's statement that it is not possible to use illegal performance enhancing drugs "unknowingly," have faced or are currently facing criminal prosecution. It will likely take substantial motion practice before Conte can obtain the testimony that he seeks from witnesses in this category. It is impossible that the discovery issues involving these witnesses can be resolved in two months time.

This will also be a document intensive case. In order to disprove Mosley's contentions that he did not "knowingly" use drugs and that he is always concerned about "playing by the rules," Defendant will seek all of Mosley's medical and training records. Given the Federal Rules policy of broad disclosure during discovery, Defendant will be entitled to these records. Defendant is at a major disadvantage in obtaining this information because he does not have, nor

---

[2] Plaintiff's proposed trial schedule also ignores the practical reality of scheduling this number of deponents and trial witnesses during the busy summer months where many of the likely witnesses will have scheduling conflicts. In addition, trial counsel for Mr. Conte, James Wagstaffe and Ivo Labar, of Kerr & Wagstaffe LLP, both have pre-paid vacations scheduled for August. (*Labar Decl. ¶ 9*).

[3] These reporters include: A.J. Perez (*USA Today*); Teri Thompson and Nathaniel Vinton (*New York Daily News*). That is to say nothing of the *San Francisco Chronicle* reporters who have written extensively on the BALCO story.

1  will he have before June, a complete listing of Plaintiff's health care providers or sports trainers.
2  Sufficient time for discovery is especially important when facts are in the exclusive control of
3  the opposing party. Harrods, Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 246-47 (4th
4  Cir. 2002). Assuming subpoenas were served upon the custodians of these records in the next
5  month, the documents would not be produced, at the earliest, until August. Production of these
6  records just before trial would effectively preclude any analysis of these records by Defendant's
7  experts.

8  Defendant will also seek documents from a number of other third-party sources. Given
9  that this is a reputational injury case, Defendant must test Mosley's allegation that he is not a
10 drug user and that he "plays by the rules." (*Complaint ¶ 7*). Defendant will need time to
11 discover the identity of, and subpoena information from, various athletic regulatory commissions
12 across the country to obtain information regarding disciplinary investigations against Mosley for
13 possible violations of boxing regulations, including those for drug use and "fight fixing."
14 (*Labar Decl. ¶ 10*). Defendant will also seek Mosley's banking records for the summer of 2003,
15 which will prove that Mosley purchased BALCO drugs with his personal check. It will take
16 many months, and likely some motion practice, before all of these subpoenas are returned with
17 complete and full production. Of course, this is just a preliminary listing of some of the third-
18 party sources from which Defendant will subpoena documents. Undoubtedly, as discovery
19 progresses, other discoverable sources will emerge. It will take additional time to subpoena
20 testimony and documents from these sources as well.

21 Defendant also needs time to retain experts. Defendant will need to retain drug testing
22 and other medical experts to analyze Mosley's medical records for signs of drug use and to
23 confirm that Mosley was in fact on the performance enhancing regimen that Mr. Conte has
24 described. The evidence at trial will show that Mosley purchased and used three illegal
25 performance enhancing drugs from BALCO: the Clear, the Cream and Erythropoietin (EPO).
26 Each of these drugs leave tell-tale signs in a patient's blood work. For example, EPO increases
27 the production of hematocrit (the percentage of red blood cells compared to whole blood
28 volume). Defendant's experts will need time to analyze Mosley's medical records to opine on

– 5 –
CASE NO. C 08-01777 JSW                    OPPOSITION TO MOTION FOR EXPEDITED TRIAL

KERR
WAGSTAFFE
LLP

Mosely's illegal drug use in the period of time leading up to his championship bout with Oscar de la Hoya in 2003. Defendant will also likely need to retain an expert in polygraph techniques. According to published reports, Mosley submitted to a lie detector test related to the doping allegations that first surfaced in 2003.[4] Defendant's experts will need time to review and analyze the lie detector results. It is not possible for Defendant to retain these experts and complete the extensive Rule 26 expert disclosure process in fewer than two months.

