1   JAMES M. WAGSTAFFE (95535)
    HOLLY HOGAN (238714)
2   **KERR & WAGSTAFFE LLP**
    100 Spear Street, Suite 1800
3   San Francisco, CA 94105–1528
    Telephone: (415) 371-8500
4   Fax: (415) 371-0500

5
    Attorneys for Defendant
6   VICTOR CONTE

7

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11  SHANE D. MOSLEY, SR.,                    Case No. C 08-01777 JSW

12              Plaintiff,                   **DECLARATION OF IVO LABAR IN
                                             SUPPORT OF OPPOSITION TO
13        vs.                                MOTION FOR EXPEDITED TRIAL**

14  VICTOR CONTE,
                                             Hearing Date: May 30, 2008
15              Defendant.                   Time:  9:00 am
                                             Courtroom: 2
16
                                             HON. JEFFREY S. WHITE
17

18

19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP

1    I, Ivo Labar, hereby declare:

2    1.    I am an attorney licensed to practice before all courts in the State of California,

3    and am a partner of the law firm of Kerr & Wagstaffe LLP, attorneys of record for Defendant

4    Victor Conte ("Conte") in this action.  I have personal knowledge of the facts stated herein, and,

5    if called as a witness, could and would competently testify to them under oath.

6    2.    Attached hereto as Exhibit A is a true and correct copy of the complaint filed

7    December 15, 2004 in the matter of *Marion Jones v. Victor Conte*, case No. 3:04-cv-05312-SI.

8    3.    Attached hereto as Exhibit B is a true and correct copy of the docket for the

9    matter of *Marion Jones v. Victor Conte*, case No. 3:04-cv-05312-SI.

10    4.    Attached hereto as Exhibit C is a true and correct copy of an Associated Press

11    article published October 5, 2007 entitled "Jones pleads guilty, admits lying about steroids."

12    5.    Attached hereto as Exhibit D is a true and correct copy of a San Francisco

13    Chronicle article published November 2006 entitled "Track coach Trevor Graham indicted."

14    6.    Attached hereto as Exhibit E is a true and correct copy of an email from Judd

15    Burstein to myself dated April 18, 2008.

16    7.    Attached hereto as Exhibit F is a true and correct copy of correspondence from

17    Judd Burstein to myself dated May 8, 2008.

18    8.    Defendant's initial analysis of the possible witnesses in this case reveals that that

19    there are more than two dozen perspective witnesses who may be called to testify.  These

20    witnesses include Shane Mosley, Victor Conte, Derryl Hudson (Mosley's trainer); Jim Valente

21    (BALCO employee); Mosley's health care providers, Mosley's former boxing trainers, at least

22    three journalists, at least two medical doctors, medical experts and an expert on polygraphs.

23    Given that many of these witnesses reside out-of-state, it will be necessary to depose them to

24    secure their testimony for trial.

25    9.    Plaintiff's proposed trial schedule also ignores the practical reality of scheduling

26    this number of deponents and trial witnesses during the busy summer months where many of the

27    likely witnesses will have scheduling conflicts.  In addition, trial counsel for Mr. Conte, James

28

1  Wagstaffe and Ivo Labar, of Kerr & Wagstaffe LLP, both have pre-paid vacations scheduled for

2  August.

3          10.     Defendant will need time to discover the identity of, and subpoena information

4  from, various athletic regulatory commissions across the country to obtain information regarding

5  disciplinary investigations against Mosley for possible violations of boxing regulations,

6  including those for drug use and "fight fixing."

7          I declare under penalty of perjury under the laws of the State of California that the

8  foregoing is true and correct.  Executed on May 15, 2008 at San Francisco, California.

9

10                              _____/s/_____

11                              Ivo Labar

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KERR
& 
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW                    DECLARATION OF IVO LABAR IN SUPPORT OF
                                           OPPOSITION TO MOTION FOR EXPEDITED TRIAL

**EXHIBIT A**

1   Craig W. Budner (admission *pro hac vice* pending)
     Beth W. Bivans (admission *pro hac vice* pending)
2   Hughes & Luce, LLP
     1717 Main Street, Suite 2800
3   Dallas, Texas 75201
     Phone: (214) 939-5500
4   Fax: (214) 939-6100

5   Joseph M. Burton (SB No. 142105)
     Gregory G. Iskander (SB No. 200215)
6   Duane Morris LLP
     One Market, Spear Tower, Suite 2000
7   San Francisco, California 94105-1104
     Phone: (415) 371-2200
8   Fax: (415) 317-2201

9   Attorneys For Plaintiff
     MARION JONES

10

11             **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13   **MARION JONES,**

14       **Plaintiff,**

15   v.

16   **VICTOR CONTE,**

17       **Defendant.**

Case No. C 04 5312

**COMPLAINT FOR DEFAMATION AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

**DEMAND FOR JURY TRIAL**

18

19       Plaintiff Marion Jones ("Jones" or "Plaintiff") in support of her Complaint and Demand

20   for Jury Trial against Defendant Victor Conte ("Conte" or "Defendant") alleges:

21                       **SUMMARY OF CLAIMS**

22       1.     Marion Jones is an Olympic gold medalist, a world champion track and field star,

23   and one of the best known sports figures of all time. Victor Conte is under federal indictment,

24   and stands accused of drug trafficking, tax evasion and money laundering. Conte has falsely and

25   maliciously accused Jones of taking banned performance enhancing drugs and of being a "drug

26   cheat" during an approximately one-year period beginning six weeks before the 2000 Olympic

27

28   <u>COMPLAINT</u> – Page 1

                                              953000.01372:879927.05

1   Games. Conte's statements, made during an interview on ABC News's 20/20, in an article

2   published in ESPN The Magazine and on ESPN.com, are absolutely false.

3       2.      Jones has never taken banned performance enhancing drugs. Indeed, in the last

4   five years, including during the time period Conte falsely alleges that Jones used banned drugs,

5   Jones was one of the most drug-tested athletes in all of sports. Jones took and passed over 160

6   separate drug tests, including five different drug tests at the 2000 Olympic Games. In public

7   statements, Jones' doctor, coaches, co-athletes and others have steadfastly confirmed that Jones

8   never used banned performance enhancing substances.    Attorneys for Trevor Graham

9   ("Graham"), Jones' coach during the time Conte alleges Jones used drugs, have publicly stated

10  that Graham never gave performance enhancing substances to any of his athletes, including

11  Jones. Jones has passed a lie detector test, administered by a well-known and respected

12  polygrapher who spent his career working with the FBI. Jones has never exhibited the tell-tale

13  physiological signs of drug use, such as weight gain, bulkiness, voice change, and excessive

14  acne. Moreover, the monthly calendars that Conte alleges documented Jones' drug regimen

15  reference men's race times that are not Jones'. Also, interestingly, Jones' actual 100-meter race

16  times slowed during the time Conte falsely alleges she was taking performance enhancing drugs

17  to supposedly make her run faster.

18      3.      Meanwhile, Conte's credibility and motives have long been questioned. Conte's

19  public statements regarding Jones and others are rife with inconsistencies and contradictions.

20  For example, in early 2004, Conte's attorneys issued a public statement emphasizing that Conte

21  never provided drugs to Jones. His sudden "about-face" on the issue, just four months before his

22  criminal trial is anticipated, appears motivated by a desire to curry favor with prosecutors, garner

23  sensationalized media attention, bolster Conte's own financial and other self-interests, and harm

24  an individual against whom Conte has a long-standing grudge. In Conte's own words, this was

25  and continues to be a "turf war," and Conte is trying desperately to win.

26

27

28  <u>COMPLAINT</u> – Page 2

953000.01372:879927.05

4.      Conte's vendetta against Jones has its roots in Conte's repeatedly unsuccessful efforts to develop a professional relationship with Jones. Conte wanted Jones to enter into an agreement to endorse his legal dietary supplement known as "ZMA." After repeated urgings from her then-husband CJ Hunter ("Hunter"), Jones reluctantly agreed to meet with Conte for a one-time promotion of ZMA at a Flex Magazine photo shoot. Subsequently, Jones rebuffed Conte's repeated efforts to expand his involvement with Jones. Conte grew increasingly impatient. Through Conte's ubiquitous presence at track and field events and his relationship with Hunter, Conte continued his relentless quest to get to Jones. Conte would repeatedly call their home, roam through athlete hotel lobbies at track meets hoping to see Jones, and scour the elite athletes' warm-up area at competitions in hopes of making contact with Jones. Conte's efforts were unsuccessful.

5.      After Jones separated from Hunter in early 2001, Conte unsuccessfully attempted to get to Jones through her coach, Graham. Again snubbed, Conte's frustrations grew. Conte's animosity toward Jones continued to grow after Jones became associated with world class sprinter Tim Montgomery ("Montgomery"). Conte's animus with Montgomery is no secret. Unbeknownst to Jones, Conte's self-professed "turf-war" with Jones reached a pinnacle when in 2003, according to Conte, Jones' then-former coach Graham sent in a syringe containing a banned substance to the U.S. Anti-Doping Agency. The ensuing investigation led to Conte's criminal indictment.

