1   JAMES M. WAGSTAFFE (95535)
    IVO LABAR (203492)
2   **KERR & WAGSTAFFE LLP**
    100 Spear Street, Suite 1800
3   San Francisco, CA 94105–1528
    Telephone: (415) 371-8500
4   Fax: (415) 371-0500

5   Attorneys for Defendant
    VICTOR CONTE
6

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10  SHANE D. MOSLEY, SR.,                    Case No. C 08-01777 JSW

11          Plaintiff,                       **NOTICE OF MOTION AND MOTION
                                             TO STRIKE COMPLAINT PURSUANT**
12      vs.                                  **TO CALIFORNIA'S ANTI-SLAPP
                                             STATUTE [C.C.P. §425.16]**
13  VICTOR CONTE,                            **STRATEGIC LAWSUIT AGAINST
                                             PUBLIC PARTICIPATION ("SLAPP");**
14          Defendant.                       **AND MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN SUPPORT**
15                                           **THEREOF**

16
                                             Hearing Date: August 22, 2008
17                                           Time:  9:00 a.m.
                                             Courtroom: 2
18
                                             HON. JEFFREY S. WHITE
19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP

## NOTICE OF MOTION AND MOTION

TO THE COURT AND PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 22, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jeffrey S. White, 450 Golden Gate Ave., Courtroom 2, San Francisco, CA, 94102, Defendant Victor Conte, will and hereby does move for an order striking Plaintiff's Complaint pursuant to California Code of Civil Procedure section 425.16 on the grounds that (a) California Code of Civil Procedure section 425.16 applies to the Complaint because Plaintiff's suit arises from an act in furtherance of Defendant's right to petition or free speech, and thus, Plaintiff must demonstrate a reasonable probability he will prevail on the merits; and (b) Plaintiff cannot demonstrate a reasonable probability on the merits.

The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declarations of James M. Wagstaffe, Ivo Labar, Victor Conte, and Derryl Hudson filed herewith, the papers filed with the Court in this action, and such other written or oral argument as may be presented before the motion is taken under submission by the Court.

DATED: May 30, 2008                    Respectfully submitted,

**KERR & WAGSTAFFE LLP**


By         s/James M. Wagstaffe         
           JAMES WAGSTAFFE

Attorneys for Defendant
VICTOR CONTE

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

    A.    Mosley's Use of Performance Enhancing Drugs Before His 2003 Title
        Bout with Oscar de La Hoya........................................................................ 2

    B.    Mosley's Complaint .................................................................................... 4

III.  ARGUMENT ...................................................................................................... 5

    A.    Mosley's Complaint is Subject to California's Anti-SLAPP Statute ............. 5

        1.    Overview of Code of Civil Procedure section 425.16 ............................. 5

        2.    Legal Standard ..................................................................................... 6

        3.    The Anti-SLAPP Statute Applies Here................................................... 7

    B.    Mosley Cannot Establish a Reasonable Probability That He Will Prevail
        on the Merits of His Defamation Claim...................................................... 10

        1.    The Allegedly Defamatory Statements Are on Their Face Non-
            Actionable Opinion.............................................................................. 10

        2.    The Allegedly Defamatory Statements Are Privileged ......................... 11

        3.    Mosley Cannot Meet His Burden to Show with Clear and
            Convincing Evidence that Conte's Statements Were Made with
            Actual Malice..................................................................................... 12

        4.    Conte's Statements Are Not Defamatory Because They Are
            Substantially True .............................................................................. 15

IV.   CONCLUSION................................................................................................. 15

1

## <u>**TABLE OF AUTHORITIES**</u>

2

*Page*

3

<u>*Cases*</u>

4

<u>1-800-Contacts, Inc. v. Steinberg</u>,
    107 Cal. App. 4th 568 (2003) ................................................................. 10

5

<u>Baker v. Los Angeles Herald Examiner</u>,
    42 Cal. 3d 254 (1986) ............................................................................ 10

6

7

<u>Barry v. Time, Inc.</u>,
    584 F. Supp. 1110 (D.C. Cal. 1984) ...................................................... 13

8

<u>Beilenson v. Superior Court</u>,
    44 Cal. App. 4th 944 (1996) ................................................................. 13

9

10

<u>Braun v. Chronicle Publishing Co.</u>,
    52 Cal. App. 4th 1036 (1997) ................................................................. 6

11

<u>Carver v. Bonds</u>,
    135 Cal. App. 4th 328 (2005) ............................................................... 15

12

13

<u>Cepeda v. Cowles Magazines & Broad., Inc.</u>,
    392 F.2d 417 (9th Cir. 1968) ................................................................ 13

14

<u>Christian Research Institute v. Alnor</u>,
    148 Cal. App. 4th 71 (2007) ................................................................. 14

15

16

<u>Church of Scientology v. Wollersheim</u>,
    42 Cal. App. 4th 628 (1996) ......................................................... 6, 7, 8

17

<u>ComputerXpress, Inc. v. Jackson</u>,
    93 Cal. App. 4th 993 (2001) ................................................................... 7

18

19

<u>Copp v. Paxton</u>,
    45 Cal. App. 4th 829 (1996) ................................................................. 13

20

<u>Damon v. Ocean Hills Journalism Club</u>,
    85 Cal. App. 4th 468 (2000) ................................................................... 6

21

22

<u>Dowling v. Zimmerman</u>,
    85 Cal. App. 4th 1400 (2001) ............................................................ 5, 7

