LONG & LEVIT LLP
Kim O. Dincel, Esq. (SBN 131563)
465 California Street 5th Floor
San Francisco, California 94104
Tel (415) 397-2222 Fax (415) 397-6392
E-mail: kdincel@longlevit.com

JUDD BURSTEIN, P.C.
Judd Burstein, Esq. (JB-9585; admitted *pro hac vice*)
Jeremy M. Attie, Esq. (JA-0561; admitted *pro hac vice*)
1790 Broadway, Suite 1501
New York, New York 10019
Tel (212) 974-2400 Fax (212) 974-2944
E-mail: jburstein@burlaw.com
E-mail: jattie@burlaw.com

*Attorneys for Plaintiff,*
SHANE D. MOSLEY, SR.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHANE D. MOSLEY, SR.,<br><br>*Plaintiff,*<br><br>vs.<br><br>VICTOR CONTE,<br><br>*Defendant.* | 08-Civ-1777 (JSW)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16 AND CROSS MOTION PURSUANT TO CAL. CODE CIV. PROC. § 425.16(c) FOR ATTORNEY FEES AND COSTS ASSOCIATED WITH RESPONDING TO DEFENDANT'S MOTION<br><br>Date: August 22, 2008<br>Time: 9:00 a.m.<br>Courtroom: 2, 17th Floor<br><br>Hon. Jeffrey S. White |

## SUMMARY OF THE ARGUMENT

Plaintiff Shane D. Mosley, Sr. ("Plaintiff" or "Mosley") and defendant Victor Conte ("Conte") have submitted declarations that are utterly at odds with one another, *i.e.* there are clear questions of material fact for the jury to decide. Mosley avers, *inter alia*, that he was never advised by Conte that he was being given illegal or banned performance enhancing drugs. Conte, on the other hand, has stated publicly that Mosley's assertions are "lies." Conte has stated that Mosley "knew precisely what [he was] using," because "[i]t was all explained up front and there was no deception." *See* Complaint at ¶ 12, citing Exhibit A thereto.

Conte argues that the statements at issue are non-actionable opinion. However, this argument fails to meet the "opinion" test set forth in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). Conte's public statements are factual in nature and are provably false. As demonstrated by Conte's declaration, Conte clearly asserts that at the meeting with Mosley, he claims to have "explained the benefits of using three **illegal** performance enhancing drugs...." Conte Decl. at ¶ 5 (emphasis supplied).[1] Hence, as set forth in Mosley's Declaration, the "facts" upon which Conte bases his alleged opinion are incorrect, and thus, the statements still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel the false claims upon which they are based. *See Overstock.com, Inc.*, 151 Cal. App. 4th at 704.

If the jury credits testimony from Mosley consistent with his Declaration, it will necessarily find that Conte's statements to the press about Mosley were made with actual malice as they were false and Conte knew such statements were false. *See Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71 (Cal. App. 4th Dist. 2007).

Therefore Conte's motion should be denied in its entirety and the Court should award Plaintiff the costs and attorneys' fees incurred in defending this frivolous motion.

---

[1] Based upon the sworn factual claims and the allegations of his Complaint, Mosley has established a *prima facie* case of libel and slander. Notably, even considering the higher burden at trial with respect to being a public figure, **a declaration provided in opposition to an Anti-SLAPP motion has been deemed sufficient to establish *prima facie* evidence of actual malice.** *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 61 Cal.Rptr.3d 29 (Cal. App. 1st Dist. 2007).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

I.   INTRODUCTION ...................................................................... 1

II.  PRELIMINARY STATEMENT AND BRIEF STATEMENT OF FACTS .......... 1

III. RELEVANT PROCEDURAL BACKGROUND ................................... 3

IV.  ARGUMENT ............................................................................ 4

     A.  STANDARD OF REVIEW ..................................................... 4

     B.  MOSLEY HAS ESTABLISHED A
         *PRIMA FACIE* CASE OF DEFAMATION ................................. 5

         1. Mosley Has Proven Falsity ............................................... 6

         2. Plaintiff's Allegations and Supporting Declaration Readily Support a
            Finding of Actual Malice ................................................. 8

         3. Conte's Statements Do Not Constitute Mere Opinion ............... 10

         4. Conte's Statements Are Not Privileged ............................... 13

         5. Conte's Truth Defense is Inapplicable Here ......................... 14

V.   MOSLEY IS ENTITLED TO ATTORNEYS' FEES ............................ 14

VI.  CONCLUSION ....................................................................... 15

Case 3:08-cv-01777-JSW    Document 54    Filed 06/16/2008    Page 4 of 20

TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .................................................................. 8

*Baker v. L.A. Herald Exam'r,*
    42 Cal. 3d 254 (Cal. 1986) ........................................................ 12

*Beilenson v. Superior Court,*
    44 Cal. App. 4th 944 (Cal. App. 2d Dist. 1996) ..................... 9

*Brown v. Kelly Broadcasting Co.,*
    48 Cal. 3d 711, 771 P.2d 406 (1989) ..................................... 14

*California Back Specialists Medical Group v. Rand,*
    160 Cal. App. 4th 1032 (Cal App. 2d Dist. 2008) ................. 14

