LONG & LEVIT LLP
Kim O. Dincel, Esq. (SBN 131563)
465 California Street 5th Floor
San Francisco, California 94104
Tel (415) 397-2222 Fax (415) 397-6392
E-mail: kdincel@longlevit.com

JUDD BURSTEIN, P.C.
Judd Burstein, Esq. (JB-9585; admitted *pro hac vice*)
Jeremy M. Attie, Esq. (JA-0561; admitted *pro hac vice*)
1790 Broadway, Suite 1501
New York, New York 10019
Tel (212) 974-2400 Fax (212) 974-2944
E-mail: jburstein@burlaw.com
E-mail: jattie@burlaw.com

*Attorneys for Plaintiff,*
SHANE D. MOSLEY, SR.

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

#### SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| SHANE D. MOSLEY, SR., | ) | 08-Civ-1777 (JSW) |
| | ) | |
| *Plaintiff,* | ) | DECLARATION OF JUDD BURSTEIN, ESQ. IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16 AND CROSS MOTION, PURSUANT TO CAL. CODE CIV. PROC. § 425.16(c), FOR ATTORNEYS' FEES AND COSTS ASSOCIATED WITH RESPONDING TO DEFENDANT'S MOTION |
| vs. | ) | |
| VICTOR CONTE, | ) | |
| *Defendant.* | ) | |
| | ) | Date:      August 22, 2008 |
| | ) | Time:      9:00 a.m. |
| | ) | Courtroom: 2, 17th Floor |
| | ) | |
| | ) | Hon. Jeffrey S. White |

**JUDD BURSTEIN** hereby declares under penalty of perjury:

1.     I am an attorney duly admitted to practice law before the Courts of the State of New

York. Pursuant to the Court's Order, filed on April 7, 2008, I have been admitted to practice law in

this Court on a *pro hac vice* basis for the purpose of representing Plaintiff Shane D. Mosley, Sr. ("Mosley" or "Plaintiff") in the present action. (*See* Exhibit A hereto, a true and complete copy of the Court's Order, entered on April 7, 2008, granting my *pro hac vice* admission to this Court in connection with this litigation).

    2.    I submit this Declaration in support of Mosley's motion (i) in opposition to Defendant Victor Conte's ("Defendant" or "Conte") motion to strike the complaint pursuant to Cal. Code Civ. Proc. § 425.16 ("Anti-SLAPP" or "§ 425.16"); (ii) pursuant to § 425.16(c), seeking the costs and attorneys' fees associated with opposing Conte's frivolous motion; with (iii) such other and further relief as this Court deems just and proper.

    3.    The purpose of this Declaration is to place additional relevant exhibits before the Court.

    a.    **Exhibit B** hereto is a true and complete copy of the Complaint, dated April 2, 2008.

    b.    **Exhibit C** hereto is a true and complete copy of a *New York Daily News* Article, titled "In face of athletes' denials, Victor Conte points to calendars," dated March 30, 2008, written by Terri Thompson and Nathaniel Vinton.

    c.    **Exhibit D** hereto is a true and complete copy of a *Los Angeles Times* article titled "BALCO founder says Shane Mosley knew he was using steroids," dated April 9, 2008, written by Lance Pugmire.

    d.    **Exhibit E** hereto is a true and accurate copy of Defendant's Opposition to Plaintiff's motion for an expedited trial, dated May 16, 2008.

    e.    **Exhibit F** hereto is a true and accurate copy of Mosley's May 22, 2008 Declaration.

    f.    **Exhibit G** hereto is a true and accurate copy of the Complaint in the case styled, *Derryl Hudson, an individual and dba Power N Speed versus Shane Mosley, an individual; DOES 1 through 100, inclusive*, dated February 1,

1 | 2008, filed by Derryl Hudson in the Superior Court of the State of California,

2 | County of Los Angeles; and Mosley's Notice of Removal, dated February 19,

3 | 2008, removing the action to the United States District Court for the Central

4 | District of California.

5 | 4. Moreover, my firm has expended a considerable amount of time and expense in

6 | opposing this motion. Our hourly rates and expenses, in total, have amounted to $ 35,262.50. *See*

7 | Exhibit H hereto, a true and accurate copy of Mr. Mosley's latest fees.

8 | I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct. Executed this 16th day of June 2008, in New York County, New York.

9 |

10 |

11 | JUDD BURSTEIN

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 | DECLARATION OF JUDD BURSTEIN, ESQ. IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
STRIKE THE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16 – CASE NO. C 08-Civ-1777 (JSW)

28 | 3

EXHIBIT A

1   Judd Burstein
     JUDD BURSTEIN, PC
2   1790 Broadway, Suite 1501
     New York, NY 10019
3   TEL: (212) 974-2400

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shane D. Mosley, Sr., | CASE No. CV081777 BZ |
| Plaintiff, | [PROPOSED] ORDER GRANTING APPLICATION FOR ADMISSION OF ATTORNEY PRO HAC VICE |
| vs. | |
| Victor Conte, | Action Filed:      No Date Set |
| Defendant. | |

Judd Burstein, an active member in good standing of the bars of: the United States Supreme Court, the United States Tax Court, the United States Courts of Appeals for the 2nd, 3rd, 4th, 6th, 7th, 9th, and 10th Circuits, the United States District Court for the Eastern, Southern, and Northern Districts of New York, the District of Connecticut, and the District of Columbia, whose business address and telephone number is: Judd Burstein PC, 1790 Broadway, Suite 1501, New York, New York, 10019, (212) 974-2400, having applied in the above-entitled action for admission to practice in the Northern District of California on a *pro hac vice* basis, representing Shane D. Mosley, Sr.

IT IS HEREBY ORDERED THAT the application is granted, subject to the terms and conditions of Civil L.R. 11-3. All papers filed by the attorney must indicate appearance *pro hac vice.* Service of papers upon and communication with co-counsel designated in the application will constitute notice to the party. All future filings in this action are subject to the

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

1

[PROPOSED] ORDER GRANTING PRO HAC VICE
APPLICATION (No. CV081777)

1    requirements contained in General Order No. 45, *Electronic Case Filing*

2    Dated: April 4, 2008

United States Magistrate Judge

DOCS\S0117-001\547313.V1

IT IS SO ORDERED

Judge Bernard Zimmerman

LONG & LEVIT LLP
465 CALIFORNIA STREET
SUITE 500
SAN FRANCISCO
CALIFORNIA 94104
(415) 397-2222

[PROPOSED] ORDER GRANTING PRO HAC VICE
APPLICATION (No. CV081777)

EXHIBIT B

1  Kim O. Dincel, Esq. (SBN 131563)
2  Long & Levit LLP
   465 California Street 5th Floor
3  San Francisco, California 94104
   Tel (415) 397-2222 Fax (415) 397-6392
4  E-mail kdincel@longlevit.com

5
   JUDD BURSTEIN, P.C.
6  Judd Burstein (pending admission *pro hac vice*)
   Jeremy Attie (pending admission *pro hac vice*)
7  1790 Broadway, Suite 1501
   New York, New York 10019
8  Tel (212) 974-2400 Fax (212) 974-2944
9  E-mail jburstein@burlaw.com

10 *Attorneys for Plaintiff,*
   SHANE D. MOSLEY, SR.
11

12

13                 UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16 SHANE D. MOSLEY, SR.,              )
                                      )  Case No:
17          *Plaintiff,*              )
                                      )  **COMPLAINT FOR DAMAGES AND
18     vs.                            )  INJUNCTIVE RELIEF**
                                      )
19 VICTOR CONTE,                      )  1)  DEFAMATION, SLANDER
                                      )  2)  DEFAMATION, SLANDER
20          *Defendant.*              )  3)  DEFAMATION, LIBEL
                                      )  4)  PERMANENT INJUNCTION
21                                    )
                                      )
22                                    )  **DEMAND FOR JURY TRIAL**
                                      )
23

24      Plaintiff SHANE D. MOSLEY SR. ("Plaintiff" or "Mosley"), by his attorneys, Judd

25 Burstein, P.C. ("JBPC") and Long & Levit LLP, as and for his complaint against Defendant

26 VICTOR CONTE ("Defendant" or "Conte"), alleges as follows:

27

28

## I.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, in that it is a civil action between citizens of different States, and involves an amount in controversy in excess of $75,000.

2.     Venue is proper in this District pursuant 28 U.S.C. § 1391(a)(1).

## II.

## INTRADISTRICT ASSIGNMENT

3.     Pursuant to Civil L.R. 3-2(c) and (d), this action arose due to actions and omissions of Defendant that took place, in substantial part, in San Francisco and/or San Mateo Counties.  Therefore, this case should be assigned to either the San Francisco Division or the Oakland Division.

## III.

## THE PARTIES

4.     Plaintiff Mosley, a legendary professional boxer, is a citizen of the State of Nevada.

5.     Defendant, a convicted felon and purveyor of illegal performance enhancing drugs and procedures, is a citizen of the State of California.

## IV.

## GENERAL ALLEGATIONS

6.     In or about July of 2003, Mosley's conditioning coach, Darryl Hudson ("Hudson"), brought Mosley to meet with Conte at Conte's business, Bay Area Laboratory Co-

operative ("Balco"). Mosley was informed by Hudson that Conte's company sold entirely legal supplements, including some that were sold on the Internet, which would aid his training.

7.     At the meeting with Conte, samples of Mosley's blood were taken and analyzed. Conte then recommended to Mosley a regimen of products that Mosley was told would help him with his endurance. At no time during this meeting did Mosley use any of the products recommended to him. Always extremely concerned about his health and with playing by the rules, Mosley specifically asked Conte whether the items recommended by Conte were healthy, legal and permitted for athletes. Mosley was specifically told by Conte that there was nothing wrong with following Conte's recommendations, and that all of the products recommended by Conte were entirely legal and appropriate.

8.     In July 2005, Conte pleaded guilty to a conspiracy to distribute steroids.

9.     In October 2005, Conte was sentenced to four months imprisonment and four months house arrest.

10.     On or about March 30, 2008, Conte began publicizing the fact that he was going to publish a book about his life as a peddler of steroids. As part of this publicity campaign to maximize sales of his future book, Conte made knowingly false claims about Mosley's use of Balco products.

## V.

## FIRST CLAIM FOR RELIEF

### SLANDER

11.     Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

12.   On or about March 29, 2008, Conte gave an interview to New York Daily News Reporters Nathanial Vinton and/or Teri Thompson, in which Defendant falsely stated that he "watched [Mosley] inject [himself] in front of me," that Mosley "knew precisely what [he was] using," and that, notwithstanding Mosley's prior public claim that Conte had misled Mosley about the legality of the products provided by Conte, "[i]t was all explained up front and there was no deception."

13.   On March 30, 2008, an article containing Conte's false statements was published in the New York Daily News (the "March 30 Article"). A true and complete copy of the March 30 Article is annexed hereto as Exhibit A and incorporated by reference herein.

14.   The statements made by Conte set forth above in Paragraphs 12 and 13 were false.

15.   The statements set forth above in Paragraphs 12 and 13 were made by Conte with knowledge of their falsity.

16.   Conte's statements set forth above in Paragraphs 12 and 13 were unprivileged.

17.   Conte intended the statements set forth above in Paragraphs 12 and 13 to appear in the March 30 Article, and with the purpose of increasing sales of Defendant's intended book by besmirching Mosley's good name and trading on Plaintiff's fame and reputation.

18.   Conte's statements set forth above in Paragraphs 12 and 13 accuse Plaintiff of criminal conduct.

19.   Conte's statements set forth above in Paragraphs 12 and 13 tend to injure Mosley in his profession as a prize fighter, both in that they impute to Mosley a general disqualification in the respect which a professional boxer peculiarly requires, and impute traits concerning professional prize fighting that lessen Mosley's ability to earn money in that profession.

20. The natural consequence of Conte's statements set forth above in Paragraphs 12 and 13 is to cause actual damage to Mosley.

