JAMES M. WAGSTAFFE (95535)
IVO LABAR (203492)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Defendant
VICTOR CONTE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| SHANE D. MOSLEY, SR., | Case No. C 08-01777 JSW |
|---|---|
| Plaintiff, | **DEFENDANT VICTOR CONTE'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS AND ATTORNEYS' FEES (C.C.P. § 425.16(c))** |
| vs. | |
| VICTOR CONTE, | |
| Defendant. | Hearing Date: December 24, 2008<br>Time:  9:00 a.m.<br>Courtroom: 2 |
| | HON. JEFFREY S. WHITE |

KERR
&
WAGSTAFFE
LLP

# TABLE OF CONTENTS

*Page*

I.      Introduction and Summary of Argument ........................................................... 1

II.     Background .................................................................................................. 2

    A.      Mosley Files A Defamation Action Against Conte .............................. 2

    B.      Mosley's False Testimony Regarding His Citizenship .......................... 3

        1.      Mosley, Under Oath, Falsely Claims to Be a Citizen of Nevada ............ 3

        2.      All of the Evidence Shows that Mosley is a Citizen of California .......... 3

III.    The Court Should Sanction Mosley Under Its Inherent Powers ....................................... 9

    A.      The Court Has the Inherent Powers to Sanction Mosley ....................................... 9

IV.     Defendant Is Entitled to Attorneys' Fees for the Anti-SLAPP Motion .......................... 11

    A.      Defendant Is Entitled To Legal Fees Under California C.C.P. § 425.16(c) ....... 11

    B.      The Amount Of Attorneys' Fees Requested By Defendant Is Reasonable ........ 12

        1.      The number of hours claimed is reasonable. ........................................... 13

        2.      The hourly rates sought by counsel are reasonable. ............................... 14

        3.      Defendant is entitled to recover fees for filing this fees motion. ............. 14

V.      Conclusion .................................................................................................. 15



# TABLE OF AUTHORITIES

*Page*

## *Cases*

ABF Freight Systems, Inc. v. National Labor Relations Board,
  510 U.S. 317 (1994)..................................................................................... 10

ARP Pharmacy Svcs., Inc. v. Gallagher Bassett Svcs., Inc.,
  138 Cal. App. 4th 1307 (2006) ............................................................... 1, 12

Beasley v. Wells Fargo Bank,
  235 Cal. App. 3d 1407 (1991) ..................................................................... 13

Chambers v. NASCO, Inc.,
  501 U.S. 32 (1991)................................................................................... 9, 11

District of Columbia v. Murphy,
  314 U.S. 441 (1941)....................................................................................... 5

Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,
  47 Cal. App. 4th 777 (1996) ........................................................................ 12

Flannery v. California Highway Patrol,
  61 Cal. App. 4th 629 (1998) ........................................................................ 13

Hawes v. Club Ecuestre El Comandante,
  598 F.2d 698 (1st Cir. 1979) ......................................................................... 5

Heinz v. Havelock,
  757 F. Supp. 1076 (C.D. Cal. 1991) ............................................................. 9

Hull v. Rossi,
  13 Cal. App. 4th 1763 (1993) ...................................................................... 12

In re Itel Secs. Litig.,
  791 F.2d 672 (9th Cir. 1986) ......................................................................... 9

Lew v. Moss,
  797 F.2d 747 (9th Cir. 1986) ......................................................................... 5

Methode Electronics, Inc. v. Adam Technologies, Inc.,
  371 F.3d 923 (7th Cir. 2004) ................................................................. 10, 11

Mitchell v. Unites States,
  21 Wall. 350, 88 U.S. 350 (1874) ................................................................. 5

Moore v. Liu,
  69 Cal. App. 4th 745 (1999) ........................................................................ 12

Pope v. Federal Express Corp.,
  974 F.2d 982 (8th Cir. 1992) ....................................................................... 10

Roadway Express, Inc. v. Piper,
  447 U.S. 752 (1980)....................................................................................... 9

KERR
&
WAGSTAFFE
LLP

1

<u>Schlaifer Nance & Co., Inc. v. Estate of Warhol,</u>
   194 F.3d 323 (2d Cir.1999)...................................................................... 10

2

<u>Serrano v. Unruh,</u>
   32 Cal. 3d 621 (1982) ..................................................................... 12, 14

3

<u>United States v. Mandujano,</u>
   425 U.S. 564 (1976) .................................................................................. 10

4

5

<u>Winn v. Associated Press,</u>
   903 F. Supp. 575 (S.D.N.Y. 1995).......................................................... 10

6

7

<u>Woolridge v. Marlene Indus. Corp.</u>
   898 F.2d 1169 (6th Cir. 1990) ................................................................ 13

8

<u>Wyle v. R.J. Reynolds Industries, Inc.,</u>
   709 F.2d 585 (9th Cir. 1983) ................................................................... 10

