JAMES M. WAGSTAFFE (95535)
IVO LABAR (203492)
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Defendant
VICTOR CONTE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE D. MOSLEY, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>VICTOR CONTE,<br><br>Defendant. | Case No. C 08-01777 JSW<br><br>**DEFENDANT VICTOR CONTE'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY, OR IN THE ALTERNATIVE, ATTORNEYS' FEES PURSUANT TO C.C.P. § 425.16(c)**<br><br>Hearing Date: December 19, 2008<br>Time: 9:00 a.m.<br>Courtroom: 2<br><br>HON. JEFFREY S. WHITE |

CASE NO. C 08-01777 JSW        DEFENDANT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES

# TABLE OF CONTENTS

*Page*

I. Introduction and Summary of Argument ........................................................................ 1

II. Background ....................................................................................................................... 2

    A. Mosley Files A Defamation Action Against Conte .............................................. 2

    B. Mosley's False Testimony Regarding His Citizenship .......................................... 3

        1. Mosley, Under Oath, Falsely Claims to Be a Citizen of Nevada ............. 3

        2. All of the Evidence Shows that Mosley is a Citizen of California ........... 3

III. The Court Should Sanction Mosley Under Its Inherent Powers ....................................... 9

    A. The Court Has the Inherent Powers to Sanction Mosley ..................................... 9

IV. Defendant Is Entitled to Attorneys' Fees for the Anti-SLAPP Motion .......................... 11

    A. Defendant Is Entitled To Legal Fees Under California C.C.P. § 425.16(c) ....... 11

    B. The Amount Of Attorneys' Fees Requested By Defendant Is Reasonable ........ 12

        1. The number of hours claimed is reasonable. ......................................... 13

        2. The hourly rates sought by counsel are reasonable. .............................. 14

        3. Defendant is entitled to recover fees for filing this fees motion. ............ 14

V. Conclusion ...................................................................................................................... 15



# TABLE OF AUTHORITIES

*Page*

## *Cases*

ABF Freight Systems, Inc. v. National Labor Relations Board,
   510 U.S. 317 (1994) .................................................................................................. 10

ARP Pharmacy Svcs., Inc. v. Gallagher Bassett Svcs., Inc.,
   138 Cal. App. 4th 1307 (2006) ............................................................................... 1, 12

Beasley v. Wells Fargo Bank,
   235 Cal. App. 3d 1407 (1991) .................................................................................. 13

Chambers v. NASCO, Inc.,
   501 U.S. 32 (1991) .................................................................................................. 9, 11

District of Columbia v. Murphy,
   314 U.S. 441 (1941) .................................................................................................... 5

Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,
   47 Cal. App. 4th 777 (1996) ...................................................................................... 12

Flannery v. California Highway Patrol,
   61 Cal. App. 4th 629 (1998) ...................................................................................... 13

Hawes v. Club Ecuestre El Comandante,
   598 F.2d 698 (1st Cir. 1979) ....................................................................................... 5

Heinz v. Havelock,
   757 F. Supp. 1076 (C.D. Cal. 1991) ........................................................................... 9

Hull v. Rossi,
   13 Cal. App. 4th 1763 (1993) .................................................................................... 12

In re Itel Secs. Litig.,
   791 F.2d 672 (9th Cir. 1986) ....................................................................................... 9

Lew v. Moss,
   797 F.2d 747 (9th Cir. 1986) ....................................................................................... 5

Methode Electronics, Inc. v. Adam Technologies, Inc.,
   371 F.3d 923 (7th Cir. 2004) ................................................................................ 10, 11

Mitchell v. Unites States,
   21 Wall. 350, 88 U.S. 350 (1874) ............................................................................... 5

Moore v. Liu,
   69 Cal. App. 4th 745 (1999) ...................................................................................... 12

Pope v. Federal Express Corp.,
   974 F.2d 982 (8th Cir. 1992) ..................................................................................... 10

Roadway Express, Inc. v. Piper,
   447 U.S. 752 (1980) .................................................................................................... 9

Schlaifer Nance & Co., Inc. v. Estate of Warhol,
    194 F.3d 323 (2d Cir.1999) .......................................................................................... 10

Serrano v. Unruh,
    32 Cal. 3d 621 (1982) .......................................................................................... 12, 14

United States v. Mandujano,
    425 U.S. 564 (1976) .................................................................................................. 10

Winn v. Associated Press,
    903 F. Supp. 575 (S.D.N.Y. 1995) ........................................................................... 10

Woolridge v. Marlene Indus. Corp.
    898 F.2d 1169 (6th Cir. 1990) .................................................................................. 13

