LONG & LEVIT LLP
Kim O. Dincel, Esq. (SBN 131563)
465 California Street 5th Floor
San Francisco, California 94104
Tel (415) 397-2222 Fax (415) 397-6392
E-mail: kdincel@longlevit.com

JUDD BURSTEIN, P.C.
Judd Burstein, Esq. (JB-9585; admitted *pro hac vice*)
Jeremy M. Attie, Esq. (JA-0561; admitted *pro hac vice*)
1790 Broadway, Suite 1501
New York, New York 10019
Tel (212) 974-2400 Fax (212) 974-2944
E-mail: jburstein@burlaw.com
E-mail: jattie@burlaw.com

*Attorneys for Plaintiff,*
SHANE D. MOSLEY, SR.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHANE D. MOSLEY, SR., <br><br> *Plaintiff,* <br><br> vs. <br><br> VICTOR CONTE, <br><br> *Defendant.* | 08-Civ-1777 (JSW) <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SHANE D. MOSLEY, SR.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 <br><br> Date: December 26, 2008 <br> Time: 9:00 a.m. <br> Courtroom: 2, 17th Floor <br><br> Hon. Jeffrey S. White |

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii
I.   INTRODUCTION ...................................................... 1
II.  STATEMENT OF RELEVANT FACTUAL BACKGROUND ..................... 1
III. ARGUMENT .......................................................... 4
     A.   THE STANDARD GOVERNING THIS MOTION ....................... 4
     B.   DEFENDANT'S MOTION FOR ATTORNEYS FEES UNDER THE
          ANTI-SLAPP STATUTE IS FRIVOLOUS AND SANCTIONABLE ......... 5
     C.   DEFENDANT'S MOTION FOR ALL OF HIS ATTORNEYS FEES IN THIS
          CASE PURSUANT TO THE COURT'S INHERENT POWERS WARRANTS
          SANCTIONS UNDER § 1927 ................................... 9
IV.  CONCLUSION ....................................................... 14

TABLE OF AUTHORITIES

CASES

*ARP Pharmacy Services, Inc. v. Gallagher Bassett Services, Inc.*,
   138 Cal.App.4th 1307, 42 Cal. Rptr. 246 (2d Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . 6,7

*Bennett v. Yoshina*,
   374 F.3d 857 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Brown v. Baden (In re Yagman)*,
   796 F.2d 1165 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Buckhannon Board and Care Home, Inc. v. West Virginia Department
of Health and Human Resources*,
   532 U.S. 598, 121 S. Ct. 1835 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dibella v. Hopkins*,
   187 F.Supp.2d 192 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Kullgren*,
   109 B.R. 949 (Bkr. C.D. Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Interscope Records v. Leadbetter*,
   2007 U.S.Dist. LEXIS 65955 (W.D. Wash. Sept. 6, 2007) . . . . . . . . . . . . . . . . . . . . . 10

*Jankey v. Poop Deck*,
   No. 06-55957, 2008 U.S. App. LEXIS 17164 (9th Cir. Aug. 12, 2008) . . . . . . . . . . 8-9

*Kanter v. Warner-Lambert, Co.*,
   265 F.3d 853 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Kasza v. Rumsfeld*,
   325 F.3d 1178 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Leon v. IDX Systems Corporation*,
   464 F.3d 951 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Liu v. Moore*,
   69 Cal. App. 4th 745, 81 Cal Rptr. 807 (2d Dist. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mann v. Quality Old Time Service, Inc.*,
   139 Cal. App. 4th 328 (4th Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*Methode Electronics, Inc. v. Adam Technologies, Inc.*,
   371 F.3d 923 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Methode Electronics, Inc. v. Adam Technologies, Inc.*,
   No. 03 C 2971, 2003 U.S. Dist. LEXIS 13409 (N.D. Ill. July 25, 2003) . . . . . . . . . . . . 13