An August trial date also does not provide a meaningful amount of time to respond to more than one set of written discovery. It is prejudicial to Defendant to impose such scope and time limits on the use of written discovery. Plaintiff's arguments for a quick trial are at odds with the written discovery it has already propounded in this action, which is so voluminous Defendant may need to seek an extension of time to respond to it.

The August trial date does even not provide a reasonable amount of time for Defendant to bring dispositive pre-trial motions, including a motion for summary judgment. Defendant is also entitled to a reasonable amount of time to present material evidence in support of a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery . . ."). As described above, this matter is a complex one. Because Mosley is an all-public figure, and the doping allegations are a matter of public concern, Mosley will need to show by "clear and convincing" evidence that Conte acted with "actual malice" when he made the allegedly defamatory statements. Anderson v. Libery Lobby, 477 U.S. 242, 254 (1986). This is a high evidentiary burden for Plaintiff to meet, and the inquiry will be complex and wide-ranging—possibly requiring expanded discovery, if appropriate.

An August trial date would also be prejudicial because, in addition to a permanent injunction that will effectively serve as a prior restraint on a matter of public concern, Mosley is also seeking sizeable compensatory and punitive damages. Indeed, Mosley's counsel has

---

[4]    Like Mosley, Marion Jones also allegedly passed a lie detector test regarding her BALCO drug use.

characterized the damages as "immense." (*Labar Decl. ¶ 6, Exh. E, E-mail*). Two months is not enough time to prepare for the defense of a case with substantial potential exposure in monetary damages. In light of the ramifications this case will have both on Defendant, and the media, it would be unfair to impose an August trial date in this action.[5]

### B. PLAINTIFF'S MERE HOPE OF OBTAINING A PERMANENT INJUNCTION IS NOT GOOD CAUSE TO EXPEDITE A TRIAL INVOLVING SUBSTANTIAL FIRST AMENDMENT CONCERNS

Expediting discovery and trial requires a showing of "good cause." See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002). The sole basis for "good cause" advanced by Mosley is that, following a trial, he hopes to obtain a permanent injunction banning the publication of certain statements in Conte's planned book about Mosley's drug use. That is not good cause.

As a threshold matter, Defendant intends to file a SLAPP motion in response to the complaint. As the Court is aware, California law provides for a special motion to strike against so-called "SLAPP" suits (standing for "Strategic Litigation Against Public Participation")— i.e., lawsuits brought "primarily to chill the valid exercise of constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(j). In United States v. Lockheed Missiles & Space Co., 190 F.3d 963 (9th Cir.1999), the Ninth Circuit held that California's anti-SLAPP remedy applies to diversity actions in federal court. Lockheed, 190 F.3d at 973. Given a filing date of May 30, 2008, the SLAPP motion here will likely be heard in July. If the motion is denied, Defendant has an automatic right of appeal. Batzel v. Smith, 333 F.3d 1018, 1025-26 (9th Cir. 2003). Accordingly, unless the Court grants Defendant's SLAPP motion, the case will proceed to the Ninth Circuit.

Even if the SLAPP process were not going to delay the resolution of this claim, Mosley's proposed trial schedule is not realistic. Trial cannot be completed in two weeks. A case involving this many witnesses will take at least three to four weeks of trial time to resolve,

---

[5] Defendant does not seek to unduly delay this action. Indeed, Defendant agrees that the case should proceed as expeditiously as possible under the circumstances.

excluding the post-trial motion process that will likely include briefing on the issue of the propriety of a permanent injunction. Mr. Conte's book is scheduled to be published by a third party on September 2, 2008. It is not practical, or even possible, for the Court to have a jury trial where Plaintiff is seeking sizable compensatory and punitive damages, as well as equitable relief, and have a judgment entered by that date. Even if a trial were completed by September 2, 2008, Conte could still move for a stay of the injunction pending appeal. Fed. R. Civ. Proc. 62(c). Accordingly, there is no likelihood that a permanent injunction would prevent the publication of the statements that Mosley is complaining about. Moreover, the proposed permanent injunction would not prevent third parties from repeating Conte's remarks that Mosley knowingly took steroids. Indeed, as previously described, Mosley has already admitted to taking illegal drugs, and that admission has been widely publicized. (*See, e.g., Declaration of Ivo Labar in Opposition to Motion for Expedited Discovery; Docket No. 21*). Thus, Mosley's sole basis for expediting the trial, *i.e.* the purported need for a permanent injunction, is without merit and therefore does not demonstrate good cause.