6.      Conte's self-admitted "competitive" drive and desire to "make history" apparently still motivates Conte. Driven by his long-standing vendetta with Jones, Conte seems willing to do and say whatever it takes to destroy her career and her reputation. Meanwhile, Conte seeks to take full credit for all of her past successes, falsely asserting that Jones' five Olympic medals in 2000 were the product of his illegal drug regimen instead of Jones' true talent. Conte's statements are false and malicious.

COMPLAINT – Page 3

## THE PARTIES

7.     Plaintiff Marion Jones is a citizen of the State of North Carolina and resides in the City of Chapel Hill.

8.     Defendant Victor Conte is a citizen of the State of California and resides at 345 California Drive, Burlingame, CA 94010.

## JURISDICTION

9.     This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.

10.     This court has personal jurisdiction over Conte because he resides in this state and because Jones' claims against him are based on statements made, in whole or in part, in the State of California.

## VENUE

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part, if not all, of the events giving rise to Jones' claims occurred in this district. Conte resides in this district and made the statements complained of herein in this district. Conte's criminal indictment is also pending in this district.

## INTRADISTRICT ASSIGNMENT

12.     Venue is proper in the San Francisco division of this district because a substantial part, if not all, of the events giving rise to Jones' claims occurred in San Mateo County.

## FACTUAL BACKGROUND

13.     Marion Jones is one of the most celebrated and recognizable female sports figures of all time. Jones is an Olympic gold medalist and world champion track and field star. She remains the only woman ever to win five medals in track and field in one Olympic Games.

COMPLAINT – Page 4

953000.01372:879927.05

1   Jones' accomplishments have landed her on the cover of Time, Sports Illustrated, and Vogue and

2   have made her a well-known figure worldwide.

3         14.    As with many public figures, Jones' notoriety has also made her a target.  Like

4   many athletes at the top of their field, Jones lives under the constant scrutiny of those who wish

5   to take credit for her successes, question her accomplishments, and topple her from the heights

6   she has achieved.   One such individual is Victor Conte.   On December 3, 2004, Conte

7   participated in a grossly sensationalized interview that aired on ABC News' 20/20 (the

8   "Interview").  In the Interview, Conte made numerous false and defamatory statements about

9   Jones, suggesting that she had used banned performance enhancing drugs and had cheated her

10   way to Olympic glory.

11         15.    Conte's false accusations did not stop there.  On December 3, 2004, Conte also

12   co-authored an article that appeared in the December 20, 2004 edition of ESPN The Magazine

13   and was posted on the internet at ESPN.com (the "Article").  In the Article, Conte repeated many

14   of the same false accusations about Jones and made other false statements.

15         16.    In the mid-1980s, Conte founded BALCO (the "Bay Area Laboratory Co-

16   Operative"), a drug laboratory and distributor in San Francisco.  BALCO and its subsidiary

17   SNAC Systems manufacture and supply legal dietary and nutritional supplements to the general

18   public and to many of the world's premier athletes.  To promote BALCO's products, Conte

19   became a constant fixture on the track and field circuit and at other sporting events.   Conte

20   regularly could be found in and around track and field meets promoting his supplements,

21   handing out hats and T-shirts, and seeking athlete endorsements.  Conte was constantly trying to

22   get closer to world-class athletes to publicize his products.

23         17.    In late 1999, Conte began supplying Hunter – a world-champion shot-putter –

24   with BALCO supplements.  At the time, Conte hoped to gain access to Jones and obtain her

25   endorsement of a BALCO product known as "ZMA"—a legal Zinc-Magnesium supplement.

26   Conte tried for years – without success – to develop a professional relationship with Jones.

27

28   **COMPLAINT** – Page 5

1   Jones, however, rebuffed Conte. Jones agreed, after repeated urgings from Hunter, to actually

2   meet with Conte for a one-time promotion of ZMA at a Flex Magazine photo shoot set up by

3   Hunter.

4        18.    At the 2000 Olympic Games, after Hunter was accused of failing a drug test,

5   Conte came to Hunter's defense. Conte unequivocally stated that he had never supplied Hunter

6   with any performance enhancing drug. By early 2001, Hunter and Jones had separated and were

7   in the midst of divorcing. Conte, however, continued his unsuccessful efforts to get closer to

8   Jones. Jones continued to snub Conte. Conte's resentment and sense of rejection apparently

9   grew with each rejection. By mid-2002, Jones was dating Olympic athlete Tim Montgomery,

10  with whom Conte had certain business disputes, and for whom Conte harbors great animosity.

11  Jones' relationship with Montgomery added fuel to the fire, and her continued rejection of Conte

12  led to a vendetta and grudge that apparently still motivate Conte.

13       19.    In September 2003, BACLO's offices were raided by federal law enforcement, in

14  a search for evidence of illegal drug distribution. Conte makes no secret of the fact that he

15  blames Jones' ex-coach Trevor Graham for providing the U.S. Anti-Doping Agency with a

16  syringe containing a banned performance enhancing substance manufactured by BALCO and

17  referred to as "The Clear." As a result of the ensuing investigation, Conte now faces a federal

18  indictment alleging 35 counts against him for distribution of illegal performance enhancing

19  drugs, tax evasion and money laundering activities.

20       20.    Despite his pending federal indictment, Conte was more than willing not only to

21  admit his own crimes on national television and on the internet, but to "finger" others allegedly

22  involved in the drug scandal. Conte's specific allegations in both the Interview and the Article

23  focused primarily on Jones.

24       21.    In the Interview, Conte accused Jones of taking performance enhancing drugs,

25  claiming he had "devised a program" for Jones to take certain drugs. These allegations were

26  false. Specifically, Conte falsely stated:

27

28  <u>**COMPLAINT**</u> -- Page 6

    a.  Jones was taking four different performance enhancing drugs, known as The Clear, EPO, growth hormone and insulin;

    b.  Jones gave herself an injection of growth hormone while Conte was "sitting right next to her";

    c.  Jones wanted to do "whatever it took" to win Olympic medals, including taking banned performance enhancing drugs;

    d.  Conte "devised a program" for Jones on a calendar, detailing when to take each of the four performance enhancing drugs;

    e.  Jones was a "drug cheat";

    f.  Conte instructed Jones on how to use the needle to inject herself with growth hormone;

    g.  Jones injected herself in the quadriceps;

    h.  Conte supplied performance enhancing drugs to Jones for over a year; and

    i.  Jones "lied" to a federal grand jury when she testified she didn't use performance enhancing drugs.

22.    Each of these statements by Conte was utterly false and defamatory. Conte made these statements with actual knowledge of their falsity.

23.    Likewise, in the Article, Conte falsely stated the following:

    a.  "On April 21, 2001, I was sitting in an Embassy Suites hotel room in Covina, Calif., about a foot away from Marion Jones";

    b.  Conte had "arranged for [Jones] to receive various performance enhancers, including 'The Clear,' a steroid that later became famous as THG";

    c.  Jones was "on" THG at the 2000 Games in Sydney, when she won three gold medals and two bronzes;

    d.  Jones went to Conte's hotel room;

    e.  Conte taught Jones how to use the NovoPen injector;

**COMPLAINT** – Page 7

    f.   Jones "pulled the spandex of her bicycle shorts above her right thigh. She dialed up a does of four-and-a-half units of growth hormone and injected it into her quadriceps";

    g.   Conte provided Jones with "insulin, growth hormone, EPO, and 'The Clear'";

    h.   Conte "had to reprimand" Jones for leaving cartridge injectors in a hotel room in Edmonton in May 2001, and in Eugene, Oregon a few days later;

    i.   Jones told Conte "she'd put [the injector] in a sneaker and lean the sneaker against the refrigerator so she wouldn't forget it"; and

    j.   Conte ended his "relationship" with Jones because he couldn't afford to risk her leaving an injector in a hotel room.

24.    Each of these statements by Conte was utterly false and defamatory. Conte made these statements with actual knowledge of their falsity.

25.    During the Interview and in the Article, Conte falsely gave the impression that he was intimately involved in Jones' training schedule. Conte stated that he had developed a calendar for Jones, which specified the drug regimen she should follow. Despite falsely accusing Jones of being a "drug cheat," Conte claimed his "program" was responsible for Jones' medal-winning performances during the 2000 Olympic games in Sydney. In truth, Conte was never involved in any aspect of Jones' training, never provided any banned performance enhancing substances to Jones, and was never asked by Jones to develop any calendars or programs for her. Until the federal investigation into BALCO began, Jones had never seen the calendars that Conte falsely alleges he developed for her. Indeed, the calendars that Conte alleges to reflect Jones' training regimen contain men's race times that are clearly not Jones'. In no place does Jones' name appear on the calendars.

26.    Conte admits in the Article that he was motivated by a desire to "make history." Conte wanted "one of his athletes" to win Olympic gold or become the world's fastest human.