23

<u>Emde v. San Joaquin County Central Labor Council</u>,
    23 Cal. 2d 146 (1943) ........................................................................... 12

24

25

<u>Equilon Enterprises v. Consumer Cause, Inc.</u>,
    29 Cal. 4th 53 (2002) ...................................................................... 6, 10

26

<u>Fontani v. Wells Fargo Investments, LLC</u>,
    129 Cal. App. 4th 719 (2005) ................................................................. 6

27

28

<u>Gertz v. Robert Welch, Inc.</u>,
    418 U.S. 323 (1974) ............................................................................. 12

<u>Global Telemedia Intern., Inc. v. Doe 1</u>,
   132 F. Supp. 2d 1261 (C.D. Cal. 2001) ............................................................ 7

<u>Gregory v. McDonnell Douglas Corp.</u>,
   17 Cal. 3d 596 (1976) .................................................................................... 10

<u>Kibler v. Northern Inyo County Local Hosp. Dist.</u>,
   39 Cal. 4th 192 (2006) .................................................................................... 6

<u>Lieberman v. KCOP Television, Inc.</u>,
   110 Cal. App. 4th 156 (2003) ..................................................................... 8, 9

<u>Masson v. New Yorker Magazine, Inc.</u>,
   501 U.S. 496 (1991) ...................................................................................... 15

<u>McGarry v. University of San Diego</u>,
   154 Cal. App. 4th 97 (2007) ........................................................................... 8

<u>New York Times Co. v. Sullivan</u>,
   376 U.S. 254 (1964) ...................................................................................... 14

<u>Noel v. River Hills Wilsons, Inc.</u>,
   113 Cal. App. 4th 1363 (2003) ..................................................................... 11

<u>Nygard, Inc. v. Uusi-Kertula</u>,
   159 Cal. App. 4th 1027 (2008) ....................................................................... 8

<u>Reader's Digest Assn. v Superior Court</u>,
   37 Cal. 3d 244 (1984) .................................................................................... 13

<u>Robertson v. Rodriguez</u>,
   36 Cal. App. 4th 347 (1995) ............................................................... 6, 12, 13

<u>Saenz v. Playboy Enterprises, Inc.</u>,
   841 F.2d 1309 (7th Cir. 1988) ..................................................................... 11

<u>Seelig v. Infinity Broadcasting Corp.</u>,
   97 Cal. App. 4th 798 (2002) ......................................................................... 10

<u>Sipple v. Foundation for Nat'l Progress</u>,
   71 Cal. App. 4th 226 (1999) ...................................................................... 5, 8

<u>St. Amant v. Thompson</u>,
   390 U.S. 727 (1968).......................................................................................14

<u>Tuchscher Development Enterprises, Inc. v. San Diego Unified Port District</u>,
   106 Cal. App. 4th 1219 (2003) ..................................................................... 13

<u>United States of America, ex rel. v. Lockheed Missiles & Space Co., Inc.</u>,
   190 F.3d 963 (9th Cir. 1999) ......................................................................... 6

<u>United States v. Mendenhall</u>,
   446 U.S. 544 (1980).........................................................................................9

KERR
&
WAGSTAFFE
LLP

1

### *Statutes*

2  Cal. Civ. Code § 47.................................................................................................. 11

3  Cal. Code Civ. P. §  425.16................................................................................ passim

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3         This case arises from the well-publicized sports scandal involving professional athletes'

4   use of illegal performance enhancing drugs provided by Bay Area Laboratory Cooperative

5   ("BALCO"), a company owned by Defendant Victor Conte ("Conte").  Professional boxer,

6   Plaintiff Shane Mosley, Sr. ("Mosley"), has admitted publicly to using such drugs but claims that

7   he did not know what he was taking – and blames Conte allegedly for deceiving him.  In

8   response, Conte has stated truthfully that Mosley was well aware that he was taking illegal

9   performance enhancing drugs.  Rather astonishingly, Mosley has now sued Conte, alleging that

10   his statements were defamatory.

11         As will be explained in detail below, Mosley's complaint is meritless and should be

12   stricken under California's anti-SLAPP statute, California Code of Civil Procedure section

13   425.16.  The anti-SLAPP statute provides a vehicle for quick disposal of meritless suits that

14   challenge public statements made on matters of public interest and other First Amendment

15   activity.   Mosley cannot even hope to meet his burden here of showing *by clear and convincing*

16   *evidence* that his suit has merit.  Conte's assertion that Mosley knew he was taking performance

17   enhancing drugs is an assertion of opinion, and thus not actionable as defamation.  One person

18   cannot "know" what someone else is thinking – such comments are always mere opinions and

19   beliefs.  It is well established that assertions about what a public figure knew, and when he knew

20   it, are protected opinions essential to free public discussion of these important issues (indeed,

21   almost every athlete caught using these illegal drugs has claimed, at one time or another, that

22   they believed the substances were lawful – albeit unusually expensive and hard to obtain –

23   "vitamins" or "flax seed oil").  Mosley also cannot show that Conte made his statements with

24   actual malice or, for that matter, that the statements were false at all.  The declarations of Conte

25   and Mosley's own trainer, Derryl Hudson ("Hudson") compellingly show that Mosley *did* know

26   what he was doing when he began using these performance enhancing drugs.  Mosley's self-

27   serving, farfetched claim of ignorance is insufficient to make a contrary showing by clear and

28   convincing evidence.  At bottom, Conte had a First Amendment right to present his recollection

1   of events when asked about Mosley's denials.  His reasonable opinion about Mosley's state of

2   mind, and his statements on these matters of significant public concern, cannot form the basis for

3   a defamation claim under Constitutional and California law.