*Christian Research Institute v. Alnor,*
    148 Cal. App. 4th 71 (Cal. App. 4th Dist. 2007) ................. 8, 9

*Copp v. Paxton,*
    45 Cal. App. 4th 829 (Cal. App. 1st Dist. 1996) ..................... 9

*DiBella v. Hopkins,*
    285 F.Supp.2d 394 (S.D.N.Y. 2003) ........................................ 8

*Frank Johnson v. Hertz Local Edition Corp.,*
    No. C 03-44439,
    2004 U.S. Dist. LEXIS 22929 (N.D. Cal. Nov. 2, 2004) (Jenkins, D.J.) ............... 11

*Gregory v. McDonnell Douglas Corp.,*
    17 Cal. 3d 596 (Cal. 1976) ........................................................ 11

*Kaelin v. Globe Com. Corp.,*
    162 F.3d 1036 (9th Cir. 1998) .................................................. 8

*Kashian v. Harriman,*
    98 Cal. App. 4th 892 (Cal. App. 5th Dist. 2002) ................. 13

*Lundquist v. Reusser,*
    7 Cal. 4th 1193 (Cal. 1994) ...................................................... 13

*Lutge v. Eskanos & Adler, P.C.,*
    No. C 06-07128,
    2007 U.S. Dist. LEXIS 81212 (N.D.Cal. Oct. 17, 2007) (White, D.J.) ............... 5

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990) .......................................................... 10, 12

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) .................................................................. 9

*Noel v. River Hills Wilsons, Inc.*,
   113 Cal. App. 4th 1363 (Cal. App. 4th Dist. 2003) .................... 13

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal.App.4th 688, 61 Cal.Rptr.3d 29 (Cal. App. 1st Dist. 2007) ........... 5, 7, 11

*Reader's Digest Ass'n v. Superior Court*,
   37 Cal. 3d 244 (Cal. 1984) .................................... 9

*Robertson v. Rodriguez*,
   36 Cal. App. 4th 347 (Cal. App. 2d Dist. 1995) ..................... 9

*Rogers v. Home Shopping Network, Inc.*,
   57 F. Supp. 2d 973 (C.D. Cal. 1999) ............................. 4

*Ruiz v. Harbor View Community Assn.*,
   134 Cal. App. 4th 1456 (Cal. App. 4th Dist. 2005) .................. 12

*Saenz v. Playboy Enters., Inc.*,
   841 F.2d 1309 (7th Cir. 1988) ................................. 12

*Sagan v. Apple Computer*,
   874 F. Supp. 1072 (C.D. Cal. 1994) ........................... 10, 11

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (Cal. App. 1st Dist. 2002) .................... 12

*Silverstein v. E360insight, LLC*,
   No. CV 07-2853, 2008 U.S. Dist. LEXIS 36858 (C.D. Cal. May 5, 2008) ........ 4

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ........................................ 9

*Tuchscher Devel. Enters., Inc. v. San Diego Unified Port Dist.*,
   106 Cal. App. 4th 1219 (Cal. App. 4th Dist. 2003) .................. 9, 10

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) .................................. 4

STATUTES AND OTHER AUTHORITIES

Cal. Code Civ. Proc. § 128.5 ....................................... 15

Cal. Code Civ. Proc. § 425.16 .................................. *passim*

Cal. Civ. Code § 45 ............................................... 7

Cal. Civ. Code, § 46 .............................................. 7

Cal. Civ. Code § 47(c) ........................................... 13

## I. INTRODUCTION

Plaintiff Shane D. Mosley, Sr. ("Mosley" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities: (i) in opposition to Defendant Victor Conte's ("Defendant" or "Conte") motion to strike the complaint pursuant to Cal. Code Civ. Proc. § 425.16 ("Anti-SLAPP" or "§ 425.16"); (ii) pursuant to § 425.16(c), seeking the costs and attorneys' fees associated with opposing Conte's frivolous motion; with (iii) such other and further relief as this Court deems just and proper.

## II. PRELIMINARY STATEMENT AND BRIEF STATEMENT OF FACTS[1]

In the Complaint, dated April 2, 2008 (the "Complaint"), Mosley, a legendary professional boxer, asserts that he has been defamed on multiple occasions by Conte, the infamous principal of the Bay Area Laboratory Co-operative ("BALCO"), through knowingly false statements that Mosley intentionally took illegal performance enhancing drugs. *See* Exhibit B, a true and accurate copy of the Complaint.

As demonstrated *infra*, resolving the merits of an Anti-SLAPP motion involves a two-part analysis: (i) whether the challenged cause of action arises from protected activity; and (ii) whether the plaintiff can establish a *prima facie* showing of facts, that if proven, would support a judgment in his favor. Mosley concedes the first prong of the analysis due to clear First Amendment concerns. Thus, the focus turns to whether Mosley can make such a *prima facie* showing. The evidence submitted herewith clearly shows that Mosley has met this burden.