21. Based upon the foregoing slander, Defendant is liable to Plaintiff in an amount to be determined at trial.

22. Conte's knowingly false statements about Mosley set forth above in Paragraphs 12 and 13 were intended as advance publicity designed to increase sales for Conte's planned book. Conte's slander was intended to cause injury to Mosley and was carried out by Defendant with a willful and conscious disregard for Mosley's rights. In publishing knowingly false statements about Mosley in order to increase sales of his intended book, Conte engaged in despicable conduct subjecting Mosley to cruel and unjust hardship, which was done in conscious disregard of Mosley's rights. Accordingly, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

## VI.

### SECOND CLAIM FOR RELIEF

### SLANDER

23. Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

24. On or about March 29, 2008, Conte gave a telephone interview (from, on information and belief, San Francisco) to USA Today reporter A. J. Perez ("Perez"). On information and belief, Defendant made false statements to Perez which were substantially identical to the false statements detailed above in Paragraphs 12 and 13.

25. The statements described above in Paragraph 24 were made by Conte with knowledge of their falsity.

26.    Conte's statements described above in Paragraph 24 were unprivileged.

27.    Conte intended the statements described above in Paragraph 24 to appear in USA Today with the purpose of increasing sales of Defendant's intended book by besmirching Mosley's good name and trading on Plaintiff's fame and reputation.

28.    Conte's statements described above in Paragraph 24 accuse Plaintiff of criminal conduct.

29.    Conte's statements described above in Paragraph 24 tend to injure Mosley in his profession as a prize fighter, both in that they impute to Mosley a general disqualification in the respect which a professional boxer peculiarly requires, and impute traits concerning professional prize fighting that lessen Mosley's ability to earn money in that profession.

30.    The natural consequence of Conte's statements described above in Paragraph 24 is to cause actual damage to Mosley.

31.    Based upon the foregoing slander, Defendant is liable to Plaintiff in an amount to be determined at trial.

32.    Conte's knowingly false statements about Mosley as described above in Paragraph 24 were intended as advance publicity designed to increase sales for Conte's planned book. Conte's slander was intended to cause injury to Mosley and was carried out by Defendant with a willful and conscious disregard for Mosley's rights.   In publishing knowingly false statements about Mosley in order to increase sales of his intended book, Conte engaged in despicable conduct subjecting Mosley to cruel and unjust hardship, which was done in conscious disregard of Mosley's rights.   Accordingly, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

# VII.

## THIRD CLAIM FOR RELIEF

## LIBEL

33.     Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

34.     On information and belief, in September of 2007, Conte sent an e-mail to a reporter affiliated with SI.com in which Defendant falsely stated, in words and substance, that he had explained to Mosley that he (Conte) was providing him with illegal steroids and performance enhancing substances.

35.     The statement set forth above in Paragraph 34 was made by Conte with knowledge of its falsity.

36.     Conte's statement set forth above in Paragraph 34 was unprivileged.

37.     On information and belief, Conte intended the statement set forth above in Paragraph 34 to appear on the SI.com website for the purpose of increasing sales of Defendant's intended book by besmirching Mosley's good name and trading on Plaintiff's fame and reputation.

38.     Conte's statement set forth above in Paragraph 34 exposed Mosley to hatred, contempt, ridicule, or obloquy, and had a tendency to injure him in his occupation.

39.     Conte's statement set forth above in Paragraph 34 is defamatory without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact.

40.     The natural consequence of Conte's statement set forth above in Paragraph 34 is to cause actual damage to Mosley.

41.    Based upon the foregoing libel, Defendant is liable to Plaintiff in an amount to be determined at trial.

42.    On information and belief, Conte's knowingly false statements about Mosley set forth above in Paragraph 34 were intended as advance publicity designed to increase sales for Conte's planned book. Conte's libel was intended to cause injury to Mosley and was carried out by Defendant with a willful and conscious disregard for Mosley's rights. In publishing knowingly false statements about Mosley in order to increase sales of his intended book, Conte engaged in despicable conduct subjecting Mosley to cruel and unjust hardship, which was done in conscious disregard of Mosley's rights. Accordingly, Plaintiff is also entitled to punitive damages in an amount to be determined at trial.

### VIII.

### FOURTH CLAIM FOR RELIEF

### PERMANENT INJUNCTION

43.    Plaintiff repeats and realleges the allegations set forth above in all of the prior Paragraphs as if fully and completely set forth herein.

44.    As explained in Exhibit A hereto, Plaintiff intends upon publishing a book in September of 2008, in which he intends to repeat the defamatory statements complained of in Paragraphs 12, 13, 24 and 34.

45.    Were Conte to publish those false statements both in the book and undoubtedly during the publicity tour that would accompany the book, Mosley would be irreparably harmed.

46.    A balancing of the equities favors Mosley.

1    47.    Mosley is entitled to a permanent injunction barring Conte from defaming Mosley

2  by making, orally or in written form, any of the statements complained of in Paragraphs 12, 13,

3  24 and 34 above.

4

5                                    IX.

6                        **DEMAND FOR JURY TRIAL**

7    48.    Plaintiff hereby demands a jury trial for all claims other that his claim for a

8  permanent injunction.

9        WHEREFORE, Plaintiff demands judgment against Defendant as follows:

10

11  A.    On his First, Second, and Third Claims for Relief:

12    1.    Compensatory damages according to proof at trial, but in excess of $75,000.

13    2.    Punitive damages in an amount to be determined at trial.

14  B.    On his Fourth Claim for Relief:

15    1.    A permanent injunction barring Conte from defaming Mosley by making, orally

16  or in written form, any of the statements complained of in Paragraphs 12, 13, 24 and 34 above.

17

18

19

20

21

22

23

24

25

26

27

28

1  C.     Costs of suit and for such other and further relief as the court deems just and proper.

2  Dated: San Francisco, California.

3

4      April 2, 2008

                                        LONG & LEVIT LLP
5

6                                        By
                                        Kim O. Dincel, Esq. (SBN 131563)
7                                        465 California Street 5th Floor
                                        San Francisco, California 94104
8                                        Tel (415) 397-2222
                                        Fax (415) 397-6392
9                                        E-mail kdincel@longlevit.com

10
                                        JUDD BURSTEIN, P.C.
11                                       1790 Broadway, Suite 1501
                                        New York, New York 10019
12                                       Tel (212) 974-2400
                                        Fax (212) 974-2944
13                                       E-mail jburstein@burlaw.com

14

15

16

17  DOCS\S0117-001\547292.V1

18

19

20

21

22

23

24

25

26

27

28

---

Complaint for Damages and Injunctive Relief

- 10 -

# EXHIBIT A

In face of athletes' denials, Victor Conte points to calendars                Page 1 of 1

# In face of athletes' denials, Victor Conte points to calendars

BY TERI THOMPSON IN NEW YORK AND NATHANIEL VINTON IN SAN FRANCISCO
DAILY NEWS SPORTS WRITERS

Sunday, March 30th 2008, 8:57 PM

SAN FRANCISCO - Three of the athletes who worked with Victor Conte at BALCO - boxer Shane Mosley and sprinters Kelli White and Tim Montgomery - have denied at one time or another that they knew they were taking banned or illegal substances provided by Conte.

But Conte, who says he will discuss all three in his new book, "BALCO: The Straight dope on Steroids, Barry Bonds, Marion Jones and What We Can Do To Save Sports," says they "all knew precisely what they were using."

"I taught them how to use substances, incuding "the clear," and inject themselves with EPO. I watched them inject themselves in front of me."

"The clear" was an undetectable steroid applied by placing drops of the yellowish liquid under the tongue with a needleless syringe; EPO is a banned performance-enhancer that is injected by needle.

Mosley, who is scheduled to fight welterweight Zab Judah on May 31 at Mandalay Bay in Las Vegas, told the Daily News in September that he inadvertently took two designer steroids - "the cream" and "the clear" - before his championship fight against Oscar De La Hoya in 2003 after he says he was misled by Conte, who disputed the claims then in an e-mail response. SI.com first reported that investigator Jeff Novitzky had said at an anti-doping conference in Colorado Springs that Mosley had used the substances.

"Those are simply lies," Conte told The News again Sunday of Mosley's statements. "It was all explained up front and there was no deception."

Conte says he has detailed doping calendars of all three athletes, including Mosley's. "I have every day and every dose," he says.

White has claimed that Conte told her he was giving her flaxseed oil and Mongomery told the BALCO grand jury that Conte assured him "the clear" was not an illegal steroid.

"Not true," Conte says.

EXHIBIT C

# In face of athletes' denials, Victor Conte points to calendars

BY TERI THOMPSON IN NEW YORK AND NATHANIEL VINTON IN SAN FRANCISCO
DAILY NEWS SPORTS WRITERS

Sunday, March 30th 2008, 8:57 PM

SAN FRANCISCO - Three of the athletes who worked with Victor Conte at BALCO - boxer Shane Mosley and sprinters Kelli White and Tim Montgomery - have denied at one time or another that they knew they were taking banned or illegal substances provided by Conte.

But Conte, who says he will discuss all three in his new book, "BALCO: The Straight dope on Steroids, Barry Bonds, Marion Jones and What We Can Do To Save Sports," says they "all knew precisely what they were using."

"I taught them how to use substances, including "the clear," and inject themselves with EPO. I watched them inject themselves in front of me."

"The clear" was an undetectable steroid applied by placing drops of the yellowish liquid under the tongue with a needleless syringe; EPO is a banned performance-enhancer that is injected by needle.

Mosley, who is scheduled to fight welterweight Zab Judah on May 31 at Mandalay Bay in Las Vegas, told the Daily News in September that he inadvertently took two designer steroids - "the cream" and "the clear" - before his championship fight against Oscar De La Hoya in 2003 after he says he was misled by Conte, who disputed the claims then in an e-mail response. SI.com first reported that investigator Jeff Novitzky had said at an anti-doping conference in Colorado Springs that Mosley had used the substances.

"Those are simply lies," Conte told The News again Sunday of Mosley's statements. "It was all explained up front and there was no deception."

Conte says he has detailed doping calendars of all three athletes, including Mosley's. "I have every day and every dose," he says.

White has claimed that Conte told her he was giving her flaxseed oil and Montgomery told the BALCO grand jury that Conte assured him "the clear" was not an illegal steroid.

"Not true," Conte says.

EXHIBIT D

 

## Los Angeles Times | Sports

You are here: LAT Home > Articles > 2008 > April > 09 > Sports

# Conte says Mosley knew of steroids

By Lance Pugmire
April 09, 2008

BALCO founder Victor Conte on Tuesday said former world champion boxer Shane Mosley knew "exactly and precisely what he was doing" when he engaged in a doping program before his 2003 victory over Oscar De La Hoya.

Mosley last week sued Conte for slander and libel after Conte said he was planning a new book that would "set the record straight" on Mosley's knowledge about using the designer steroids known as "the clear" and "the cream," and the blood-doping drug EPO.

Mosley maintains in the lawsuit that Conte told him "all of the products recommended … were entirely legal and appropriate."

But Conte said Tuesday that Mosley knew he was being given steroids.

"I didn't deceive him; he knew what he was taking and I told him that before he took it," said Conte, who served four months in federal prison for steroid distribution and money laundering after the 2003 raid of his Burlingame, Calif., Bay Area Laboratory Co-Operative resulted in the discovery of detailed doping calendars of elite athletes.

One of those athletes was Olympic sprinter Marion Jones, who in October ended years of denials and acknowledged she had used steroids and lied to federal agents looking into BALCO. She was sentenced to six months in prison and retired in disgrace.

In Mosley's case, Conte says he has access to the boxer's doping calendars and lab results, which he said help support his claims.

"I told him it was an undetectable steroid that wouldn't show up in a test," Conte said.

Pomona's Mosley, 36, had beaten his Southern California rival De La Hoya by split decision in 2000 before landing that 2003 rematch.