9

10

### ***Statutes***

11

28 U.S.C. § 1332.................................................................................................... 2

12

C.C.P. § 425.16 ............................................................................................... 1, 12

13

### ***Other Authorities***

14

REST. 2ND CONFLICT OF LAWS § 20 (2008) ........................................................ 7

15

Wright, Miller, Cooper, 13B FEDERAL PRACTICE & PROCEDURE § 3612 (2008) ......................... 5

16

17

18

19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP

– iii –

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This case was a defamation suit brought by professional boxer Shane Mosley against Victor Conte.  After demanding immediate discovery and an expedited trial date, Mosley meekly dismissed his complaint in the face of a pending anti-SLAPP motion and a soon-to-be-filed motion to dismiss for lack of subject matter jurisdiction.  Mosley should be ordered to pay attorneys' fees and costs for his abuse of the system under the Court's inherent authority or, in the alternative, pursuant to the fee shifting provisions of Code of Civil Procedure section 425.16, California's anti-SLAPP statute.

Mosley dismissed his complaint because the Defendant discovered that he intentionally misled the Court about his citizenship.  In both a declaration filed in this action, and in his deposition, Mosley repeatedly asserted that he was a citizen of Nevada.  The true facts were that Mosley is a longtime citizen of California.  Indeed, a cross-complaint he filed in a another action, Mosley alleged he was a citizen of California.  Just as egregiously, in his deposition in this action where he falsely claimed to be a citizen of Nevada, Mosley provided false testimony and concealed the existence of the California suit in which he was *in trial just two days earlier*. Mosley intentionally misled the Court about his citizenship in order to concoct jurisdiction in what he believed to be a more favorable venue.  The Court, under its inherent authority, should order Mosley to pay all of the attorneys' fees and costs incurred in defending this abusive and meritless action.  That amount is $75,654.00.

In the alternative, Defendant is entitled to fees and costs because Plaintiff's defamation complaint was a meritless suit rising from Defendant's exercise of his free speech rights protected by California's anti-SLAPP statute, California Code of Civil Procedure ("C.C.P.") section 425.16.  Mosley dismissed his case before Defendant's anti-SLAPP motion was heard. California law is clear: a plaintiff may not voluntarily dismiss his complaint in order to avoid attorneys' fees liability for a well-taken anti-SLAPP motion.  ARP Pharmacy Svcs., Inc. v. Gallagher Bassett Svcs., Inc., 138 Cal. App. 4th 1307, 1323 (2006).  Accordingly, Defendant brings this motion to recover fees ($34,329.50) he reasonably incurred in defending against this SLAPP, to which he is entitled under the anti-SLAPP statute, C.C.P. § 425.16(c).

1    **II.    BACKGROUND**

2        **A.    MOSLEY FILES A DEFAMATION ACTION AGAINST CONTE**

3        This case arises from the well-publicized sports drug scandal involving professional

4    athletes' use of performance enhancing drugs provided by Bay Area Laboratory Cooperative

5    ("BALCO").  Defendant Victor Conte was the owner of the business.  Shane Mosley was one of

6    the many athletes who have admitted to injecting illegal performance enhancing drugs supplied

7    by BALCO.

8        Taking a cue from the playbook of Marion Jones, another disgraced athlete linked to the

9    BALCO imbroglio, Mosley filed a defamation complaint against Conte on April 2, 2008.[1]

10   Mosley's slander and libel claims were based on the puzzling proposition that he did not

11   "knowingly" inject himself with illegal performance enhancing drugs over the course of many

12   weeks before his professional bout with Oscar De La Hoya in 2005.  In his complaint, Mosley

13   made the ludicrous allegations that Conte somehow fooled him into injecting banned substances

14   known as the "the Clear" and "the Cream."  Subject matter jurisdiction was based on the

15   diversity statute, 28 U.S.C. section 1332.  Mosley claimed to be a citizen of Nevada, and alleged

16   that Conte was a citizen of California.  (*Complaint ¶ 4*).

17       Shortly after filing the complaint, and before Defendant's responsive pleading was filed,

18   Mosley filed a motion to for leave to conduct expedited discovery and trial.  (*Docket. Nos. 16-*

19   *26*).  Mosley sought a quick trial in the hopes of obtaining a permanent injunction that would

20   prohibit the publication of Conte's book that detailed Mosley's illegal drug use.  The Court

21   granted expedited discovery, but later denied the motion to expedite the trial.  (*Docket. Nos. 26,*

22

23   _____

24   [1]    Sprinter Marion Jones filed a similar action, captioned as *Jones v. Conte, Case No. 04-*

25   *05312 SI*, in 2004.  (*Declaration of Ivo Labar in Support of Defendant's Motion for Sanctions and Attorneys' Fees (hereinafter "Labar Decl.") Exh. A, Jones Complaint*).  Jones, like Mosley,

26   denied taking banned performance enhancing drugs.  Jones was later prosecuted and sentenced to six months in prison for lying about her use of banned performance enhancing drugs.  (*Labar*

27   *Decl. Exh. B, Jones News Article*).  Other professional athletes, such as Trevor Graham and Barry Bonds, are also facing criminal prosecution arising from similar denials.  (*Labar Decl.*

28   *Exh. C, BALCO News Article*).