Wyle v. R.J. Reynolds Industries, Inc.,
    709 F.2d 585 (9th Cir. 1983) .................................................................................... 10

### *Statutes*

28 U.S.C. § 1332 .................................................................................................................. 2

C.C.P. § 425.16 ............................................................................................................ 1, 12

### *Other Authorities*

REST. 2ND CONFLICT OF LAWS § 20 (2008) ....................................................................... 7

Wright, Miller, Cooper, 13B FEDERAL PRACTICE & PROCEDURE § 3612 (2008) ............ 5

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case was a defamation suit brought by professional boxer Shane Mosley against Victor Conte. After demanding immediate discovery and an expedited trial date, Mosley meekly dismissed his complaint in the face of a pending anti-SLAPP motion and a soon-to-be-filed motion to dismiss for lack of subject matter jurisdiction. Mosley should be ordered to pay attorneys' fees and costs for his abuse of the system under the Court's inherent authority or, in the alternative, pursuant to the fee shifting provisions of Code of Civil Procedure section 425.16, California's anti-SLAPP statute.

Mosley dismissed his complaint because the Defendant discovered that he intentionally misled the Court about his citizenship. In both a declaration filed in this action, and in his deposition, Mosley repeatedly asserted that he was a citizen of Nevada. The true facts were that Mosley is a longtime citizen of California. Indeed, a cross-complaint he filed in another action, Mosley alleged he was a citizen of California. Just as egregiously, in his deposition in this action where he falsely claimed to be a citizen of Nevada, Mosley provided false testimony and concealed the existence of the California suit in which he was *in trial just two days earlier*. Mosley intentionally misled the Court about his citizenship in order to concoct jurisdiction in what he believed to be a more favorable venue. The Court, under its inherent authority, should order Mosley to pay all of the attorneys' fees and costs incurred in defending this abusive and meritless action. That amount is $75,654.00.

In the alternative, Defendant is entitled to fees and costs because Plaintiff's defamation complaint was a meritless suit rising from Defendant's exercise of his free speech rights protected by California's anti-SLAPP statute, California Code of Civil Procedure ("C.C.P.") section 425.16. Mosley dismissed his case before Defendant's anti-SLAPP motion was heard. California law is clear: a plaintiff may not voluntarily dismiss his complaint in order to avoid attorneys' fees liability for a well-taken anti-SLAPP motion. ARP Pharmacy Svcs., Inc. v. Gallagher Bassett Svcs., Inc., 138 Cal. App. 4th 1307, 1323 (2006). Accordingly, Defendant brings this motion to recover fees ($34,329.50) he reasonably incurred in defending against this SLAPP, to which he is entitled under the anti-SLAPP statute, C.C.P. § 425.16(c).

## II.   BACKGROUND

### A.   MOSLEY FILES A DEFAMATION ACTION AGAINST CONTE

This case arises from the well-publicized sports drug scandal involving professional athletes' use of performance enhancing drugs provided by Bay Area Laboratory Cooperative ("BALCO"). Defendant Victor Conte was the owner of the business. Shane Mosley was one of the many athletes who have admitted to injecting illegal performance enhancing drugs supplied by BALCO.

Taking a cue from the playbook of Marion Jones, another disgraced athlete linked to the BALCO imbroglio, Mosley filed a defamation complaint against Conte on April 2, 2008.[1] Mosley's slander and libel claims were based on the puzzling proposition that he did not "knowingly" inject himself with illegal performance enhancing drugs over the course of many weeks before his professional bout with Oscar De La Hoya in 2005. In his complaint, Mosley made the ludicrous allegations that Conte somehow fooled him into injecting banned substances known as the "the Clear" and "the Cream." Subject matter jurisdiction was based on the diversity statute, 28 U.S.C. section 1332. Mosley claimed to be a citizen of Nevada, and alleged that Conte was a citizen of California. (*Complaint ¶ 4*).

Shortly after filing the complaint, and before Defendant's responsive pleading was filed, Mosley filed a motion to for leave to conduct expedited discovery and trial. (*Docket. Nos. 16-26*). Mosley sought a quick trial in the hopes of obtaining a permanent injunction that would prohibit the publication of Conte's book that detailed Mosley's illegal drug use. The Court granted expedited discovery, but later denied the motion to expedite the trial. (*Docket. Nos. 26,*

---

[1] Sprinter Marion Jones filed a similar action, captioned as *Jones v. Conte, Case No. 04-05312 SI*, in 2004. (*Declaration of Ivo Labar in Support of Defendant's Motion for Sanctions and Attorneys' Fees (hereinafter "Labar Decl.") Exh. A, Jones Complaint*). Jones, like Mosley, denied taking banned performance enhancing drugs. Jones was later prosecuted and sentenced to six months in prison for lying about her use of banned performance enhancing drugs. (*Labar Decl. Exh. B, Jones News Article*). Other professional athletes, such as Trevor Graham and Barry Bonds, are also facing criminal prosecution arising from similar denials. (*Labar Decl. Exh. C, BALCO News Article*).