*Moore v. Keegan Management Co.*,
   78 F.3d 431 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Moran v. Endres*,
   135 Cal. App.4th 952, 37 Cal. Rptr.3d 786 (2nd Dist. 2006) . . . . . . . . . . . . . . . . . . . 8

*Pfeiffer Venice Properties v. Bernard*,
   101 Cal. App. 4th 211 (2d Dist. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schultz v. Boys Scouts of America, Inc.*,
   65 N.Y.2d 189, 491 N.Y.S.2d 90 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATUTES AND OTHER AUTHORITIES


28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5

Cal. Code Civ. § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6

Fed. R. Civ. P. 41(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,10

N.Y.C.P.L.R. 302(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kim O. Dincel, Esq. (SBN 131563)
Long & Levit LLP
465 California Street 5th Floor
San Francisco, California 94104
Tel (415) 397-2222 Fax (415) 397-6392
E-mail kdincel@longlevit.com

JUDD BURSTEIN, P.C.
Judd Burstein (JB-9585; admitted *pro hac vice*)
Jeremy M. Attie (JA-0561; admitted *pro hac vice*)
1790 Broadway, Suite 1501
New York, New York 10019
Tel (212) 974-2400 Fax (212) 974-2944
E-mail jburstein@burlaw.com
E-mail jattie@burlaw.com

*Attorneys for Plaintiff,*
SHANE D. MOSLEY, SR.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHANE D. MOSLEY, SR.,<br><br>    *Plaintiff,*<br><br>vs.<br><br>VICTOR CONTE,<br><br>    *Defendant.* | 08-Civ-1777 (JSW)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SHANE D. MOSLEY, SR.'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927<br><br>Date:  December 26, 2008<br>Time:  9:00 a.m.<br>Courtroom:  2, 17th Floor<br><br>Hon. Jeffrey S. White |

## I. INTRODUCTION

Plaintiff Shane D. Mosley, Sr. ("Mosley" or "Plaintiff") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to 28 U.S.C. § 1927, for sanctions against Defendant Victor Conte's ("Defendant" or "Conte") counsel arising from Defendant's outrageous and entirely frivolous motion seeking attorneys' fees and sanctions from Plaintiff.

We regret having to make this motion, and further regret its stridency. We also recognize that opposing counsel is well regarded. However, although undoubtedly aberrational, the conduct of opposing counsel in filing Defendant's motion for sanctions and fees is so appalling that something must be done. In essence, counsel has filed a motion that misstates the law either by taking statements in the cases out of context or by simply ignoring governing authority. Worse still, counsel is doing it for an improper purpose: trying to force Mosley to abandon his claims against Defendant in another case so as to avoid the possibility of sanctions and a fee award in this case.

Aggressive advocacy is to be admired, but it must also be responsible advocacy. As the Court will see, defense counsel's motion is an object lesson in irresponsible advocacy. Time and again in their recent motion, counsel has pressed positions which are precluded by the governing case law. This type of conduct cannot be condoned.

## II. STATEMENT OF RELEVANT FACTUAL BACKGROUND

Plaintiff commenced this diversity action for defamation on April 2, 2008. *See* Exhibit B, which is a true and accurate copy of the Complaint, dated April 2, 2008, annexed to the accompanying Declaration of Judd Burstein, Esq., dated September 2, 2008 ("Burstein Declaration").[1]

On May 30, 2008, Defendant filed a motion to strike the Complaint pursuant to Cal. Code Civ. Pro. § 425.16 ("Anti-Slapp"). (*See* Exhibit C, which is a true and accurate copy of

---

[1] All Exhibits referenced herein are annexed to the Burstein Declaration.

Defendant's motion to strike the Complaint, dated May 30, 2008). On June 16, 2008, Plaintiff responded to the motion and sought, pursuant to § 425.16(c), the costs and attorneys' fees associated with opposing Conte's frivolous motion. *See* Exhibit D, which is a true and accurate copy of Mosley's opposition to Conte's motion to strike, dated June 16, 2008. On June 30, 2008, Defendant submitted reply papers. *See* Exhibit E, Defendant's Reply, dated June 30, 2008. This motion was not decided by the Court prior to the dismissal of this case. Burstein Declaration at ¶ 18.