### C.  AN EXPEDITED TRIAL WILL NOT ENTITLE PLAINTIFF TO AN UNCONSTITUTIONAL PRIOR RESTRAINT PREVENTING THE PUBLICATION OF A BOOK BY A THIRD PARTY

Even if Mosley's proposed trial schedule was realistic, he would not be entitled to an unconstitutional prior restraint preventing the publication of Conte's statements about Mosley's drug use. The book will not be published by Conte, but rather by a book publisher who is not a party to this action.

Mosley stakes his supposed entitlement to a permanent injunction on Balboa Island Village Inn v. Lemen, 40 Cal. 4th 1141, 1156 (2007). In Lemen, the California Supreme Court found that, in limited circumstances, a court may enjoin a defendant from repeating certain statements that have already been found to be defamatory at trial. Id. at 1148. Lemen involved a discrete factual circumstance where a disgruntled neighbor was found to have repeatedly harassed and made defamatory statements about a nearby business. Id. at 1146. The neighbor, among other things, repeatedly and falsely alleged that the business was involved in "child pornography" and "sex videos." Id. In a narrow 4-3 decision, the California Supreme Court

– 8 –
CASE NO. C 08-01777 JSW                                    OPPOSITION TO MOTION FOR EXPEDITED TRIAL

narrowly held that "following a trial on the merits at which it is determined that the defendant defamed the plaintiff, the court may issue an injunction prohibiting the defendant from repeating the statements determined to be defamatory." Id. at 1156-57.

Lemen is readily distinguishable from this case. First, Lemen did not involve a public figure or a matter of public concern. Indeed, the Lemen court noted that "[t]he limitations upon actions for defamation brought by public figures do not apply here." Id. at 1147, n. 1. Therefore, the special constitutional protections afforded to speakers on these subjects were not at issue in Lemen and the California Supreme Court did not consider them. Second, the plaintiff in Lemen sought only injunctive relief. Accordingly, the court was not required to consider whether money damages would have provided an adequate remedy at law.

In any event, the California Supreme Court's interpretation of the First Amendment is not binding on federal court. The United States Supreme Court has not yet ruled whether a permanent injunction may be issued in a case involving a public figure. See, e.g., Tory v. Cochran, 544 U.S. 734, 736-37 (2005). However, the better view is that a court cannot issue such an injunction because it would constitute an impermissible prior restraint.

The Supreme Court has held that a court order permanently enjoining speech is a prior restraint, even if it follows a judicial proceeding. The Court has expressly declared that "permanent injunctions . . . that actually forbid speech activities are classic examples of prior restraints" because they impose a "true restraint on future speech." Alexander v. United States, 509 U.S. 544, 550 (1993); see also id. at 572 (Kennedy, J., dissenting) (the prior restraint doctrine "encompasses injunctive systems which threaten or bar future speech based on some past infraction").

The U.S. Supreme Court would not permit permanent injunctions to issue in defamation cases because such an injunction is an "extraordinary remed[y]" to be used "only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." CBS, Inc. v. Davis, 510 U.S. 315, 1317 (1994). Such a showing could not be made here, given the overwhelming publicity Mosley's drug use has already been given by the national media. (*Declaration of Ivo Labar in Opposition to Motion for Expedited Discovery;*

– 9 –
CASE NO. C 08-01777 JSW                              OPPOSITION TO MOTION FOR EXPEDITED TRIAL

*Docket No. 21*). Moreover, the Supreme Court has found that money damages provide an adequate remedy in defamation cases. <u>Pennekamp v. Florida</u>, 328 U.S. 331, 343 (1946) ("when statements . . . amount to defamation, a judge has a remedy in damages for libel as do other public servants."). There is no explanation here as to why money damages would not afford Mosley with an adequate remedy at law, if he is successful. All told, the issuance of a permanent injunction impacting First Amendment rights is not a step to be taken lightly, and certainly not on the hasty and prejudicial schedule proposed by Plaintiff.