COMPLAINT – Page 8

1    Conte's statements in the Article and the Interview, intentionally give the false impression that

2    Conte is responsible for Jones' record-setting successes, including her five medals at the 2000

3    Olympic Games. Conte falsely asserts that Jones was "one of his athletes" and that her successes

4    are his own.

5        27.    To lend credibility to his otherwise false statements and to insure it was

6    sensationalized in the media, Conte fabricated the story that he witnessed Jones injecting herself

7    in front of him. Conte's fabricated "eye-witness" testimony formed the basis for a highly

8    sensationalized story that has received significant press attention. Conte's false accusations

9    regarding Jones were made during television's ratings "sweeps" week and were calculated to

10    maximize Conte's own pecuniary and personal self-interests. Conte has clearly used the media

11    attention to shamelessly promote his supplement ZMA, wearing ZMA hats and T-shirts during

12    photo shoots for ESPN's story and during portions of the 20/20 Interview.

13        28.    Conte has never made it a secret that he holds a long-standing grudge against

14    Jones. Jones repeatedly rebuffed Conte's efforts to get Jones to further endorse ZMA and to

15    otherwise associate with Conte. Conte admits in the Article that he was working with Jones'

16    "rivals" and that a "turf war" ensued. Conte's personal ill-will toward Jones has apparently, in

17    part, motivated Conte to make these outrageously false accusations against her.

18        29.    Conte made these false and defamatory statements knowing that the statements

19    could cause Jones significant financial and emotional damage. Indeed, in the world of

20    professional sports, there is perhaps nothing more damaging than the accusation that an athlete

21    has used banned performance enhancing drugs.

22        30.    The false and defamatory statements made regarding Jones have resulted in the

23    loss of significant financial benefits from lucrative competitions, promotional appearances, and

24    sponsorship contract opportunities, which losses are likely to exceed $25 million. More

25    importantly to Jones, Conte's false statements have now resulted in an International Olympic

26    Committee ("IOC") investigation that could impact Jones' ability to participate in future

27

28    **COMPLAINT** – Page 9

1    competitions and, potentially, have negative consequences on her past achievements.  For an

2    athlete competing on an international level – and for Jones, in particular – there is no worse

3    consequence.

4        31.    These consequences are the direct product of the false and misleading statements

5    of Conte – an individual who has a long record of inconsistent statements on a range of issues; an

6    individual with a vendetta against Jones.  In contrast, Jones is one of America's most decorated

7    female athletes, who has passed every drug test ever given to her, who has taken and passed a lie

8    detector test, and whose denials of Conte's allegations has been backed up by her doctor,

9    coaches and others.  Simply put, Conte's statements are false and defamatory.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: DEFAMATION

12        32.    Jones realleges the allegations in all of the preceding paragraphs, and incorporates

13    those paragraphs herein by reference.

14        33.    On Friday, December 3, 2004, ABC broadcast various statements made by Conte

15    in a segment entitled "Catch Me If You Can" on its weekly television program 20/20 and ESPN

16    posted an article co-authored by Conte on its website.   In addition, ESPN The Magazine

17    published Conte's article in its weekly print magazine.   Conte made certain statements (the

18    "Statements") about Jones in the Interview and Article.  The Statements were broadcast by ABC,

19    printed in the December 20, 2004 edition of ESPN The Magazine, and posted by ESPN.com

20    throughout the United States and the world.

21        34.    The Statements were of and concerning Plaintiff Marion Jones.

22        35.    The Statements included, but were not limited to:

23            a.   Jones was taking four different performance enhancing drugs, known as The

24                Clear, EPO, growth hormone and insulin;

25            b.   Jones gave herself an injection of growth hormone while Conte was "sitting

26                right next to her";

COMPLAINT – Page 10

c. Jones wanted to do "whatever it took" to win Olympic medals, including taking illegal performance enhancing drugs;

d. Conte "devised a program" for Jones on a calendar, detailing when to take each of the four performance enhancing drugs;

e. Jones was a "drug cheat";

f. Conte instructed Jones on how to use the needle to inject herself with growth hormone;

g. Jones injected herself in the quadriceps;

h. Conte supplied performance enhancing drugs to Jones for over a year;

i. Jones "lied" to a federal grand jury when she testified she didn't use performance enhancing drugs;

j. "On April 21, 2001, I was sitting in an Embassy Suites hotel room in Covina, Calif., about a foot away from Marion Jones";

k. Conte had "arranged for [Jones] to receive various performance enhancers, including 'The Clear,' a steroid that later became famous as THG";

l. Jones was "on" THG at the 2000 Games in Sydney, when she won three gold medals and two bronzes;

m. Jones went to Conte's hotel room;

n. Conte taught Jones how to use the NovoPen injector;

o. Jones "pulled the spandex of her bicycle shorts above her right thigh. She dialed up a does of four-and-a-half units of growth hormone and injected it into her quadriceps";

p. Conte provided Jones with "insulin, growth hormone, EPO, and 'The Clear'";

q. Conte "had to reprimand" Jones for leaving cartridge injectors in a hotel room in Edmonton in May 2001, and in Eugene, Oregon a few days later;

COMPLAINT – Page 11

953000.01372:879927.05

r.   Jones told Conte "she'd put [the injector] in a sneaker and lean the sneaker against the refrigerator so she wouldn't forget it"; and

s.   Conte ended his "relationship" with Jones because he couldn't afford to risk her leaving an injector in a hotel room.

36.   The Statements were false and defamatory.

37.   At the time, Conte made the defamatory Statements detailed above, he knew that they were false or failed to take the proper steps to ascertain their accuracy.

38.   In making the Statements, Conte acted knowingly and/or recklessly with respect to the Statements' false and defamatory nature.

39.   By reason of Conte's Statements, Jones was greatly injured in her character and reputation; her existing sponsorship contracts were put at risk; she suffered the loss of potential business and competitive sports endorsements and sponsorship opportunities, and she has endured great pain and mental anguish, to her damage in an amount in excess of the minimum jurisdictional limits of this Court and likely in excess of $25 million.

40.   Conte defamed Jones with malice, with intent to injure Jones in her character and reputation as one of the greatest female athletes of all time, thereby justifying an award of punitive damages against Conte in an amount appropriate to punish Conte for his wrongful conduct and to deter others from engaging in such conduct.

## SECOND CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS

41.   Jones realleges the allegations in all of the preceding paragraphs, and incorporates those paragraphs herein by reference.

42.   Jones has valid sponsorship/endorsement contracts, through which she is a paid endorser of products in various print and television advertisements.

43.   Jones also competes as an elite athlete in domestic and international competitions as a member of USA Track and Field ("USATF"), a national governing body of the United

COMPLAINT – Page 12

953000.01372:879927.05

States Olympic Committee ("USOC"). Through this membership, Jones is afforded the opportunity to represent the United States in various competitions, including the World Championships and the Olympic Games.

44.    Prior to the world-wide dissemination of Conte's statements, Jones had a very strong likelihood of entering into relationships with additional sponsors and finding other endorsement and competition opportunities, as well as having the option to renew her existing relationships with sponsors and track and field organizations in the future.

45.    Defendant Conte intentionally interfered with Jones' existing and prospective relations in committing the independent tort of defamation, by making slanderous and libelous Statements depicting Jones as a drug user, liar and cheat.

46.    At the time Defendant made the Statements, he knew the potential impact such Statements would have on Jones' reputation and eligibility as an elite athlete, as well as her ability to maintain and create professional relationships.

47.    Conte's tortious conduct has put at risk Jones' existing contractual relationships. Conte's tortious conduct has now resulted in an International Olympic Committee ("IOC") investigation that could impact Jones' ability to participate in future competitions and, potentially, have negative consequences on her past achievements.

48.    Conte's tortious conduct has affected future opportunities for Jones, as Defendants' defamatory Statements have so tarnished Jones' character and reputation as to make it improbable that sponsors and other business prospects would enter into relationships with an accused drug user, liar and cheat.

49.    As a result of Conte's tortious interference with existing and prospective business relations, Jones has suffered actual damages in excess of the jurisdictional limits of this Court, and likely in excess of $25 million, including potential loss of benefits from existing and new sponsors, the potential loss of eligibility to compete, and the potential loss of her five Olympic medals.

**COMPLAINT -- Page 13**

953000.01372:879927.05

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Marion Jones requests that this Court grant her judgment against the Defendant and award to Jones:

        a.     all applicable and appropriate actual, consequential, statutory and exemplary damages permitted by law;

        b.     her attorneys' fees and costs as allowed by law, including any appellate costs allowed;

        c.     pre-judgment and post-judgment interest at the maximum rate(s) permitted by law; and

        d.     all other relief, at law or in equity, to which Jones is justly entitled.