4   **II.    BACKGROUND**

5       **A.    MOSLEY'S USE OF PERFORMANCE ENHANCING DRUGS BEFORE HIS 2003 TITLE BOUT WITH OSCAR DE LA HOYA**

6

7       This case begins at a meeting between the parties nearly five years ago.  On July 26,

8   2003, shortly before Mosley's title boxing match against Oscar De La Hoya ("De La Hoya"),

9   Mosley and trainer Hudson flew from Southern California to the Bay Area to meet with Conte.

10  (Declaration of Victor Conte ("Conte Decl."), ¶ 3; Declaration of Derryl Hudson ("Hudson

11  Decl."), ¶ 4.)  After their flight landed at the Oakland airport, a limousine transported them to the

12  BALCO offices in Burlingame where Conte met with both of them.  (Conte Decl., ¶ 3.)  Jim

13  Valente ("Valente"), a BALCO employee, was also present.  (Conte Decl., ¶ 3; Hudson Decl., ¶

14  4.)

15      Shortly after Mosley and Hudson arrived at the BALCO offices, Valente accompanied

16  them to Peninsula Health Services.  (Conte Decl., ¶ 4.)  At Peninsula Health Services, Mosley's

17  blood and urine samples were collected for a blood chemistry panel, complete blood count, tests

18  to measure Plaintiff's T3, T4, and TSH, and mineral and trace element analysis.  (Id.)  Mosley,

19  Hudson and Valente returned to the BALCO offices in Burlingame to continue their meeting

20  with Conte.  (Id., ¶ 5.)

21      Conte explained the benefits of using three illegal performance enhancing drugs

22  commonly referred to as EPO, "The Clear," and "The Cream."  (Conte Decl., ¶ 5, Hudson Decl.,

23  ¶ 6.)  Conte explained to Mosley and Hudson that The Clear was an undetectable anabolic

24  steroid and that The Cream contained testosterone and epitestosterone, and that The Cream was

25  primarily to be used as a masking agent.  (Conte Decl., ¶ 5.)  With regard to EPO, he told them

26  that its purpose was to increase the production of red blood cells, and therefore, Mosley should

27  take additional dietary supplements that aid in the manufacture of red blood cells.  (Id.)  Conte

28  told Mosley and Hudson that in addition to assisting with red blood cell production, EPO

1   enhances oxygen uptake and utilization, which is important in a sport requiring stamina and

2   endurance, like boxing.  (Id.)  Conte further explained that EPO's effects would provide Mosley

3   with an advantage late in the fight with De La Hoya.  (Id.)

4         In addition to explaining the purposes of the drugs, Conte instructed Mosley and Hudson

5   on how to administer them.  (Conte Decl., ¶¶ 6, 8; Hudson Decl., ¶ 7.)  He showed them the

6   proper procedure to draw EPO from the bottle (which was labeled as Procrit-brand EPO) with a

7   syringe, how to remove the air from the syringe by flicking it and pushing the plunger up, and

8   how to inject himself in the stomach using a more sophisticated "double-injection" technique.

9   (Conte Decl., ¶ 6.)  Conte instructed Mosley to make a ½ cc subcutaneous injection into the right

10  side of his stomach and then a second ½ cc injection into his left side.  (Id.)  Mosley injected his

11  first doses of EPO that day in presence of Conte, Hudson, and Valente.  (Id., ¶ 7; Hudson Decl.,

12  ¶ 8.)  Conte also explained the use of The Clear and The Cream to Mosley and Hudson that day,

13  following which Mosley administered his first dose of The Clear under his tongue with a needle-

14  less syringe in the presence of Conte, Hudson, and Valente.  (Conte Decl., ¶ 8; Hudson Decl., ¶

15  7.)

16        During the meeting, Mosley had many questions about EPO, The Clear, and The Cream,

17  which Conte answered.  (Conte Decl., ¶ 9.)  Conte also wrote out a "doping calendar" for Mosley

18  which listed the specific drugs for him to use each day up until just before the De La Hoya match

19  when he would taper off the use of the drugs.  (Id., ¶ 10; Hudson Decl., ¶ 7.)  Conte instructed

20  Mosley to use both The Clear and The Cream twice a week, and to inject EPO three days per

21  week for the first two weeks and one day per week thereafter until the week before the De La

22  Hoya match.  (Conte Decl., ¶ 10.)

23        The cost of the drug program was $1,850 (i.e. $900 for the EPO, $600 for The Clear and

24  The Cream, $150 for blood work, and $200 for transportation from the airport).  (Id., ¶ 11.)

25  Before Mosley and Hudson left BALCO, Mosley paid Conte a partial payment of $500, in cash.

26  Mosley later sent Conte a personal check for the balance.  (Id.)  Mosley, Hudson and Conte

27  agreed that Mosley and Hudson should not carry the drugs on the airplane flight back to

28  Southern California, so Conte shipped them via Federal Express to Hudson.  (Id.)

1      Conte later received and reviewed Mosley's July 26, 2003 test results from the blood and

2  urine collection at Peninsula Health Services.  (Id., ¶ 12.)  These test results revealed that

3  Mosley's hematocrit level (i.e. the percentage of red blood cells compared to the whole blood

4  volume) was towards the low-end of the normal range of forty to fifty-three percent.  (Id.)