This is a classic case of "he said - he said." Both Mosley and Conte have submitted declarations that are utterly at odds with one another, *i.e.*, there are clear questions of material fact for the jury to decide. Mosley avers, *inter alia*, that he was never advised by Conte that he was being given illegal or banned performance enhancing drugs. Moreover, Mosley states that he "was assured by both Hudson and Conte that everything that Conte was recommending was legal, healthy, and not

---

[1] Due to the page limitations for this motion, Mosley respectfully refers the Court to the Complaint and the accompanying Declaration of Judd Burstein, dated June 16, 2008 ("Burstein Decl.") and Declaration of Mosley, dated June 13, 2008 ("Mosley Decl."), for a complete recitation of the relevant facts. All Exhibits referenced herein are annexed to the Burstein Decl.

in any way barred by the rules of [his] sport." Mosley Decl. at ¶ 14. Conte, on the other hand, has stated publicly that Mosley's assertions are "lies." Conte has stated that Mosley "knew precisely what [he was] using," and that, notwithstanding Mosley's prior public claim that Conte had misled Mosley about the legality of the products provided by Conte, "[i]t was all explained up front and there was no deception." *See* Complaint at ¶ 12, citing Exhibit A thereto.

Conte's main argument supporting his position that Mosley's claims fail as a matter of law is that Conte's defamatory statements are mere opinion. Here, however, Conte's public statements are factual in nature (*i.e.* Conte knew Mosley was aware that the drugs were illegal and banned, **because** Conte informed Mosley that such was the case) and are provably false if the jury were to credit Mosley's factual position as set forth in the Mosley Declaration. Accordingly, such statements cannot be deemed to state a mere opinion.

Conte's own Declaration in support of his Anti-Slapp motion describes the issue at the center of this case. He claims that in late July 2003, Mosley met with him at his office at BALCO. *See* Conte's Declaration, dated May 30, 2008 ("Conte Decl.") at ¶¶ 3-5. At the meeting, Conte claims to have "explained the benefits of using three **illegal** performance enhancing drugs.... Specifically, [Conte claims that he] explained to Mr. Mosley and Mr. Hudson that The Clear was an undetectable anabolic steroid and that The Cream contained testosterone and epitestosterone...." (emphasis supplied). *Id.* at ¶ 5. Conte also claims to have shipped the illegal drugs via FEDEX to Hudson, so as to "not carry the drugs on the airplane." *Id.* at ¶ 11.

Conte further admits to making all "the statements that are the subject of this action...." Conte Decl. at ¶ 14. This latter statement is of crucial importance in debunking Conte's claim that the public statements he made were expressions of mere opinion about what Mosley may or may not have known. Rather, this portion of Conte's Declaration makes it crystal clear that when he told the media that, notwithstanding Mosley's prior public claim that Conte had misled Mosley about the legality of the products provided by Conte, "[i]t was all explained up front and there was no deception" (Complaint at ¶ 12, citing Exhibit A thereto), he was in fact making the purportedly factual assertion that he had told Mosley that he was providing him with illegal drugs.

Conte also submits a declaration of Derryl Hudson ("Hudson"), Mosley's ex-trainer with whom Mosley is currently embroiled in litigation.[2] Hudson's declaration, dated May 21, 2008 (Hudson Decl.), states, *inter alia*, that in late July 2003, Mosley and Hudson went to Conte's office at BALCO. *See* Hudson Decl. at ¶ 4. At the meeting, Conte "explained to Mr. Mosley the benefits and risks of using banned performance enhancing substances." *See Id.* at ¶ 5. Hudson declares that he "knows" that "Mosley was aware that the performance enhancing drugs provided to him by Mr. Conte were banned drugs because [he] discussed that fact with Mr. Mosely both during and after [their] visit to BALCO." *See id.* at ¶ 9. Hudson further declares that "Mosley admitted to [him] that he knew the drugs provided to him by Mr. Conte were illegal performance enhancing drugs." *Id.*[3] As clearly set forth in the Mosley Declaration, Mosley categorically denies these claims. *See* Mosley Decl. at ¶¶ 5-16.

### III. RELEVANT PROCEDURAL BACKGROUND

Mosley filed his Complaint seeking, *inter alia*, damages and a permanent injunction against Conte for his past and continued defamatory statements relating to Mosley's alleged knowing use of any illegal or banned substances. At the outset of the case, Plaintiff moved for, *inter alia*, expedited discovery and an expedited trial on the merits. As part of that motion, Mosley submitted a Declaration and advised Conte that he intended to submit a substantially similar Declaration in opposition to any threatened Anti-SLAPP motion. This Declaration stated that Conte: (i) never advised him that he (Conte) was recommending illegal and/or banned substances, and (ii) actually affirmatively told Mosley that everything he (Conte) was recommending to Mosley was legal. *See* Exhibit F to Burstein Decl., Mosely's Declaration, dated May 22, 2008, at ¶¶ 4-7. Nonetheless, Conte has filed this motion despite clear issues of material fact going to the core allegations of this case. For this reason, as discussed *infra*, Mosley should be awarded attorneys' fees.

---

[2] Hudson has brought suit against Mosley for, *inter alia*, defamation in the United States District Court for the Central District of California. *See* Exhibit H.