Conte said his doping calendars for Mosley, known in the documents by the initials "S.M.," show the boxer started using "the clear," a liquid steroid dropped under the tongue, and EPO, which was injected into Mosley's stomach area, on July 26, 2003 – exactly seven weeks before the De La Hoya rematch.

Mosley first used the drugs with Conte, BALCO vice president James Valente and Mosley's conditioning trainer Derryl Hudson watching in Conte's office, Conte said. Hudson is suing Mosley for defamation in U.S. District Court in Los Angeles, and the trainer's attorney Tuesday declined to comment about Conte's claims. Valente could not be reached Tuesday.

Conte said his records show Mosley flew to Oakland on July 26, 2003, and was transported to BALCO headquarters by limousine. The boxer also had a "baseline" blood draw taken at nearby Mills Peninsula Health Services,

Conte said.

Reinforcing that Mosley was being given "more than vitamins," Conte said, the calendar showed the boxer supplemented the EPO with iron pills, Vitamin E, folic acid and Vitamin B-12. Records show that Mosley had taken six EPO injections before a second blood draw on Aug. 8, 2003, at Bear Valley Community Healthcare District in Big Bear Lake, Conte said.

A lab test for Mosley called a hematocrit, which measures the number and size of red blood cells, showed a sharp increase, Conte said.

"He was increasing the percentage of red blood cells with every breath, increasing the number of oxygen molecules to his muscle tissue, which means instead of having shortness of breath during a long workout, your stamina is enhanced," Conte said. "We had talked about the benefits of oxygen uptake… . We talked about the benefit of EPO being at the end of the fight, with his extra stamina and endurance."

Mosley has acknowledged injecting himself in the stomach area and paying for BALCO products – Conte said the bill was $1,650 with a $900 cash payment for EPO – but the boxer maintains he believed he was using legal vitamins.

"You think vitamins cost $900 a month?" Conte asked.

In the Sept. 13, 2003, rematch against De La Hoya, all three judges awarded Mosley a 10-9 decision in the final four rounds, and Mosley won his third world title by unanimous decision, 115-113, on all three scorecards.

Conte says his calendars show Mosley received EPO through Sept. 8, 2003, and that he took eight doses of "the clear," and seven doses of "the cream" until Aug. 31, 2003.

"Yes, I watched that fight, and I remember him winning the late rounds and thinking, 'That was an edge,' " Conte said. "Shane deserves all the credit for his victory, but did I feel a part of it? In a certain regard, I guess I did."

Mosley, currently training in Big Bear for a May 31 fight against Zab Judah, was unavailable for comment Tuesday, but his wife and manager, Jin, said, "Shane never had a doping calendar or never knowingly took steroids. He was not taking anything labeled 'steroid.' "

De La Hoya, whose Golden Boy Promotions company now promotes Mosley's fights, was not available for comment Tuesday.

Mosley's attorney, Judd Burstein, said in the lawsuit that Conte's claims are a "publicity campaign to maximize sales" of his book.

Reached on Tuesday, Burstein said, "The calendars don't prove anything. Shane didn't know what he was taking, and that's completely believable to anyone who knows Shane. He wouldn't know a hematocrit from a chromatic print."

Conte said Mosley's denials make this case "Marion Jones Part 2. It's not OK for him to say he was duped, misled or deceived."

lance.pugmire@latimes.com

**Related Articles**
- Wiping the slate clean Nov 09, 2007
- Baidu's shares decline after death of CFO Jan 01, 2008
- Mad Max Jan 07, 2007
- Boxing's full-court press May 03, 2008
- Promoters settle their feud Jun 30, 2007

**More articles by Lance Pugmire**

**More articles from the Sports section**

California and the world. Get the Times from $1.35 a week

Copyright 2008 Los Angeles Times

# EXHIBIT E

1    JAMES M. WAGSTAFFE (95535)
     IVO LABAR (203492)
2    **KERR & WAGSTAFFE LLP**
     100 Spear Street, Suite 1800
3    San Francisco, CA 94105–1528
     Telephone: (415) 371-8500
4    Fax: (415) 371-0500

5    Attorneys for Defendant
     VICTOR CONTE

6

7

8                  **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10   SHANE D. MOSLEY, SR.,                  Case No. C 08-01777 JSW

11              Plaintiff,                  **OPPOSITION TO MOTION FOR
                                            EXPEDITED TRIAL**
12        vs.

13   VICTOR CONTE,                          Hearing Date: May 30, 2008
                                            Time:  9:00 am
14              Defendant.                  Courtroom: 2

15                                          HON. JEFFREY S. WHITE

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

*Page*

3    I.      Introduction ................................................................................................ 1

4    II.     Background ................................................................................................ 2

5    III.    Analysis ..................................................................................................... 3

6          A.     An August Trial Date Will Substantially Prejudice Defendant ........................... 3

7          B.     Plaintiff's Mere Hope of Obtaining A Permanent Injunction Is Not Good

8                 Cause to Expedite a Trial Involving Substantial First Amendment

                Concerns ................................................................................................ 7

9

10         C.     An Expedited Trial Will Not Entitle Plaintiff to an Unconstitutional Prior

                Restraint Preventing the Publication of a Book By A Third Party ...................... 8

11    IV.    Conclusion ............................................................................................. 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW

– i –

OPPOSITION TO MOTION FOR EXPEDITED
TRIAL

1

# **TABLE OF AUTHORITIES**

2

*Page*

3

### *Cases*

4

Alexander v. United States,
    509 U.S. 544 (1993)........................................................................... 9

5

Anderson v. Libery Lobby,
    477 U.S. 242 (1986)........................................................................... 6

6

7

Balboa Island Village Inn v. Lemen,
    40 Cal. 4th 1141 (2007)................................................................. 8, 9

8

Batzel v. Smith,
    333 F.3d 1018 (9th Cir. 2003) ......................................................... 7

9

Carrol v. Princess Anne,
    393 U.S. 175 (1968).......................................................................... 10

10

11

CBS, Inc. v. Davis,
    510 U.S. 1315 (1994)......................................................................... 9

12

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)........................................................................... 6

13

14

Harrods, Ltd. v. Sixty Internet Domain Names,
    302 F.3d 214 (4th Cir. 2002) .......................................................... 5

15

Pennekamp v. Florida,
    328 U.S. 331 (1946)........................................................................... 10

16

17

Semitool, Inc. v. Tokyo Electron Am., Inc.,
    208 F.R.D. 273 (N.D. Cal. 2002)...................................................... 7

18

Tory v. Cochran,
    544 U.S. 734 (2005)........................................................................... 9

19

20

United States v. Lockheed Missiles & Space Co.,
    190 F.3d 963 (9th Cir.1999) ........................................................... 7

21

22

### *Statutes*

23

Cal. Code Civ. Proc. § 425.16 .......................................................... 1, 7

24

### *Rules*

25

Fed. R. Civ. Proc. 62(c) ..................................................................... 8

26

27

28

KERR
&
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW

OPPOSITION TO MOTION FOR EXPEDITED
TRIAL

1   **I.    INTRODUCTION**

2        Defendant opposes Plaintiff's proposed trial date of August 2008. Plaintiff not only

3   seeks a permanent injunction banning the re-publication of statements of a matter of public

4   concern regarding a public figure, but also "immense" compensatory and punitive damages.

5   While the Court has permitted expedited discovery in this matter, advancing the trial date in this

6   case to just a few months after the complaint was served requires a different analysis. This is a

7   complicated case involving numerous witnesses (many of whom reside out-of-state), extensive

8   third-party document demands, complex issues related to grand jury and other criminal

9   proceedings, as well as expert testimony related to wide-ranging medical issues. It would be

10  unfair to rush defendant to trial under these circumstances.[1]

11       If Defendant is compelled to proceed to trial by August 2008, he will be greatly

12  prejudiced. Defendant needs time to obtain testimony from witnesses, obtain extensive

13  documentation from Plaintiff and numerous third-party sources, as well as retain experts to

14  address the substantial expert medical issues in this case. Defendant does not seek to delay this

15  action. Indeed, a trial date within a year is reasonable. However, it is not possible to defend this

16  case fairly if Defendant is forced to trial by August.

17       Even if the case proceeded to trial on an expedited basis, Plaintiff's proposed schedule is

18  wholly unrealistic and would not result in the prevention of the alleged "wrong;" namely an

19  injunction preventing the publication of statements in Mr. Conte's planned book. Even if trial

20  commenced by August 18th, as Plaintiff has requested, a judgment and injunction would not

21  issue until well after the book is released by third parties on September 2, 2008. Accordingly,

22  the premise for the proposed expedited trial is flawed.

23       In any event, Plaintiff is not entitled to a permanent injunction here, even if he did

24  prevail. A permanent injunction in this case would be an unconstitutional prior restraint on the

25  _____

26  [1]   It should be noted that *all* discovery may be unnecessary, if: (1) this Court grants the
     anticipated Special Motion to Strike this lawsuit under California's Anti-SLAPP statute (Cal.

27  Code Civ. Proc. § 425.16) or (2) if it turns out, as it may be the case, there is no diversity

28  jurisdiction here as Plaintiff claims.

1    publication of a book about a matter of public concern and a public figure. There is no federal

2    precedent for the issuance of such an order, let alone one that would enjoin the actions of a third-

3    party book publisher that has not been joined in this action.

4    **II.    BACKGROUND**

5         This case arises from the well-publicized sports drug scandal involving professional

6    athletes use of performance enhancing drugs provided by Bay Area Laboratory Cooperative

7    ("BALCO"). Defendant Victor Conte was the owner of the business.

8         This is not the first time a professional athlete has filed a defamation action against Mr.

9    Conte based on the premise that the athlete "didn't know" they were taking illegal drugs

10   provided by BALCO. Sprinter Marion Jones filed a similar action, captioned as *Jones v. Conte,*

11   *Case No. 04-05312 SI*, in 2004. (*Declaration of Ivo Labar (hereinafter "Labar Decl.") in*

12   *Opposition to Motion for Expedited Trial ¶ 2, Exh. A, Jones Complaint*). Jones, like Mosley,

13   denied taking banned performance enhancing drugs. The *Jones* action never made it past the

14   pleading stage. That case was stayed pending the BALCO criminal proceedings and was

15   eventually dismissed. (*Labar Decl ¶3, Exh. B, Jones Docket*). Jones was later prosecuted and

16   sentenced to six month months in prison for lying about her use of banned performance

17   enhancing drugs. (*Labar Decl. ¶4, Exh. C, Jones News Article*). Other professional athletes,

18   such as Trevor Graham and Barry Bonds, are also facing criminal prosecution arising from their

19   denying use of performance enhancing drugs provided by BALCO. (*Labar Decl. ¶5, Exh. D,*

20   *BALCO News Article*).

21        Mosley's allegations in this action are similar to those made by Marion Jones. Mosley's

22   complaint alleges that, in July 2003, Mosley and his trainer, Daryl Hudson, met with Conte.

23   (*Complaint ¶ 7*). Conte allegedly recommended certain health supplements to Mosley. (*Id.*) The

24   complaint further alleges that Conte misled Mosley because Conte allegedly told Mosley that the

25   items were "healthy, legal and permitted for athletes." (*Id.*) Mosley further alleges that he was

26   "[a]lways extremely concerned about his health and playing by the rules . . ." (*Id.*) Mosley's

27   complaint seeks compensatory and punitive damages, along with a permanent injunction

28   preventing Conte from publishing a book detailing Mosley's drug use. (*Id.* at p. 9) The

KERR
&
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW

-2-

OPPOSITION TO MOTION FOR EXPEDITED
TRIAL

1    complaint further alleges that on March 29th and 30th 2008, Conte gave a series of interviews in

2    which he falsely accused Mosley of "knowingly" taking illegal performance-enhancing drugs.

3    (*Id.* ¶¶ *12, 13, 24, and 34*).