1   *46*).  In addition, the Court set a briefing schedule for Defendant's Special Motion to Strike and

2   set a hearing on the motion for August 22, 2008.  (*Docket No.47*).

3          In order to ascertain the truth about Mosley's claimed citizenship, Defendant took

4   Mosley's deposition on July 9, 2008 in Los Angeles, California and also undertook other

5   informal discovery efforts to acquire information about the same.  (*Labar Decl. ¶ 5*).  Shortly

6   after Mosley's deposition, Defendant presented Plaintiff with a draft motion to dismiss for lack

7   of subject matter jurisdiction.  (*Id. ¶ 6*).  After Defendant evidenced his intent to file the motion

8   to dismiss for lack of subject matter jurisdiction, Plaintiff voluntarily dismissed his complaint

9   with the SLAPP motion pending.  (*Id.; see also Docket No. 66*).  On the same day that Plaintiff

10  dismissed his complaint, he re-filed his case in New York, a state that does not have a

11  comparable anti-SLAPP statute.  (*Id.*).

12         **B.    MOSLEY'S FALSE TESTIMONY REGARDING HIS CITIZENSHIP**

13                **1.    Mosley, Under Oath, Falsely Claims to Be a Citizen of Nevada**

14          As discussed above, Mosley's complaint alleged that he was a citizen of Nevada.

15  (*Complaint ¶ 4*).  On May 23, 2008, Mosley filed a declaration in support of his motion for an

16  expedited trial.  (*Labar Decl. Exh. E, Declaration of Shane Mosley "Mosley Decl."*).  In an

17  attempt to head off any dispute related to subject matter jurisdiction, the declaration stated, in

18  pertinent part, that "Conte has also claimed that I am not a citizen of Nevada.  This is also not

19  true."  (*Id. ¶ 8*).  Mosley's declaration went on to list a handful of highly selective facts that he

20  considered probative of his citizenship.  (*Id. ¶¶ 9-16*).  Mosley was deposed on July 9, 2008, and

21  again claimed to be a citizen of Nevada.  (*Labar Decl. Exh. D*, *Mosley Depo at 17:19-18:18*).

22                **2.    All of the Evidence Shows that Mosley is a Citizen of California**

23          Mosley's declaration and deposition testimony omitted critical facts regarding his true

24  citizenship.  For example, Mosley invoked the jurisdiction of the California state courts in 2003,

25  and claimed to be a resident of Los Angeles County.[2]  (*Labar Decl. Exh. F*).  He again invoked

26

27  _____

28  [2]     Critically, this was *after* Mosley purchased his first home in Nevada.  (*Labar Decl. Exh.
    E, Mosley Decl. ¶ 9*).

– 3 –

CASE NO. C 08-01777 JSW          DEFENDANT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES

1   the jurisdiction of California courts in 2007, claiming to be a California resident.  (*Labar Decl.*

2   *Exh. G*).  Neither of these facts were noted in his declaration.  The 2007 action, *Terrier Corp. v.*

3   *Shane Mosley*, *Case No. KC050549*, involved a dispute related to a $50,000 child's playground

4   set that was installed at Mosley's mansion in La Verne, California.  (*Labar Decl. Exh. H*).

5        Gallingly, just two days before his July 9, 2008 deposition in this case, Mosley was in

6   trial in the *Terrier* action in California.  (*Labar Decl. Exh. I*).  Mosley never explained  at

7   deposition that he was just in trial in Los Angeles, nor that he filed a cross-complaint in that

8   action on July 7, 2008 – just two days earlier – in which he claimed to be a California resident.[3]

9   Indeed, Mosley did not mention the California trial at all, despite the fact that Defendant's

10  counsel asked plain and simple questions regarding whether or not Mosley had ever testified in

11  any trials or been a party to any lawsuits:

12          Q:  Let me ask you -- go back to the topic of the lawsuits that
            you've been involved with.  You told me about a lawsuit involving
13          a gentleman named Mr. Wendell Wright and another lawsuit
            involving an entity called Ringside Tickets and a gentleman named
14          Patrick Ortiz.

15          A:  Yes.

16          Q:  Can you recall any other lawsuits that you've been a party to?

17          A:  No.

18          Q:  Do you think there have been more and you just can't
            remember any of the details of them or do you think there haven't
19          been any more than the two you've told me about?

20          A:  Those are the -- the big lawsuits that stand out, but other than
            that, I can't really recall.
21
            Q:  Okay.  You say those are the two big ones that you -- that
22          stand out.  Can you recall any small ones?