1   *46*).  In addition, the Court set a briefing schedule for Defendant's Special Motion to Strike and
2   set a hearing on the motion for August 22, 2008.  (*Docket No.47*).
3         In order to ascertain the truth about Mosley's claimed citizenship, Defendant took
4   Mosley's deposition on July 9, 2008 in Los Angeles, California and also undertook other
5   informal discovery efforts to acquire information about the same.  (*Labar Decl. ¶ 5*).  Shortly
6   after Mosley's deposition, Defendant presented Plaintiff with a draft motion to dismiss for lack
7   of subject matter jurisdiction.  (*Id. ¶ 6*).  After Defendant evidenced his intent to file the motion
8   to dismiss for lack of subject matter jurisdiction, Plaintiff voluntarily dismissed his complaint
9   with the SLAPP motion pending.  (*Id.; see also Docket No. 66*).  On the same day that Plaintiff
10  dismissed his complaint, he re-filed his case in New York, a state that does not have a
11  comparable anti-SLAPP statute.  (*Id.*).

12        **B.**      **MOSLEY'S FALSE TESTIMONY REGARDING HIS CITIZENSHIP**
13        **1.**      **Mosley, Under Oath, Falsely Claims to Be a Citizen of Nevada**
14        As discussed above, Mosley's complaint alleged that he was a citizen of Nevada.
15  (*Complaint ¶ 4*).  On May 23, 2008, Mosley filed a declaration in support of his motion for an
16  expedited trial.  (*Labar Decl. Exh. E, Declaration of Shane Mosley "Mosley Decl."*).  In an
17  attempt to head off any dispute related to subject matter jurisdiction, the declaration stated, in
18  pertinent part, that "Conte has also claimed that I am not a citizen of Nevada.  This is also not
19  true." (*Id. ¶ 8*).  Mosley's declaration went on to list a handful of highly selective facts that he
20  considered probative of his citizenship.  (*Id. ¶¶ 9-16*).  Mosley was deposed on July 9, 2008, and
21  again claimed to be a citizen of Nevada.  (*Labar Decl. Exh. D*, *Mosley Depo at 17:19-18:18*).

22        **2.**      **All of the Evidence Shows that Mosley is a Citizen of California**
23        Mosley's declaration and deposition testimony omitted critical facts regarding his true
24  citizenship.  For example, Mosley invoked the jurisdiction of the California state courts in 2003,
25  and claimed to be a resident of Los Angeles County.[2]  (*Labar Decl. Exh. F*).  He again invoked

---

[2]    Critically, this was *after* Mosley purchased his first home in Nevada.  (*Labar Decl. Exh. E, Mosley Decl. ¶ 9*).

1  the jurisdiction of California courts in 2007, claiming to be a California resident.  (*Labar Decl.*

2  *Exh. I*).  Neither of these facts were noted in his declaration.  The 2007 action, *Terrier Corp. v.*

3  *Shane Mosley*, *Case No. KC050549*, involved a dispute related to a $50,000 child's playground

4  set that was installed at Mosley's mansion in La Verne, California.  (*Labar Decl. Exh. H*).

5        Gallingly, just two days before his July 9, 2008 deposition in this case, Mosley was in

6  trial in the *Terrier* action in California.  (*Labar Decl. Exh. J*).  Mosley never explained at

7  deposition that he was just in trial in Los Angeles, nor that he filed a cross-complaint in that

8  action on July 7, 2008 – just two days earlier – in which he claimed to be a California resident

9  (*Labar Decl. Exh. G*).[3]  Indeed, Mosley did not mention the California trial at all, despite the fact

10  that Defendant's counsel asked plain and simple questions regarding whether or not Mosley had

11  ever testified in any trials or been a party to any lawsuits:

> Q:  Let me ask you -- go back to the topic of the lawsuits that you've been involved with.  You told me about a lawsuit involving a gentleman named Mr. Wendell Wright and another lawsuit involving an entity called Ringside Tickets and a gentleman named Patrick Ortiz.
>
> A:  Yes.
>
> Q:  Can you recall any other lawsuits that you've been a party to?
>
> A:  No.
>
> Q:  Do you think there have been more and you just can't remember any of the details of them or do you think there haven't been any more than the two you've told me about?
>
> A:  Those are the -- the big lawsuits that stand out, but other than that, I can't really recall.
>
> Q:  Okay.  You say those are the two big ones that you -- that stand out.  Can you recall any small ones?
>
> A:  I mean those are -- that's really all I can recall at this point is those lawsuits.  I mean that's it.