During the briefing of Defendant's motion to strike, the parties engaged in jurisdictional discovery, culminating in a deposition of Plaintiff on July 9, 2008. *See* Exhibit F, which is a true and accurate copy of the transcript from the deposition of Shane D. Mosley, dated July 9, 2008 ("Mosley Deposition" or "Mosley Depo."). In that deposition, Plaintiff freely admitted a variety of facts – including the fact that he owns a home and also a training facility in California (Mosley Depo. at pps. 16:8-23; 30:22-31:3), the fact that his wife lives in California during the school year (*id.* at pps. 14:11-16; 45:2-6; and 55:11-19), and the fact that his primary employer is based in California (*id.* at p. 37:4-10) – which created an issue as to the State of Plaintiff's citizenship.

However, Plaintiff's deposition, as well as document discovery, revealed many facts supporting his claim that he is a Nevada citizen, including the facts that, as of at least a year prior to the date this action was filed, Plaintiff (a) owned a home in Nevada he considered to be his primary residence (Mosley Depo. at p. 18:6-18), (b) maintained bank accounts in Nevada (and not California) (*id.* at p. 48:6-8), (c) registered all his cars in Nevada (*id.* at pps. 22:2-3; 48:15-17), (d) held a Nevada driver's license (*see* Exhibit G, which is a true and accurate copy of Mosley's driver's license; *see also* Mosley Depo. at pps. 46:19-47:7), (e) maintained a Nevada cell phone number (*id.* at p. 36:4-11), (f) performed services for his California employer almost exclusively in Nevada and has never worked in their Los Angeles offices (*id.* at pps. 37:4-17; 59:9-60:2), and (g) spent a significant amount of his time in Nevada both alone and with his family during the school holidays (*id.* 55:14-9; 57:6-9). Plaintiff also testified that he had

maintained the family residence in California so that his son could graduate from high school in 2009 without having to change schools, but that he was planning on selling the California residence upon his son's graduation (*id.* at p. 56:3-25). Further, although Plaintiff acknowledged that he owned a training facility in Big Bear, California (Mosley Depo. at pps. 30:22-31:3), he testified that he also trained in a gym in Nevada, and that he would no longer train at the Big Bear facility once he retired from professional boxing in a few years (Mosley Depo. at pps. 56:17-21; 34:11-25). Mosley is not licensed to box in California (*see* Burstein Declaration at ¶ 20); rather, he is only licensed to box in Nevada and New York.[2] *See* Mosley Dep. 39:19-25.

On July 18, 2008, counsel for Defendant sent Plaintiff's counsel an e-mail attaching a letter enclosing a draft motion to dismiss the case for lack of diversity jurisdiction. *See* Exhibit H, which is a true and accurate copy of the July 18, 2008 e-mail and accompanying letter and enclosures.

Shortly after receipt of the letter, Defendant provided Plaintiff with a copy of an insurance policy which added Defendant as an additional insured on the policy of the publisher of Defendant's anticipated book. *See* Exhibit L, which is a true and accurate copy of the publisher's insurance policy. That policy revealed that the publisher is a New York company. *See id.* Accordingly, based upon the fact that the false statements upon which this action is founded were made in connection with efforts to publicize Conte's book, Plaintiff's counsel determined that Mosley could secure jurisdiction over Conte in New York pursuant to N.Y. C.P.L.R. 302(a)(1). *See Dibella v. Hopkins*, 187 F.Supp.2d 192, 197-98 (S.D.N.Y. 2002). (Declaration of Judd Burstein at ¶ 22). Significantly, counsel for Plaintiff specifically advised counsel for Defendant that he was going to dismiss this action and refile against Defendant because of this new insurance information. *See* Exhibit I, which is a true and accurate copy of an e-mail, dated July 30, 2008, from Judd Burstein, Esq. to Ivo Labar, Esq.