In addition to the obvious First Amendment concerns, Plaintiff does not explain how the proposed injunction would remedy the wrong he alleges, namely further damage his national reputation. The proposed injunction could not legally apply to third parties without notice and opportunity for those third parties to be heard. <u>Carrol v. Princess Anne</u>, 393 U.S. 175 (1968). Neither Mr. Conte's publishing company nor any other news organizations are party to this action. Accordingly, the "harm" that Mosley's permanent injunction seeks to prevent cannot be achieved through a permanent injunction against Mr. Conte. Mosley's perceived need for a "permanent injunction" is too slender a reed upon which to sustain a request for an expedited trial.

## IV.  CONCLUSION

For the reasons explained above, Defendant respectfully requests that the Court deny Mosley's motion for an expedited trial.

DATED: May 16, 2008

**KERR & WAGSTAFFE LLP**

By    /s/
        IVO LABAR

Attorneys for Defendant
VICTOR CONTE

– 10 –
CASE NO. C 08-01777 JSW                                                    OPPOSITION TO MOTION FOR EXPEDITED TRIAL

# TABLE OF CONTENTS

*Page*

I. Introduction ........................................................................................................... 1

II. Background ........................................................................................................... 2

III. Analysis ................................................................................................................. 3

    A. An August Trial Date Will Substantially Prejudice Defendant ............................ 3

    B. Plaintiff's Mere Hope of Obtaining A Permanent Injunction Is Not Good Cause to Expedite a Trial Involving Substantial First Amendment Concerns ................................................................................................................. 7

    C. An Expedited Trial Will Not Entitle Plaintiff to an Unconstitutional Prior Restraint Preventing the Publication of a Book By A Third Party ........................ 8

IV. Conclusion ........................................................................................................... 10



1

**TABLE OF AUTHORITIES**

2
*Page*

3
*Cases*

4
Alexander v. United States,
   509 U.S. 544 (1993) .................................................................................................. 9

5

Anderson v. Libery Lobby,
6    477 U.S. 242 (1986) .................................................................................................. 6

7
Balboa Island Village Inn v. Lemen,
   40 Cal. 4th 1141 (2007) ......................................................................................... 8, 9
8

Batzel v. Smith,
9    333 F.3d 1018 (9th Cir. 2003) .................................................................................. 7

10
Carrol v. Princess Anne,
   393 U.S. 175 (1968) ................................................................................................ 10
11

CBS, Inc. v. Davis,
12   510 U.S. 1315 (1994) ................................................................................................ 9

13
Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) .................................................................................................. 6
14

Harrods, Ltd. v. Sixty Internet Domain Names,
15   302 F.3d 214 (4th Cir. 2002) .................................................................................... 5

16
Pennekamp v. Florida,
   328 U.S. 331 (1946) ................................................................................................ 10
17

Semitool, Inc. v. Tokyo Electron Am., Inc.,
18   208 F.R.D. 273 (N.D. Cal. 2002) .............................................................................. 7

19
Tory v. Cochran,
   544 U.S. 734 (2005) .................................................................................................. 9
20

United States v. Lockheed Missiles & Space Co.,
21   190 F.3d 963 (9th Cir.1999) ..................................................................................... 7

22
*Statutes*

23
Cal. Code Civ. Proc. § 425.16 ............................................................................................ 1, 7

24
*Rules*

25
Fed. R. Civ. Proc. 62(c) ......................................................................................................... 8

26

27

28