Dated: December 15, 2004

        Respectfully submitted,

        **HUGHES & LUCE, L.L.P.**

        Craig W. Budner
        Beth W. Bivans
        Ashley C. Vaught

        **DUANE MORRIS LLP**

        Joseph M. Burton
        Gregory G. Iskander

        **ATTORNEYS FOR PLAINTIFF
        MARION JONES**

### DEMAND FOR JURY TRIAL

953000.01372:879927.05

1
2
3

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and United States District Court for the Northern District of California Local Rule 3-6, Plaintiff Marion Jones hereby demands a jury trial of all triable issues.

4

Dated: December 15, 2004

5

**HUGHES & LUCE, L.L.P.**

6
7
8

Craig W. Budner
Beth W. Bivans
Ashley C. Vaught

9

**DUANE MORRIS LLP**

10
11

Joseph M. Burton
Gregory G. Iskander

12

**ATTORNEYS FOR PLAINTIFF
MARION JONES**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT – Page 15

953000.01372:879927.05

## CERTIFICATION OF INTERESTED ENTITIES OR PARTIES

Civil L.R. 3-16 requires that the undersigned certify whether, other than the named parties, there are persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities that: (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.

The undersigned certifies that as of this date, there is no such interest to report.

Dated: December 15, 2004

HUGHES & LUCE, L.L.P.

Craig W. Budner
Beth W. Bivans
Ashley C. Vaught

DUANE MORRIS LLP

Joseph M. Burton
Gregory G. Iskander

ATTORNEYS FOR PLAINTIFF
MARION JONES

COMPLAINT – Page 16

953000.01372:879927.05

**EXHIBIT B**

ARBTERM, CLOSED, E-Filing, RELATE, STAYED

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:04-cv-05312-SI

Jones v. Conte

Assigned to: Hon. Susan Illston

Demand: $25,000,000

Cause: 28:1331 Fed. Question: Personal Injury

Date Filed: 12/15/2004

Date Terminated: 02/06/2006

Jury Demand: Plaintiff

Nature of Suit: 320 Assault Libel & Slander

Jurisdiction: Federal Question

**Plaintiff**

**Marion Jones**　　　　　　represented by **Craig W. Budner**
Hughes & Luce LLP
1717 Main Street
Suite 2800
Dallas, TX 75201
214-939-5500
Fax: 214-939-6100
Email: budnerc@hughesluce.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Beth W. Bivans**
Kirkpatrick & Lockhart Preston Gates
Ellis LLP
1717Main Street
Suite 2800
Dallas, TX 75201
214-939-5500
Fax: 214-939-6100
Email: beth.bivans@klgates.com
*ATTORNEY TO BE NOTICED*

**Gregory G. Iskander**
Duane Morris LLP
One Market Plaza, Spear Tower
Suite 2000
San Francisco, CA 94105
(415) 371-2200
Fax: 415-317-2201
Email: ggiskander@duanemorris.com
*ATTORNEY TO BE NOTICED*

Joseph M. Burton
Duane Morris LLP
One Market Plaza, Spear Tower
Suite 2000
San Francisco, CA 94105
415/371-2200
Fax: 415-317-2201
Email: jmburton@duanemorris.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Victor Conte**                        represented by  **James Matthew Wagstaffe**
                                                        Kerr & Wagstaffe LLP
                                                        100 Spear Street, Suite 1800
                                                        San Francisco, CA 94105
                                                        (415) 371-8500
                                                        Email: wagstaffe@kerrwagstaffe.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Keith K. Fong**
                                                        Kerr & Wagstaffe LLP
                                                        100 Spear Stret, Suite 1800
                                                        San Francisco, CA 94105
                                                        415-371-8500
                                                        Fax: 415-371-0500
                                                        Email: fong@kerrwagstaffe.com
                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2004 | 1 | COMPLAINT: demand for jury trial against Victor Conte ( Filing fee $ 150, receipt number 3367115.). Filed byMarion Jones. (cp, COURT STAFF) (Filed on 12/15/2004) Additional attachment(s) added on 12/27/2004 (kc, COURT STAFF). (Entered: 12/17/2004) |
| 12/15/2004 |   | Summons Issued as to Victor Conte. (cp, COURT STAFF) (Filed on 12/15/2004) (Entered: 12/17/2004) |
| 12/15/2004 | 2 | MOTION for leave to appear in Pro Hac Vice (Craig W. Budner), fee paid, receipt #3367116 filed by Marion Jones. (cp, COURT STAFF) (Filed on 12/15/2004) Additional attachment(s) added on 12/27/2004 (kc, COURT STAFF). (Entered: 12/17/2004) |
| 12/15/2004 | 3 | MOTION for leave to appear in Pro Hac Vice (Beth W. Bivans); fee paid, receipt #3367116 filed by Marion Jones. (cp, COURT STAFF) (Filed on 12/15/2004) Additional attachment(s) added on 12/27/2004 (kc, COURT STAFF). (Entered: 12/17/2004) |

| 12/15/2004 | 4 | ARBITRATION SCHEDULING ORDER: Case Management Statement due by 4/8/2005. Case Management Conference set for 4/15/2005 01:30 PM. (Attachments: # Standing Order)(cp, COURT STAFF) (Filed on 12/15/2004) (Entered: 12/17/2004) |
|---|---|---|
| 12/15/2004 | | CASE DESIGNATED for Electronic Filing. (cp, COURT STAFF) (Filed on 12/15/2004) (Entered: 12/17/2004) |
| 12/20/2004 | 5 | ORDER by Judge Claudia Wilken granting 3 Motion for Pro Hac Vice (Beth W. Bivans) (cp, COURT STAFF) (Filed on 12/20/2004) (Entered: 12/21/2004) |
| 12/20/2004 | 6 | ORDER by Judge Claudia Wilken granting 2 Motion for Pro Hac Vice (Craig W. Budner) (cp, COURT STAFF) (Filed on 12/20/2004) (Entered: 12/21/2004) |
| 12/22/2004 | 7 | CERTIFICATE of Counsel *Craig Budner* by Gregory G. Iskander on behalf of Marion Jones (Iskander, Gregory) (Filed on 12/22/2004) (Entered: 12/22/2004) |
| 01/05/2005 | 8 | NOTICE of Related Case (Iskander, Gregory) (Filed on 1/5/2005) (Entered: 01/05/2005) |
| 01/20/2005 | 9 | ****FILED/POSTED IN INCORRECT CASE ***** Please disregard this entry. ORDER RELATING CASE. Case reassigned to Judge Susan Illston for all further proceedings. Judge Claudia Wilken no longer assigned to case. Signed by Judge Illston on 1/19/05. (ts, COURT STAFF) (Filed on 1/20/2005) Modified on 1/21/2005 (ys, COURT STAFF). Modified on 1/21/2005 (kk, COURT STAFF). (Entered: 01/20/2005) |
| 01/20/2005 | | Case Reassigned to Judge Claudia Wilken-document #9 was filed/posted in wrong case. Judge Susan Illston no longer assigned to the case. (kk, COURT STAFF) (Filed on 1/20/2005) (Entered: 01/21/2005) |
| 01/25/2005 | 10 | ORDER RELATING CASE. Case reassigned to Judge Susan Illston for all further proceedings. Judge Claudia Wilken no longer assigned to case. Signed by Judge Illston on 1/19/05. (ts, COURT STAFF) (Filed on 1/25/2005) (Entered: 01/25/2005) |
| 02/02/2005 | 11 | CERTIFICATE OF SERVICE of Summons on defendant Victor Conte by Marion Jones (Bivans, Beth) (Filed on 2/2/2005) Modified on 2/4/2005 (ys, COURT STAFF). (Entered: 02/02/2005) |
| 02/02/2005 | 12 | MOTION for Extension of Time to File Answer *and Delcaration of Counsel* filed by Victor Conte. (Wagstaffe, James) (Filed on 2/2/2005) (Entered: 02/02/2005) |
| 02/02/2005 | 13 | Proposed Order re 12 MOTION for Extension of Time to File Answer *and Delcaration of Counsel* by Victor Conte. (Wagstaffe, James) (Filed on 2/2/2005) (Entered: 02/02/2005) |
| 02/02/2005 | 14 | Proposed Order re 12 MOTION for Extension of Time to File Answer *and Delcaration of Counsel Expedited Briefing Schedule* by Victor Conte. (Wagstaffe, James) (Filed on 2/2/2005) (Entered: 02/02/2005) |
| 02/03/2005 | 15 | Memorandum in Opposition re 12 MOTION for Extension of Time to File Answer *and Delcaration of Counsel Beth W. Bivans* filed byMarion Jones. |