5  Approximately two weeks after Mosley's July 26, 2003 meeting with Conte, he had more blood

6  samples collected at the Bear Valley Family Health Center while training in Big Bear, California.

7  (Id., ¶ 13.)  Conte received and reviewed these test results which showed that Mosley's

8  hematocrit level had increased to high-end of the normal range.  (Id.)  This test result indicated

9  the drugs were having the planned effect.

10      Mosley went on to beat De La Hoya in a hotly disputed match in which numerous boxing

11  commentators noted how Mosley simply outlasted a fatigued De La Hoya in the final rounds of

12  the fight.  (Declaration of James M. Wagstaffe ("Wagstaffe Decl."), Ex. B.)

13      Mosley was later subpoenaed by the Grand Jury investigating the BALCO scandal.

14  Mosley made numerous public comments denying that he ever took any prohibited substances,

15  and later changing his story to an admission that he had inadvertently taken illegal performance

16  enhancing drugs.  (Wagstaffe Decl., Exs. A-D.)

17      **B.    MOSLEY'S COMPLAINT**

18      Mosley's complaint for slander and libel acknowledges that he and his trainer met with

19  Conte in July 2003.  (Complaint, ¶ 7).  At the meeting, Conte allegedly recommended certain

20  health supplements to Mosley.  (Id.)  The complaint further alleges that Conte misled Mosley

21  because Conte allegedly told his that the items were "healthy, legal and permitted for athletes."

22  (Id.)  Mosley further alleges that he was "[a]lways extremely concerned about his health and

23  playing by the rules . . ."  (Id.)  In contrast to the numerous news articles in which Mosley

24  admitted to taking banned substances, the complaint is curiously silent as to whether Mosley

25  ever took any prohibited substances.

26      The complaint further alleges that on March 29 and 30, 2008, in response to statements

27  made by Mosley, Conte gave a series of interviews in which he falsely accused Mosley of

28  "knowingly" taking illegal performance-enhancing drugs.  (Id. ¶¶ 12, 13, 24, and 34.)

1  Specifically, Mosley contends that Conte made the following three defamatory statements in

2  describing Mosley's admitted drug use:

3         • Conte "watched [Mosley] inject [himself] in front of me;"

4         • Mosley "knew precisely what [he was] using;"

5         • "[I]t was all explained up front and there was no deception."

6  (Id. ¶¶ 12, 24, 34.)  These statements were published on web site operated by *Sports Illustrated*

7  magazine and in the *New York Daily News*.  (Id. ¶¶ 12, 34.)  Conte made these statements after

8  being approached by journalists from the New York Daily News and Sports Illustrated to

9  respond to Mosley's false public comments that Conte deceived him about the nature of the

10  performance enhancing drugs.  (Conte Decl., ¶ 14.)

11       Mosley's complaint seeks compensatory and punitive damages, along with a permanent

12  injunction preventing Conte from publishing a book that, among other things, details Mosley's

13  drug use.  (Complaint at p. 9).  According to Plaintiff's initial disclosures, Plaintiff seeks

14  compensatory and punitive damages in excess of $15 million.  (Wagstaffe Decl., Ex. E.)

15  **III.  ARGUMENT**

16      **A.    MOSLEY'S COMPLAINT IS SUBJECT TO CALIFORNIA'S ANTI-SLAPP STATUTE**

17         **1.    Overview of Code of Civil Procedure section 425.16**

18       In 1992, California enacted an anti-SLAPP statute, Code of Civil Procedure section

19  425.16, to provide a procedure for a court "to dismiss at an early stage nonmeritorious litigation

20  meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in

21  connection with a public issue."  Sipple v. Foundation for Nat'l Progress, 71 Cal. App. 4th 226,

22  235 (1999).  This type of nonmeritorious litigation is referred to under the acronym "SLAPP," or

23  Strategic Lawsuit Against Public Participation.  Id.  In 1997, the California Legislature added a

24  provision to section 425.16 mandating that courts "broadly" construe the anti-SLAPP statute to

25  further the legislative goals of encouraging participation in matters of public significance and

26  discouraging abuse of the judicial process.  Cal. Code Civ. P. § 425.16(a).  "California enacted

27  section 425.16 to provide a procedural remedy to resolve such a suit expeditiously."  Dowling v.

28  Zimmerman, 85 Cal. App. 4th 1400, 1414 (2001) (internal quotation marks and citation omitted).

1  "The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of

2  obtaining an economic advantage over a citizen party by increasing the cost of litigation to the

3  point that the citizen party's case will be weakened or abandoned, and of deterring future

4  litigation." United States of America, ex rel. v. Lockheed Missiles & Space Co., Inc., 190 F.3d

5  963, 970-971 (9th Cir. 1999).  The Ninth Circuit has held that the anti-SLAPP provision

6  providing for a special motion to strike, although based on state law, applies in federal diversity

7  suits.  Id. at 973.

8          **2.      Legal Standard**

9          To prevail on a motion to strike the Complaint under the anti-SLAPP statute, the

10  defendant "must make an initial *prima facie* showing that plaintiff's suit arises from an act in

11  furtherance of defendant's right of petition or free speech." Braun v. Chronicle Publishing Co.,

12  52 Cal. App. 4th 1036, 1042-43 (1997) (emphasis added).  Upon such showing, the burden shifts

13  to the plaintiff who "must establish a reasonable probability he or she will prevail on the merits."

14  Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 474 (2000).  In reviewing a

15  motion under section 425.16, "the trial court is required to consider the pleadings and the

16  supporting and opposing affidavits stating the facts upon which the liability or defense is based."