[3] Notably absent from Hudson's Decl. is any admission, confirmation, or even a mention of his receipt of the illegal drugs via FEDEX from Conte, and distributing same to Mosley. Conte Decl. at ¶ 11.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16  - CASE No. C 08-CIV-1777 (JSW)
3

## IV. ARGUMENT

### A. STANDARD OF REVIEW

The Anti-SLAPP suit provision of § 425.16 applies in federal diversity suits. *See U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999). However, when reviewing an Anti-SLAPP motion, a federal court will apply "the usual federal standards regarding discovery and the timing of motions seeking judgments on the facts." *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982-983 (C.D. Cal. 1999). Thus, such a motion can be considered as a motion to dismiss under Rule 12(b)(6), or as a motion for summary judgment under Rule 56.

When a motion to strike is based upon alleged deficiencies in the pleadings, however, the motion must be treated as one pursuant to Rule 12(b)(6). *See Silverstein v. E360insight, LLC*, No. CV 07-2853, 2008 U.S. Dist. LEXIS 36858, *5-6 (C.D. Cal. May 5, 2008) ("If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.") (citation omitted).

As discovery has recently commenced and Conte has not responded to Plaintiff's multiple discovery demands, the instant motion must be deemed one made pursuant to Rule 12(b)(6). The standards for a Rule 12(b)(6) motion are well known and need not be repeated here. *See Jimenez v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 37788 (S.D. Cal. May 8, 2008), for the applicable standard.[4]

As to the substantive standards for an Anti-SLAPP motion, resolving such a motion "involves a two-part analysis, concentrating initially on whether the challenged cause of action arises from protected activity within the meaning of the statute and, if it does, proceeding secondly to

---

[4] These standards include, but are not limited to, freely granting leave to amend. *Rogers*, 57 F. Supp. 2d at 982-983. Should the Court, incorrectly we respectfully contend, grant the underlying motion, Plaintiff respectfully requests such dismissal be granted with leave to file an amended complaint to add additional and more recent defamatory statements made by Conte. *See, e.g.*, Burstein Decl. at ¶ 3(c).

whether the plaintiff can establish a probability of prevailing on the merits." *Overstock.com, Inc. v. Gradient Analytics, Inc.,* 151 Cal.App.4th 688, 699, 61 Cal.Rptr.3d 29, 38 (Cal. App. 1st Dist. 2007).

Mosley does not dispute that Conte's statements to the press were made in a public forum or that such statements were made "in connection with an issue of public interest." § 425.16(e)(3). Thus, only the second prong of the two-part analysis is at issue.

### B. MOSLEY HAS ESTABLISHED A *PRIMA FACIE* CASE OF DEFAMATION

As this Court explained in *Lutge v. Eskanos & Adler, P.C.*, No. C 06-07128, 2007 U.S. Dist. LEXIS 81212, *9 (N.D.Cal. Oct. 17, 2007) (White, D.J.), "once Defendants have reached the threshold showing [on an Anti-SLAPP motion], the burden shifts to [plaintiff] to establish a probability of prevailing at trial." A § 425.16 motion must be denied where a "plaintiff has made a *prima facie* showing of facts based on competent admissible evidence that would, if proved, support a judgment in the plaintiff's favor." *Id.* at *10. As the Anti-SLAPP statute, *inter alia*, limits discovery, "the plaintiff's burden of establishing a probability of prevailing is not high: [The Court does] not weigh credibility, nor do[es it] evaluate the weight of the evidence. Instead, [the Court] accept[s] as true all evidence favorable to the plaintiff and assess[es] the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Overstock.com*, 151 Cal. App. 4th at 699-700 (internal citations omitted).

Furthermore, as a public figure, Mosley must establish a probability that he can produce clear and convincing evidence to prove that the defamatory statements at issue were made with knowledge of their falsity or with reckless disregard of their truth or falsity.[5] As with the issue of falsity, any proof offered by Mosley must be assumed true for the purposes of this motion. If such proof makes out a *prima facie* showing of malice, Mosley will have thereby met his burden on this motion. *Id.*

---

[5] *See Overstock.com, Inc.*, 151 Cal. App. 4th at 700 ("In the context of an anti-SLAPP suit motion, the limited public figure who sues for defamation must establish a probability that he or she can produce such clear and convincing evidence.").

1.     *Mosley Has Proven Falsity*

In this regard, Mosley's sworn Declaration serves as sufficient evidence to defeat Conte's motion, as his Declaration states:

- At the recommendation of Hudson, Mosley traveled to BALCO with Hudson and "met with Conte at Conte's business, BALCO, for the purpose of obtaining **legal** supplements." Mosley Decl. at ¶¶ 5 and 8 (emphasis in original).

- "This was the only trip [Mosley] ever made to BALCO and the only time [he] ever spoke with Mr. Conte." *Id.* at ¶ 9.

- At the meeting, Mosley "specifically asked Conte for assurances that everything that he was recommending was both legal and healthy. Conte specifically gave [Mosley] that assurance. [Conte's] public claims to the contrary, in which he explained to me that he was recommending illegal substances and procedures, **are a lie**." *Id.* at ¶ 10. (emphasis supplied).

- Mosley does not deny taking the products recommenced to him by Conte, however, he denies that "Conte ever told [him], or that [he] knew, that [he] was taking anything that was illegal or in any way barred by the rules of [his] sport." *Id.* at ¶ 11.