4        Despite the fact that there has already been widespread international news coverage of his

5    involvement with BALCO, Mosley contends that repeating the allegation that he knowingly used

6    drugs will now cause "irreversible damage" to his reputation on a "national" scale. (*Plf's Motion*

7    *for Expedited Discovery and Trial at p. 3*). In the face of Mosley's claim of irreparable injury,

8    his counsel has also stated that he will be seeking "immense" compensatory and punitive

9    damages. (*Labar Decl. ¶ 6, Exh. E, E-mail*).

10        In the hopes of quickly obtaining a permanent injunction that will effectively serve as a

11    prior restraint of Mr. Conte's planned book on steroid use by athletes, Plaintiff has proposed a

12    schedule that will bring this matter to trial by August 15, 2008. Plaintiff also seeks a deposition

13    cut-off of June 20, 2008, and expert witness cut-off of June 30, 2008, and a dispositive motion

14    cut-off of July 15, 2008. (*Labar Decl. ¶ 7, Exh. F, Burstein May 8, 2008 Letter*).

15    **III.    ANALYSIS**

16        **A.    AN AUGUST TRIAL DATE WILL SUBSTANTIALLY PREJUDICE DEFENDANT**

17        Plaintiff's proposed August 2008 trial date will greatly prejudice Defendant. Plaintiff's

18    proposed schedule allows for fewer than two months of discovery. That is not a sufficient

19    amount of time to conduct discovery and defend a public figure defamation case in which

20    Plaintiff is seeking sizeable compensatory and punitive damages as well as a permanent

21    injunction that will effectively serve as a prior restraint of the publication of a book on a matter

22    of public concern. Given the parties are at the very outset of this action, the Defendant has only

23    made a preliminary analysis of the discovery needed to defend this case. Even at this stage,

24    however, it is clear that this lawsuit involves complicated and daunting discovery issues that will

25    take more than two months to resolve.

26        Defendant's initial analysis of the possible witnesses in this case reveals that that there

27    are more than two dozen perspective witnesses who may be called to testify. (*Labar Decl. ¶ 8*).

28    These witnesses include the half-dozen eyewitnesses to Mosley's drug use at BALCO, Mosley's

KERR
&
WAGSTAFFE
LLP

– 3 –

1    health care providers, former boxing trainers, journalists and medical experts. Given that many

2    of these witnesses reside out-of-state, it will be necessary to depose them to secure their

3    testimony for trial.[2]  (*Id.*)

4            A substantial complicating factor to any expedited trial is that several of the witnesses in

5    this case are journalists.[3]  Both parties are seeking testimony, including confidential notes and

6    other communications, from these reporters. This will likely lead to substantial discovery

7    disputes involving third-party news organizations. The related BALCO criminal proceedings are

8    also a further complicating factor that will impede discovery in this action. Mosley, like many

9    other professional athletes that were BALCO customers, testified to the grand jury in that action.

10   Conte will likely make a motion to the court seeking the release of Mosley's testimony in that

11   grand jury proceeding. The presence of on-going criminal prosecutions in the BALCO matter is

12   also another complicating factor. Many witnesses that can corroborate Conte's statement that it

13   is not possible to use illegal performance enhancing drugs "unknowingly," have faced or are

14   currently facing criminal prosecution. It will likely take substantial motion practice before Conte

15   can obtain the testimony that he seeks from witnesses in this category. It is impossible that the

16   discovery issues involving these witnesses can be resolved in two months time.

17           This will also be a document intensive case. In order to disprove Mosley's contentions

18   that he did not "knowingly" use drugs and that he is always concerned about "playing by the

19   rules," Defendant will seek all of Mosley's medical and training records. Given the Federal

20   Rules policy of broad disclosure during discovery, Defendant will be entitled to these records.

21   Defendant is at a major disadvantage in obtaining this information because he does not have, nor

22   _____

23   [2]     Plaintiff's proposed trial schedule also ignores the practical reality of scheduling this
24   number of deponents and trial witnesses during the busy summer months where many of the
     likely witnesses will have scheduling conflicts. In addition, trial counsel for Mr. Conte, James
25   Wagstaffe and Ivo Labar, of Kerr & Wagstaffe LLP, both have pre-paid vacations scheduled for
     August. (*Labar Decl. ¶ 9*).
26
     [3]    These reporters include: A.J. Perez (*USA Today*); Teri Thompson and Nathaniel Vinton (*New
27   York Daily News*). That is to say nothing of the *San Francisco Chronicle* reporters who have
     written extensively on the BALCO story.
28

– 4 –

CASE NO. C 08-01777 JSW                              OPPOSITION TO MOTION FOR EXPEDITED
                                                     TRIAL

1    will he have before June, a complete listing of Plaintiff's health care providers or sports trainers.

2    Sufficient time for discovery is especially important when facts are in the exclusive control of

3    the opposing party. Harrods, Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 246-47 (4th

4    Cir. 2002). Assuming subpoenas were served upon the custodians of these records in the next

5    month, the documents would not be produced, at the earliest, until August. Production of these

6    records just before trial would effectively preclude any analysis of these records by Defendant's

7    experts.

8        Defendant will also seek documents from a number of other third-party sources. Given

9    that this is a reputational injury case, Defendant must test Mosley's allegation that he is not a

10   drug user and that he "plays by the rules." (Complaint ¶ 7). Defendant will need time to

11   discover the identity of, and subpoena information from, various athletic regulatory commissions

12   across the country to obtain information regarding disciplinary investigations against Mosley for

13   possible violations of boxing regulations, including those for drug use and "fight fixing."

14   (Labar Decl. ¶ 10). Defendant will also seek Mosley's banking records for the summer of 2003,

15   which will prove that Mosley purchased BALCO drugs with his personal check. It will take

16   many months, and likely some motion practice, before all of these subpoenas are returned with

17   complete and full production. Of course, this is just a preliminary listing of some of the third-

18   party sources from which Defendant will subpoena documents. Undoubtedly, as discovery

19   progresses, other discoverable sources will emerge. It will take additional time to subpoena

20   testimony and documents from these sources as well.

21       Defendant also needs time to retain experts. Defendant will need to retain drug testing

22   and other medical experts to analyze Mosley's medical records for signs of drug use and to

23   confirm that Mosley was in fact on the performance enhancing regimen that Mr. Conte has

24   described. The evidence at trial will show that Mosley purchased and used three illegal

25   performance enhancing drugs from BALCO: the Clear, the Cream and Erythropoietin (EPO).

26   Each of these drugs leave tell-tale signs in a patient's blood work. For example, EPO increases

27   the production of hematocrit (the percentage of red blood cells compared to whole blood

28   volume). Defendant's experts will need time to analyze Mosley's medical records to opine on

KERR
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW

– 5 –

OPPOSITION TO MOTION FOR EXPEDITED
TRIAL

1    Mosely's illegal drug use in the period of time leading up to his championship bout with Oscar

2    de la Hoya in 2003.  Defendant will also likely need to retain an expert in polygraph techniques.

3    According to published reports, Mosley submitted to a lie detector test related to the doping

4    allegations that first surfaced in 2003.[4]  Defendant's experts will need time to review and

5    analyze the lie detector results.  It is not possible for Defendant to retain these experts and

6    complete the extensive Rule 26 expert disclosure process in fewer than two months.

7          An August trial date also does not provide a meaningful amount of time to respond to

8    more than one set of written discovery.  It is prejudicial to Defendant to impose such scope and

9    time limits on the use of written discovery.  Plaintiff's arguments for a quick trial are at odds

10   with the written discovery it has already propounded in this action, which is so voluminous

11   Defendant may need to seek an extension of time to respond to it.

12         The August trial date does even not provide a reasonable amount of time for Defendant to

13   bring dispositive pre-trial motions, including a motion for summary judgment.  Defendant is also

14   entitled to a reasonable amount of time to present material evidence in support of a motion for

15   summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (Rule 56 "mandates

16   the entry of summary judgment, after adequate time for discovery . . .").  As described above,

17   this matter is a complex one.  Because Mosley is an all-public figure, and the doping allegations

18   are a matter of public concern, Mosley will need to show by "clear and convincing" evidence

19   that Conte acted with "actual malice" when he made the allegedly defamatory statements.

20   Anderson v. Libery Lobby, 477 U.S. 242, 254 (1986).  This is a high evidentiary burden for

21   Plaintiff to meet, and the inquiry will be complex and wide-ranging—possibly requiring

22   expanded discovery, if appropriate.

23         An August trial date would also be prejudicial because, in addition to a permanent

24   injunction that will effectively serve as a prior restraint on a matter of public concern, Mosley is

25   also seeking sizeable compensatory and punitive damages.  Indeed, Mosley's counsel has

26   _____

27   [4]    Like Mosley, Marion Jones also allegedly passed a lie detector test regarding her BALCO

28   drug use.

KERR
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW                    OPPOSITION TO MOTION FOR EXPEDITED
                                           TRIAL

1    characterized the damages as "immense." (*Labar Decl. ¶ 6, Exh. E, E-mail*).  Two months is not

2    enough time to prepare for the defense of a case with substantial potential exposure in monetary

3    damages.  In light of the ramifications this case will have both on Defendant, and the media, it

4    would be unfair to impose an August trial date in this action.[5]

5        **B.    PLAINTIFF'S MERE HOPE OF OBTAINING A PERMANENT INJUNCTION IS NOT**

6        **GOOD CAUSE TO EXPEDITE A TRIAL INVOLVING SUBSTANTIAL FIRST**
        **AMENDMENT CONCERNS**

7        Expediting discovery and trial requires a showing of "good cause."  <u>See, e.g.</u>, <u>Semitool,</u>

8    <u>Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  The sole basis for

9    "good cause" advanced by Mosley is that, following a trial, he hopes to obtain a permanent

10   injunction banning the publication of certain statements in Conte's planned book about Mosley's

11   drug use.  That is not good cause.

12       As a threshold matter, Defendant intends to file a SLAPP motion in response to the

13   complaint.  As the Court is aware, California law provides for a special motion to strike against

14   so-called "SLAPP" suits (standing for "Strategic Litigation Against Public Participation")— i.e.,

15   lawsuits brought "primarily to chill the valid exercise of constitutional rights of freedom of

16   speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(j).  In <u>United</u>

17   <u>States v. Lockheed Missiles & Space Co.</u>, 190 F.3d 963 (9th Cir.1999), the Ninth Circuit held

18   that California's anti-SLAPP remedy applies to diversity actions in federal court. <u>Lockheed</u>, 190

19   F.3d at 973.  Given a filing date of May 30, 2008, the SLAPP motion here will likely be heard in

20   July.  If the motion is denied, Defendant has an automatic right of appeal.  <u>Batzel v. Smith</u>, 333

21   F.3d 1018, 1025-26 (9th Cir. 2003).  Accordingly, unless the Court grants Defendant's SLAPP

22   motion, the case will proceed to the Ninth Circuit.

23       Even if the SLAPP process were not going to delay the resolution of this claim, Mosley's

24   proposed trial schedule is not realistic.  Trial cannot be completed in two weeks.  A case

25   involving this many witnesses will take at least three to four weeks of trial time to resolve,

26   _____

27   [5]    Defendant does not seek to unduly delay this action.  Indeed, Defendant agrees that the

28   case should proceed as expeditiously as possible under the circumstances.

1  excluding the post-trial motion process that will likely include briefing on the issue of the

2  propriety of a permanent injunction. Mr. Conte's book is scheduled to be published by a third

3  party on September 2, 2008. It is not practical, or even possible, for the Court to have a jury trial

4  where Plaintiff is seeking sizable compensatory and punitive damages, as well as equitable relief,

5  and have a judgment entered by that date. Even if a trial were completed by September 2, 2008,

6  Conte could still move for a stay of the injunction pending appeal. Fed. R. Civ. Proc. 62(c).

7  Accordingly, there is no likelihood that a permanent injunction would prevent the publication of

8  the statements that Mosley is complaining about. Moreover, the proposed permanent injunction

9  would not prevent third parties from repeating Conte's remarks that Mosley knowingly took

10  steroids. Indeed, as previously described, Mosley has already admitted to taking illegal drugs,

11  and that admission has been widely publicized. (*See, e.g., Declaration of Ivo Labar in*

12  *Opposition to Motion for Expedited Discovery; Docket No. 21*). Thus, Mosley's sole basis for

13  expediting the trial, *i.e.* the purported need for a permanent injunction, is without merit and

14  therefore does not demonstrate good cause.