23          A:  I mean those are -- that's really all I can recall at this point is
            those lawsuits.  I mean that's it.
24
25  (*Labar Decl. Exh. D, Mosley Depo at 9:14-10:8*).

26

27  _____

28  [3]      Mosley's misleading declaration and deposition testimony regarding his citizenship speak
            volumes as to the merits of his defamation claim.


KERR
&
WAGSTAFFE
LLP

– 4 –

1    Plainly, Mosley deliberately chose not to reveal the *Terrier* case, because he knew that it

2    would prove that he was not a Nevada resident as he claimed to be.  Besides claiming to be a

3    California citizen when it suits him, all of the other evidence shows that Mosley has strong, fixed

4    connections to California, where he has lived for his entire life.[4]  Mosley was born in Lynwood,

5    California.  (*Id. at 12:3-4*).  He grew up in Pomona, California, and graduated high school there.

6    (*Id. at 12:17-13:24*).  After high school, he continued a career as a professional boxer.  He

7    purchased two homes in Pomona, and later moved to La Verne, California in 1997.  (*Id.*).

8    Although his career as a boxer takes him "everywhere," he still owns the La Verne home as well

9    as a house in Big Bear, California, where he was residing at the time the complaint in this action

10   was filed.  (*Id. at 16:8-23*).[5]  Neither of his homes in California were for sale at the time he filed

11   this complaint.  (*Id. at 44:6-12*).  On the day this complaint was filed, Mosley was living and

12   training at his Big Bear home.  The fact that he was not physically present in Nevada at the time

13   the complaint was filed should be dispositive of this issue of domicile.

14   There is no question Mosley's personal life is also centered in California.  Mosley's

15   spouse and children live in the La Verne home full-time.  (*Id. at 14:11-16*).  Each of his five

16   children are enrolled in school there.  (*Id. at 26:8-20*).[6]  In addition to his spouse and children,

17   Mosley's mother and father also live in Pomona, as does his sister.  (*Id. at 26:21-27:5*).

18   Critically, Mosley's California-based father is also his primary boxing trainer and has been since

19

20   ───────────────

21   [4]    Given Mosley's longstanding, permanent connections to California, there is a
22   presumption that California continues as his domicile.  Hawes v. Club Ecuestre El Comandante,
     598 F.2d 698, 701 (1st Cir. 1979); Mitchell v. Unites States, 21 Wall. 350, 88 U.S. 350, 353
23   (1874) ("domicile once acquired is presumed to continue until it is shown to have been
     changed.").
24

25   [5]    It is presumed that the state in which a person resides at any given time is also that
     person's domicile.  District of Columbia v. Murphy, 314 U.S. 441, 455 (1941).

26   [6]    This crucial fact raises yet another presumption: for citizenship purposes, married people
27   are presumed to be domiciled with their wife and family.  Lew v. Moss, 797 F.2d 747, 750 (9th
     Cir. 1986); see also Wright, Miller, Cooper, 13B FEDERAL PRACTICE & PROCEDURE § 3612 at n.
28   25 (2008).

1    Mosley was eight years old.  (*Id. at 28:8-15*).  Mosley does not explain how he permanently

2    resides in a state apart from his primary trainer.

3         Mosley keeps clothing in California as well as his boxing training gear.  When he is in

4    California he has used his wife's automobile which is registered in California.  (*Id. at 23:7-24:4*).

5    At both of his homes in California, he has utility service, cable and satellite television and a

6    home phone.  (*Id. at 19:9-24; 24:8-15; 50:23-52:1*).  The accounts for those services are in his

7    name and he receives mail there.  (*Id.; Labar Decl. Exhs. J-L*).  His personal things, such as

8    family portraits, wedding pictures, and personal financial records are also kept in California.

9    (*Labar Decl. Exh. D, Mosley Depo. at 24:21-25:10*).

10        Mosley does his professional training at this home in Big Bear, California, where he also

11   resides.  Mosley has owned his Big Bear home for approximately seven years.  (*Id. at 16:22-

12   17:13*).  The Big Bear home has a boxing gym, and Mosley uses it to prepare for his professional

13   fights.  (*Id. at 30:18-31:21*).  Throughout 2007 and 2008, Mosley prepared for his fights there.

14   (*Id.*).  Again, at the time the lawsuit was filed, he was living and training at his Big Bear home

15   where he spends months at a time.  (*Id. at 30:18-31:21; 40:5-10*).

16        Mosley's other business affairs and other personal affairs are also centered in California.

17   His wife works for his promotional company Sugar Shane, Inc. out of their home in La Verne.

18   (*Id at 25:11-26:7*).  In addition, he is a partner with Oscar de La Hoya in Golden Boy

19   Enterprises, which has its principal offices in Los Angeles.  (*Id. at 36:19-37:12*).

20        His other business affairs (such as tax payment and money management) were handled

21   for more than a decade by his aunt, another California citizen.  (*Id. at 45:15-46:15*).[7]  His

22   business affairs are currently handled by his money manager at UBS Warburg, who is located in

23   Los Angeles.  (*Id. at 20:7-21:5*).  Mosley banks at national banks that have branches in

24   California.  (*Id. at 48:9-14*).  Mosley uses those branches when he is in California.  (*Id.*).  The

25

26

27   _____

     [7]     For a short time, his business affairs were handled by a certified public accountant
28   ("CPA") in New York.  (*Labar Decl. Exh. D, Mosley Depo. at 14:17-15:4*).