(*Labar Decl. Exh. D, Mosley Depo at 9:14-10:8*).

---

[3]   Mosley's misleading declaration and deposition testimony regarding his citizenship speak volumes as to the merits of his defamation claim.



– 4 –

CASE NO. C 08-01777 JSW    DEFENDANT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES

Plainly, Mosley deliberately chose not to reveal the *Terrier* case, because he knew that it would prove that he was not a Nevada resident as he claimed to be. Besides claiming to be a California citizen when it suits him, all of the other evidence shows that Mosley has strong, fixed connections to California, where he has lived for his entire life.[4] Mosley was born in Lynwood, California. (*Id. at 12:3-4*). He grew up in Pomona, California, and graduated high school there. (*Id. at 12:17-13:24*). After high school, he continued a career as a professional boxer. He purchased two homes in Pomona, and later moved to La Verne, California in 1997. (*Id.*). Although his career as a boxer takes him "everywhere," he still owns the La Verne home as well as a house in Big Bear, California, where he was residing at the time the complaint in this action was filed. (*Id. at 16:8-23*).[5] Neither of his homes in California were for sale at the time he filed this complaint. (*Id. at 44:6-12*). On the day this complaint was filed, Mosley was living and training at his Big Bear home. The fact that he was not physically present in Nevada at the time the complaint was filed should be dispositive of this issue of domicile.

There is no question Mosley's personal life is also centered in California. Mosley's spouse and children live in the La Verne home full-time. (*Id. at 14:11-16*). Each of his five children are enrolled in school there. (*Id. at 26:8-20*).[6] In addition to his spouse and children, Mosley's mother and father also live in Pomona, as does his sister. (*Id. at 26:21-27:5*). Critically, Mosley's California-based father is also his primary boxing trainer and has been since

---

[4] Given Mosley's longstanding, permanent connections to California, there is a presumption that California continues as his domicile. Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979); Mitchell v. Unites States, 21 Wall. 350, 88 U.S. 350, 353 (1874) ("domicile once acquired is presumed to continue until it is shown to have been changed.").

[5] It is presumed that the state in which a person resides at any given time is also that person's domicile. District of Columbia v. Murphy, 314 U.S. 441, 455 (1941).

[6] This crucial fact raises yet another presumption: for citizenship purposes, married people are presumed to be domiciled with their wife and family. Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986); see also Wright, Miller, Cooper, 13B FEDERAL PRACTICE & PROCEDURE § 3612 at n. 25 (2008).

1  Mosley was eight years old.  (*Id. at 28:8-15*).  Mosley does not explain how he permanently

2  resides in a state apart from his primary trainer.

3        Mosley keeps clothing in California as well as his boxing training gear.  When he is in

4  California he has used his wife's automobile which is registered in California.  (*Id. at 23:7-24:4*).

5  At both of his homes in California, he has utility service, cable and satellite television and a

6  home phone.  (*Id. at 19:9-24; 24:8-15; 50:23-52:1*).  The accounts for those services are in his

7  name and he receives mail there.  (*Id.; Labar Decl. Exhs. K-M*).  His personal things, such as

8  family portraits, wedding pictures, and personal financial records are also kept in California.

9  (*Labar Decl. Exh. D, Mosley Depo. at 24:21-25:10*).

10        Mosley does his professional training at this home in Big Bear, California, where he also

11  resides.  Mosley has owned his Big Bear home for approximately seven years.  (*Id. at 16:22-*

12  *17:13*).  The Big Bear home has a boxing gym, and Mosley uses it to prepare for his professional

13  fights.  (*Id. at 30:18-31:21*).  Throughout 2007 and 2008, Mosley prepared for his fights there.

14  (*Id.*).  Again, at the time the lawsuit was filed, he was living and training at his Big Bear home

15  where he spends months at a time.  (*Id. at 30:18-31:21; 40:5-10*).