---

[2]     It should be noted that Mosley is in the process of securing a license to box in California in anticipation of a fight scheduled to take place in Los Angeles this month. Burstein Declaration at ¶ 19.

Accordingly, on August 5, 2008, Plaintiff voluntarily dismissed this action, pursuant to Fed. R. Civ. P. 41(a), and simultaneously commenced a new action in New York. The New York action repeated all of the claims set forth in this action, as well as some additional claims based upon statements made by Defendant to his publisher in New York. *See* Exhibit J, which is a true and accurate copy of the Complaint, dated August 5, 2008, filed in the New York State Supreme Court, New York County.

On August 28, 2008, counsel for Defendant called Plaintiff's counsel to alert him to the fact that Defendant would be filing a motion for sanctions and fees, and to suggest that Plaintiff should dismiss his case against Defendant in New York in order to avoid an award of sanctions and fees in this case. *See* Burstein Declaration at ¶ 25.

Immediately thereafter, Defendant's counsel filed the fees and sanctions motion. *See* Exhibit K, which is a true and accurate copy of the Docket Sheet for this action. The motion seeks the following:

    a.    Attorneys' fees with respect to Defendant's motion to strike the complaint; and

    b.    Sanctions pursuant to the Court's inherent powers.

This motion follows.

## III. ARGUMENT

### A. THE STANDARD GOVERNING THIS MOTION

28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "[S]ection 1927 sanctions 'must be supported by a finding of subjective bad faith....' 'Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent....' For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *Moore v. Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir. 1996).

Here, counsel for Defendant has engaged in the very conduct that § 1927 is designed to prevent: the reckless or knowing filing of a frivolous motion. Worse still, the motion was made for the improper purpose of forcing a settlement in a separate litigation. *See Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001); *In re Kullgren*, 109 B.R. 949, 956 (Bankr. C.D. Cal. 1990).

B.   **DEFENDANT'S MOTION FOR ATTORNEYS' FEES UNDER THE ANTI-SLAPP STATUTE IS FRIVOLOUS AND SANCTIONABLE**

In his motion, Defendant contends that he is **automatically** entitled to an award of attorneys' fees pursuant to Cal. Code Civ. Pro. § 425.16, because Plaintiff voluntarily dismissed the case while Defendant's Anti-SLAAP motion was pending. This is an extraordinarily frivolous claim which no competent attorney doing even a modicum of research could make in good faith.

**First**, and most distressingly, Defendant has inexcusably misstated the law. Relying upon a single case, *ARP Pharmacy Services, Inc. v. Gallagher Bassett Services, Inc.*, 138 Cal. App. 4th 1307, 42 Cal. Rptr. 246 (2d Dist. 2006), Defendant argues that "[a] a party 'prevails' under section 425.16 [and is therefore entitled to fees] when the plaintiff voluntarily dismisses his complaint in the face of a pending SLAAP motion." (Defendant's Memorandum at p. 12). No reasonable reading of *ARP* permits such a conclusion. The situation in *ARP* bears no resemblance to the facts of this case. Rather, in *ARP*, the Defendant had successfully moved for judgment on the pleadings and also to strike the Complaint pursuant to § 425.16. In order "[t]o avoid the necessity of a remand in the event the judgment on the pleadings was reversed on appeal, the trial court also granted the special motion to strike as an alternative ruling and awarded fees to respondent." *ARP*, 138 Cal. App. 4th at 1313, 42 Cal. Rptr. at 260. Based, then, upon the fact that the trial court had actually granted the Anti-SLAAP motion and had also awarded fees in accordance with that ruling, the Court of Appeals upheld the legal fee award. *Id.* at 1323, 268. In other words, the Court upheld the fee award because there actually had been a

finding in favor of the defendant on the Anti-SLAAP motion – something that **never** occurred here.