| | | (Bivans, Beth) (Filed on 2/3/2005) (Entered: 02/03/2005) |
|---|---|---|
| 02/03/2005 | 16 | Proposed Order re 15 Memorandum in Opposition by Marion Jones. (Bivans, Beth) (Filed on 2/3/2005) (Entered: 02/03/2005) |
| 02/04/2005 | 17 | CLERK'S NOTICE setting the initial case management conference to occur on April 15, 2005, at 2 p.m. (Attachments: # 1) (ts, COURT STAFF) (Filed on 2/4/2005) (Entered: 02/04/2005) |
| 02/04/2005 | 18 | CERTIFICATE OF SERVICE by Marion Jones re 17 Clerks Notice (Bivans, Beth) (Filed on 2/4/2005) (Entered: 02/04/2005) |
| 02/04/2005 | 19 | Letter from K. Fong re Request to Reply. (Fong, Keith) (Filed on 2/4/2005) (Entered: 02/04/2005) |
| 02/04/2005 | | Set Deadlines/Hearings: Case Management Conference set for 4/15/2005 02:00 PM. (ys, COURT STAFF) (Filed on 2/4/2005) (Entered: 02/07/2005) |
| 02/07/2005 | 20 | ORDER by Judge Illston granting 12 Motion for Extension of Time to Answer (ts, COURT STAFF) (Filed on 2/7/2005) (Entered: 02/07/2005) |
| 02/07/2005 | 21 | Memorandum in Opposition *Amended Memorandum in Opposition* filed byMarion Jones. (Bivans, Beth) (Filed on 2/7/2005) (Entered: 02/07/2005) |
| 02/08/2005 | 22 | ORDER. Signed by Judge Illston on 2/7/05. (ts, COURT STAFF) (Filed on 2/8/2005) (Entered: 02/08/2005) |
| 02/09/2005 | 23 | ADR Clerk's Notice of List of Ten Potential Arbitrators. (cmf, COURT STAFF) (Filed on 2/9/2005) (Entered: 02/09/2005) |
| 02/18/2005 | 24 | ADR Request to be excused from attending Arbitration session in person (ADR L.R.4-9 d) *Joint Motion Seeking Relief from Referral to Mandatory Arbitration Program* (Bivans, Beth) (Filed on 2/18/2005) (Entered: 02/18/2005) |
| 02/18/2005 | 25 | Proposed Order re 24 ADR Request to be excused (ADR L.R.4-9 d) re: Arbitration by Marion Jones. (Bivans, Beth) (Filed on 2/18/2005) (Entered: 02/18/2005) |
| 02/23/2005 | 26 | ORDER REMOVING CASE FROM ARBITRATION. Signed by Judge Illston on 2/22/05. (ts, COURT STAFF) (Filed on 2/23/2005) (Entered: 02/23/2005) |
| 03/09/2005 | 27 | MOTION to Stay filed by Victor Conte. Motion Hearing set for 4/15/2005 09:00 AM. (Wagstaffe, James) (Filed on 3/9/2005) (Entered: 03/09/2005) |
| 03/09/2005 | 28 | Proposed Order re 27 MOTION to Stay by Victor Conte. (Wagstaffe, James) (Filed on 3/9/2005) (Entered: 03/09/2005) |
| 03/10/2005 | 29 | CLERK'S NOTICE Continuing Motion Hearing Motion Hearing set for 4/22/2005 09:00 AM. (ts, COURT STAFF) (Filed on 3/10/2005) (Entered: 03/10/2005) |
| 03/10/2005 | | Set/Reset Deadlines as to 27 MOTION to Stay. Motion Hearing set for 4/22/2005 09:00 AM. (ys, COURT STAFF) (Filed on 3/10/2005) (Entered: 03/11/2005) |
| 03/30/2005 | 30 | STIPULATION *and [Proposed] Order Continuing Initial Case Management* |

| | | |
|---|---|---|
| | | *Conference* by Victor Conte. (Fong, Keith) (Filed on 3/30/2005) (Entered: 03/30/2005) |
| 04/01/2005 | 31 | Memorandum in Opposition *to 27 Motion for Stay* filed byMarion Jones. (Bivans, Beth) (Filed on 4/1/2005) Modified on 4/4/2005 (ys, COURT STAFF). (Entered: 04/01/2005) |
| 04/01/2005 | 32 | DECLARATION of Beth W. Bivans in support of 31 Memorandum in Opposition *to Motion for Stay* filed byMarion Jones. (Related document(s) 31 ) (Bivans, Beth) (Filed on 4/1/2005) Modified on 4/4/2005 (ys, COURT STAFF). (Entered: 04/01/2005) |
| 04/01/2005 | 33 | Proposed Order re 31 Memorandum in Opposition *to Motion for Stay* by Marion Jones. (Bivans, Beth) (Filed on 4/1/2005) (Entered: 04/01/2005) |
| 04/05/2005 | 34 | ORDER continuing case management to 4/22/05. Signed by Judge Illston on 4/4/05. (ts, COURT STAFF) (Filed on 4/5/2005) (Entered: 04/05/2005) |
| 04/05/2005 | | Set Deadlines/Hearings: Case Management Conference set for 4/22/2005 02:00 PM. (ys, COURT STAFF) (Filed on 4/5/2005) (Entered: 04/06/2005) |
| 04/08/2005 | 35 | RESPONSE in Support re 27 MOTION to Stay filed byVictor Conte. (Fong, Keith) (Filed on 4/8/2005) (Entered: 04/08/2005) |
| 04/15/2005 | 36 | JOINT CASE MANAGEMENT STATEMENT filed by Marion Jones. (Bivans, Beth) (Filed on 4/15/2005) (Entered: 04/15/2005) |
| 04/19/2005 | 37 | ORDER by Judge Illston granting 27 Motion to Stay (ts, COURT STAFF) (Filed on 4/19/2005) (Entered: 04/19/2005) |
| 08/18/2005 | 38 | CLERK'S NOTICE Case Management Conference set for 11/2/2005 02:00 PM. (ts, COURT STAFF) (Filed on 8/18/2005) (Entered: 08/18/2005) |
| 08/18/2005 | 39 | AMENDED CLERK'S NOTICE Case Management Conference set for 11/4/2005 02:00 PM. (ts, COURT STAFF) (Filed on 8/18/2005) (Entered: 08/18/2005) |
| 08/18/2005 | 40 | Amended CLERK'S NOTICE setting 11/4/05 case management! (Amendment of #38,39) (ts, COURT STAFF) (Filed on 8/18/2005) Modified on 8/19/2005 (ys, COURT STAFF). (Entered: 08/18/2005) |
| 08/18/2005 | | Set Deadlines/Hearings: Case Management Conference set for 11/4/2005 02:00 PM. (ys, COURT STAFF) (Filed on 8/18/2005) (Entered: 08/19/2005) |
| 10/26/2005 | 41 | STIPULATION *and [Proposed] Order to Continue Case Management Conference* by Victor Conte. (Fong, Keith) (Filed on 10/26/2005) (Entered: 10/26/2005) |
| 10/31/2005 | 42 | ORDER continuing case management to 12/9/05. Signed by Judge Illston on 10/31/05. (ts, COURT STAFF) (Filed on 10/31/2005) (Entered: 10/31/2005) |
| 10/31/2005 | | Set Deadlines/Hearings: Case Management Conference set for 12/9/2005 02:00 PM. (ys, COURT STAFF) (Filed on 10/31/2005) (Entered: 11/01/2005) |
| 12/05/2005 | 43 | STIPULATION *and [Proposed] Order to Continue Case Management* |

| | | *Conference* by Victor Conte. (Fong, Keith) (Filed on 12/5/2005) (Entered: 12/05/2005) |
|---|---|---|
| 12/07/2005 | 44 | ORDER granting request to continue cmc. Case set on 2/3/06 for initial case management. NO FURTHER CONTINUANCES WILL BE GRANTED. Signed by Judge Illston on 12/6/05. (ts, COURT STAFF) (Filed on 12/7/2005) (Entered: 12/07/2005) |
| 12/07/2005 | | Set Deadlines/Hearings: Case Management Conference set for 2/3/2006 02:00 PM. (ys, COURT STAFF) (Filed on 12/7/2005) (Entered: 12/08/2005) |
| 01/25/2006 | 45 | CASE MANAGEMENT STATEMENT filed by Victor Conte. (Fong, Keith) (Filed on 1/25/2006) (Entered: 01/25/2006) |
| 02/06/2006 | 46 | ORDER DISMISSING CASE. Signed by Judge Illston on 2/2/06. (ts, COURT STAFF) (Filed on 2/6/2006) (Entered: 02/06/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/16/2008 13:12:46 | | |
| **PACER Login:** | kw0115 | **Client Code:** | 1255.0003 |
| **Description:** | Docket Report | **Search Criteria:** | 3:04-cv-05312-SI |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

**EXHIBIT C**

**W** HOTELS WORLDWIDE — WHO KEEPS YOU PLUGGED IN?

search site

featuring  Golf on NBC     NHL on NBC     Poker     Fantasy  Olympics

**Sports**  Other sports

Scores
NBA
Baseball
NFL
NHL
Horse racing
Golf
Motor sports
College football
College hoops
Tennis
MMA
Soccer
Other sports
Fan zone

More features
Mobile
Rumors
Blogs
Message boards
TV listings

On msnbc.com
U.S. news
Politics
World news
Business
Entertainment
Health
Tech & science
Travel
Weather

Disable Fly-out

# Jones pleads guilty, admits lying about steroids
**Olympic track star says she took banned drugs from 2000 to 2001**

Associated Press
updated 2:40 p.m. PT, Fri., Oct. 5, 2007

WHITE PLAINS, N.Y. - Marion Jones' voice never wavered, her reserve never faltered as the words rang out in the silent, stately federal courtroom.