17  Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 646 (1996), *disapproved on other*

18  *grounds*, Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 68 (2002).  The court

19  must consider the pleadings and evidence of both the plaintiff and defendant in determining

20  whether the plaintiff can establish a probability of prevailing.  Fontani v. Wells Fargo

21  Investments, LLC, 129 Cal. App. 4th 719, 734 (2005), *disapproved on other grounds*, Kibler v.

22  Northern Inyo County Local Hosp. Dist., 39 Cal. 4th 192, 203 (2006).  This requires the court to

23  consider the defendant's evidence with a "view toward whether it defeats the plaintiff's showing

24  as a matter of law." Id. (citation omitted); see also Robertson v. Rodriguez, 36 Cal. App. 4th

25  347, 359 (1995) (recognizing that "section 425.16, by requiring scrutiny of the supporting and

26  *opposing* affidavits stating the facts upon which the liability or *defense* is based, calls upon the

27  plaintiff to meet the defendant's constitutional defenses, such as lack of actual malice")

28  (emphasis in original).  Where, as here, the plaintiff is unable to provide the factual and legal

1  support for the challenged cause of action, the complaint should be stricken.  Cal. Code Civ. P.

2  § 425.16(b); <u>Dowling</u>, 85 Cal. App. 4th at 1417.

### 3.    The Anti-SLAPP Statute Applies Here

4      The anti-SLAPP statute plainly encompasses Conte's statements regarding Mosley's use

5  of illegal performance enhancing drugs.  Conte's statements are both written statements made in

6  a public forum in connection with an issue of public interest as well as a an exercise of his free

7  speech in connection with an issue of public interest.  As such, Conte's statements arise from

8  Conte's protected activities and fall within the purview of the anti-SLAPP statute.

9          *a)    Conte's Statements Constitute a Protected Activity Because They
              Were Made in a Public Forum in Connection with an Issue of*
10            *Public Interest*

11      First, Conte's statements fall within the protection of the anti-SLAPP statute because they

12  were made in a public forum – public newspapers and websites –  in connection with an issue of

13  public interest, namely, the use of illegal performance enhancing drugs by a professional athlete.

14  The anti-SLAPP statute protects "any written or oral statement or writing made in a place open

15  to the public or a public forum in connection with an issue of public interest."  Cal. Code Civ. P.

16  § 425.16 (e)(3).  The statute contains no requirement that the challenged statement be broadly

17  disseminated or that it be made in a traditional public forum – any place "open to the public" is

18  sufficient.  <u>Id.</u>  A public forum is traditionally defined "as a place that is open to the public where

19  information is freely exchanged."  <u>ComputerXpress, Inc. v. Jackson</u>, 93 Cal. App. 4th 993, 1006

20  (2001) (citation omitted).  The term "public interest" encompasses a wide range of interests.

21  <u>Church of Scientology</u>, 42 Cal. App. 4th at 650.

22      There can be no legitimate dispute that Conte's statements were made in a public forum

23  in connection with an issue of public interest.  Importantly, Conte made his statements regarding

24  Mosley's use of banned substances (which were in response to Mosley's accusations) in public

25  newspapers and on web sites that are available to any member of the public.  Newspapers,

26  magazines, and websites available free of charge to any member of the public are public forums

27  for purposes of the anti-SLAPP statute.  <u>Global Telemedia Intern., Inc. v. Doe 1</u>, 132 F. Supp. 2d

28  1261, 1264 (C.D. Cal. 2001); <u>Nygard, Inc. v. Uusi-Kertula</u>, 159 Cal. App. 4th 1027, 1038

1    (2008).  Hence, the "public forum" requirement of California Code of Civil Procedure section

2    425.16(e)(3) is met.

3         The media coverage of Conte's statements is also pertinent to the "in connection with an

4    issue of public interest" criterion under section 425.16(e)(3).  The media coverage of Conte's

5    statements evinces the public interest in Mosley's use of banned substances.  See Sipple, 71 Cal.

6    App. 4th at 238-39 (recognizing that public interest is demonstrated by media coverage); Church

7    of Scientology, 42 Cal. App. 4th at 650 (same).  Indeed, it is beyond cavil that Mosley's use of

8    illegal performance enhancing drugs is a matter of public interest.  Issues central to the careers of

9    high-profile sports figures are ones of public interest.  In McGarry v. University of San Diego,

10   154 Cal. App. 4th 97, 109 (2007), the Court found that the termination of the head football coach

11   at the University of San Diego was a public issue for purposes of the anti-SLAPP statute.  The

12   Court reached this conclusion because

13            [The termination] was important to those immediately affected by
14            the change in leadership, including the players, the players'
             parents, and the staff connected to the University football team.
15            Moreover, it was of import to those who follow the team's
             fortunes, including University's current students, University's
16            alumni and boosters, potential recruits to the football team, and
             peripheral fans of the team.  Finally, the loss of a team's head
17            coach is of import to competitor schools, both for its immediate
             impact on the team's performance in the remaining contests for the
18            current season and for the reverberations on recruiting players for
             future seasons.
19

20   Id. (emphasis added). This reasoning is equally applicable here.  Mosley's use of illegal

21   performance enhancing drugs is certainly of concern to the boxing community.  It is of exigent

22   import to those who are part of Mosley's boxing staff, as well as regulatory bodies for the sport,

23   Mosley's sponsors and promoters, and his past and future competitors.  Mosley's drug use also is

24   also a salient issue for boxing fans.