- "[A]t no time was [Mosley] ever told, by Conte or anyone associated with BALCO, that these products were steroids or illegal or banned performance enhancing drugs." *Id.* at ¶ 12.

- "[Mosely] did not take any supplements with [him] when [they] left BALCO's offices. Rather, a package was subsequently sent to Hudson, who thereafter administered a variety of supplements to [him]." *Id.* at ¶ 13.

- Mosley is emphatic that he "was assured by both Hudson and Conte that everything that Conte was recommending was legal, healthy, and not in any way barred by the rules of [his] sport. Both Conte and Hudson specifically gave such assurances." *Id.* at ¶ 14.

- "Contrary to Hudson's declaration dated May 21, 2008, [Mosley] **never** 'admitted to [Mr. Hudson, or anyone for that matter,] that [Mosley] knew the drugs provided to [him] by Mr. Conte were illegal performance enhancing drugs.' Nor did Hudson ever tell [Mosley] that such drugs were illegal or barred by the rules of [his] sport. Moreover, [Mosley] never discussed with Hudson, either before [they] went to BALCO or after, that [they] were securing any such drugs." Mosley Decl. at ¶ 15 (emphasis in original), citing the Hudson Decl. at ¶ 9.

- "In stark contrast to Hudson's assertions... [Mosley] ha[s] always denied that Conte ever told [him], or that [he] knew, that [he] was taking anything that was illegal or in any way barred by the rules of [his] sport. Indeed, in January of 2004, [Mosley] submitted a declaration to the Nevada State Athletic Commission affirming that [he] was told, *inter alia*, that the supplements were completely legal." *Id.* at ¶ 16, citing Exhibit A thereto, a true and accurate copy of Mosley's January 13, 2004 declaration, with exhibits.

Based upon the above sworn factual claims and the allegations of his Complaint, Mosley has established a *prima facie* case of libel and slander. Notably, even considering the higher burden at trial with respect to being a public figure, **a declaration provided in opposition to an Anti-SLAPP motion has been deemed sufficient to establish *prima facie* evidence of actual malice.** *See Overstock.com*, 151 Cal.App.4th at 699.

Mosley has properly alleged that Conte made slanderous statements and has established *prima facie* evidence of same by virtue of his declaration. (Cal. Civ. Code, § 46).[6] Additionally, as to libel, Mosley has properly alleged that Conte wrote libelous statements and has provided *prima facie* evidence of same by virtue of his declaration. (Cal. Civ. Code, § 45).[7] Moreover, as set forth *infra*, Mosley's Declaration readily supports a finding of actual malice.

---

[6] As set forth in the Complaint at ¶¶ 12, 13, and 24, Conte spoke to reporters from the *New York Daily News* and a reporter from *USA Today* and falsely stated to the reporters that he "watched [Mosley] inject [himself] in front of me," that Mosley "knew precisely what [he was] using," and that, notwithstanding Mosley's prior public claim that Conte had misled Mosley about the legality of the products provided by Conte, "[i]t was all explained up front and there was no deception." Complaint at ¶ 12, citing Exhibit A thereto. As alleged in the Complaint, these statements, *inter alia*: (i) were made by Conte with knowledge of their falsity (Complaint at ¶¶ 15 and 25); (ii) were unprivileged (Complaint at ¶¶ 16 and 26); (iii) accuse Plaintiff of criminal conduct (Complaint at ¶¶ 18 and 28); and (iv) tend to injure Mosley in his profession as a prize fighter, both in that they impute to Mosley a general disqualification in the respect which a professional boxer peculiarly requires, and impute traits concerning professional prize fighting that lessen Mosley's ability to earn money in that profession and cause actual damage to Mosley (Complaint at ¶¶ 19, 20, 29, and 30).

[7] As set forth in the Complaint at ¶ 34, "in September of 2007, Conte sent an e-mail to a reporter affiliated with SI.com in which Defendant falsely stated, in words and substance, that he had explained to Mosley that he (Conte) was providing him with illegal steroids and performance enhancing substances." Complaint at ¶ 34. As alleged in the Complaint, Conte's statement: (i) was made by Conte with knowledge of its falsity (Complaint at ¶ 35); (ii) was unprivileged (Complaint at ¶ 36); (iii) exposed Mosley to hatred, contempt, ridicule, or obloquy, and had a tendency to injure him in his occupation (Complaint at ¶ 38); (iv) is defamatory without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact (Complaint at ¶ 39); and (v) caused actual damage to Mosley (Complaint at ¶ 40).

      2.    *Plaintiff's Allegations and Supporting Declaration Readily Support a Finding of Actual Malice*

As to actual malice, Conte's statements to reporters clearly state that Mosley "knew precisely what [he was] using," and that, "[i]t was all explained up front and there was no deception." Complaint at ¶ 12, citing Exhibit A thereto. If the jury credits testimony from Mosley consistent with his Declaration, it will necessarily find that Conte's statements to the press about Mosley were false and that Conte knew that they were false. This is so because the alleged defamatory statements by Conte were made based upon Conte's supposed own knowledge. If his statements to the press about what he personally told Mosley were false, Conte had to have known that the statements were false because he was talking about his own conduct.