15  **C.  AN EXPEDITED TRIAL WILL NOT ENTITLE PLAINTIFF TO AN
      UNCONSTITUTIONAL PRIOR RESTRAINT PREVENTING THE PUBLICATION OF A
16  BOOK BY A THIRD PARTY**

17  Even if Mosley's proposed trial schedule was realistic, he would not be entitled to an

18  unconstitutional prior restraint preventing the publication of Conte's statements about Mosley's

19  drug use. The book will not be published by Conte, but rather by a book publisher who is not a

20  party to this action.

21  Mosley stakes his supposed entitlement to a permanent injunction on Balboa Island

22  Village Inn v. Lemen, 40 Cal. 4th 1141, 1156 (2007). In Lemen, the California Supreme Court

23  found that, in limited circumstances, a court may enjoin a defendant from repeating certain

24  statements that have already been found to be defamatory at trial. Id. at 1148. Lemen involved a

25  discrete factual circumstance where a disgruntled neighbor was found to have repeatedly

26  harassed and made defamatory statements about a nearby business. Id. at 1146. The neighbor,

27  among other things, repeatedly and falsely alleged that the business was involved in "child

28  pornography" and "sex videos." Id. In a narrow 4-3 decision, the California Supreme Court

KERR
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW

– 8 –

OPPOSITION TO MOTION FOR EXPEDITED
TRIAL

1   narrowly held that "following a trial on the merits at which it is determined that the defendant

2   defamed the plaintiff, the court may issue an injunction prohibiting the defendant from repeating

3   the statements determined to be defamatory." Id. at 1156-57.

4       Lemen is readily distinguishable from this case. First, Lemen did not involve a public

5   figure or a matter of public concern. Indeed, the Lemen court noted that "[t]he limitations upon

6   actions for defamation brought by public figures do not apply here." Id. at 1147, n. 1.

7   Therefore, the special constitutional protections afforded to speakers on these subjects were not

8   at issue in Lemen and the California Supreme Court did not consider them. Second, the plaintiff

9   in Lemen sought only injunctive relief. Accordingly, the court was not required to consider

10   whether money damages would have provided an adequate remedy at law.

11       In any event, the California Supreme Court's interpretation of the First Amendment is not

12   binding on federal court. The United States Supreme Court has not yet ruled whether a

13   permanent injunction may be issued in a case involving a public figure. See, e.g., Tory v.

14   Cochran, 544 U.S. 734, 736-37 (2005). However, the better view is that a court cannot issue

15   such an injunction because it would constitute an impermissible prior restraint.

16       The Supreme Court has held that a court order permanently enjoining speech is a prior

17   restraint, even if it follows a judicial proceeding. The Court has expressly declared that

18   "permanent injunctions . . . that actually forbid speech activities are classic examples of prior

19   restraints" because they impose a "true restraint on future speech." Alexander v. United States,

20   509 U.S. 544, 550 (1993); see also id. at 572 (Kennedy, J., dissenting) (the prior restraint

21   doctrine "encompasses injunctive systems which threaten or bar future speech based on some

22   past infraction").

23       The U.S. Supreme Court would not permit permanent injunctions to issue in defamation

24   cases because such an injunction is an "extraordinary remed[y]" to be used "only where the evil

25   that would result from the reportage is both great and certain and cannot be mitigated by less

26   intrusive measures." CBS, Inc. v. Davis, 510 U.S. 315, 1317 (1994). Such a showing could not

27   be made here, given the overwhelming publicity Mosley's drug use has already been given by

28   the national media. (Declaration of Ivo Labar in Opposition to Motion for Expedited Discovery;

KERR
&
WAGSTAFFE
LLP

CASE NO. C 08-01777 JSW

– 9 –

OPPOSITION TO MOTION FOR EXPEDITED
TRIAL

1   *Docket No. 21*).  Moreover, the Supreme Court has found that money damages provide an

2   adequate remedy in defamation cases.  <u>Pennekamp v. Florida</u>, 328 U.S. 331, 343 (1946) ("when

3   statements . . . amount to defamation, a judge has a remedy in damages for libel as do other

4   public servants.").  There is no explanation here as to why money damages would not afford

5   Mosley with an adequate remedy at law, if he is successful.  All told, the issuance of a permanent

6   injunction impacting First Amendment rights is not a step to be taken lightly, and certainly not

7   on the hasty and prejudicial schedule proposed by Plaintiff.

8        In addition to the obvious First Amendment concerns, Plaintiff does not explain how the

9   proposed injunction would remedy the wrong he alleges, namely further damage his national

10  reputation.  The proposed injunction could not legally apply to third parties without notice and

11  opportunity for those third parties to be heard.  <u>Carrol v. Princess Anne</u>, 393 U.S. 175 (1968).

12  Neither Mr. Conte's publishing company nor any other news organizations are party to this

13  action.  Accordingly, the "harm" that Mosley's permanent injunction seeks to prevent cannot be

14  achieved through a permanent injunction against Mr. Conte.  Mosley's perceived need for a

15  "permanent injunction" is too slender a reed upon which to sustain a request for an expedited

16  trial.

17  **IV.    CONCLUSION**

18       For the reasons explained above, Defendant respectfully requests that the Court deny

19  Mosley's motion for an expedited trial.

20

21  DATED: May 16, 2008

22                                          **KERR & WAGSTAFFE LLP**

23

24                          By _____/s/_____
                                          IVO LABAR
25
                                          Attorneys for Defendant
26                                          VICTOR CONTE

27

28

EXHIBIT F

Kim O. Dincel, Esq. (SBN 131563)
Long & Levit LLP
465 California Street 5th Floor
San Francisco, California 94104
Tel (415) 397-2222 Fax (415) 397-6392
E-mail kdincel@longlevit.com

JUDD BURSTEIN, P.C.
Judd Burstein (Admitted *pro hac vice*)
1790 Broadway, Suite 1501
New York, New York 10019
Tel (212) 974-2400 Fax (212) 974-2944
E-mail jburstein@burlaw.com

*Attorneys for Plaintiff,*
SHANE D. MOSLEY, SR.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| SHANE D. MOSLEY, SR., | ) | 08-Civ-1777 (JSW) |
| *Plaintiff,* | ) | |
| | ) | **DECLARATION OF SHANE D.** |
| vs. | ) | **MOSLEY, SR.** |
| VICTOR CONTE, | ) | |
| | ) | Date:      May 30, 2008 |
| *Defendant.* | ) | Time:      10:00 a.m. |
| | ) | Courtroom: 2, 17th Floor |
| | ) | Hon. Jeffrey S. White |

**SHANE D. MOSLEY, SR.,** hereby declares under penalty of perjury:

1.      I am the Plaintiff in this action.

2.      I submit this Declaration to demonstrate why Defendant Victor Conte's ("Conte"

or "Defendant") anticipated motion to dismiss the complaint has no merit. The purpose of this

Declaration is to place before the Court factual information relevant to my anticipated opposition

to Defendant's motion.   In addition, I explain why a prompt resolution of this case is so important to me.

## THE MERITS OF MY CLAIM

3.    I am a professional boxer, and I have been defamed by Defendant, the infamous principal of the Bay Area Laboratory Co-operative ("Balco"), on multiple occasions.

4.    In or about July of 2003, I met with Conte at Conte's business, Balco, for the purpose of obtaining **legal** supplements to aid my training.   At this meeting with Conte, samples of my blood were taken and analyzed.   Conte then recommended a regimen of products that he told me would help with my endurance.

5.    Further, at the meeting with Conte, I specifically asked Conte for assurances that everything that he was recommending was both legal and healthy.   Conte specifically gave me that assurance.   His public claims that he explained to me that he was recommending illegal substances and procedures are also a lie.

6.    Significantly, I have never denied taking the products recommended to me by Conte.   Indeed, I forthrightly testified about them before the Grand Jury.   However, I have always denied that Conte ever told me, or that I knew, that I was taking anything that was illegal or in any way barred by the rules of my sport.

7.    I purchased and received the following supplements from Balco: "the cream", "the clear", and Erythropoietin (EPO).   I admitted to the Grand Jury that I had made these purchases.   However, at no time was I ever told, by Conte or anyone associated with Balco, that these products were steroids or illegal or banned performance enhancing drugs.   In other words, Conte never told me, in sum or substance, that the supplements provided to me by or on behalf of Conte or Balco were undetectable steroids or other banned substances that would not show up in

a drug test.  To the contrary, I explicitly sought and received Conte's assurance that everything he was recommending was entirely legal and authorized for use in my sport.

## MY NEVADA CITIZENSHIP

8.    Conte has also claimed that I am not a citizen of Nevada.  This is also not true.

9.    I own two homes in Las Vegas, Nevada, the first of which was purchased in 2002 or 2003.

10.    I have a Las Vegas cell phone number, which I began using well before this action began.

11.    The companies I own, and through which I conduct my boxing career - Sugar Shane, Inc. and Pound for Pound Promotions, Inc. - are Nevada Corporations organized in 2001 and 2002 respectively.  The principal places of business of these corporations were, until recently, New York and, prior to commencement of this action, Nevada.

12.    I have not maintained bank accounts in California for at least the last five years. Rather, all of my bank accounts have been maintained in either Nevada or New York.

13.    Since at least 2005, I have maintained a Nevada driver's license and all of my cars have been registered in the State of Nevada.

14.    Since at least 2005, I have filed tax returns as a resident of Nevada.

15.    None of my earned income from my career as a professional boxer has been earned from fights in California since June 17, 2000.  Rather, since that date, I have fought in Las Vegas 11 out of 15 times, with the other bouts taking place in either New York or Indianapolis.

16.    It is true that I jointly own a home in La Verne, California with my wife and also own a home in Big Bear where I have done some of my training.  However, I do not live with

my wife full time for a number of reasons, including the demands of my career, and consider Las Vegas to be my primary residence.   More importantly, we have maintained the home in California because one of my children was in school at the time of my move to Nevada, and we did not want to upset his schedule.   Nonetheless, virtually all of the time when the children are not in school is spent outside of California, and we ultimately do not intend to maintain a residence in California.   Further, even during the school year, I spend much of my time in Las Vegas while my wife remains in California.

**THE NEED FOR A SPEEDY TRIAL**

17.    I cannot begin to explain how devastating Conte's false allegations have been to me.  I have been a professional athlete my entire adult life, and I believe that I have carved out an important place for myself in the sport's history.  All of my life's work is at risk because of Conte's lies.

18.    Further, the next phase of my economic life, after retirement from the sport in the next few years, will be based upon my career in the ring.  I have a brand based upon the highest reputation for sportsmanship, and that brand is being irreparably tarnished by Conte.

19.    Worse still, if the trial of this case is not completed prior to publication of Mr. Conte's book so that I can secure an injunction, I will be forced to suffer through a likely international television and print publicity tour and an internationally published book in which Mr. Conte will further seek to destroy my reputation with his lies. If this occurs, even a subsequent victory at trial will not make me completely whole – regardless of how much of a damages award I win – because my name will have already been linked to the use of illegal drugs to such a great degree that it will not be fixable.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 22nd day of May 2008.

SHANE D. MOSLEY, SR.