1  last time he saw a medical doctor, or a dentist, was in California.[8]  (*Id. at 32:9-33:20*).  Mosley

2  can only recall voting one time, and that was in California.  (*Id. at 35:12-36:1*).  The center of

3  one's business, domestic and social life is strong evidence of domicile.  REST. 2ND CONFLICT OF

4  LAWS § 20 (2008).  Here, all of the facts show that Mosley's "center" was in California at the

5  time the action was commenced.  Accordingly, he should be considered a California citizen.

6        Mosley admits that he spent a significant, if not the majority, of his time in 2007 and

7  2008 in California.  (*Labar Decl. Exh. D, Mosley Depo. at 30:18-31:21; 40:5-10*).  Although

8  Mosley could not say with any specificity how much time he spends in California vs. Nevada, he

9  admits to moving back and forth between California "a lot."

10        Q:  About how many times do you think you went back
11        and forth from California and Nevada in the first three
       months of the year?

12        A:  I couldn't tell you.  I go back -- back and forth a lot.

13  (*Id. at 41:12-16*).

14

15        Mosley's testimony regarding his itinerant lifestyle is hard to square with his declaration

16  regarding his residency that he filed in this case, where he stated that he spends "much of my

17  time" in Las Vegas.  (*Labar Decl. Exh. E, Mosley Decl. ¶ 16*).  Putting Mosley's poor memory

18  regarding his whereabouts in 2008 to one side, Mosley's testimony plainly shows that he did not

19  intend to remain apart from his family or leave California permanently at the time the complaint

20  was filed.  (*Labar Decl. Exh. D, Mosley Depo. at 61:8-11*).

21        After his planned fight this past May in Las Vegas (that he was training for in Big Bear),

22  Mosley intended to return to California with his family.  (*Id. at 42:6-19*).  Following his return to

23  California, he intended to keep training in Big Bear:

24        Q:  And do you intend to keep training for your fights in
25        Big Bear?

26

27  _____

28  [8]      Mosley could not recall much about his medical providers, but documents provided by
   his counsel show that 15 out of 17 of his medical providers since 2002 are located in California.
   (*Labar Decl. Exh. M*).

1           A:   Big Bear is, yeah, the training spot, yeah.

2  (*Id. at 43:13-15*).

3           Mosley also intended to keep being with his family in La Verne, at least until his eldest

4  son finished school:

5

6                    Q: And you intend to keep seeing your family obviously
                     and your wife in California, right?

7
                     A:  Yes.
8
                     ***
9
                     Q:  And let me ask you as of, say, April 2008, this year, it
10                   was your plan and intention to have your family remain in
                     California until your son complete school in California; is
11                   that right?

12
                     A:  As of April?
13
                     Q:  Right.
14
                     A:   Um, I would say yeah.  *We were going to stay in*
15                   *California*, but [I] was going to leave California after the
                     fight, which was May, for a period of time.
16
                     Q:  Right.  And you were going to return to California to
17                   allow your child to finish school, right?

18
                     A:  To finish school.
19

20  (*Id. at 43:16-18; 53:17-54:3*) (*emphasis added*).

21

22           Mosley's admission that he intended to stay in California with his family as of April 2008

23  is dispositive on the issue of intent.  Regardless of Mosley's future plans possibly to move his

24  family to Nevada full time, at the time of the filing of the complaint, he intended to keep training

25  and living with his family in California.  Under the "snapshot rule," it is clear that Mosley is a

26  citizen of California.  At best, Mosley has produced evidence demonstrating that he is in the

27  process of relocating his domicile to Nevada.  That, however, is not enough.  Even if a plaintiff is

28  in the process of moving to another state, if the move was not complete when suit was filed,

KERR
&
WAGSTAFFE
LLP

1   plaintiff's domicile remains at his or her last residence.  <u>Heinz v. Havelock</u>, 757 F. Supp. 1076,

2   1079 (C.D. Cal. 1991) (Defendants had not yet completed planned move from California to

3   North Carolina at the time the complaint was filed).  At the time of the filing of the complaint,

4   Mosley's present intention was to remain in California with his family.

5          While he could not definitely say at deposition how much time he actually spent in

6   Nevada *vis-a-vis* California, he stated that it was almost an equal amount of time:

7                  Q:   Okay.  And can you give me any percentage of how
                   much time you spent in California versus Nevada in the
8                  year 2007?