16        Mosley's other business affairs and other personal affairs are also centered in California.

17  His wife works for his promotional company Sugar Shane, Inc. out of their home in La Verne.

18  (*Id at 25:11-26:7*).  In addition, he is a partner with Oscar de La Hoya in Golden Boy

19  Enterprises, which has its principal offices in Los Angeles.  (*Id. at 36:19-37:12*).

20        His other business affairs (such as tax payment and money management) were handled

21  for more than a decade by his aunt, another California citizen.  (*Id. at 45:15-46:15*).[7]  His

22  business affairs are currently handled by his money manager at UBS Warburg, who is located in

23  Los Angeles.  (*Id. at 20:7-21:5*).  Mosley banks at national banks that have branches in

24  California.  (*Id. at 48:9-14*).  Mosley uses those branches when he is in California.  (*Id.*).  The

---

[7]  For a short time, his business affairs were handled by a certified public accountant ("CPA") in New York.  (*Labar Decl. Exh. D, Mosley Depo. at 14:17-15:4*).

last time he saw a medical doctor, or a dentist, was in California.[8] (*Id. at 32:9-33:20*).  Mosley can only recall voting one time, and that was in California. (*Id. at 35:12-36:1*).  The center of one's business, domestic and social life is strong evidence of domicile.  REST. 2ND CONFLICT OF LAWS § 20 (2008).  Here, all of the facts show that Mosley's "center" was in California at the time the action was commenced.  Accordingly, he should be considered a California citizen.

Mosley admits that he spent a significant, if not the majority, of his time in 2007 and 2008 in California. (*Labar Decl. Exh. D, Mosley Depo. at 30:18-31:21; 40:5-10*).  Although Mosley could not say with any specificity how much time he spends in California vs. Nevada, he admits to moving back and forth between California "a lot."

> Q:  About how many times do you think you went back and forth from California and Nevada in the first three months of the year?
>
> A:  I couldn't tell you.  I go back -- back and forth a lot.

(*Id. at 41:12-16*).

Mosley's testimony regarding his itinerant lifestyle is hard to square with his declaration regarding his residency that he filed in this case, where he stated that he spends "much of my time" in Las Vegas. (*Labar Decl. Exh. E, Mosley Decl. ¶ 16*).  Putting Mosley's poor memory regarding his whereabouts in 2008 to one side, Mosley's testimony plainly shows that he did not intend to remain apart from his family or leave California permanently at the time the complaint was filed. (*Labar Decl. Exh. D, Mosley Depo. at 61:8-11*).

After his planned fight this past May in Las Vegas (that he was training for in Big Bear), Mosley intended to return to California with his family. (*Id. at 42:6-19*).  Following his return to California, he intended to keep training in Big Bear:

> Q:  And do you intend to keep training for your fights in Big Bear?

---

[8] Mosley could not recall much about his medical providers, but documents provided by his counsel show that 15 out of 17 of his medical providers since 2002 are located in California. (*Labar Decl. Exh. N*).

A: Big Bear is, yeah, the training spot, yeah.

(*Id. at 43:13-15*).

Mosley also intended to keep being with his family in La Verne, at least until his eldest son finished school:

> Q: And you intend to keep seeing your family obviously and your wife in California, right?
>
> A: Yes.
>
> \*\*\*
>
> Q: And let me ask you as of, say, April 2008, this year, it was your plan and intention to have your family remain in California until your son complete school in California; is that right?
>
> A: As of April?
>
> Q: Right.
>
> A: Um, I would say yeah. *We were going to stay in California*, but [I] was going to leave California after the fight, which was May, for a period of time.
>
> Q: Right. And you were going to return to California to allow your child to finish school, right?
>
> A: To finish school.

(*Id. at 43:16-18; 53:17-54:3*) (*emphasis added*).

Mosley's admission that he intended to stay in California with his family as of April 2008 is dispositive on the issue of intent. Regardless of Mosley's future plans possibly to move his family to Nevada full time, at the time of the filing of the complaint, he intended to keep training and living with his family in California. Under the "snapshot rule," it is clear that Mosley is a citizen of California. At best, Mosley has produced evidence demonstrating that he is in the process of relocating his domicile to Nevada. That, however, is not enough. Even if a plaintiff is in the process of moving to another state, if the move was not complete when suit was filed,



– 8 –
CASE NO. C 08-01777 JSW         DEFENDANT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES

plaintiff's domicile remains at his or her last residence. Heinz v. Havelock, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991) (Defendants had not yet completed planned move from California to North Carolina at the time the complaint was filed). At the time of the filing of the complaint, Mosley's present intention was to remain in California with his family.