Needless to say, Defendant's motion does not mention any of the facts of *ARP*, preferring instead to take one line of *dicta* in the decision out of context, and thereby falsely suggests that *ARP* involved a voluntary dismissal of a case before a ruling on an Anti-SLAAP motion. Thus, while it is true that the decision states that "plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which an anti-SLAPP motion is directed," *id.* at 1323, 268, the Court plainly did not remotely hold – as Defendant seeks to mislead this Court – that an award of fees is automatic anytime a case is voluntarily dismissed after the filing of an Anti-SLAAP motion.

Indeed, one need only read the case relied upon by the *ARP* Court in making that statement – *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211 (2d Dist. 2002) – to see that counsel for Defendant has blatantly misrepresented the meaning of *ARP* to this Court. For in *Pfeiffer*, the Court held only that where a plaintiff voluntarily dismisses a case after the filing of an Anti-SLAAP motion, the defendant is entitled to "a ruling on the merits of [his] SLAPP motion, the result of which will necessarily determine [his] right to attorney fees under section 425.16, subdivision (c)." 101 Cal. App. 4th at 218-19, 123 Cal. Rptr. at 653.

Similarly, *Liu v. Moore*, 69 Cal. App. 4th 745, 753-54, 81 Cal Rptr. 807, 813 (2d Dist. 1999), a case cited by *Pfeiffer* with approval, provides:

> Moore's analysis is flawed because while section 425.16 does authorize attorney's fees, it specifically states **the defendant only receives such fees if the defendant prevails *on the motion to strike*. Thus, a dismissed defendant's receipt of attorney's fees under section 425.16 is grounded on the defendant having prevailed on her motion to strike, not on her having been dismissed from a SLAPP suit. Therefore, attorney's fees are not automatic**....

(Emphasis supplied).

In light of (a) the explicit holdings of *Pfeiffer* and *Liu*, and (b) the fact that *ARP* involved a case where a trial court had actually ruled on an Anti-SLAAP motion, it would be impossible for a lawyer to make a good-faith, non-frivolous argument that an award of fees became

automatic upon Plaintiff's voluntary dismissal of the case. Nor can counsel credibly claim that we have misconstrued Defendant's motion and that Defendant is really seeking only a determination of the Anti-SLAAP motion as a prelude to a grant of fees. In the first instance, that is not what the motion seeks. Rather, the motion is explicitly and exclusively founded upon the claim that the dismissal of this action **automatically** entitles Defendant to fees without regard to the merits of the Anti-SLAAP motion. Further, the motion does not request a ruling on the Anti-SLAAP motion. Indeed, the Anti-SLAAP motion papers are not even appended to Defendant's fees motion.

**Second**, Defendant further seeks to mislead this Court by contending that Plaintiff's dismissal has somehow deprived him of his right to seek relief under the Anti-SLAAP statute because there is no similar statute in New York. But what he fails to mention is that California law undoubtedly governs the bulk of Mosley's claims against Conte, thereby permitting application of the Anti-SLAAP statute in the New York action, at least with respect to the allegations that are common to the New York action and the action that was filed in this Court. Even the smallest amount of research of New York law would show this to be so in light of New York's use of an "interest analysis" approach to choice of law. *See Schultz v. Boys Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 94-95 (1985).

**Third**, because California law would so plainly apply to the claims in this case that have been repeated in the New York action, counsel's failure to alert the Court to *Moran v. Endres*, 135 Cal. App. 4th 952, 37 Cal. Rptr. 3d 786 (2d Dist. 2006), and *Mann v. Quality Old Time Service, Inc.*, 139 Cal. App. 4th 328, 42 Cal. Rptr. 3d 607 (4th Dist. 2006), is inexcusable. In *Moran*, a defendant moved to strike an entire complaint under the Anti-SLAAP statute, but only managed to secure dismissal of one count of conspiracy. Thereafter, the defendant sought legal fees on the theory that he had secured some relief under the Anti-SLAAP statute. The Court rejected this argument, stating:

> To be blunt, defendants' motion accomplished nothing, except that plaintiffs were put to the cost of defending the motion. The possible recovery against defendants did not change. The factual allegations which defendants had to defend did not change. The work involved in trying the case did not change. Defendants' burden concerning their jurisdictional defense did not change. The

> case was essentially the same after the ruling on the special motion to strike as it was before. The results of the motion were minimal and insignificant, fully justifying the court's finding that defendants should not recover fees.
>
> Section 425.16 was enacted because the Legislature found that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." Neither the public's nor defendants' right to participate was advanced by this motion.

135 Cal. App. 4th at 955, 37 Cal. Rptr. 3d at 788.

In *Mann*, the Court ruled: "We thus hold that a party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party **unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion.**" 139 Cal. App. 4th at 340, 37 Cal. Rptr. 3d at 614 (Emphasis supplied).

Of course, Conte has secured no "practical benefit" from the dismissal of this action, as all of the claims against him, plus more, are now pending in the New York action. As in *Moran*, Mosley's possible recovery against Conte has not changed; the factual allegations that Conte has to defend have not changed; and the work involved for Conte presenting legal defenses has not changed. Hence, except for the fact that he now has to defend in another forum against additional claims of defamation, the present case against Conte in New York is essentially the same case that was pending in this case, and Conte's position is in no way improved. Given these indisputable facts, **how could any responsible attorney file a good-faith motion for fees without even mentioning *Moran* and/or *Mann*?**

**Fourth**, counsel has also inexcusably ignored governing law on the issue of when attorneys' fees under a fee-shifting statute may be awarded following a voluntary dismissal in federal court. In *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001), "the Supreme Court held that the term 'prevailing party,' as it is used in various attorney's fees statutes, requires a 'material alteration of the legal relationship of the parties....'" *Bennett v. Yoshina*, 374 F.3d 857, 864-65 (9th Cir. 2001). Thus, as recently explained by the Court in *Jankey v. Poop Deck*, No. 06-55957, 2008 U.S.App. LEXIS 17164, at

*20 (9th Cir. Aug. 12, 2008): "[F]or a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned.... In other words, the alteration must have a 'judicial imprimatur.'" (Citation and some quotations omitted). In practice, this means that the parties' relationship must be changed by reason of a judgment or a settlement or consent decree over which the Court retains jurisdiction. *See Kasza v. Rumsfeld*, 325 F.3d 1178, 1180 (9th Cir. 2003).

Here, there has been no material alteration of the parties' legal relationship, much less one that was judicially sanctioned. Rather, all that happened was that Plaintiff dismissed his action in this Court and re-filed essentially the same action in another Court. This does not render Defendant a prevailing party. *See Interscope Records v. Leadbetter*, No. C05-1149P, 2007 U.S. Dist. LEXIS 65955, at *7 (W.D. Wash. Sept. 6, 2007) ("[T]he Court fails to see how Plaintiffs' voluntary dismissal without prejudice of their claims against her is comparable to a settlement agreement enforced through a court-ordered consent decree.").

Again, the failure of defense counsel even to mention this body of law – and instead falsely claim that attorneys' fees must be automatically awarded in the face of a dismissal pursuant to Rule 41(a)(1) – is simply inexcusable.

C.   **DEFENDANT'S MOTION FOR ALL OF HIS ATTORNEYS' FEES IN THIS CASE PURSUANT TO THE COURT'S INHERENT POWERS WARRANTS SANCTIONS UNDER § 1927**

Outrageously and erroneously contending that Mosley perjured himself by claiming that he was a citizen of Nevada, Conte seeks to recoup all of his attorneys' fees for this entire case based solely upon a supposedly improper assertion of subject matter jurisdiction. The frivolity of this claim is astounding.