She was a liar and a cheat, she told the judge, her eyes never straying from his face.

And so ended years of angry denials by one of the world's most celebrated athletes.

*Story continues below ▼*

advertisement



**W** HOTELS WORLDWIDE — WHO KEEPS YOU PLUGGED IN?

MSNBC video



Launch

**Jones: 'I have betrayed your trust'**
Oct. 5: An emotional Marion Jones says, "I have let my country down," after pleading guilty to lying to federal investigators when she denied using performance-enhancing drugs.
MSNBC

Inside NBCSports.com

| | |
|---|---|
| Rumors | Sports odds |
| Scores, schedules | Game matchups |
| Message boards | Team pages |
| Fantasy sports | Week in Pictures |
| Whine of the Week | JT The Brick |
| Trash Talk | Agree or Disagree |

Sponsored links

Hugh Downs Reports:
Little-known heart attack symptom many people tragically ignore.
www.healthsecrets.com

Official Site: AMBIEN CR™
(zolpidem tartrate extended release) CIV Get Free 7-Night Invite.
www.AmbienCR.com

Prepare To Be Shocked
Amazing Chinese Weight Loss Secret. As Seen On CNN, NBC, CBS & Fox
www.Wu-YiSource.com

Why Are Celebrities Using Wu-Yi?
Wu-Yi Ancient Organic Chinese Diet - Try a Free 15 day trial!
wu-yisource.com

Lose Fat While Erasing 10 Yrs In 10 Wks!
As Seen On ABC, CBS, CNN and Time
liveigan.com

The owner of three Olympic golds and two bronze medals, Jones came clean Friday and admitted she used steroids. She pleaded guilty to lying to federal investigators when she denied using performance-enhancing drugs, then announced her retirement in a tearful apology outside the U.S. District Court.

"It's with a great amount of shame that I stand before you and tell you that I have betrayed your trust," Jones said, her voice cracking as her mother stood behind her, a strong and supportive hand on her shoulder.

"I have been dishonest and you have the right to be angry with me. I have let (my family) down. I have let my country down, and I have let myself down," she said, pausing frequently to regain her composure. "I recognize that by saying I'm deeply sorry, it might not be enough and sufficient to address the pain and hurt that I've caused you.

"Therefore, I want to ask for your forgiveness for my actions, and I hope you can find it in your heart to forgive me."

The calm strength she'd displayed in the courtroom was gone, washed away by a flood of tears. She embraced her mother, who told her daughter, "Good job." The two then climbed into a black limousine with one of Jones' attorneys and drove away, not taking any questions.

NBC video                          Jones was released on



Jersey Shop
NFL jerseys
Women's jerseys
College jerseys
NHL jerseys



Launch

Sports' fallen heroes
Oct. 5: What is it about competition that fuels the temptation to cheat? NBC's Ann Thompson reports

her own recognizance and was due back in court Jan. 11 for sentencing.

"It's bittersweet," said Travis Tygart, chief executive officer of the U.S. Anti-Doping Agency. "Any time a potential American hero admits to cheating us sports fans, people who watch Olympic games, it's bittersweet."

Indeed, Friday marked a stunning fall from grace for the 31-year-old Jones, once the symbol for everything that was right about women in sports. She was powerful, captivating the country with the audacious goal of winning an unprecedented five gold medals at the Sydney Olympics. But she was beautiful and feminine, too, gracing the cover of Vogue with the poise of a supermodel.

Though she fell short in Sydney — only three of her five medals were gold, the other two bronze — her winsome smile and charming personality made her a star. Seven years later, she is broke, her reputation is ruined and she is looking at prison time.



Sports blog

OPEN MIKE

BCS officials fumble yet another chance

Jones also pleaded guilty to a second count of lying to investigators about her association with a check-fraud scheme.

"You're vindicated, but it doesn't make you feel any happier this is going on," said Dick Pound, chairman of the World Anti-Doping Agency. "The fact that she was using the performance-enhancing drugs is not a surprise. People suspected strongly or knew, but couldn't prove the use.

Marion Jones comes clean

Jones pleads guilty, admits lying about steroids
Olympic officials set to strip track star medals
Open Mike: She's just another cheater | Liar
NBC Sports: Lies hurt teammates | No excuses
Jones admits lying to feds in check-fraud scam
Her statement | Reactions | Your thoughts?
Key figures in BALCO steroids scandal

"When something seems too good to be true, it probably is."

Jones is the biggest name to be brought down so far in the Bay Area Laboratory Co-Operative scandal. But home run king Barry Bonds also has been linked to BALCO, and a grand jury is still investigating whether he lied to federal investigators.

Bonds denied ever knowingly taking performance-enhancing drugs. In testimony before a grand jury in 2003, Bonds said he believed a clear substance and a cream given to him by his trainer were flaxseed oil and an arthritis balm.

"The federal government will vigorously prosecute individuals who provide false statements to its agents," said Scott N. Schools, the U.S. Attorney for the Northern District of California.



Slide show

Launch

Week in Sports Pictures
Leaping LeBron, riled-up refs, jumbled jockeys and more in this week's edition.

Suspicions and doping allegations had dogged Jones for years. Her ex-husband, C.J. Hunter, was busted for doping, and Tim Montgomery, the father of her son Monty, was stripped of his world record in the 100 meters in connection with the BALCO case.

Jones herself was one of the athletes who testified before a grand jury in 2003 in the BALCO investigation. In August 2006, one of her urine

samples tested positive for EPO, but she was cleared when a backup sample tested negative.

CONTINUED: "I have never used performance-enhancing drugs"

1 | 2 | Next >

Rate this story    Low ☆☆☆☆☆ High
Current rating: 4 by 461 users

🖨 Print this    ✉ Email this    🎙 Blog this    💬 IM this

MORE FROM OTHER SPORTS

Next → Other sports Section Front

Tim Montgomery sentenced to 4 years in prison

Top NBCSports.com stories

Tim Montgomery sentenced to 4 years in prison

Double amputee ruled eligible for Beijing Olympics

AL Central should get edge in interleague play

Mets' Santana tries to keep Yankees in cellar

A-Rod gives a 'thumb's up' on his right quad

NBC Sports videos

The fitness of horses

The safety of horseracing

Amputee gets his shot at Beijing

Clean slate for Game 7

Pittsburgh misses major opportunity

SPONSORED LINKS                                    Get listed here
Six Sigma Certification
100% Online–Six Sigma Certificate From Villanova –Find Out More Now!
www.VillanovaU.com

Countrywide® Home Loans
No Closing Cost Refi. No Points. No Credit Report or Processing Fees.
www.countrywide.com

Top MBA Programs
Get Your Dream Job With An MBA. 100% Online. No GMAT Required!
www.floridatechonline.com

Notre Dame Certificates
Earn an Executive Certificate from Notre Dame – Online! Enroll Now.
www.NotreDameOnline.com

Wachovia Free Checking
No monthly fee, No minimum balance, direct deposit, Check Card & More.
www.Wachovia.com

| Sports | NFL  College Football  MLB  NBA  NHL  College Basketball |
| | NASCAR/Motors  Golf  Tennis  MMA  Horses  Soccer  Poker |
| | Other Sports |
| Features | Fan Zone  Fantasy  All-Madden  Notre Dame  Golf on NBC  NHL on NBC |
| | Dew Tour  CORR  Jeep World |
| About Us | Get Local  RSS Feeds  Alerts  Mobile  TV Listings  Contact Us  Careers |
| | Terms & Conditions |

Go Local    TV Listings    Go Mobile

RSS Feeds    Fantasy Games    Shop

**EXHIBIT D**



COMMUNITY     VIDEO     PODCASTS     PHOTOS     DATA CENTER     NEWSLETTERS     MOBILE

AWARD-WINNING. FUEL EFFICIENT.
TEST-DRIVE READY.

home of the

Home Delivery | Today's Paper | Ads

SEARCH   ⦿ SFGate   ○ Web Search by YAHOO!   ◦ Advanced Search          Sign In | Register

**Don't Miss:** Wine: Four Star Beer     Same-Sex Marriage Ruling     Pets: The Dawg Father     New Homes Sold In Bay Area     Weird: Refusing To Fuel Up

## Track coach Trevor Graham indicted

Mark Fainaru-Wada and Lance Williams, Chronicle Staff Writer
Thursday, November 2, 2006

SHARE     COMMENTS (0)     FONT | SIZE





Sale Extended!     Upgrade to BRITISH AIRWAYS

2 nights in London FREE when you fly from only $339

*Disc. occ. **Fare based on r/t purchase from NYC. Continues and fees extra.