25        Mosley's use of illegal performance enhancing drugs concerns not just the boxing

26   community but the public at large.  The use of controlled substances is a significant public issue.

27   In Lieberman v. KCOP Television, Inc., 110 Cal. App. 4th 156, 164-165 (2003), the Court held

28   that a doctor's improper prescription of controlled substances was a public issue within the

KERR
&
WAGSTAFFE
LLP

1    meaning of the anti-SLAPP statute.  The Court found that "major societal ills" are issues of

2    public concern and that news reports concerning criminal activity serve the public interest.  Id. at

3    164.  Indeed, as the Court highlighted, the Supreme Court expressly noted that few problems

4    affecting public health and welfare cause greater concern than the escalating use of controlled

5    substances.  Id. at 165 (citing United States v. Mendenhall, 446 U.S. 544, 561 (1980)).  Based on

6    the foregoing, the Court concluded that it has "…no doubt that the unlawful dispensing of

7    controlled substances is an issue of great public interest."  Id.  Under the holding in Lieberman –

8    as well as common sense – Mosley's use of illegal performance enhancing drugs is a matter of

9    considerable public interest.

10        As a professional athlete, Mosley's use of illegal performance enhancing drugs plainly

11    concerns a large number of people and, as the media coverage surrounding Mosley's use of

12    banned substances indicates, has become a matter of intense public interest.  Conte's statements

13    target this very public issue and were published in a public forum, and therefore are

14    encompassed within the purview of the anti-SLAPP statute.

15            b)    *Conte's Statements Are Also a Protected Activity Because They*
                    *Were Made in Furtherance of Conte's Right to Free Speech in*
16                  *Connection with an Issue of Public Interest*

17        Second, Conte's statements are further protected by the anti-SLAPP statute because they

18    constitute an exercise of his free speech in connection with an issue of public interest.  The anti-

19    SLAPP statute protects "conduct in furtherance of the exercise of the constitutional right of

20    petition or the constitutional right of free speech in connection with a public issue or an issue of

21    public interest."  Cal. Code Civ. Proc. § 425.16(e)(4).

22        It is pellucid that Conte's statements meet this standard.  As noted above, Mosley's use of

23    illegal performance enhancing drugs is the subject of public concern.  Moreover, it cannot be

24    gainsaid that Conte has a first amendment right to communicate on such topics.  The law is clear

25    that stating facts and opinions about another is conduct in furtherance of the exercise of the

26    constitutional right of free speech within the meaning of Code of Civil Procedure section

27    425.16(e)(4).  Hence, Conte's opinions regarding Mosley's drug use constitutes an exercise of

28    his first amendment rights.  Conte's statements thus fall within the ambit of the anti-SLAPP

1    statute as acts in furtherance of his constitutional right of free speech in connection with an issue

2    of public interest.

3         The applicability of the anti-SLAPP statute to Mosley's Complaint is pellucid.

4    Accordingly, since Conte has made a prima facie showing that the suit claim falls within the

5    ambit of the anti-SLAPP statute, the burden shifts to Mosley to establish a probability of

6    prevailing on the merits of his underlying claim.

7    **B.    MOSLEY CANNOT ESTABLISH A REASONABLE PROBABILITY THAT HE WILL
         PREVAIL ON THE MERITS OF HIS DEFAMATION CLAIM**

8

9         Once a defendant has demonstrated that the underlying complaint arose out of the

10   defendant's right of petition or free speech, which Conte has done here, the burden shifts to the

11   plaintiff to show there is a probability that the plaintiff will prevail on his claims.  Cal. Code Civ.

12   P. § 425.16(b)(l); Equilon, 29 Cal. 4th at 67.  In order to meet this burden, the plaintiff must offer

13   enough admissible evidence to make a prima facie showing of facts that would merit a judgment

14   in the plaintiff's favor.  1-800-Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 584 (2003).  As

15   will be set forth below, Mosley cannot meet his burden, as a matter of law.

16       **1.    The Allegedly Defamatory Statements Are On Their Face Non-
             Actionable Opinion**

17

18        An essential element of a defamation claim is that "the publication in question must

19   contain a false statement of fact."  Gregory v. McDonnell Douglas Corp., 17 Cal. 3d 596, 600

20   (1976) (emphasis added).  Opinions are not actionable, even if expressed with malice.  Id. at 601.

21   To determine whether an alleged defamatory statement is one of fact or opinion, California

22   courts look to the "totality of the circumstances."  Baker v. Los Angeles Herald Examiner, 42

23   Cal. 3d 254, 260 (1986).  In this respect, the court must consider the nature and content of the

24   communication, taken as a whole, as well as the context in which the communication was made.

25   Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798, 810-11 (2002).  Whether a statement

26   is one of fact or opinion is a question of law to be decided by the court.  Baker, 42 Cal. 3d at 260.

27        Here, Mosley publicly claimed that he did not know he was receiving illegal performance

28   enhancing drugs and that Conte somehow misled him into believing that he was injecting

KERR
&
WAGSTAFFE
LLP

1    nothing more than "legal supplements." (Complaint ¶ 6.)  The crux of Conte's response to

2    Mosley's accusations is that Mosley <u>knew</u> what he was taking.  Conte's statements as to what

3    Mosley actually knew or believed is non-actionable opinion.  In <u>Saenz v. Playboy Enterprises,</u>

4    <u>Inc.</u>, 841 F.2d 1309, 1311-1312 (7th Cir. 1988), the former Secretary of the New Mexico

5    Department of Corrections brought suit against Playboy for publishing an article calling him a

6    torturer and implicating his department in the torture of suspects.  The court held that an

7    assertion as to what the Secretary knew or should have known is a protected inference or

8    opinion:

9             there are two competing readings of the allegedly libelous
              statements. The first, advanced by Saenz, is that he has been
10            accused of being a torturer. **The second, Morris's position, is that**
              **Saenz either knew or should have known about the torture and**
11            **did nothing to stop it. That latter reading is, of course, an**
              **inference or an opinion and is protected.**
12

13   <u>Id.</u> at 1318 n.3 (emphasis added).