The point is made by *Christian Research Institute v. Alnor,* 148 Cal. App. 4th 71 (Cal. App. 4th Dist. 2007), a case cited by Conte. *See* Conte's MPA at page 14. In *Christian Research Institute,* the Court held that "[a] defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice.... Thus, **malice may be inferred where, for example, a story is fabricated by the defendant**, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." *Id.* at 84-85. (citations and internal quotations omitted) (emphasis supplied); *see also DiBella v. Hopkins,* 285 F.Supp.2d 394, 403 (S.D.N.Y. 2003) ("By finding that Hopkins had fabricated this story, the jury surely had a basis for concluding that Hopkins knew his statements were false. Hence, the jury's finding of malice was supported by clear and convincing evidence.").

Conte's and Hudson's assertions cannot defeat these claims as a matter of law. At most, Conte's and Hudson's declarations simply create an issue of material fact based upon conflicting evidence, which cannot serve as grounds for a motion to dismiss, or even a motion for summary judgment. *See Kaelin v. Globe Com. Corp.,* 162 F.3d 1036, 1042 (9th Cir. 1998) ("If a plaintiff can come forward with clear and convincing evidence from which a jury could find actual malice, he is entitled to a trial even if there is conflicting evidence on the issue.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

1    Contrary to Conte's belief, a fair reading of the Complaint and Mosley's Declaration leaves no doubt that Plaintiff could demonstrate actual malice on Conte's part with convincing clarity. Tellingly, the authorities relied upon by Conte make this point. *See Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 356, n. 3 (Cal. App. 2d Dist. 1995) ("it has been held that section 425.16 does not impair the right to a trial by jury because the trial court does not weigh the evidence in ruling on the motion, but merely determines whether a *prima facie* showing has been made which would warrant the claim going forward."), cited in Conte's MPA at pages 6, 12, and 13, and *Christian Research Institute,* 148 Cal. App. 4th at 84 ("[A] court may not weigh competing evidence in an anti-SLAPP motion. If the defendant's evidence does not demonstrate that plaintiff cannot prevail as a matter of law, we consider only whether evidence favoring the plaintiff, standing alone, would sustain a judgment in his or her favor."), cited in Conte's MPA at page 14.[8]

Conte relies on *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 953 (Cal. App. 2d Dist. 1996), for the proposition that Mosley must prove his case by direct evidence. *See* Conte's MPA at page 13. However, this proposition is, at best, doubtful, in light of *Christian Research Institute,* 148 Cal. App. 4th 71, a case decided after *Beilenson, see* discussion *supra*. Moreover, Mosley has met this burden by submitting a sworn Declaration that, unlike *Beilenson*, does not contain a single statement made upon information and belief. ("Sybert's declaration from a former commissioner of the FPPC was on information and belief. An averment on information and belief is inadmissible at trial, and thus [be used to] show a probability of prevailing on the claim."). *Id.* at 952 (citation omitted). Conte's reliance upon *Tuchscher Devel. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1238 (Cal. App. 4th Dist. 2003), is similarly misplaced. In *Tuchscher*, the declaration in opposition to the Anti-SLAPP motion was based upon, *inter alia*, hearsay and was further lacking in personal knowledge. *Id.* ("Tuchscher's declaration recounting the Lennar

---

[8] Moreover, the following authorities relied upon by Conte to demonstrate Mosley's alleged burden as to proving actual malice are all procedurally inapplicable. *See* Conte's MPA at pages 13-14, citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (Case was tried to a jury); *St. Amant v. Thompson*, 390 U.S. 727 (1968) (Same); *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244 (Cal. 1984) (Case was decided on summary judgment); and *Copp v. Paxton*, 45 Cal. App. 4th 829 (Cal. App. 1st Dist. 1996) (Same).

representative's report on the contents of Lennar's computer database consists of hearsay. We further reject Tuchscher's declaration to the extent it is supported only by information and belief or his mere understanding of events.... And many of the statements made in Tuchscher's declaration, including as to respondents' authority to involve themselves with the project and the economic boon to Lennar, are argumentative, speculative and impermissible opinions, and also lack foundation and personal knowledge.").

### 3. *Conte's Statements Do Not Constitute Mere Opinion*

The Supreme Court examined the issue of "fact" versus "opinion" in the seminal case of *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). There, the Court concluded that expressions of opinion may often imply an assertion of objective fact. *Id.* at 18. The Court held that the test to determine if a statement of opinion can form the basis of an action is "whether a reasonable factfinder could conclude that the statements [ ] imply an assertion [of fact]." *Id.* at 21. The Court used the following illustration to make its point:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'"

*Id.* at 19. (citation omitted).

In the Ninth Circuit, courts analyze the following conditions set forth in *Milkovich*:

(1) whether the defendant used figurative or hyperbolic language that would negate the impression that he was seriously maintaining an assertion of fact;

(2) whether the general tenor of the communication negated the assertion of fact; and

(3) whether the assertion is susceptible of being proved true or false.

*Sagan v. Apple Computer*, 874 F. Supp. 1072, 1075 (C.D. Cal. 1994) (citation omitted). Application of this test here requires dismissal of Conte's motion.