EXHIBIT G

## CONFIDENTIAL

JAENAM J. COE (SBN #175920)
LAW OFFICES OF JAENAM COE PC
3660 Wilshire Blvd. Suite 524
Los Angeles, CA 90010

Telephone: 213-389-1400
Telefax:  213-387-8778
Attorney for DERRYL HUDSON

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 05 2008

JOHN A. CLARKE, CLERK

BY D.M. SWAIN, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES:   (UNLIMITED JURISDICTION)

| | |
|---|---|
| DERRYL HUDSON, an individual and dba POWER N SPEED;<br><br>Plaintiff,<br><br>vs.<br><br>SHANE MOSLEY, an individual; DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>BC384963<br><br>**COMPLAINT**<br>Defamation |

Plaintiff complains and alleges against the defendants as follows:

### FIRST CAUSE OF ACTION

### (DEFAMATION: AGAINST ALL DEFENDANTS)

1.      At all times herein mentioned Plaintiff, DERRYL HUDSON ("PLAINTIFF"), was and is an individual residing in the county of Los Angeles, State of California, and is a professional boxing trainer doing business under the assumed name of 'POWER N SPEED'.

2.      Upon information and belief, Defendant, SHANE MOSLEY ("MOSLEY") an individual residing in the county of Los Angeles, State of California.

-1-
**COMPLAINT**

# CONFIDENTIAL

3.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 - 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

4.      On or about September 27, 2007 and on several occasions prior thereto, defendants spoke the following words in front of the reporters and gathering of 10 to 20 people at each time, of and concerning the plaintiff, HUDSON: Plaintiff gave performance-enhancing substance(s) that were banned by the Athletic Commissions to Defendant; that Plaintiff gave the substances as part of the workouts, and Defendant did not know "what the hell it was"; that Defendant was told by Plaintiff that nothing given to him was on the list of the banned substances. Defendant further stated that Plaintiff convinced him to visit Victor Conte's BALCO Laboratory despite the fact the Defendant didn't want to go; that Plaintiff pressured him to take illegal designer steroids "the clear and "the cream" as well as the blood doping substance EPO and that Defendant was totally unaware that he was taking performance enhancing substances and felt the banned substances were pushed on him by the Plaintiff

5.      The words were heard by plaintiff and the people who then reported the statement in mass media.

6.      These words were slanderous per se because they accused plaintiff of committing the crime of dealing with banned substances. They were slanderous per se further because they make false allegations injurious to Plaintiff in his trade, business, or profession.

7.      The words uttered were a false statement because Plaintiff never gave, 'pushed,' recommended or in any way made the Defendant take the banned substances.

-2-
**COMPLAINT**

# CONFIDENTIAL

8.    The words of the Defendants carried a defamatory meaning because they impede upon the professional quality of Plaintiff's business practice.

9.    The words of the Defendants were understood by those who saw, read and/or heard them in a way that defamed plaintiff.

10.    As a result of the above-described words, plaintiff has suffered general damages to his reputations.

11.    As a further proximate result of the above-described words, plaintiff has suffered the following special damages: injury to plaintiff's professional and occupational capacity and loss of business resulting from the tarnished reputation and professional capacity, all to their injury in the sum according to proof.

12.    The above-described words were spoken by the defendant with malice and/or oppression and/or fraud in that at the time the words were spoken, and the words were spoken in total and wanton disregard of the harm inflicted to Plaintiff, and thus an award of exemplary and punitive damages is justified.

## SECOND CAUSE OF ACTION

### (Preliminary and Permanent Injunction: Against All Defendants)

13.    Plaintiff refers to and incorporates by reference as though fully stated herein Paragraphs 1 through 12 above.

14.    Unless the Defendants are enjoined from further stating or otherwise making statements defaming the Plaintiff, the damage to Plaintiff will compound.

15.    Unless so enjoined by order of this Court, Plaintiffs will suffer and continue to irreparable harm and the exact nature and magnitude of damages resulting form the Defendants' conduct may not be ascertained.

-3-
**COMPLAINT**

# CONFIDENTIAL

16.    A preliminary injunction as set forth in the preceding paragraph is necessary and essential for the maintenance of the status quo and to minimize damages to Plaintiffs.

WHEREFORE, plaintiff prays judgment against defendant as follows:

1.    General damages according to proof;

2.    Items of special damage for interference with earning capacity and loss of business, as above mentioned in conformity to proof;

3.    A preliminary injunction and permanent injunction enjoining Defendants and their agents and all persons acting under Defendants' auspices from making any further statement regarding the Plaintiff.

4.    For Punitive damages

5.    For attorney's fees;

6.    All costs of suit; and

7.    For such other and further relief as the Court deems just and proper.

Dated: February 1, 2008

LAW OFFICES OF JAENAM J. COE

BY: _____
Jaenam J. Coe
Attorney for Plaintiff

-4-
**COMPLAINT**

COPY

1  JEFFREY SPITZ (SBN #119343)
   GREENBERG GLUSKER FIELDS
2    CLAMAN & MACHTINGER LLP
   1900 Avenue of the Stars, 21st Floor
3  Los Angeles, California 90067-4590
   Telephone: 310.553.3610
4  Fax: 310.553.0687
   jspitz@ggfirm.com
5
6  Attorneys for Defendant Shane Mosley
7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10  DERRYL HUDSON, an individual and       Case No. CV08-01108 ABC
    dba POWER N SPEED;                                              (Ex)
11                                          NOTICE OF REMOVAL OF
              Plaintiff,                    ACTION
12
         vs.
13
    SHANE MOSLEY, an individual; DOES
14  1 through 100, inclusive,
15            Defendants.
16

17

18  TO THE CLERK OF THE ABOVE ENTITLED COURT:

19       PLEASE TAKE NOTICE that Defendant Shane Mosley ("Mosley") hereby

20  removes to this Court the state action described below pursuant to 28 U.S.C.

21  §§ 1332, 1441, and 1446.

22       1.    On February 5, 2008, Plaintiff Derryl Hudson (d/b/a Power N Speed;

23  "Hudson") commenced an action in the Superior Court of the State of California

24  for the County of Los Angeles, styled *Derryl Hudson dba Power N Speed v. Shane

25  Mosley and Does 1 through 100*, Case No. BC384963.

26       2.    While Mosley has not yet been served with the Complaint that was

27  filed in State Court, his attorneys have received a copy of the Complaint by virtue

28

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  of the State Court's notice procedure. A true and correct copy of the Complaint is

2  attached hereto as Exhibit A.

3      3.   This Notice of Removal is timely under 28 U.S.C. § 1446(b) because

4  it is filed before thirty (30) days elapses after Mosley receives the Complaint.

5      4.   Venue lies in this Court pursuant to 28 U.S.C. § 1441(a) because the

6  Central District of California embraces the place where the state court action is

7  pending, *i.e.*, the Superior Court of the State of California for the County of Los

8  Angeles, Central District.

9      5.   Removal of this action from the Superior Court of the State of

10 California to this Court is proper under 28 U.S.C. § 1441(a) because this Court

11 would have had original jurisdiction of the action on the basis of diversity of

12 citizenship, 28 U.S.C. § 1332(a)(1), had the action originally been brought in this

13 Court.

14     6.   Original jurisdiction on the basis of diversity of citizenship exists

15 because:

16         a.   Hudson alleges that he resides in the county of Los Angeles,

17 State of California. Complaint at ¶ 1. Mosley is informed and believes and based

18 thereupon alleges that Hudson is a citizen of the State of California.

19         b.   Mosley resides in Las Vegas, Nevada.

20         c.   Mosley believes that the claims alleged by Hudson exceed the

21 sum of $75,000, as required by 28 U.S.C. § 1332(a). The Complaint also includes

22 a prayer for injunctive relief, special damages, punitive damages, costs, and

23 attorneys' fees.

24     7.   Written notice of the filing of this Notice of Removal will be given to

25 Hudson concurrently with the filing of this Notice of Removal.

26

27

28

2

99910-00000/1623805.1

1    8.    A true and correct copy of this Notice of Removal will be filed with

2    the Clerk of the Superior Court of California for the County of Los Angeles

3    concurrently with the filing of this Notice.

4

5

6    DATED: February 19, 2008        GREENBERG GLUSKER FIELDS
                                     CLAMAN & MACHTINGER LLP
7

8

9    By: _____
                JEFFREY SPITZ
10              Attorneys for Defendant
                SHANE MOSLEY
11

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

NOTICE OF REMOVAL

99910-00000/1623805.1

JAENAM J. COE  (SBN #175920)
LAW OFFICES OF JAENAM COE PC
3660 Wilshire Blvd. Suite 524
Los Angeles, CA  90010

Telephone:  213-389-1400
Telefax:     213-387-8778
Attorney for DERRYL HUDSON

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 05 2008

JOHN A. CLARKE, CLERK

BY D.M. SWAIN, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES:    (UNLIMITED JURISDICTION)

| | |
|---|---|
| DERRYL HUDSON, an individual and dba POWER N SPEED;<br><br>                                              Plaintiff,<br><br>          vs.<br><br>SHANE MOSLEY, an individual; DOES 1 through 100, inclusive,<br><br>                                              Defendants. | Case No.<br><br>BC384963<br><br>COMPLAINT<br>Defamation |

Plaintiff complains and alleges against the defendants as follows:

#### FIRST CAUSE OF ACTION

#### (DEFAMATION: AGAINST ALL DEFENDANTS)

1.    At all times herein mentioned Plaintiff, DERRYL HUDSON ("PLAINTIFF"), was and is an individual residing in the county of Los Angeles, State of California, and is a professional boxing trainer doing business under the assumed name of 'POWER N SPEED'.

2.    Upon information and belief, Defendant, SHANE MOSLEY ("MOSLEY"), an individual residing in the county of Los Angeles, State of California.

-1-
COMPLAINT

EXHIBIT A
PAGE 4

3.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 - 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

4.      On or about September 27, 2007 and on several occasions prior thereto, defendants spoke the following words in front of the reporters and gathering of 10 to 20 people at each time, of and concerning the plaintiff, HUDSON: Plaintiff gave performance-enhancing substance(s) that were banned by the Athletic Commissions to Defendant; that Plaintiff gave the substances as part of the workouts, and Defendant did not know "what the hell it was"; that Defendant was told by Plaintiff that nothing given to him was on the list of the banned substances. Defendant further stated that Plaintiff convinced him to visit Victor Conte's BALCO Laboratory despite the fact the Defendant didn't want to go; that Plaintiff pressured him to take illegal designer steroids "the clear and "the cream" as well as the blood doping substance EPO and that Defendant was totally unaware that he was taking performance enhancing substances and felt the banned substances were pushed on him by the Plaintiff

5.      The words were heard by plaintiff and the people who then reported the statement in mass media.

6.      These words were slanderous per se because they accused plaintiff of committing the crime of dealing with banned substances. They were slanderous per se further because they make false allegations injurious to Plaintiff in his trade, business, or profession.

7.      The words uttered were a false statement because Plaintiff never gave, 'pushed,' recommended or in any way made the Defendant take the banned substances.

-2-
**COMPLAINT**

EXHIBIT A
PAGE 5

8.     The words of the Defendants carried a defamatory meaning because they impede upon the professional quality of Plaintiff's business practice.

9.     The words of the Defendants were understood by those who saw, read and/or heard them in a way that defamed plaintiff.

10.     As a result of the above-described words, plaintiff has suffered general damages to his reputations.

11.     As a further proximate result of the above-described words, plaintiff has suffered the following special damages: injury to plaintiff's professional and occupational capacity and loss of business resulting from the tarnished reputation and professional capacity, all to their injury in the sum according to proof.

12.     The above-described words were spoken by the defendant with malice and/or oppression and/or fraud in that at the time the words were spoken, and the words were spoken in total and wanton disregard of the harm inflicted to Plaintiff, and thus an award of exemplary and punitive damages is justified.

## SECOND CAUSE OF ACTION

### (Preliminary and Permanent Injunction: Against All Defendants)

13.     Plaintiff refers to and incorporates by reference as though fully stated herein Paragraphs 1 through 12 above.

14.     Unless the Defendants are enjoined from further stating or otherwise making statements defaming the Plaintiff, the damage to Plaintiff will compound.

15.     Unless so enjoined by order of this Court, Plaintiffs will suffer and continue to irreparable harm and the exact nature and magnitude of damages resulting form the Defendants' conduct may not be ascertained.