9                  A:   I couldn't -- I couldn't tell you.  *I mean it could be*
10                 *equally as much because I'm in Nevada or, you know, I'm*
                   *all over the place.  I'm not just in California and Nevada.*
11                 *I'm everywhere.*  Wherever the promotion needs me to go, I
                   go.
12

13  (*Id. at 57:20-58:2) (emphasis added).*

14         In light of this testimony, his declaration that he spends "much of his time" in Las Vegas

15  is highly suspect.  Third, Mosley's spontaneous deposition testimony reveals the truth about his

16  intentions at the time the complaint was filed.  Mosley intended to remain in California with his

17  family until, at a minimum, his eldest son finished school.  (*Id. at 56:3-57:2).*  While Mosley

18  may (or may not) intend to one day relocate to Nevada permanently, that day had not arrived at

19  the time he filed the complaint in this case.  As such, his future intentions are of no consequence

20  to the citizenship inquiry.  <u>Heinz</u>, 757 F. Supp. at 1079.  Here, Mosley's actions and words

21  demonstrate that he was a California citizen at the time of the filing of the complaint.

22  **III.    THE COURT SHOULD SANCTION MOSLEY UNDER ITS INHERENT
            POWERS**

23

24         **A.     THE COURT HAS THE INHERENT POWERS TO SANCTION MOSLEY**

25         This Court has the "well-acknowledged *inherent power*…to levy sanctions in response to

26  abusive litigation practices."  <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 765 (1980)

27  (emphasis added and internal quotation marks omitted); <u>see also</u> <u>Chambers v. NASCO, Inc.</u>, 501

28  U.S. 32, 43 (1991); <u>In re Itel Secs. Litig.</u>, 791 F.2d 672, 675 (9th Cir. 1986); <u>Winn v. Associated</u>

Press, 903 F. Supp. 575, 581 (S.D.N.Y. 1995) ("A federal district court possesses broad inherent

power to impose sanctions in response to abusive litigation practices, thereby ensuring the proper

administration of justice."), aff'd, 104 F.3d 350 (2d Cir. 1996).  This is true even if the court

never possessed subject matter jurisdiction over the case.  See Schlaifer Nance & Co., Inc. v.

Estate of Warhol, 194 F.3d 323, 333 (2d Cir.1999) ("[E]ven when a district court lacks subject

matter jurisdiction over an underlying action, it still possesses jurisdiction to impose sanctions

arising from the underlying case.").

       This inherent authority encompasses a broad range of sanctions, including even dismissal

"when a party has willfully deceived the court and engaged in conduct utterly inconsistent with

the orderly administration of justice."  Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589

(9th Cir. 1983).  As the Supreme Court has recognized, "[p]erjured testimony is an obvious and

flagrant affront to the basic concepts of judicial proceedings."  United States v. Mandujano, 425

U.S. 564, 576 (1976).  "In any proceeding, whether judicial or administrative, deliberate

falsehoods well may affect the dearest concerns of the parties before a tribunal and may put the

factfinder and parties to the disadvantage, hindrance, and delay of ultimately extracting the truth

by cross examination, by extraneous investigation or other collateral means.  Perjury should be

severely sanctioned in appropriate cases."  ABF Freight Systems, Inc. v. National Labor

Relations Board, 510 U.S. 317, 323 (1994) (citations and internal quotation marks omitted); see

also Pope v. Federal Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (false testimony "abuses

the judicial process" and is sanctionable under court's inherent authority).

       A court may use its inherent power to sanction a party who makes false claims regarding

the procedural basis for pursuing the case.  Methode Electronics, Inc. v. Adam Technologies,

Inc., 371 F.3d 923, 928 (7th Cir. 2004).  In Methode, a party sought a temporary restraining

order.  Early discovery revealed that the verified complaint contained false venue allegations.

The court sanctioned the attorneys and the party under its inherent authority.  The court

determined that "... not only that Methode's venue allegations were false, but that Methode's

conduct in advancing them was intentionally deceptive."  Id.  The Seventh Circuit affirmed the

ruling on appeal, finding that the party acted in bad faith.  As the court found, "[t]his was not a

1  question of mere negligence. It was an effort to deceive the court as to the existence of venue…"

2  <u>Id</u>.

3      Here, similar to the situation in <u>Methode</u>, Mosley knowingly and falsely testified about

4  his citizenship in an effort to deceive the Court into retaining jurisdiction over this action.

5  Mosley sought to deceive the Court and counsel as to critical jurisdictional facts that were highly

6  relevant. Instead of being forthright, Mosley, like the litigant in <u>Methode</u> chose to deceive the

7  Court. Such conduct should not go unpunished. It is well-settled that an award of attorneys'

8  fees and costs is an appropriate sanction for bad faith conduct such as this. <u>Chambers</u>, 501 U.S.