While he could not definitely say at deposition how much time he actually spent in Nevada *vis-a-vis* California, he stated that it was almost an equal amount of time:

> Q:  Okay. And can you give me any percentage of how much time you spent in California versus Nevada in the year 2007?
>
> A:  I couldn't -- I couldn't tell you. I *mean it could be equally as much because I'm in Nevada or, you know, I'm all over the place. I'm not just in California and Nevada. I'm everywhere.* Wherever the promotion needs me to go, I go.

(*Id. at 57:20-58:2) (emphasis added).*

In light of this testimony, his declaration that he spends "much of his time" in Las Vegas is highly suspect. Third, Mosley's spontaneous deposition testimony reveals the truth about his intentions at the time the complaint was filed. Mosley intended to remain in California with his family until, at a minimum, his eldest son finished school. (*Id. at 56:3-57:2).* While Mosley may (or may not) intend to one day relocate to Nevada permanently, that day had not arrived at the time he filed the complaint in this case. As such, his future intentions are of no consequence to the citizenship inquiry. Heinz, 757 F. Supp. at 1079. Here, Mosley's actions and words demonstrate that he was a California citizen at the time of the filing of the complaint.

### III. THE COURT SHOULD SANCTION MOSLEY UNDER ITS INHERENT POWERS

#### A. THE COURT HAS THE INHERENT POWERS TO SANCTION MOSLEY

This Court has the "well-acknowledged *inherent power*…to levy sanctions in response to abusive litigation practices." Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980) (emphasis added and internal quotation marks omitted); see also Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); In re Itel Secs. Litig., 791 F.2d 672, 675 (9th Cir. 1986); Winn v. Associated

Press, 903 F. Supp. 575, 581 (S.D.N.Y. 1995) ("A federal district court possesses broad inherent power to impose sanctions in response to abusive litigation practices, thereby ensuring the proper administration of justice."), *aff'd,* 104 F.3d 350 (2d Cir. 1996).  This is true even if the court never possessed subject matter jurisdiction over the case.  See Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir.1999) ("[E]ven when a district court lacks subject matter jurisdiction over an underlying action, it still possesses jurisdiction to impose sanctions arising from the underlying case.").

This inherent authority encompasses a broad range of sanctions, including even dismissal "when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589 (9th Cir. 1983).  As the Supreme Court has recognized, "[p]erjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings." United States v. Mandujano, 425 U.S. 564, 576 (1976).  "In any proceeding, whether judicial or administrative, deliberate falsehoods well may affect the dearest concerns of the parties before a tribunal and may put the factfinder and parties to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross examination, by extraneous investigation or other collateral means.  Perjury should be severely sanctioned in appropriate cases." ABF Freight Systems, Inc. v. National Labor Relations Board, 510 U.S. 317, 323 (1994) (citations and internal quotation marks omitted); see also Pope v. Federal Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (false testimony "abuses the judicial process" and is sanctionable under court's inherent authority).

A court may use its inherent power to sanction a party who makes false claims regarding the procedural basis for pursuing the case.  Methode Electronics, Inc. v. Adam Technologies, Inc., 371 F.3d 923, 928 (7th Cir. 2004).  In Methode, a party sought a temporary restraining order.  Early discovery revealed that the verified complaint contained false venue allegations.  The court sanctioned the attorneys and the party under its inherent authority.  The court determined that "... not only that Methode's venue allegations were false, but that Methode's conduct in advancing them was intentionally deceptive." Id.  The Seventh Circuit affirmed the ruling on appeal, finding that the party acted in bad faith.  As the court found, "[t]his was not a

question of mere negligence. It was an effort to deceive the court as to the existence of venue…" Id.

Here, similar to the situation in Methode, Mosley knowingly and falsely testified about his citizenship in an effort to deceive the Court into retaining jurisdiction over this action. Mosley sought to deceive the Court and counsel as to critical jurisdictional facts that were highly relevant. Instead of being forthright, Mosley, like the litigant in Methode chose to deceive the Court. Such conduct should not go unpunished. It is well-settled that an award of attorneys' fees and costs is an appropriate sanction for bad faith conduct such as this. Chambers, 501 U.S. at 43-45. The following chart summarizes Defendant's lodestar amount of fees incurred in defending this baseless action:

| **Attorney/Staff** | **Hours** | **Rate** | **Lodestar** |
|---|---|---|---|
| James M. Wagstaffe | 20.30 | 495.00 | $10,048.50 |
| Ivo Labar | 153.70 | 375.00 | $57,637.50 |
| Holly Hogan | 22.00 | 235.00 | $5,170.00 |
| Garfield Pallister (Paralegal) | 11.70 | 130.00 | $1,521.00 |
| Sarah Smoot (Paralegal) | 11.20 | 110.00 | $1,232.00 |
| Michael McCarthy (Case Clerk) | .90 | 50.00 | $45.00 |

Total Fees:    $75,654.00

(*Declaration of James M. Wagstaffe in Support of Defendant's Motion for Sanctions and Attorneys' Fees (hereinafter "Wagstaffe Decl.") ¶ 6*).