**First**, the notion that Mosley's claim of Nevada citizenship was frivolous and made in bad faith is absurd, and defense counsel's claim in this regard is itself sanctionable. As explained by the Court in *Kanter v. Warner-Lambert, Co.*, 265 F.3d 853, 857 (9th Cir. 2001):

> The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home,

> where she resides with the intention to remain **or to which she intends to return**.... A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. *See, e.g., Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.").

(Emphasis supplied and some citations omitted).

Further:

> The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (Citation omitted).

In quoting portions of Mosley's deposition, defense counsel has unconscionably omitted other portions of that deposition which demonstrated that many of the factors that must be considered by a Court when determining citizenship stand in Mosley's favor. Thus, as referenced above, as of at least a year prior to the date this action was filed, Plaintiff (a) owned a home in Nevada he considered to be his primary residence (Mosley Depo. at p. 18:6-18; "It's the central home."); (b) maintained bank accounts in Nevada (and not California) (*id.* at p. 48:6-8); (c) registered all his cars in Nevada (*id.* at pps. 22:2-3; 48:15-17); (d) maintained a Nevada cell phone number (*id.* at p. 36:4-11); (e) spent a significant amount of his time in Nevada both alone and with his family during the school holidays (*id.* at pps. 55:14-19; 57:6-9); and (f) performed services for his California employer almost exclusively in Nevada and has never worked in their Los Angeles offices. *Id.* at pps. 37:4-17; 59:9-60:2. In this regard, Mosley testified as follows:

Q. Golden Boy's offices are in California, right?

A. Right.

Q. **Do you do any work out of their offices in California?**

A. **No.**

*Id.* at p. 59:9-13.

Plaintiff also testified that he had maintained the family residence in California so that his son could graduate from high school in 2009 without having to change schools, but that he was planning on selling the California residence upon his son's graduation (*id.* at p. 56:3-25). Notably, Mosley stated:

> Q.   ... And after the fall of this year, is it your intention to have Nevada as your exclusive residence?
>
> A.   It is my intention, yes, to have – to move the family to Nevada.

(*Id.* at p. 56:8-12).

Additionally, although Plaintiff acknowledged that he owned a training facility in Big Bear, California (Mosley Depo. at pps. 30:22-31:3), he testified that he also trained in a gym in Nevada, and that he would no longer train at the Big Bear facility once he retired from professional boxing in a few years (*id.* at pps. 56:17-21; 34:11-25.). Moreover, Mosley is not licensed to box in California (*see* Burstein Declaration at ¶ 20); rather, he is only licensed to box in Nevada and New York.[3] *See id.* at p. 39:19-25.

Further, when pressed on the issue of training boxers in the future, notably Mosley's son, Mosley stated that his son "has plans of being a professional fighter," and that Mosley plans on training him. Mosley Depo. at p. 60:5-9. Pointedly, Mosley plans "on training him in Las Vegas.... Because that's where we'll be moving." *Id.* at p. 60:10-13.

> Q.   ... [W]hat do you plan to do with your California home after June of 2009?
>
> A.   Well, I plan to put it up for sale and move into something in Vegas.

*Id.* at p. 56:22-25.

While it is an open question as to whether, based upon this evidence, Mosley would have successfully withstood a motion to dismiss on jurisdictional grounds, there can be no rational dispute about the fact that he had a colorable basis for claiming Nevada citizenship. Hence,

---

[3]   As noted previously, Mosley is in the process of securing a license to box in California in anticipation of a fight scheduled to take place in Los Angeles this month.

defense counsel's claim that Mosley's assertion of diversity jurisdiction was in bad faith must itself be deemed frivolous.

While Conte seeks to make much of the fact that, during his deposition, Plaintiff failed to recall his status as a party in a California lawsuit regarding a jungle gym, the inference which Conte seeks to draw from this error makes no sense. According to Conte, Mosley "perjured" himself by failing to recall his involvement in the lawsuit because his pleading in that case was supposedly devastating to his claim of Nevada citizenship. But that is just not so. For, in the playground equipment case, Mosley alleged only that he was a **resident** of California. (*See* Exhibit G to the Declaration of Ivo Labar, Esq., filed in support of Defendant's Motion for Sanctions and Attorneys' Fees, dated August 28, 2008, at ¶ 6). He did not allege that he was a **citizen** of California. As explained above, residency, is not the inquiry with respect to citizenship, domicile is. But far more importantly, Mosley testified in his deposition that he owned both a residence and a training camp in California, and that he spent time at both locations. (Mosley Depo. at pps. 16:8-23; 30:22-31:3). Hence, his own deposition testimony provided far more information than found in the pleading in the jungle gym case, and there would have been no point for Mosley to hide the existence of a lawsuit in which he alleged less about his California contacts than he admitted in his deposition. Moreover, Mosley did not deny that there were other lawsuits. Rather, he simply stated that, at that moment in time, he could not recall any other litigations. (Mosley Depo. at pps. 9:20-10:8). While Mosley – who has a limited education and is plainly not at home in the witness chair – had an unfortunate failure of recollection under pressure (not the least bit unusual), that failure of recollection cannot credibly be called perjury.[4] Rather, Mosley fell into a trap set by defense counsel, who chose to make hay with Mosley's failure of recollection instead of helping to refresh it.

---

[4]   Moreover, in opposition to Defendant's motion, Mosley will file additional factual information concerning his general lack of involvement in the playground equipment case, which was a matter being dealt with principally by his spouse.

Put another way, Conte's motion makes clear that his claim that Mosley is not a citizen of Nevada is based upon Mosley's own testimony at his deposition. It is therefore frivolous to claim that, after having provided far more helpful testimony in his deposition about his residence and connections to California, Mosley would have consciously chosen to lie about a matter of public record which added nothing to the information he had already provided by testifying that he owned a home and a training camp in California.

**Second**, even if one were to assume *arguendo* that Mosley's claim of Nevada citizenship was made in bad faith (and that is not the case), the most that Conte could possibly recover as a sanction would be the fees incurred with respect to the issue of the Court's subject matter jurisdiction (as opposed, for example, to the fees incurred for preparation of the Anti-SLAAP motion). The law in the Ninth Circuit could not be more clear: where a court imposes a financial sanction pursuant to its inherent powers, "**[r]ecovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action....**" *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1185 (9th Cir. 1986) (emphasis supplied); *see Leon v. IDX Systems Corporation*, 464 F.3d 951, 961 (9th Cir. 2006) (making clear that *Brown* applies to inherent power sanctions). Nonetheless, Conte seeks 100% of fees incurred in this case. No lawyer who has read the case law could responsibly seek such relief.[5]

---

[5] Indeed, even in the case primarily relied upon by Conte, *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923 (7th Cir. 2004), the Court did not award 100% of the defendant's fees. Rather, the District Court opinion (which counsel apparently failed to read or chose not to mention) makes clear that only those fees "incurred as a result of" the sanctionable conduct were awarded. *See Methode Electronics, Inc. v. Adam Technologies, Inc.*, No. 03 C 2971, 2003 U.S. Dist. LEXIS 13409, at *35 (N.D. Ill. July 25, 2003).

IV. **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court grant Mosley's motion for sanctions pursuant to 28 U.S.C. § 1927, the amount of which is to be determined upon a submission to be made after the Court grants relief.

Dated: New York, New York
September 3, 2008

                        LONG & LEVIT LLP

                        465 California Street 5th Floor
                        San Francisco, California 94104
                        Tel (415) 397-2222
                        Fax (415) 397-6392
                        E-mail kdincel@longlevit.com

                        JUDD BURSTEIN, P.C.

                        By _____
                              Judd Burstein
                        1790 Broadway, Suite 1501
                        New York, New York 10019
                        Tel (212) 974-2400
                        Fax (212) 974-2944
                        E-mail jburstein@burlaw.com