Book by 5/22 at ba.com ▶

**(11-02) 16:03 PST** -- A track coach whose clients have included some of the world's greatest sprinters -- such as U.S. Olympic champions Marion Jones and Justin Gatlin -- was indicted Thursday for lying to federal agents when he told them he had never provided his athletes with performance-enhancing drugs in connection with the BALCO steroids case.

Trevor Graham, who has portrayed himself as a whistle blower for giving authorities the steroid-laced syringe that helped propel the BALCO probe in 2003, was indicted by a federal grand jury in San Francisco on three counts of making false statements to government agents.

Graham's indictment was another blow to American track and field, which has labored unsuccessfully to put the BALCO steroids scandal behind it. In the past two years, 14 track and field stars with ties to BALCO -- including Tim Montgomery, former world record holder in the 100 meters and a former Graham client -- have been disciplined for doping offenses. In July, Gatlin, a Graham protege, was suspended after testing positive for steroids.

Neither Graham nor his attorney, Joseph Zeszotarski, could be reached for comment.

The grand jury that indicted Graham for his statements in a 2004 interview with federal agents is also investigating whether Giants slugger Barry Bonds committed perjury for denying under oath that he knowingly used banned drugs from BALCO. There was no indication Thursday when or whether the grand jury might complete its probe of Bonds.

Graham is the coach of the elite Sprint Capitol organization in North Carolina. Several of his athletes have tested positive for steroids, but he has repeatedly denied distributing the drugs.

However, at least three people connected with BALCO have told the government that Graham was a steroid dealer. Both BALCO ringleader Victor Conte and shot-putter C.J. Hunter told federal agents the coach distributed the drugs to his athletes, and Montgomery testified before a grand jury that Graham provided his athletes with steroids he had received through a "connection" in Mexico.

Thursday's indictment alleged that Graham lied to special agents from the Internal Revenue Service's Criminal Investigations unit when he told them he had never set up any of his athletes with performance-enhancing drugs from an unidentified source.

The indictment also alleged that Graham lied when he said he had never met the unidentified source, referred to as "Source A," in person. The third count against the coach claimed that he lied when stating his last contact with "Source A" had been a phone conversation in 1997.

Based on a reading of Graham's statement -- which was obtained and previously reported on by The Chronicle -- the unidentified source is Angel Guillermo Heredia, known throughout the BALCO case as "Memo." In his 2004 interview, Graham said

MOST READ     MOST E-MAILED     TOP STORIES

1.  Bike to Work Day accident claims life of bicyclist
2.  Court approves evil gay agenda Satan's plan to make uptight straight...
3.  Marriage ruling a victory for Newsom
4.  Bay Area swelters as temperature records fall
5.  Dennis Richmond on 40 years broadcasting news
6.  S.F. woman's death not a clear bridge suicide
7.  Stabbed man dies in S.F. after car crash



TopHomes
From Pacific Union

NOB HILL, CATHEDRAL HILL
3 BR / 3 BA
$1,200,000

SUNSET, GOLDEN GATE HEIGHTS
4 BR / 3 BA
$1,149,000

CIVIC CENTER, TENDERLOIN
2 BR / 2 BA
$825,000

NOB HILL, CATHEDRAL HILL
2 BR / 2 BA
$1,195,000

JOSHUA TREE
2 BR / 2 BA
$599,000

NOB HILL, CATHEDRAL HILL
1 BR / 1 BA
$585,000

NOB HILL, CATHEDRAL HILL
2 BR / 2 BA
$879,000

OUTER RICHMOND, SEACLIFF AND LAKE
2 BR / 1 BA
$850,000

DALY CITY
3 BR / 2 BA
$828,000

NOB HILL, CATHEDRAL HILL
5 BR / 5 BA
$3,000,000



Current Offers from LendingTree®

LendingTree
Start Now
Terms & Conditions Apply

ADVERTISERS

Kids Fly to Hawaii this Summer for $130*

Memo was a shot-putter from Laredo, Texas. According to the statement, Graham said he was not aware of any of his athletes obtaining drugs from Mexico; he had no connections with a Mexican lab; he only had spoken with Memo by phone, and hadn't talked with him since 1997.

The New York Times previously reported that Heredia told the grand jury in San Francisco that he provided steroids, human growth hormone and other performance enhancing drugs to Graham and his athletes between 1996 and 2000.

The indictment alleges that Graham met Source A in person for the first time in 1996 or 1997 and thereafter referred "numerous athletes coached by Graham to Source A to obtain illegal performance-enhancing drugs from Source A." The indictment also charged that Source A provided performance-enhancers to Graham and his athletes between the time of their first meeting and the 2004 interview with agents. Some of the athletes, the indictment, alleged, were associated with BALCO.

"Today's charges demonstrate this office's ongoing commitment to investigate and prosecute not only those involved in the illegal doping of our nation's athletes, but also those who lie to federal agents involved in a criminal investigation," said U.S. Attorney Kevin Ryan.

In June 2004, four months after four men were indicted in what the government termed a conspiracy to distribute performance-enhancing drugs to elite athletes, investigators interviewed Graham for nearly three-and-a-half hours with his lawyer present in Raleigh, N.C.

During the interview, Graham acknowledged he was the man who sent the now-famous, steroid-laced syringe to the U.S. Anti-Doping Agency in the summer of 2003 to expose Conte and BALCO. Graham also admitted he attended a meeting at BALCO in late 2003, where Conte hatched what became known as "Project World Record," a plan devised to turn Montgomery into the world's fastest man. Also at the meeting were sprint coach Charlie Francis -- the man who coached steroid cheat Ben Johnson -- and Milos Sarcev -- a bodybuilder and self-described anabolic expert.

Graham, however, insisted to the agents that he had never provided any illegal or banned performance-enhancing drugs to his athletes. For example, he stated the only things he had ever given Marion Jones were "Gatorade, protein and potassium for cramps," according to a copy of his statement. Graham told the investigators that as a coach he believed he had always "done the right things."

However, Hunter, the shot-putter and ex-husband of Jones, told agents Graham had provided Jones with the endurance-boosting drug EPO in the lead-up to the 2000 Sydney Games, where she won five medals, three of them gold.

At the Summer Olympics in Athens in 2004, Graham said he was the person who had sent the needle-less syringe with traces of a steroid in it to the U.S. Anti-Doping Agency in Colorado Springs. He said he was "just a coach doing the right thing."

However, many others connected to the BALCO probe have characterized Graham's action much more a result of a turf war between his athletes and those aligned with Conte, who he named as the originator of the steroid in the syringe.

The same day Graham sent the syringe to USADA, Conte drafted a letter to the anti-doping group and to the international governing body for track and field detailing allegations of Graham doping his athletes with "oral testosterone undeconate." Conte offered details about how Graham's athletes were avoiding being Conte, and, at the end of the letter, he named four sprinters he said were cheating. Among those was Gatlin, who currently shares the 100-meter world record. Conte ultimately didn't send the letter, but it was found in his trash by the lead BALCO investigator.

After Gatlin was caught cheating this summer -- adding to a list of nearly a dozen of Graham's current or former clients who either tested positive or were implicated for doping -- the coach lost his contract with Nike and was banned from U.S. Olympic Committee training centers.

Pleasant Holidays

New book! The Working Cook Fast Fresh Meals for Busy People

GREENBRAE / KENTFIELD
4 BR / 3 BA
$2,895,000

PRESIDIO HEIGHTS, LAUREL HEIGHTS, JORDAN PARK
3 BR / 2 BA
$1,595,000

EXCELSIOR, INGLESIDE, WESTWOOD PARK, ST. MARÁ´S PARK
3 BR / 2 BA
$899,000

PRESIDIO HEIGHTS, LAUREL HEIGHTS, JORDAN PARK
3 BR / 2.5 BA
$1,995,000

NOB HILL, CATHEDRAL HILL
1 BR / 1 BA
$985,000

See more from this broker

PACIFIC UNION
G.M.A.C. Real Estate

About Top Homes

*E-mail the writers at mfainaru-wada@sfchronicle.com and lwilliams@sfchronicle.com*

SHARE

**(0)** View Comments »

**Be the first to share your thoughts on this story.**

**Add Your Comment**

You must be signed in to add a comment. Sign In | Register

Submit

Ads by Yahoo!

**Graham**
Stocking distributor for all your Graham needs.
{www.southgateprocess.com}

**Graham, NC Mobile Home**
Search Free Real Estate Listing by Price, Size, Location, & More.
{www.Realtor.com/mobilehome}

**Grahams Funeral Home Flowers**
Local florist delivery to Grahams Funeral Home.
{www.aflowerpale.com}

Get The Chronicle for up to 40% off

| | | | | | | | | | | | | [return to top] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Home | News | Sports | Business | Entertainment | Food | Living | Travel | Blogs | Classifieds | Jobs | Homes | Cars | Site Index |

**Advertising Services:** Place a Classified   Advertise in Print   Advertise Online   Media Kit   Today's Print Ads   Public Notices
**Reader Services:** Home Delivery   Subscribers   Today's Paper   RSS Feeds   Newsletters   Join Community   Feedback   Buy Photos   FAQ   Corrections
**Company Info:** Contact Us   Hearst Corp.   Privacy Policy   Terms and Conditions   Work for Us   Chronicle in Education   Events & Promotions   Submissions

© 2008 Hearst Communications Inc.