14           The same logic applies to sports stars in the highly debated public issue of athletes' use of

15   illegal performance enhancing drugs.  While Conte may opine what <u>he</u> believed Mosley knew or

16   may not have known, only Mosley, as a factual matter, is in a position to know his actual state of

17   mind.  At best, Conte did nothing more than express his opinion as to the veracity of Mosley's

18   professed ignorance of what substance he was using.  Indeed, under Mosley's theory, every

19   statement made in response to an accusation of wrongdoing could be transformed into a claim

20   for defamation, which clearly is not the law.

21           **2.    The Allegedly Defamatory Statements Are Privileged**

22           Mosley's defamation claims also fail under California Civil Code section 47(c), which

23   extends a conditional privilege against defamatory statements made without malice on subjects

24   of mutual interest.  <u>See</u> <u>Noel v. River Hills Wilsons, Inc.</u>, 113 Cal. App. 4th 1363, 1369 (2003).

25   Section 47(c) states that" "A privileged publication or broadcast is one made: ¶  In a

26   communication, without malice, to a person interested therein, [] by one who is … requested by

27   the person interested to give the information."  As the California Supreme Court has explained,

28   "greater protection is accorded one who makes a statement, in a reasonable manner and for a

1  proper purpose, to persons having a common interest with him in the subject matter of the

2  communication, when the publication is of a kind reasonably calculated to protect or further it."

3  Emde v. San Joaquin County Central Labor Council, 23 Cal. 2d 146, 154 (1943).

4  　　　In this case, it was Mosley, not Conte, who first raised the issue of his illegal drug use.

5  Mosley attempted to justify his admitted use of performance enhancing substances, but then

6  attempted to disclaim any personal responsibility for his action by publicly blaming Conte for

7  allegedly not disclosing what those substances actually were.  Unsurprisingly, the news media

8  solicited Conte for a response to Mosley's incendiary accusations.  (Conte Decl., ¶ 14.)  The use

9  of illegal steroids by a high-profile, professional athlete such a Mosley certainly was and is a

10  matter of interest to the public as well as news reporters.  A qualified privilege attached to the

11  responses made by Conte when he responded and offered his opinion as to the correctness of

12  Mosley's claim when the reporters so inquired.

### 3.　Mosley Cannot Meet His Burden to Show with Clear and Convincing Evidence that Conte's Statements Were Made with Actual Malice

#### a)　The Applicable Standard of Review Is Clear and Convincing Evidence

16  　　　Mosley must demonstrate by clear and convincing evidence that he will prevail on his

17  defamation claims.  In determining whether the plaintiff has met its burden of proof on an anti-

18  SLAPP motion, the Court must consider the applicable burden of proof that the plaintiff must

19  carry to prevail on its underlying claim at trial.  Robertson v. Rodriguez, 36 Cal. App. 4th 347,

20  358 (1995) (citation omitted) (in determining whether the plaintiff has established actual malice,

21  the court noted that it must "bear in mind the higher clear and convincing standard of proof").  A

22  public figure bringing a defamation claim must demonstrate, by clear and convincing evidence,

23  that the defendant made the allegedly false statements with actual malice.  Id. at 358-359.

24  　　　An all purpose public figure is one who has achieved such fame and notoriety that he has

25  become a public figure for all purposes and contexts.  Gertz v. Robert Welch, Inc., 418 U.S. 323,

26  351 (1974).  Similarly, a limited public figure is one who "…voluntarily injects himself or is

27  drawn into a particular public controversy and therefore becomes a public figure for a limited

28  range of issues."  Id.  As a well-known professional athlete who has placed himself at the heart

1    of the BALCO scandal, there is no question that Mosley is at minimum a limited public figure if

2    not an all purpose public figure.  See Cepeda v. Cowles Magazines & Broad., Inc., 392 F.2d 417,

3    419 (9th Cir. 1968) ("'Public figures' are those persons who, though not public officials, are

4    'involved in issues in which the public has a justified and important interest.'  Such figures are,

5    of course, numerous and include artists, athletes, business people, dilettantes, anyone who is

6    famous or infamous because of who he is or what he has done.  Orlando Cepeda, the principal

7    character in the instant suit, was and is a 'public figure' ... [given his] fame as an extraordinary

8    baseball player."); Barry v. Time, Inc., 584 F. Supp. 1110, 1119 (D.C. Cal. 1984) (citing

9    numerous cases) ("…a long line of cases, beginning with the Supreme Court's opinion in

10   Butts…have found professional and collegiate athletes and coaches to be public figures.")

11   Since Mosley is a public figure, he cannot recover unless he proves, by clear and convincing

12   evidence, that Conte made the allegedly false statements with actual malice.