**First**, Conte's language has a clear, non-hyperbolic meaning which is readily understood. For example, Conte stated that Mosley "'knew precisely what [he was] using'" because "'[i]t was all explained up front and there was no deception.'" Complaint at ¶ 12, citing Exhibit A thereto. Quite simply, when reviewed in full context, and when read in conjunction with Conte's Decl., Conte's supposed mere opinion is unquestionably based upon his factual assertion that "[t]here is no question that I informed Mr. Mosley that he was taking the three banned performance enhancing drugs...." Conte Decl. ¶ 14. This assertion is at odds with Mosley's Declaration and represents the exact factual assertion in dispute in this ligation. Accordingly, it is essentially absurd even to suggest that Conte was not "seriously maintaining an assertion of fact." *Sagan*, 874 F. Supp. at 1075.

**Second**, because Conte's statements were allegedly given in response to Mosley's public comments, *see* Conte's Decl. at ¶ 14, it is clear that Conte's statements were designed to make the **factual** claim that Mosley's public statements about his meeting with Conte were false.[9]

**Third**, Conte's statements are susceptible of being proved true or false. Either Mosley was told by Conte, prior to taking the banned or illegal performance enhancing drugs, that he was being given banned or illegal drugs, **or** Conte never told Mosley that he was taking anything that was illegal or in any way barred by the rules of Mosley's sport. *See* Mosley Decl. at ¶ 16.[10]

Conte's legal argument in support of his claim that he was only reporting his "opinion" that Mosley "knew" he was taking banned or illegal performance enhancing drugs is baseless. The cases Conte cites involved facts easily distinguishable from the facts of this case. *See* Conte's MPA at page 10, citing *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 603 (Cal. 1976) (The statements that the "union officers, were apparently willing to sacrifice the interests of the members

---

[9] *See Frank Johnson v. Hertz Local Edition Corp.*, No. C 03-44439, 2004 U.S. Dist. LEXIS 22929 (N.D. Cal. Nov. 2, 2004) (Jenkins, D.J.) ("[W]here a statement of opinion is calculated to induce the audience to whom [it is] addressed to conclude or understand that [it is] factual, such a statement will be found factual in nature.") (citations and internal quotations omitted).

[10] *See Overstock.com*, 151 Cal. App. 4th at 701. ("The key is not parsing whether a published statement is fact or opinion, but whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.") (internal quotations and citations omitted).

of their union to further their own political aspirations and personal ambitions," were "cautiously phrased in terms of apparency," and thus not actionable); *Baker v. L.A. Herald Exam'r,* 42 Cal. 3d 254, 258 (Cal. 1986) (The statements at issue involved a television review which stated **"[M]y impression** is that the executive producer Walt Baker, who is also vice president in charge of programs for Channel 9, told his writer/producer, Phil Reeder, 'We've got a hot potato here – let's pour on titillating innuendo and as much bare flesh as we can get away with. Viewers will eat it up!'") (emphasis supplied); *Seelig v. Infinity Broad. Corp.,* 97 Cal. App. 4th 798, 810 (Cal. App. 1st Dist. 2002) (The statements at issue involved "several derogatory comments made concerning [plaintiff] on the radio broadcast. Vinnie referred to plaintiff once as a 'local loser' and three times as a 'chicken butt,' while Uzette falsely claimed that plaintiff's ex-husband had said she was a 'big skank.'").

Additionally, Defendant erroneously relies upon *Saenz v. Playboy Enters., Inc.,* 841 F.2d 1309 (7th Cir. 1988), decided under New Mexico state law, for the proposition that "Conte's statements as to what Mosley actually knew or believed is non-actionable opinion." (Conte's MPA, page 11). Although not expressly overruled, *Saenz* was decided prior to the Supreme Court's ruling in *Milkovich.* In any event, *Saenz* is inapposite because it was decided on summary judgment (not on a motion to dismiss) that Saenz could not prove that *Playboy* had even intended to convey the claim – that Saenz had been complicit in torture – which Sanez contended to be defamatory. Here, in contrast, there can be no reasonable dispute about the fact that Conte intended to convey the factual claim that he had told Mosley that he was providing Mosley with illegal substances.

In the end, "an opinion is actionable if it discloses all the statements of fact on which the opinion is based and those statements are false." *Ruiz v. Harbor View Community Assn.,* 134 Cal. App. 4th 1456, 1472 (Cal. App. 4th Dist. 2005) (Plaintiff "met his burden under the anti-SLAPP statute of presenting a *prima facie* case that the factual assertions supporting the opinions were demonstrably false. His July 2, 2003 letter and his declaration submitted in opposition to the anti-SLAPP motion support a *prima facie* conclusion he did not conceal he was an attorney."). *Id.* Here, Mosley has unquestionably offered *prima facie* evidence – which must be assumed to be true

for the purposes of this motion – identifying the factual statements upon which Conte's "opinion" is based, and demonstrating that those statements are false.