-3-
COMPLAINT

EXHIBIT A
PAGE 6

16.    A preliminary injunction as set forth in the preceding paragraph is necessary and essential for the maintenance of the status quo and to minimize damages to Plaintiffs.

WHEREFORE, plaintiff prays judgment against defendant as follows:

1.    General damages according to proof;

2.    Items of special damage for interference with earning capacity and loss of business, as above mentioned in conformity to proof;

3.    A preliminary injunction and permanent injunction enjoining Defendants and their agents and all persons acting under Defendants' auspices from making any further statement regarding the Plaintiff.

4.    For Punitive damages

5.    For attorney's fees;

6.    All costs of suit; and

7.    For such other and further relief as the Court deems just and proper.

Dated: February 1, 2008

LAW OFFICES OF JAENAM J. COE

BY: _____
Jaenam J. Coe
Attorney for Plaintiff

-4-
COMPLAINT

EXHIBIT A
PAGE 7

02/19/2008 16:39 FAX                                                                    ☑005/007

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I(a) PLAINTIFFS (Check box if you are representing yourself  X ) | DEFENDANTS |
|---|---|
| DERRYL HUDSON, an individual and dba POWER N SPEED | SHANE MOSLEY, an individual, DOES 1 through 100, inclusive |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (in U.S. Plaintiff Cases Only): |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (if Known) |
|---|---|
| Jaenam J. Coe (SBN 175920)<br>3660 Wilshire blvd., Suite 524<br>Los Angeles, CA 90010<br><br>213/389-1400 | Jeffrey Spitz<br>Greenberg Glusker, et al.<br>1900 Avenue of the Stars<br>Suite 2100<br>Los Angeles, CA 90067<br>310/553-3610 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

1 U.S. Government Plaintiff  ☐    3 Federal Question (U.S. Government Not a Party)  ☐

2 U.S. Government Defendant  ☐    4 Diversity (Indicate Citizenship of Parties in Item III)  X

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | 1 | Incorporated or Principal Place of Business in this State | 4 | 4 |
| Citizen of Another State | 2 | X 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. ORIGIN** (Place an X in one box only.)

1 Original Proceeding  ☐    X 2 Removed from State Court    3 Remanded from Appellate Court  ☐    4 Reinstated or Reopened  ☐    5 Transferred from another district (specify):  ☐    6 Multi-District Litigation  ☐    7 Appeal to District Judge from Magistrate Judge  ☐

**V. REQUESTED IN COMPLAINT: JURY DEMAND:**   Yes   X No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:**   ☐ Yes   X No    **MONEY DEMANDED IN COMPLAINT: $** More than $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Defamation; Removal under 28 USA Section 1332 (a)(1)

**VII. NATURE OF SUIT (Place an X in one box only.)**

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS Personal Injury | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| 400 State Reapportionment | 110 Insurance | 310 Airplane | 370 Other Fraud | 510 Motions to Vacate Sentence Habeas Corpus | 710 Fair Labor Standards Act |
| 410 Antitrust | 120 Marine | 315 Airplane Product Liability | 371 Truth in Lending | 530 General | 720 Labor/Mgmt. Relations |
| 430 Banks and Banking | 130 Miller Act | X 320 Assault, Libel & Slander | 380 Other Personal Property Damage | 535 Death Penalty | 730 Labor/Mgmt. Reporting & Disclosure Act |
| 450 Commerce/ICC Rates/etc. | 140 Negotiable Instrument | 330 Fed. Employers' Liability | 385 Property Damage Product Liability | 540 Mandamus/Other | 740 Railway Labor Act |
| 460 Deportation | 150 Recovery of Overpayment & Enforcement of Judgment | 340 Marine | BANKRUPTCY | 550 Civil Rights | 790 Other Labor Litig. |
| 470 Racketeer Influenced and Corrupt Organizations | 151 Medicare Act | 345 Marine Product Liability | 422 Appeal 28 USC 158 | 555 Prison Condition | 791 Empl. Ret. Inc. Security Act |
| 480 Consumer Credit | 152 Recovery of Defaulted Student Loan (Excl. Veterans) | 350 Motor Vehicle | 423 Withdrawal 28 USC 157 |  | PROPERTY RIGHTS |
| 490 Cable/Sat TV |  | 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/PENALTY | 820 Copyrights |
| 810 Selective Service | 153 Recovery of Overpayment of Veteran's Benefits | 360 Other Personal Injury | 441 Voting | 610 Agriculture | 830 Patent |
| 850 Securities/Commodities/Exchange | 160 Stockholders' Suits | 362 Personal Injury-Med Malpractice | 442 Employment | 620 Other Food & Drug | 840 Trademark |
| 875 Customer Challenge 12 USC 3410 | 190 Other Contract | 365 Personal Injury-Product Liability | 443 Housing/Accommodations | 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| 890 Other Statutory Actions | 195 Contract Product Liability | 368 Asbestos Personal Injury Product Liability | 444 Welfare | 630 Liquor Laws | 861 HIA (1395ff) |
| 891 Agricultural Act | 196 Franchise | REAL PROPERTY | 445 American with Disabilities - Employment | 640 R.R. & Truck | 862 Black Lung (923) |
| 892 Economic Stabilization Act | 210 Land Condemnation | | 446 American with Disabilities - Other | 650 Airline Regs | 863 DIWC/DIWW (405(g)) |
| 893 Environmental Matters | 220 Foreclosure | | 440 Other Civil Rights | 660 Occupational Safety/Health | 864 SSID Title XVI |
| 894 Energy Allocation Act | 230 Rent Lease & Ejectment | | | 690 Other | 865 RSI (405(g)) |
| 895 Freedom of Info. Act | 240 Torts to Land | | | | FEDERAL TAX SUITS |
| 900 Appeal of Fee Determination Under Equal Access to Justice | 245 Tort Product Liability | | | | 870 Taxes (U.S. Plaintiff or Defendant) |
| 950 Constitutionality of State Statutes | 290 All Other Real Property | | | | 871 IRS - Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed?   X No   Yes

If yes, list case number(s):

CV08-01108

FOR OFFICE USE ONLY:    Case Number: _____

Page 1 of 2

02/19/2008 16:40 FAX                                                    ☒006/007

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case?    x  No        Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    A. Arise from the same or closely related transactions, happenings, or events; or

B. Call for determination of the same or substantially related or similar questions of law and fact; or

C. For other reasons would entail substantial duplication of labor if heard by different judges; or

D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above
in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides  (Use an additional sheet if necessary)

☐  Check here if the U.S. government, its agencies or employees is a named plaintiff.

Los Angeles, CA

List the California County, or State if other than California, in which **EACH** named defendant resides.    (Use an additional sheet if necessary).

☐  Check here if the U.S. government, its agencies or employees is a named defendant.

Nevada

List the California County, or State if other than California, in which **EACH** claim arose.    (Use an additional sheet if necessary)

Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____    Date  2/19/08

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM
#### Authority for Civil Cover Sheet

The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a)  PLAINTIFFS - DEFENDANTS. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a Government Agency use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official giving both name and title.

    (b)  County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c)  Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section ("see attachment"). Refer to Local Rules 83-2.7 and 41-6 for further information regarding change of attorney name, address, firm association, phone number, fax number or e-mail address, and dismissal of action for failure of pro se plaintiff to keep Court apprised of current address.

II.  JURISDICTION. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdiction be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

    United States Plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

    United States Defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

    Federal Question. (3) This refers to suits under 28 U.S.C. 1331 where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, and act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code take precedence and box 1 or 2 should be marked.

    Diversity of Citizenship. (4) This refers to suits under 28 U.S.C. 1332 where parties are citizens of different states. When box 4 is checked, the citizenship of the different parties must be checked. (See Section III below) (Federal question actions take precedence over diversity cases.)

III. RESIDENCE (CITIZENSHIP) OF PRINCIPAL PARTIES. This section of the CV-71 (JS-44) is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  ORIGIN. Place an "X" in one of the seven boxes:

    (1)  Original Proceedings. Cases which originate in the United States District Courts.
    (2)  Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. Section 1441. When the petition for removal is granted, check this box.
    (3)  Remanded from Appellate court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
    (4)  Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
    (5)  Transferred from Another District. For cases transferred under Title 28 U.S.C. Section 1404(a). DO NOT use this for within-district transfers or multidistrict litigation transfers. When this box is checked, DO NOT check (6) below.
    (6)  Multidistrict Litigation. Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, DO NOT check (5) above.
    (7)  Appeal to District Judge from Magistrate Judge Judgment. Check this box for an appeal from a magistrate judge's decision.

V.   REQUESTED IN COMPLAINT.
    Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
    Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.
    Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VI.  CAUSE OF ACTION. Report the civil statute directly related to the cause of action and give a brief description of the cause of action. Do not cite jurisdictional statutes unless diversity.    Example: U.S. Civil Statute: 47 USC 553
                                                 Brief Description: Unauthorized reception of cable service

VII. NATURE OF SUIT. Place an "X" in the appropriate box. MARK ONE BOX ONLY. If the cause of action fits more than one nature of suit, select the one that best describes your cause of action.

VIII(a) IDENTICAL CASES. Indicate if an identical action has previously been filed and dismissed, remanded or closed. Insert the docket number and judge's name, if applicable.

VIII(b) RELATED CASES. This section of the CV-71 (JS-44) is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge's name for each case. Check all boxes that apply.

IX.  VENUE. This section of the CV-71 (JS-44) is used to identify the correct division in which the case will be filed. Please remember to indicate the residence of EACH plaintiff and defendant and the county or state in which each claim arose.

    If the United States government or an agency thereof is a plaintiff or defendant, place an "X" in the appropriate box. Indicate the residence of other parties, if any.

    In each category: for each party and claim, indicate the county, if in California. If other than California, you need only to list the state or country.

X.   Attorney or party appearing pro per must sign and date this form.

**PROOF OF SERVICE**

**CCP §1011, CCP §1013a(3)**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2100, Los Angeles, California 90067-4590.

On February 19, 2008, I served the foregoing document described as NOTICE OF REMOVAL OF ACTION on the interested parties in this action

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

X by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

Jaenam J. Coe, Esq.
3660 Wilshire Blvd., Suite 524
Los Angeles, CA 90010

**BY MAIL:**

☐ I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on February 19, 2008, at Los Angeles, California.

**BY PERSONAL SERVICE:**

X I caused such enveloped to be delivered by hand to the addressees.

Executed on February 19, 2008, at Los Angeles, California.

☒ (Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Mary Jane Howroyd

_____
Signature

GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1577060.1
70400-00025

99910-00000/1623893.1

Case 3:08-cv-01777-JSW    Document 56-3    Filed 06/16/2008    Page 23 of 33
Case 2:08-cv-01108-ABC-E    Document 1    Filed 02/19/2008    Page 12 of 18
02/19/2008 16:39 FAX                                                    ☑ 004/007

# PROOF OF SERVICE

## CCP §1011, CCP §1013a(3)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2100, Los Angeles, California 90067-4590.

On February 19, 2008, I served the foregoing document described as NOTICE OF INTERESTED PARTIES on the interested parties in this action

___ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

X by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

> Jaenam J. Coe, Esq.
> 3660 Wilshire Blvd., Suite 524
> Los Angeles, CA 90010

**BY MAIL:**

☐ I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

___ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on February 19, 2008, at Los Angeles, California.

**BY PERSONAL SERVICE:**

X I caused such envelopes to be delivered by hand to the addressees.

Executed on February 19, 2008, at Los Angeles, California.

☒ (Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Mary Jane Howroyd

Signature

GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

COPY
FILED

Name and address
Jeffrey Spitz (S.B.# 119343)
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067
Telephone: (310) 553-3610
Facsimile: (310) 553-0687
Email: jspitz @ggfirm.com

2008 FEB 19  PM 3: 54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. C  CALIF.
LOS ANGE  E

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DERRYL HUDSON, an individual and dba
POWER N SPEED;
                                        Plaintiff(s)
        v.