9  at 43-45. The following chart summarizes Defendant's lodestar amount of fees incurred in

10  defending this baseless action:

| Attorney/Staff | Hours | Rate | Lodestar |
|---|---|---|---|
| James M. Wagstaffe | 20.30 | 495.00 | $10,048.50 |
| Ivo Labar | 153.70 | 375.00 | $57,637.50 |
| Holly Hogan | 22.00 | 235.00 | $5,170.00 |
| Garfield Pallister (Paralegal) | 11.70 | 130.00 | $1,521.00 |
| Sarah Smoot (Paralegal) | 11.20 | 110.00 | $1,232.00 |
| Michael McCarthy (Case Clerk) | .90 | 50.00 | $45.00 |

19      Total Fees:   $75,654.00

20  (*Declaration of James M. Wagstaffe in Support of Defendant's Motion for Sanctions and*

21  *Attorneys' Fees (hereinafter "Wagstaffe Decl.") ¶ 6*).

22      Defendant respectfully requests that the Court award the entire amount of fees incurred in

23  defending this action as a sanction for Mosley's bad faith conduct.

24  **IV.    DEFENDANT IS ENTITLED TO ATTORNEYS' FEES FOR THE ANTI-SLAPP MOTION**

25      **A.    DEFENDANT IS ENTITLED TO LEGAL FEES UNDER CALIFORNIA C.C.P.**

26          **§ 425.16(C)**

27      In the alternative, Defendant is entitled to attorneys' fees and costs incurred in preparing

28  and filing the anti-SLAPP motion. The purpose of the anti-SLAPP law is to protect the rights of

1  persons and newspapers to speak freely on public issues without being deterred or chilled by

2  subsequent libel litigation.  C.C.P. § 425.16(a).  To effectuate its purpose, section 425.16(c)

3  provides that a prevailing defendant on a Special Motion to Strike shall be entitled to recover his

4  or her attorneys' fees and costs.  Id.  A party "prevails" under section 425.16 when the plaintiff

5  voluntarily dismisses his complaint in the face of a pending SLAPP motion.  ARP Pharmacy,

6  138 Cal. App. 4th at 1323.

7      Given that Plaintiff voluntarily dismissed his case in the face of Defendant's anti-SLAPP

8  motion, Defendant is, therefore, the prevailing party and entitled to recover his attorneys' fees

9  and costs under section 425.16(c).

10      Section 425.16(c), which provides "financial relief in the form of attorney's fees and

11  costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits," is an

12  important part of California's anti-SLAPP legislation.  Moore v. Liu, 69 Cal. App. 4th 745, 748

13  (1999).  The purpose of the fee provision of the anti-SLAPP statute is to make the defendants

14  whole financially so as to "adequately compensate the defendant for the expense of responding

15  to a baseless lawsuit."  Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal. App. 4th 777,

16  785 (1996).  In addition, the "awarding of reasonable attorneys' fees" to defendants who prevail

17  against SLAPPs "will discourage the filing of SLAPP lawsuits."  Hull v. Rossi, 13 Cal. App. 4th

18  1763, 1769 (1993).  In 1997, the Legislature amended section 425.16 to clarify its original intent

19  that the "section shall be construed broadly."  C.C.P. § 425.16(a).  This directive applies to the

20  entire section and, thus, under section 425.16(c), as a prevailing defendant, Conte should be

21  reimbursed for all fees and costs reasonably related to defending this SLAPP.

## B.    THE AMOUNT OF ATTORNEYS' FEES REQUESTED BY DEFENDANT IS REASONABLE

24      When fees are to be awarded under a fee-shifting statute (such as § 425.16(c)), the

25  "parties who qualify for a fee should recover all hours reasonably spent."  Serrano v. Unruh, 32

26  Cal. 3d 621, 633 (1982).  The method for determining the amount of reasonable attorneys' fees is

27  well established:  the base or lodestar is first computed by multiplying the number of hours

28  reasonably spent by the reasonable hourly rate for each attorney.  See Flannery v. California

KERR
&
WAGSTAFFE
LLP

– 12 –

1    Highway Patrol, 61 Cal. App. 4th 629, 646 (1998).  Also included in the lodestar are out-of-

2    pocket expenses of the type normally billed to fee-paying clients.  Beasley v. Wells Fargo Bank,

3    235 Cal. App. 3d 1407, 1419 (1991).  Although a fee claimant can then request an increase in the

4    lodestar by a multiplier, Defendant did not do so here.