Defendant respectfully requests that the Court award the entire amount of fees incurred in defending this action as a sanction for Mosley's bad faith conduct.

**IV. DEFENDANT IS ENTITLED TO ATTORNEYS' FEES FOR THE ANTI-SLAPP MOTION**

    **A. DEFENDANT IS ENTITLED TO LEGAL FEES UNDER CALIFORNIA C.C.P. § 425.16(C)**

In the alternative, Defendant is entitled to attorneys' fees and costs incurred in preparing and filing the anti-SLAPP motion. The purpose of the anti-SLAPP law is to protect the rights of

1  persons and newspapers to speak freely on public issues without being deterred or chilled by
2  subsequent libel litigation.  C.C.P. § 425.16(a).  To effectuate its purpose, section 425.16(c)
3  provides that a prevailing defendant on a Special Motion to Strike shall be entitled to recover his
4  or her attorneys' fees and costs.  Id.  A party "prevails" under section 425.16 when the plaintiff
5  voluntarily dismisses his complaint in the face of a pending SLAPP motion.  ARP Pharmacy,
6  138 Cal. App. 4th at 1323.

7  Given that Plaintiff voluntarily dismissed his case in the face of Defendant's anti-SLAPP
8  motion, Defendant is, therefore, the prevailing party and entitled to recover his attorneys' fees
9  and costs under section 425.16(c).

10  Section 425.16(c), which provides "financial relief in the form of attorney's fees and
11  costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits," is an
12  important part of California's anti-SLAPP legislation.  Moore v. Liu, 69 Cal. App. 4th 745, 748
13  (1999).  The purpose of the fee provision of the anti-SLAPP statute is to make the defendants
14  whole financially so as to "adequately compensate the defendant for the expense of responding
15  to a baseless lawsuit."  Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal. App. 4th 777,
16  785 (1996).  In addition, the "awarding of reasonable attorneys' fees" to defendants who prevail
17  against SLAPPs "will discourage the filing of SLAPP lawsuits."  Hull v. Rossi, 13 Cal. App. 4th
18  1763, 1769 (1993).  In 1997, the Legislature amended section 425.16 to clarify its original intent
19  that the "section shall be construed broadly."  C.C.P. § 425.16(a).  This directive applies to the
20  entire section and, thus, under section 425.16(c), as a prevailing defendant, Conte should be
21  reimbursed for all fees and costs reasonably related to defending this SLAPP.

### B. THE AMOUNT OF ATTORNEYS' FEES REQUESTED BY DEFENDANT IS REASONABLE

24  When fees are to be awarded under a fee-shifting statute (such as § 425.16(c)), the
25  "parties who qualify for a fee should recover all hours reasonably spent."  Serrano v. Unruh, 32
26  Cal. 3d 621, 633 (1982).  The method for determining the amount of reasonable attorneys' fees is
27  well established:  the base or lodestar is first computed by multiplying the number of hours
28  reasonably spent by the reasonable hourly rate for each attorney.  See Flannery v. California

– 12 –

CASE NO. C 08-01777 JSW    DEFENDANT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES

1  Highway Patrol, 61 Cal. App. 4th 629, 646 (1998). Also included in the lodestar are out-of-
2  pocket expenses of the type normally billed to fee-paying clients. Beasley v. Wells Fargo Bank,
3  235 Cal. App. 3d 1407, 1419 (1991). Although a fee claimant can then request an increase in the
4  lodestar by a multiplier, Defendant did not do so here.
5      As demonstrated in the Wagstaffe Declaration, at paragraph 8, both the number of hours
6  and the hourly rate charged for the anti-SLAPP work (not including the fees motion) are
7  reasonable. The following chart summarizes Defendant's lodestar:

| **Attorney/Staff** | **Hours** | **Rate** | **Lodestar** |
|---|---|---|---|
| James M. Wagstaffe | 10.60 | 495.00 | $5,247.00 |
| Ivo Labar | 75.50 | 375.00 | $28,312.50 |
| Holly Hogan | .40 | 235.00 | $94.00 |
| Garfield Pallister (Paralegal) | 1.90 | 130.00 | $247.00 |
| Sarah Smoot (Paralegal) | 3.90 | 110.00 | $429.00 |

                                                    Total Fees:   $34,329.50

### 1.    The number of hours claimed is reasonable.

As shown in the Wagstaffe Declaration, the number of hours billed in defense of this SLAPP indisputably is reasonable. Defendant's counsel had to do a substantial amount of work in support of the motion to strike, including gathering background information, working with Conte, other percipient witnesses and their counsel, analyzing various affirmative defenses related to the anti-SLAPP, researching the grounds to be set forth in an anti-SLAPP Special Motion to Strike, drafting that motion, preparing for oral argument, preparing the proposed order, and preparing the instant motion for fees. The hours are reasonable as reflected in the contemporaneously kept and detailed time records that describe the activities for which compensation is claimed. (*Wagstaffe Decl. ¶ 8*). Even if hindsight could be utilized to second-guess certain time entries, which it cannot, Woolridge v. Marlene Indus. Corp. 898 F.2d 1169, 1177 (6th Cir. 1990) (standard is attorneys' reasonable belief at the time, not hindsight analysis), the fees requested in this case are particularly reasonable.

– 13 –
CASE NO. C 08-01777 JSW    DEFENDANT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES

1   If one were to take a "gestalt" view of the reasonableness of the fees, the total amount
2   charged is exceptionally low.  The amount requested here is well below amounts awarded for
3   work on anti-SLAPP motions in the trial court in other cases, including several affirmed on
4   appeal.  (*Wagstaffe Decl. at ¶ 11.*)  The request here is well below amounts awarded for work on
5   the anti-SLAPP motions in the trial courts in other cases, including several affirmed on appeal.
6   For example, in the Lafayette Morehouse, Inc. v. Chronicle Publishing Co., a case decided over
7   ten years ago at substantially lower rates, the court awarded in excess of $100,000.00 as a
8   reasonable attorney fee.  (*Id.*)  And while the Court of Appeal, in its second opinion rendered
9   before the later statutory amendment compelling a broad reading of the anti-SLAPP law, allowed
10  fees on the motion itself, the trial court on remand (Hon. William Cahill) allowed all fees
11  expended on the defense except for a small amount of time spent on a motion to quash for a
12  collateral defendant.  (*Id.*)  Thus, the court awarded fees for client meetings, review of the
13  complaint, discovery analysis and work on the appeal.  Similarly, in the Church of Scientology v.
14  Wollersheim case, the court awarded in excess of $90,000.00 in reasonable attorneys' fees over a
15  decade ago.  (*Id.*)  The amount sought here, a fraction of those figures, is both reasonable and
16  reflects the skill and expertise of the attorneys involved.

### 2.     The hourly rates sought by counsel are reasonable.

18  Defendant's attorneys are entitled to be compensated at hourly rates that reflect the
19  reasonable market value of their services in the community.  Serrano, 32 Cal. 3d at 643.  The
20  declaration filed herewith amply demonstrates the extensive level of experience of the lawyers
21  involved and that their hourly rates are at or below reasonable market value for this community.
22  (*Wagstaffe Decl. at ¶¶ 4-5.*)

### 3.     Defendant is entitled to recover fees for filing this fees motion.

24  It is settled law that fees recoverable under a mandatory fee statute, such as involved in
25  this case, include fees incurred in presenting and arguing the fees motion.  In this particular
26  matter, Defendant has reasonably expended nine hours in preparing this fee petition at a total
27  cost of $3,615.  (*Wagstaffe Decl. ¶ 9*).  It is estimated that a reply brief will require an additional
28  five hours ($1,995) and the oral argument will require three hours ($1,365).  (*Id.*).  Thus, the total

amount of $6,975 sought for the preparation and presentation of this motion is exceedingly reasonable. (*Id.*)

## V. CONCLUSION

Mosley filed this case knowing that complete diversity, and therefore subject matter jurisdiction, was lacking over this case. When this issue was raised in discovery, Mosley persisted in falsely claiming that he was a citizen of Nevada. Such conduct is sanctionable under the Court's inherent powers, and Mosley should be ordered to pay the attorneys' fees incurred in defending this meritless action.

In the alternative, Defendant respectfully requests that he be awarded his reasonable attorneys' fees in the amount of $34,329.50, pursuant to California Code of Civil Procedure section 425.16(c).

DATED: August 29, 2008　　　　　　　　　Respectfully submitted,

**KERR & WAGSTAFFE LLP**

By _____/s/_____
　　IVO LABAR

Attorneys for Defendant
Victor Conte