**HEARST** *newspapers*

**EXHIBIT E**

**Ivo Labar**

| | |
|---|---|
| **From:** | Judd Burstein [JBurstein@BURLAW.COM] |
| **Sent:** | Friday, April 18, 2008 3:36 PM |
| **To:** | Ivo Labar |
| **Cc:** | Dincel, Kim; Peter B. Schalk |
| **Subject:** | Mosley v. Conte |
| **Attachments:** | Judd Burstein.vcf |

Dear Mr. Labar:

Kim Dincel informed me that you will be representing Mr. Conte in the litigation against Mr. Mosley, and that you want 30 days to respond to the Complaint. I have no objection to this request so long as we add language to your stipulation stating that the extension of time is without prejudice to our claim, discussed below, that discovery should commence immediately.

Based upon your client's statements to the press, I understand that he intends to publish his book in September, and that the book will contain the statements about Mr. Mosley that we contend are defamatory. Obviously, given the prior restraint issue, I cannot hope to secure a preliminary injunction barring Mr. Conte from publishing the book. However, if I can obtain a final adjudication on the merits of Mr. Mosley's defamation claim, California law would permit the entry of a permanent injunction barring publication of the book to the extent it contains statements about Mr. Mosley found to be defamatory. *See Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal.4th 1141 (2007). Accordingly, unless we can agree that, pending the resolution of this case, your client will not publish a book contending that Mr. Mosley knowingly took steroids or other illegal substances, we believe that an expedited trial is necessary so that Mr. Mosley's claims can be resolved prior to the book's publication.

Accordingly, I wanted to inform you that Plaintiff will be making an application to the Court seeking an expedited trial. Pursuant to Civil L.R. 7-11, Plaintiff will file a Motion for Administrative Relief next week, in which he will request the shortening of the deadlines set forth in the Order Setting Initial Case Management Conference and ADR Deadlines ("Order"), issued by Honorable Bernard Zimmerman on April 2, 2008. As you know, any motion brought under L.R. 7-11 must be accompanied by either: (a) a stipulation between the parties jointly requesting that the Court shorten the deadlines set in the Order, or (b) an explanation as to why a stipulation could not be obtained. Hence, please let me know by end of business on Tuesday whether your client will either (a) agree that, pending the resolution of this case, he will not publish a book contending that Mr. Mosley knowingly took steroids or other illegal substances, or (b) consent to an expedited trial schedule so that the case can be resolved no later than August 2008. It seems to me that an agreement to one of these two options also makes sense to your client, as well as his publisher and co-author, because if the book is published before the case is resolved, we will likely amend to add the publisher and the co-author. If Mr. Mosley then prevails, the compensatory damages will be immense, and the case for punitive damages will have been greatly enhanced.



THIS E-MAIL IS INTENDED ONLY FOR THE PERSON(S) NAMED ABOVE AND MAY CONTAIN
INFORMATION THAT IS PRIVILEGED AND CONFIDENTIAL. ANY OTHER REVIEW, DISTRIBUTION,
COPYING OR DISCLOSURE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR,
PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE THIS E-MAIL WITHOUT MAKING A COPY.
IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH U.S. TREASURY REGULATIONS
GOVERNING TAX PRACTICE, WE INFORM YOU THAT:
ANY U.S. TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ATTACHMENTS) WAS NOT
WRITTEN TO BE USED FOR AND CANNOT BE USED FOR (I) PURPOSES OF AVOIDING ANY TAX
RELATED PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAWS, OR (II) THE PROMOTION,
MARKETING OR RECOMMENDING TO ANOTHER PARTY OF ANY TRANSACTION OR MATTER
ADDRESSED HEREIN.

**EXHIBIT F**

# JUDD BURSTEIN, P.C.
### ATTORNEYS AT LAW

JUDD BURSTEIN
PETER B. SCHALK*

MATTHEW G. DeOREO
ALEXANDER M. LEVY
JEREMY M. ATTIE

*ALSO ADMITTED IN NEW JERSEY

1790 BROADWAY
NEW YORK, NEW YORK 10019
(212) 974-2400
FAX: (212) 974-2944

May 8, 2008

**BY FAX AND FEDEX**

Ivo Labar, Esq.
Kerr & Wagstaffe LLP
100 Spear Street, Suite 1800
San Francisco, California 94105

Re:    *Mosley v. Conte / Case No.* 08-cv-1777 (JSW)

Dear Mr. Labar:

As co-counsel for Plaintiff Shane D. Mosley, Sr. ("Mosley"), I write in an effort to agree upon a mutually convenient litigation schedule in light of the Court's May 6, 2008 Order Shortening Deadlines (the "Order"). My associate Jeremy Attie, Esq. will be available to discuss these issues during the remainder of this week and the beginning of next week.

While Mr. Attie will be taking the lead on discovery issues, I first wanted to provide you with my views in writing. Because the Order granted Plaintiff's administrative motion, and further shortened deadlines so to allow for the possibility of an expedited trial – all of which is in anticipation of Mr. Conte's September 2008 publication – we obviously need to proceed with discovery immediately. Thus, Plaintiff's proposed 26(f) discovery plan, which is geared toward an August 18, 2008 trial, is as follows:

**1.      Changes in the Timing, Form or Requirement for Disclosures Under Rule 26(a)(1):**

Plaintiff proposes to exchange initial disclosures and initial discovery requests by Wednesday, May 14, 2008.

**2.      The Subjects on Which Discovery May Be Needed, When Discovery Should Be Completed, and Whether Discovery Should Be Conducted in Phases:**

Plaintiff proposes a discovery cut off of July 15, 2008. Plaintiff believes that discovery should proceed on all allegations and defenses raised in the pleadings.

JUDD BURSTEIN, P. C.

Ivo Labar, Esq.
May 8, 2008
Page 2

**3.    Any Issues About Disclosure or Discovery of Electronically Stored Information, Including the Form or Forms in Which It Should be Produced:**

Plaintiff is unaware of any unusual issues concerning electronically stored information, which can be produced on CD-ROMs as long as the format is accessible by the party receiving the disclosure. Plaintiff reserves the right to employ computer forensics and to seek other relief under this section as becomes reasonably necessary as the case progresses.

**4.    Any Issues About Claims of Privilege or of Protection as Trial Preparation Materials, Including – If the Parties Agree on a Procedure to Assert These Claims After Production – Whether to Ask the Court to Include Their Agreement in an Order:**

Plaintiff does not believe that any changes need to be made to the requirements and limitations concerning these issues as provided by the Fed.R.Civ.P., the Local Rules, and applicable case law, but reserves the right to seek same if the need should arise.

**5.    Changes to the Limitations on Discovery Imposed By the Federal Rules of Civil Procedure:**

Plaintiff proposes that the parties mutually agree to shorten the time in which responses to discovery demands be due. Specifically, rather than the 30-day deadline to answer interrogatories and document requests provided by Fed.R.Civ.P. 33(b)(3) and 34(b), the parties should employ a 15-day deadline.

**6.    Any Other Orders That Should Be Entered By the Court Under Rule 26(c) or Under Rule 16(b) and (c):**

Plaintiff proposes that joinder of additional parties be accomplished by no later than May 30, 2008.

Plaintiff proposes that depositions of non-experts, if any, be completed by June 20, 2008. With respect to experts, Plaintiff proposes that expert reports, if any, be exchanged by June 30, 2008. Rebuttal expert reports responding to issues raised in the initial reports, if any, shall be exchanged by July 7, 2008. Expert depositions by July 11, 2008.

Plaintiff proposes that dispositive motions, if any, be filed no later than July 15, 2008.

If necessary, the parties shall file any joint pre-trial orders by July 25, 2008. Additionally, the parties shall file motions *in limine* by on or before 15 days prior the commencement of trial if such a date has been fixed, or by August 1, 2008, if no trial date has been fixed.

JUDD BURSTEIN, P.C.

Ivo Labar, Esq.
May 8, 2008
Page 3

      Plaintiff proposes a full trial on the merits by August 18, 2008.

      As far as an ADR process selection goes, we do not believe that any of the selections available will benefit this dispute, and propose that we file a Notice of need for an ADR Phone Conference in order to bypass ADR.

      Lastly, we would like to depose Mr. Conte within two business days of receipt of his document production. In this regard, and pursuant to the Northern District of California Local Rule 30-1, please let us know what days and times you and Mr. Conte are available for his deposition, so that we can notice his deposition in accordance with the Rules.

      We look forward to hearing from you soon.

                            Very truly yours,

                            Judd Burstein

cc:    Kim O. Dincel, Esq.