13        Mosley cannot meet his burden of demonstrating by clear and convincing evidence that

14   Conte's statements were made with actual malice.  The clear and convincing standard "requires a

15   finding of *high probability*.  The evidence must be so clear as to leave no substantial doubt.  It

16   must be sufficiently strong to command the unhesitating assent of every reasonable mind." Copp

17   v. Paxton, 45 Cal. App. 4th 829, 846 (1996) (citation omitted) (emphasis added).  Only

18   admissible evidence may be presented to prove that Plaintiff has established clear and

19   convincing evidence that they will prevail on their defamation claim.  See Tuchscher

20   Development Enterprises, Inc. v. San Diego Unified Port District, 106 Cal. App. 4th 1219, 1236

21   (2003) (noting that "[s]uch evidence must be admissible").  This requires the reviewing court to

22   "independently examine the statements in issue and the circumstances under which they are

23   made against the backdrop of the entire record." Robertson, 36 Cal. App. 4th at 358.

24        Moreover, actual malice is a subjective test focusing on "the defendant's actual belief

25   concerning the truthfulness of the publication." Reader's Digest Assn. v Superior Court, 37 Cal.

26   3d 244, 257 (1984).  It may not be implied and must be proven by direct evidence. Beilenson v.

27   Superior Court, 44 Cal. App. 4th 944, 950 (1996).  To prove actual malice, Plaintiff must

28   establish that Conte knew that the statement was false or made with reckless disregard of

1    whether it was false.  New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).  Reckless

2    disregard is a high burden, requiring a high degree of awareness of probable falsity and a

3    showing that the defendant entertained serious doubts about the truth of the publication.  St.

4    Amant v. Thompson, 390 U.S. 727, 731 (1968).  Gross or even extreme negligence will not

5    suffice to establish actual malice.  Id.  Furthermore, as the court explained in, Christian Research

6    Institute v. Alnor, 148 Cal. App. 4th 71, 86 (2007), the court need not examine the evidence of

7    actual malice in a light most favorable to the plaintiff.

8            Accordingly, a reviewing "court is not bound to consider the
             evidence of actual malice in the light most favorable to
9            respondents or to draw all permissible inferences in favor of
             respondents . . . Independent review is applied with equal force in
10           considering whether a plaintiff has established a probability of
             demonstrating malice by clear and convincing evidence in
11           opposing an anti-SLAPP motion.

12   Id. (citations omitted).

13           Here, Plaintiff cannot meet his exceedingly high burden.  The sum and substance of

14   Mosley's allegations is that Conte purportedly defamed him by alleging that Mosley knowingly

15   took prohibited substances.  More specifically, Conte "watched [Mosley] inject [himself] in front

16   of me;" that Mosley "knew precisely what [he was] using;" and "[I]t was all explained up front

17   and there was no deception."  Conte's declaration filed herewith recounts his July 26, 2006

18   meeting with Mosley and Hudson in detail.  (Conte Decl., ¶¶ 2-12.)  During that meeting, he

19   explained the use and benefits of illegal performance enhancing drugs to Mosley, wrote out a

20   "doping calendar" for Mosley, taught Mosley how to inject the drugs using a "double injection"

21   technique, and watched Mosley inject his first doses of the drugs.  (Id.)  Tellingly, he shipped the

22   drugs to Hudson in order to avoid detection at the airport.  (Id. ¶ 11.)  Conte is not alone in his

23   contention that Mosley knew that he was taking illegal performance enhancing drugs.  Hudson,

24   Mosley's own trainer, also acknowledges that Mosley knew exactly what he was doing.

25   (Hudson Decl., ¶¶ 4-10.)  In light of the foregoing, Mosley cannot overcome his burden of

26   showing by clear and convincing evidence, that Conte made his statements with actual malice.

27

28

1

               **4.**        **Conte's Statements Are Not Defamatory Because They Are Substantially True**

2

3        Plaintiff also cannot demonstrate a likelihood of success because Conte's statements are

4    substantially true, and therefore not defamatory.  <u>Masson v. New Yorker Magazine, Inc.</u>, 501

5    U.S. 496, 516-17 (1991) (citing California law); <u>Carver v. Bonds</u>, 135 Cal. App. 4th 328, 357-59

6    (2005).  California law permits the defense of "substantial truth," and thus a defendant is not

7    liable "'if the substance of the charge be proved true....'"  "Put another way, the statement is not

8    considered false unless it 'would have a different effect on the mind of the reader from that

9    which the ... truth would have produced.'"  <u>Masson</u>, 501 U.S. at 516-517, (1991).  As discussed

10   above, the declarations of Conte and Hudson forcefully demonstrate that Mosley was well aware

11   of the fact that he was consuming illegal performance enhancing drugs, thus vitiating Mosley's

12   claims of defamation.

13  **IV.**     **CONCLUSION**

14        It is beyond dispute that Mosley's suit arises directly from Conte's exercise of free

15   speech, and accordingly falls within the ambit of California's anti-SLAPP statute.  The burden,

16   therefore, shifts to Mosley to demonstrate that he will prevail on his claims.  Plaintiff cannot do

17   so because the evidence cogently shows that Mosley knew he was cheating.  For the foregoing

18   reasons, Plaintiff's Complaint should be stricken.

19   D<small>ATED</small>: May 30, 2008            Respectfully submitted,

20                        **KERR & WAGSTAFFE LLP**

21

22                   By     s/James M. Wagstaffe

23                        J<small>AMES</small> W<small>AGSTAFFE</small>

I<small>VO</small> L<small>ABAR</small>

24

25                        Attorneys for Defendant

V<small>ICTOR</small> C<small>ONTE</small>

26

27

28