### 4. Conte's Statements Are Not Privileged

Conte incorrectly asserts that his defamatory statements are privileged pursuant to Cal. Civ. Code § 47(c). Section 47(c) states that: "A privileged publication or broadcast is one made: In a communication, **without malice**, to a person interested therein...." (emphasis supplied). Under § 47, a statement is made with malice when "the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (Cal. App. 4th Dist. 2003). If a statement is made with actual malice, § 47(c) is inapplicable. *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 915 (Cal. App. 5th Dist. 2002) (citation omitted) ("[I]f malice is shown, the privilege is not merely overcome; it never arises in the first instance.").

In this case, both parties agree that Mosley is public figure. Accordingly, and wholly apart from § 47(c), Mosley has to demonstrate a *prima facie* case of malice. As such, § 47(c) is irrelevant here because Mosley has to meet the identical standard by reason of his being a public figure. Since, as demonstrated *supra*, he has met this burden, Conte's reliance upon § 47(c) is of no moment.

Furthermore, Conte cannot invoke the qualified privilege, because he has not satisfied his burden of showing that the defamatory statements were made on a privileged occasion. *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1208 (Cal. 1994). That "the use of illegal steroids ... is a matter of interest to the public as well as news reporters" (Conte's MPA, page 12), does not by itself give rise to the privilege's protections. Rather, § 47(c) requires that the communication at issue be reasonably calculated to further a public interest **and** be made between persons with a common interest.

Conte essentially contends that the "common interest" element of § 47(c) is met because both he and the reporters with whom he spoke had a common interest in the steroid scandals generally, and Mosley in particular. But if this were all that was needed, virtually any statement made to a reporter would be privileged because (i) the reporter would presumably only be interested in information of public concern, and (ii) both the speaker and the reporter would have the common interest of relaying information to the public.

In *Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711, 771 P.2d 406 (1989), the Court rejected this very analysis:

> A privilege is an exception to a general rule of liability, but under defendants' view of section 47(3), the privilege would be the general rule for the news media and liability would be the exception. We believe the Legislature would have made clear its intention for such a drastic restriction on the common law of defamation....
>
> * * *
>
> The [privilege] that is most relevant to the question before us is the common-interest privilege, which protected communications made in good faith on a subject in which the speaker and hearer shared an interest or duty. This privilege applied to a narrow range of private interests. The interest protected was private or pecuniary; the relationship between the parties was close, e.g., a family, business, or organizational interest; and the request for information must have been in the course of the relationship....
>
> The legislative history of section 47(3) indicates the Legislature intended to codify the narrow common law privilege of common interest, not to create any broad news-media privilege....

48 Cal.3d at 725-27, 771 P.2d 406, 413-14.

### 5. *Conte's Truth Defense is Inapplicable Here*

In a last ditch effort, Conte posits a legal truism – truth is an absolute defense to defamation – and then misapplies it to the facts and the procedural stage of this case. Although Conte would have the Court rely solely upon the Hudson Decl. and the Conte Decl., the above precedents make clear that Mosley's position is deemed true and that these declarations at most create an issue of fact. *See* Conte's MPA at page 15. There are two irreconcilable versions of the facts being told here, and the truth cannot be resolved as a matter of law upon the instant motion. Accordingly, any reliance upon the defense of "substantial truth" is completely at odds with the procedural posture of this case.

## V. **MOSLEY IS ENTITLED TO ATTORNEYS' FEES**

§ 425.16(c) provides for the award of attorneys' fees to a plaintiff who successfully opposes an Anti-SLAPP motion. A plaintiff is entitled to an award of fees when the Court finds that the motion to strike is "frivolous or is solely intended to cause unnecessary delay," and the procedural provisions of § 128.5 are complied with. *California Back Specialists Medical Group v. Rand*, 160 Cal. App. 4th 1032, 1038 (Cal App. 2d Dist. 2008) (attorneys' fees award justified where plaintiff gave notice of request for attorneys' fees, defendant had opportunity to be heard, and court cited its reasons for awarding fees).

Cal. Code Civ. Proc. § 128.5 states in relevant part that "[e]very trial court may order a party … to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." A frivolous motion within the meaning of this statute is one that is either "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." *Id.*

As set forth above, Conte's instant motion is frivolous and "totally and completely without merit." *Id.* Moreover, Conte filed this motion knowing full well that Mosley would oppose such a motion with a declaration mirroring a declaration previously submitted to the Court. In that Declaration Mosley stated, *inter alia*, that neither Conte, nor anyone associated with BALCO, ever told him that products purchased and received from BALCO were steroids or illegal or banned performance enhancing drugs. *See* Exhibit F to Burstein Decl. at ¶¶ 4-7. In light of the Mosley Declaration, and for the reasons set forth *supra,* Conte has failed to establish a good-faith basis to make a motion under § 425.16. Accordingly, Mosley should be awarded his attorneys' fees incurred in opposing this motion. *See* the Burstein Declaration at Exhibit H for the amount of attorneys' fees and costs associated with responding to this motion.

## VI. CONCLUSION

Based on the foregoing, it is respectfully requested that this Court: (i) deny Conte's motion to strike the Complaint in its entirety; (ii) grant Mosley's request for the costs and attorneys' fees associated with replying to this motion; with (iii) such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 16, 2008

JUDD BURSTEIN, P.C.

By_____
       Judd Burstein
       *Attorneys for Plaintiff Shane D. Mosley, Sr.*