SHANE MOSLEY, an individual; DOES 1
through 100, inclusive,
                                        Defendant(s).

CASE NUMBER

**CV08-01108    ABC (Ex)**

APPLICATION OF NON-RESIDENT ATTORNEY
TO APPEAR IN A SPECIFIC CASE

NOTICE:    Effective June 1, 2004, the fee for *Pro Hac Vice* Appearance is $185.00 for **each case** application. Please submit
the fee with your application. Pursuant to Local Rule 83-2.4, submission of this application and the fee is waived
for attorneys for the United States, its departments and agencies with Appointment Affidavits on file with the
Clerk. If no Appointment Affidavit is on file, submission of the application is required.

I, _____ JUDD BURSTEIN _____ , hereby apply to the Court under Local Rule 83-2.8.2
for permission to appear and participate in the above-entitled action on behalf of ☐ Plaintiff    ☑ Defendant:
_____ SHANE MOSLEY _____ by whom I have been retained.

My *out-of-state* business information is as follows:
                            Judd Burstein, P.C.
                            *Firm Name*
                        1790 Broadway, Suite 1501
                            *Street Address*
New York, New York 10019                jburstein@burlaw.com
    *City, State, Zip*                      *E-Mail Address*
    (212) 974-2400                         (212) 974-2944
    *Telephone Number*                     *Fax Number*

I am a member in good standing and eligible to practice before the following courts:
        *Title of Court*                              *Date of Admission*
SEE EXHIBIT A HERETO

I am not a resident of, nor am I regularly employed, engaged in business, professional or other activities in the State of
California. I am not currently suspended or disbarred in any court.

I have concurrently, or within three (3) years of this application, made *Pro Hac Vice* applications to this Court in the following actions:

| Case Number | Title of Action | Date of Application | Application Granted or Denied |
|---|---|---|---|
| CV 06-7658-DSF | Golden Boy Pr. v. Top Rank | May 23, 2007 | Granted |
| | | | |
| | | | |
| | | | |

If any *Pro Hac Vice* applications submitted within three (3) years of this application have been denied by the Court, please explain:

I designate _____ Jeffrey Spitz _____ as local counsel, whose business information is as follows:

Greenberg Glusker Fields Claman & Machtinger LLP
*Firm Name*
1900 Avenue of the Stars, 21st Floor
*Street Address*

Los Angeles, California 90067                    jspitz@ggfirm.com
*City, State, Zip*                                *E-Mail Address*
(310) 553-3610                                   (310) 553-0687
*Telephone Number*                               *Fax Number*

who is a member in good standing of the Bar of this Court and maintains an office in the Central District of California for the practice of law, as the attorney with whom the Court and opposing counsel may readily communicate regarding the conduct of this case, and upon whom papers may be served.

I declare under penalty of perjury that the foregoing is true and correct and that I am familiar with the Local Rules, the Local Criminal Rules, the F.R. Civ. P., the F.R. Crim. P., and the F.R. Evidence.

Dated    February 15, 2008                        Judd Burstein
                                                  *Applicant's Name (please print)*

                                                  *Applicant's Signature*

I hereby consent to the foregoing designation as local counsel.

Dated    Feb. 19, 2008                            Jeffrey Spitz
                                                  *Designee's Name (please print)*

                                                  *Designee's Signature*
                                                  SB# 119343
                                                  *Designee's California State Bar Number*

NOTE: COUNSEL AND PARTIES ARE REMINDED TO SUBMIT A COMPLETED *ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE* (G-64 ORDER) ALONG WITH THIS APPLICATION.

## EXHIBIT A

### Court Admissions

Judd Burstein is a member in good standing, and eligible to practice before the following courts:

(a)   United States District Court, Eastern and Southern District of New York: 1982
(b)   United States District Court, Northern District of New York: 2005
(c)   United States District Court, District of Connecticut: 2007
(d)   United States District Court, District of Columbia: 1994
(e)   United States Court of Appeals, 2nd Circuit: 1982
(f)   United States Court of Appeals, 3rd Circuit: 1983
(g)   United States Court of Appeals, 4th Circuit: 1986
(h)   United States Court of Appeals, 6th Circuit: 1990
(i)   United States Court of Appeals, 7th Circuit: 1996
(j)   United States Court of Appeals, 9th Circuit: 1986
(k)   United States Court of Appeals, 10th Circuit: 1998
(l)   United States Supreme Court: 1998
(m)   United States Tax Court: 1995

## PROOF OF SERVICE

### CCP §1011, CCP §1013a(3)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2100, Los Angeles, California 90067-4590.

On February 19, 2008, I served the foregoing document described as APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE on the interested parties in this action

— by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

X by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

    Jaenam J. Coe, Esq.
    3660 Wilshire Blvd., Suite 524
    Los Angeles, CA 90010

**BY MAIL:**

    ☐ I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    — As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on February 19, 2008, at Los Angeles, California.

**BY PERSONAL SERVICE:**

    X I caused such enveloped to be delivered by hand to the addressees.

Executed on February 19, 2008, at Los Angeles, California.

☒ (Federal) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Mary Jane Howroyd

Signature

99910-00000/1623893.1

LODGED

COPY

2008 FEB 19  PM 3: 54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. C  CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRYL HUDSON, an individual and dba POWER N SPEED;<br><br>Plaintiff(s)<br><br>v.<br><br>SHANE MOSLEY, an individual; DOES 1 through 100, inclusive,<br><br>Defendant(s). | CASE NUMBER<br>**CV08-01108 ABC (Ex)**<br><br>ORDER ON<br>APPLICATION OF NON-RESIDENT ATTORNEY<br>TO APPEAR IN A SPECIFIC CASE |

The Court, having reviewed the accompanying Application of JUDD BURSTEIN
                                                        *Applicant's Name*

of JUDD BURSTEIN, P.C., 1790 Broadway, Suite 1501, New York, New York 10019
                          *Firm Name / Address*

(212) 974-2400                          jburstein@burlaw.com
*Telephone Number*                      *E-mail Address*

for permission to appear and participate in the above-entitled action on behalf of ☐ Plaintiff  ☑ Defendant

SHANE MOSLEY

and the designation of JEFFREY SPITZ, SB # 119343
                        *Local Counsel Designee /State Bar Number*

of Greenberg, Glusker, Fields, Claman & Machtinger LLP
      *Local Counsel Firm / Address*

(310) 553-3610                          jspitz@ggfirm.com
*Telephone Number*                      *E-mail Address*

as local counsel, hereby **ORDERS** the Application be:

☐ GRANTED

☐ DENIED.  Fee, if paid, shall be returned by the Clerk.


Dated _____          _____
                                U. S. District Judge/U.S. Magistrate Judge

## PROOF OF SERVICE

### CCP §1011, CCP §1013a(3)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 1900 Avenue of the Stars, Suite 2100, Los Angeles, California 90067-4590.

On February 19, 2008, I served the foregoing document described as ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE on the interested parties in this action

— by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

X   by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

   Jaenam J. Coe, Esq.
   3660 Wilshire Blvd., Suite 524
   Los Angeles, CA 90010

**BY MAIL:**

☐   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

—   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on February 19, 2008, at Los Angeles, California.

**BY PERSONAL SERVICE:**

X   I caused such enveloped to be delivered by hand to the addressees.

Executed on February 19, 2008, at Los Angeles, California.

☒ (Federal)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Mary Jane Howroyd

Signature

GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1577060.1
70400-00025

99910-00000/1623893.1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV08- 1108 ABC (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**       [ ] **Southern Division**              [ ] **Eastern Division**
312 N. Spring St., Rm. G-8          411 West Fourth St., Rm. 1-053          3470 Twelfth St., Rm. 134
Los Angeles, CA 90012              Santa Ana, CA 92701-4516               Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

EXHIBIT H

# JUDD BURSTEIN, P.C.

**1790 Broadway**
**Suite 1501**
**New York, NY  10019**
**212 974-2400**

June 16, 2008

Shane Mosley

Re   Mosley/Conte - Motion

| | | | Hours | Amount |
|---|---|---|---|---|
| 6/3/2008 | LR | Printed cases from SLAPP; read defendant's brief | 0.50 | 137.50 |
| | AL | Met w/intern; reviewed file | 0.30 | 105.00 |
| 6/4/2008 | LR | Research, read SLAPP brief and cases cited; printed cases and analyzed cases | 6.50 | 1,787.50 |
| | AL | Reviewed file; research re: opposition to Anti-SLAPP motion | 9.00 | 3,150.00 |
| 6/5/2008 | AL | Reviewed Conte Brief; research re: opp motion; met w/LR re: same | 6.00 | 2,100.00 |
| | LR | Research re: motion SLAPP; analysis of cases; wrote sections of MPA for AL; met w/AL re: brief | 6.70 | 1,842.50 |
| 6/6/2008 | AL | Research re: opp motion; met w/LR re: section 47(c); research re: same; prepared motion | 7.00 | 2,450.00 |
| | LR | Research re: SLAPP motion; met w/AL re: motion analysis sections; comments after read through | 5.70 | 1,567.50 |
| 6/7/2008 | AL | Reviewed cases cited by Conte | 4.00 | 1,400.00 |
| 6/8/2008 | AL | Prepared opp brief | 5.00 | 1,750.00 |
| 6/9/2008 | AL | Prepared opp brief; | 9.00 | 3,150.00 |
| | LR | Research; wrote attorney fee section of brief; read over brief; conf w/AL re: brief; revisions/questions | 2.50 | 687.50 |
| 6/10/2008 | PS | Reviewed of MPA and met w/AL re: same | 1.70 | 935.00 |
| | AL | Met w/MD re: revised opp brief; met w/PBS re: same; correspondence w/JB; prepared declaration of Mosley | 7.80 | 2,730.00 |
| | MD | Analyzed/edited MPA; conf w/AL and legal research re: same | 3.40 | 1,445.00 |

Shane Mosley                                                                    2

|            |    |                                                                                      | Hours | Amount |
|------------|----|--------------------------------------------------------------------------------------|-------|--------|
| 6/10/2008  | LR | Checked local rules for motion requirements                                          | 0.20  | 55.00  |
| 6/11/2008  | AL | Prepared declaration of Mosley; prepared declaration of JB                           | 2.00  | 700.00 |
| 6/12/2008  | AL | Met w/JB re: revisions to the MPA in opp; revised same; revised Mosley declaration; correspondence w/JB re: same; met w/LR re: research | 7.00 | 2,450.00 |
|            | LR | Proofed SM dec for SLAPP motion                                                      | 1.00  | 150.00 |
| 6/13/2008  | AL | Revised JB declaration; prepared notice; research re: attorney fees; prepared summary of the argument; correspondence w/JB | 5.00 | 1,750.00 |
|            | LR | Proofed SM Dec.; sent to SM; called/email to SM re: signature for dec; proofed second revision SLAPP MPA | 3.00 | 450.00 |
| 6/15/2008  | AL | Reviewed brief; correspondence w/LR                                                  | 3.00  | 1,050.00 |
|            | LR | Proofed SLAPP MPA                                                                     | 1.80  | 270.00 |
|            | JB | Revising and editing anti-SLAPP motion                                               | 2.50  | 2,250.00 |
| 6/16/2008  | JB | Revising and editing anti-SLAPP                                                       | 1.00  | 900.00 |

Total Fees                                                                     101.60 $35,262.50

### Attorney Summary

| Name              | Hours | Rate   | Amount      |
|-------------------|-------|--------|-------------|
| Alex Levy         | 65.10 | 350.00 | $22,785.00  |
| Judd Burstein     | 3.50  | 900.00 | $3,150.00   |
| Lindsey Rodgers   | 22.10 | 275.00 | $6,077.50   |
| Lindsey Rodgers   | 5.80  | 150.00 | $870.00     |
| Matthew G. DeOreo | 3.40  | 425.00 | $1,445.00   |
| Peter Schalk      | 1.70  | 550.00 | $935.00     |