5        As demonstrated in the Wagstaffe Declaration, at paragraph 8, both the number of hours

6    and the hourly rate charged for the anti-SLAPP work (not including the fees motion) are

7    reasonable.  The following chart summarizes Defendant's lodestar:

| Attorney/Staff | Hours | Rate | Lodestar |
|---|---|---|---|
| James M. Wagstaffe | 10.60 | 495.00 | $5,247.00 |
| Ivo Labar | 75.50 | 375.00 | $28,312.50 |
| Holly Hogan | .40 | 235.00 | $94.00 |
| Garfield Pallister (Paralegal) | 1.90 | 130.00 | $247.00 |
| Sarah Smoot (Paralegal) | 3.90 | 110.00 | $429.00 |

Total Fees:    $34,329.50

16        **1.        The number of hours claimed is reasonable.**

17        As shown in the Wagstaffe Declaration, the number of hours billed in defense of this

18    SLAPP indisputably is reasonable.  Defendant's counsel had to do a substantial amount of work

19    in support of the motion to strike, including gathering background information, working with

20    Conte, other percipient witnesses and their counsel, analyzing various affirmative defenses

21    related to the anti-SLAPP, researching the grounds to be set forth in an anti-SLAPP Special

22    Motion to Strike, drafting that motion, preparing for oral argument, preparing the proposed

23    order, and preparing the instant motion for fees.  The hours are reasonable as reflected in the

24    contemporaneously kept and detailed time records that describe the activities for which

25    compensation is claimed.  (Wagstaffe Decl. ¶ 8 & Exh. A).  Even if hindsight could be utilized to

26    second-guess certain time entries, which it cannot, Woolridge v. Marlene Indus. Corp. 898 F.2d

27    1169, 1177 (6th Cir. 1990) (standard is attorneys' reasonable belief at the time, not hindsight

28    analysis), the fees requested in this case are particularly reasonable.

KERR
&
WAGSTAFFE
LLP

– 13 –

1    If one were to take a "gestalt" view of the reasonableness of the fees, the total amount

2    charged is exceptionally low.  The amount requested here is well below amounts awarded for

3    work on anti-SLAPP motions in the trial court in other cases, including several affirmed on

4    appeal.  (*Wagstaffe Decl. at ¶ 11.*)  The request here is well below amounts awarded for work on

5    the anti-SLAPP motions in the trial courts in other cases, including several affirmed on appeal.

6    For example, in the <u>Lafayette Morehouse, Inc. v. Chronicle Publishing Co.</u>, a case decided over

7    ten years ago at substantially lower rates, the court awarded in excess of $100,000.00 as a

8    reasonable attorney fee.  (*Id.*)  And while the Court of Appeal, in its second opinion rendered

9    before the later statutory amendment compelling a broad reading of the anti-SLAPP law, allowed

10   fees on the motion itself, the trial court on remand (Hon. William Cahill) allowed all fees

11   expended on the defense except for a small amount of time spent on a motion to quash for a

12   collateral defendant.  (*Id.*)  Thus, the court awarded fees for client meetings, review of the

13   complaint, discovery analysis and work on the appeal.  Similarly, in the <u>Church of Scientology v.</u>

14   <u>Wollersheim</u> case, the court awarded in excess of $90,000.00 in reasonable attorneys' fees over a

15   decade ago.  (*Id.*)  The amount sought here, a fraction of those figures, is both reasonable and

16   reflects the skill and expertise of the attorneys involved.

17              **2.    The hourly rates sought by counsel are reasonable.**

18        Defendant's attorneys are entitled to be compensated at hourly rates that reflect the

19   reasonable market value of their services in the community.  <u>Serrano</u>, 32 Cal. 3d at 643.  The

20   declaration filed herewith amply demonstrates the extensive level of experience of the lawyers

21   involved and that their hourly rates are at or below reasonable market value for this community.

22   (*Wagstaffe Decl. at ¶¶ 4-5.*)

23              **3.    Defendant is entitled to recover fees for filing this fees motion.**

24        It is settled law that fees recoverable under a mandatory fee statute, such as involved in

25   this case, include fees incurred in presenting and arguing the fees motion.  In this particular

26   matter, Defendant has reasonably expended nine hours in preparing this fee petition at a total

27   cost of $3,615.  (*Wagstaffe Decl. ¶ 9*).  It is estimated that a reply brief will require an additional

28   five hours ($1,995) and the oral argument will require three hours ($1,365).  (*Id.*).  Thus, the total

1    amount of $6,975 sought for the preparation and presentation of this motion is exceedingly

2    reasonable.  (*Id.*)

3    **V.      CONCLUSION**

4            Mosley filed this case knowing that complete diversity, and therefore subject matter

5    jurisdiction, was lacking over this case.  When this issue was raised in discovery, Mosley

6    persisted in falsely claiming that he was a citizen of Nevada.  Such conduct is sanctionable under

7    the Court's inherent powers, and Mosley should be ordered to pay the attorneys' fees incurred in

8    defending this meritless action.

9            In the alternative, Defendant respectfully requests that he be awarded his reasonable

10   attorneys' fees in the amount of $34,329.50, pursuant to California Code of Civil Procedure

11   section 425.16(c).

12

13   DATED: August 28, 2008                    Respectfully submitted,

14                                             **KERR & WAGSTAFFE LLP**

15

16                                      By  _____/s/_____
                                           IVO LABAR
17

18                                         Attorneys for Defendant
                                           Victor Conte
19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP